George M. Lee [Cal. SBN 172982]
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Tel. (415) 979-0500
Fax (415) 979-0511
gml@seilerepstein.com

Cody Wisniewski*
*Pro hac vice* application forthcoming
**MOUNTAIN STATES LEGAL FOUNDATION**
2596 South Lewis Way
Lakewood, CO 80227
Tel. (303) 292-2021
Fax (303) 292-1980
cody@mslegal.org

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, and GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE,<br><br>*Petitioners*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; REGINA LOMBARDO, in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco Firearms and Explosives; MICHAEL R. CURTIS, in his official capacity as Chief, Firearms Technology Industry Services Branch of Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and WILLIAM BARR, in his official capacity as Attorney General of the United States,<br><br>*Defendants*,<br><br>and<br><br>ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; and FIREARMS POLICY COALITION, INC.,<br><br>*Applicants in Intervention*. | Case Number: 3:20-cv-06761-EMC<br><br>**MEMORANDUM IN SUPPORT OF ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; AND FIREARMS POLICY COALITION, INC.'S MOTION TO INTERVENE** |

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................. 1

DESCRIPTION OF APPLICANTS FOR INTERVENTION .................................. 3

ARGUMENT ........................................................................................................ 5

I. APPLICANTS ARE ENTITLED TO INTERVENE AS OF RIGHT  5

    A. Applicants' Motion Is Timely ............................................................. 6

    B. Applicants Have Significant, Protectable Interests ............................ 7

    C. Applicants' Interests Will Be Impaired by the Relief Sought ........... 10

    D. The Existing Parties Will Not Adequately Represent Applicants' Interests ................................................................................................. 11

II. ALTERNATIVELY, THIS COURT SHOULD GRANT APPLICANTS PERMISSIVE INTERVENTION .................................................................. 13

CONCLUSION .................................................................................................. 14

**TABLE OF AUTHORITIES**

**Cases**                                                                                                      **Page**

*Alaska v. Suburban Propane Gas Corp.*,
  123 F.3d 1317 (9th Cir. 1997) ................................................................................... 6

*Arakaki v. Cayetano*,
  324 F.3d 1078 (9th Cir. 2003) ................................................................................... 8

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ..................................................................................... 7, 10

*Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*,
  62 F.3d 1217 (9th Cir. 1995) ..................................................................................... 6

*Exch. Comm'n v. U.S. Realty & Improvement Co.*,
  310 U.S. 434 (1940) .................................................................................................. 14

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ..................................................................................... 7, 10, 12

*Fresno County v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) ..................................................................................... 13

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) .................................................................................. 10

*Kootenai Tribe of Idaho v. Veneman*,
  313 F.3d 1094 (9th Cir. 2002) ................................................................................... 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................. 10

*Military Toxics Project v. U.S. Envtl. Prot. Agency*,
  146 F.3d 948 (D.C. Cir. 1998) .................................................................................. 10

*Nw. Forest Res. Council v. Glickman*,
  82 F.3d 825 (9th Cir. 1996) ....................................................................................... 12

*S.E.C. v. Everest Management Corp.*,
  475 F.2d 1236 (2d Cir. 1972) .................................................................................... 12

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) ..................................................................................... 12, 13

*Sierra Club v. U.S. Envtl. Prot. Agency*,
   995 F.2d 1478 (9th Cir. 1993) .......................................................................... 6, 7, 10

*Smith v. Pangilinan*,
   651 F.2d 1320 (9th Cir. 1981) .......................................................................... 7

*Spangler v. Pasadena City Bd. of Educ.*,
   552 F.2d 1326 (9th Cir. 1977) .......................................................................... 14

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ............................................................................ 6, 7, 8, 12

*Trbovich v. United Mine Workers of Am.*,
   404 U.S. 528 (1972) .......................................................................................... 11

*United States ex rel. McGough v. Covington Techs. Co.*,
   967 F.2d 1391 (9th Cir. 1992) .......................................................................... 6

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) ............................................................................ 7, 8

*United States v. Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) ............................................................................ 6

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) .......................................................................... 7, 10, 12

**<u>Rules</u>**

Fed. R. Civ. P. 5 ....................................................................................................... 16

Fed. R. Civ. P. 24 ..................................................................................................... 10

Fed. R. Civ. P. 24(a) ................................................................................................ *passim*

Fed. R. Civ. P. 24(b) ................................................................................................ 3, 13, 14

Applicants in Intervention, Zachary Fort; Frederick Barton; BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms; and Firearms Policy Coalition, Inc. (collectively, "Applicants"), have a direct and personalized interest in the matter before this Court, including, *inter alia*, the continued legality of their, as well as their customers' and members' personal and business practices, and respectfully submit the following *Memorandum in Support of their Motion to Intervene* in the above-captioned case as Defendant-Intervenors.

## INTRODUCTION

The State of California, Giffords Law Center to Prevent Gun Violence ("Giffords Law Center"), and the individuals involved in this litigation (collectively, "Petitioners") seek to use the Administrative Procedure Act ("APA") to impose their policy preferences on the entire nation. The crux of Petitioners' argument is that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") has violated the APA by employing an objective test based on the actual manufacturing process involved to evaluate whether a "receiver blank," "frame blank," "partially-manufactured frame," "partially-manufactured receiver," "80% frame," "80% receiver," "unfinished frame," or "unfinished receiver" (collectively, "Non-Firearm Objects") is a "firearm" as defined by the Gun Control Act of 1968 ("GCA"). If Petitioners succeed, the ATF may be required to regulate materials of all kinds, including but not limited to Non-Firearm Objects, simply because individuals, through their own knowledge and skill, can manufacture them into firearms. The process of individually manufacturing firearms for personal use is legal in the United States—a point Petitioners do not dispute. Petitioners, however, argue it is too easy to manufacture a Non-Firearm Object into a firearm, attempting to substitute their own reasoning for that of the ATF.

The ATF's determination that Non-Firearm Objects do not constitute "firearms" as defined by the GCA, which Petitioners seek to overturn, has been relied upon by Applicants, as well as their customers, members, and numerous individuals across the nation.[1] Petitioners, however, rely

---

[1] Petitioners' contention that the ATF's "determinations are the product of an unexplained regulatory reversal beginning in 2006" is not accurate. *See* Complaint, ECF No. 1, ¶ 8. For example, a determination letter from January 2004 reads: "However, a solid AR-15 type receiver casting, without having the critical internal areas machined

entirely on their own interpretation of the GCA in an attempt to force ATF to revise its long-standing determination. Because Petitioners' interpretation of the GCA differs from the ATF's, and because Petitioners attempt to show alleged negative societal impacts of the ATF's position, Petitioners incorrectly assert they are entitled to the reversal of a well-established agency precedent. Petitioners, however, cannot substitute their judgment for that of the agency.

Applicants timely seek to intervene in this matter to defend their, their customers', and their members' interests that would be directly impacted should this Court grant Petitioners the relief they seek. Each Applicant would be directly and adversely impacted by a judgment in favor of the Petitioners on any of their claims for relief. Applicants include Zachary Fort and Frederick Barton could be exposed to criminal liability for, and would be prevented from engaging in, the constitutionally and statutorily protected conduct they currently engage in should this Court grant the Petitioners' requested relief. BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms ("80% Arms"), is a lawful producer and retailer of Non-Firearm Objects and would be irreparably harmed, including but not limited to suffering a prohibition or significant disruption of its business practices, should this Court rule in favor of Petitioners. Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization that owns and possesses Non-Firearm Objects;[2] has members who produce, buy, sell, possess, and own Non-Firearm Objects; and has members that have firearms individually manufactured for personal use from the same. FPC represents its members, including Zachary Fort, Frederick Barton, and 80% Arms, who would all be harmed should this Court rule in Petitioners' favor, but who are too numerous to conveniently intervene. Each party has an interest in protecting itself, its customers, and/or its members from a sudden reversal of long

---

(magazine well and central area for the fire control components) or crosspin holes drilled, would not constitute a 'firearm' as defined in the NFA." Letter from Sterling Nixon, Chief, Firearms Technology Branch, ATF, to Mark Malkowski, Continental Machine Tool Company, Inc. (Jan. 29, 2004). Machining has always been the predominant factor in the ATF's determinations. *See* Letter from Sterling Nixon, Chief, Firearms Technology Branch, ATF, to Justin Halford (July 1, 2003) ("Based on our examination of the unfinished receiver, it is our opinion that the subject sample *has received sufficient machining* to be classified as the frame or receiver for a 'firearm' . . . .") (emphasis added); Letter from Edward H. Cohen, Jr., Chief, Firearms Technology Branch, to Robert Bower, Jr., Philadelphia Ordnance, Inc. (May 26, 1992) ("The receiver is basically complete except that the interior cavity has *not been completely machined*.") (emphasis added).

[2] *See* Declaration of Brandon Combs ("Combs Decl.") at ¶¶ 9–10.

Page **2** of **17**
MEMORANDUM IN SUPP. OF APPLICANTS' MOTION TO INTERVENE | CASE NO. 3:20-cv-06761-EMC

accepted precedent that could create felons out of millions of Americans for exercising their natural, inalienable, Second Amendment protected rights and could prohibit them from engaging in conduct that is lawful across the United States.

Furthermore, Applicants' interests are not adequately represented by Defendants. While the ATF currently seeks to preserve its determination on behalf of the general public, it must balance competing statutory, regulatory, and resource concerns and may therefore compromise legally defensible positions Applicants seek to preserve, *inter alia*, their particular interests in the continued ownership, possession, production, purchase, and sale of Non-Firearm Objects. Moreover, Applicants seek to defend their reliance interests in the ATF's long-held precedent and preserve their rights as protected by the Second Amendment—a position that the ATF will not adequately represent.

Applicants meet all criteria for intervention as of right and request this Court grant their Motion to Intervene in this matter pursuant to Federal Rule of Civil Procedure 24(a). In the alternative, Applicants request this Court grant them permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

## DESCRIPTION OF APPLICANTS FOR INTERVENTION

Zachary Fort is a resident of the state of New Mexico. Mr. Fort is a law-abiding citizen who owns and possesses constitutionally protected arms for the lawful purpose of, *inter alia*, self-defense. Mr. Fort is not prohibited from purchasing firearms by any federal or state law. Mr. Fort has purchased at least one Non-Firearm Object in the past. Through Mr. Fort's own effort and expertise, he has undertaken the manufacturing processes necessary to convert a Non-Firearm Object into a "firearm" as defined by the GCA. Mr. Fort intends to continue to purchase Non-Firearm Objects so long as he can continue to do so without undergoing a federal background check and will continue to manufacture those items into firearms as defined by the GCA in the future. Should this Court rule in Petitioners' favor, Mr. Fort's current property and/or future ability to acquire similar property will be directly and adversely impacted, thereby harming Mr. Fort and many other similarly situated Americans across the country. Mr. Fort is a member of Firearms Policy Coalition, Inc.

Applicant Frederick Barton is a resident of the State of Colorado. Mr. Barton is a law-abiding citizen who owns and possesses constitutionally protected arms for the lawful purpose of, *inter alia*, self-defense. Mr. Barton is not prohibited from purchasing firearms by any federal or state law. Mr. Barton has purchased at least one Non-Firearm Object in the past and had it shipped directly to his residence, not to a Federal Firearms Licensee, and did not undergo a federal background check. Mr. Barton intends to continue to purchase Non-Firearm Objects so long as he can continue to have them shipped to his residence, not to a Federal Firearms Licensee, and continues to not be subjected to a federal background check. Mr. Barton intends to manufacture those items into "firearms" as defined by the GCA in the future. Should this Court rule in Petitioners' favor, Mr. Barton's current property and/or his future ability to acquire similar property will be directly and adversely impacted, thereby harming Mr. Barton and many other similarly situated Americans across the country. Mr. Barton is a member of Firearms Policy Coalition, Inc.

BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms, is a corporation incorporated under the laws of California with its principal place of business in Garden Grove, California. 80% Arms is a producer and seller of Non-Firearm Objects, manufacturing jigs, and other firearm manufacturing tools. 80% Arms sells its products directly to customers across the United States, including within the state of California. 80% Arms is explicitly implicated in this matter by Petitioners' Complaint. ECF 1, at ¶¶ 10 n.5; 47 n.32; 50 n.43; 52 n.44, n.45; 77 n.83, n.86; 121 n.114. 80% Arms represents itself and its customers, including but not limited to its right to sell and its customers' right to purchase Non-Firearm Objects. 80% Arms has expended and diverted resources in furtherance of the lawful production, sale, and distribution of its products and will be adversely and directly harmed if this Court were to grant Petitioners the relief they seek—including but not limited to the potential prohibition of 80% Arms' current business practices or significant increases in its regulatory compliance costs.

Firearms Policy Coalition, Inc. is a nonprofit organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California. FPC's purposes include defending and promoting the People's rights—especially but not limited to First and Second

Amendment protected rights—advancing individual liberty, and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members across the United States, including Applicants Fort, Barton, and 80% Arms. FPC represents itself as an owner and possessor of Non-Firearm Objects[3] and its members—who include the named Applicants, producers, retailers, purchasers, and possessors of Non-Firearm Objects; individuals who have manufactured firearms for individual use from Non-Firearm Objects; and individuals who wish to continue to purchase Non-Firearm Objects to manufacture them into firearms. FPC seeks intervention to represent these legally protected interests of itself and its members as FPC and its members will be adversely and directly harmed if this Court grants Petitioners the relief they seek.

## ARGUMENT

### I. APPLICANTS ARE ENTITLED TO INTERVENE AS OF RIGHT

Applicants meet, and indeed exceed, each element of this Circuit's test to evaluate intervention as of right, pursuant to Federal Rule of Civil Procedure 24(a). Applicants timely seek intervention in this matter prior to any substantive filings (aside from Petitioners' Complaint), prior to the lodging of the administrative record, and prior to any briefing schedule being set. Applicants have a legally protectable interest in the continued production, sale, purchase, possession, and individual manufacture of Non-Firearm Objects, which interest will be directly impacted should this Court rule for Petitioners.[4] Finally, Applicants' interests are not adequately represented by the ATF, which, as a federal agency, is obligated to consider a wide spectrum of views, many of which conflict with the particular interests of Applicants, their customers, and their members. Accordingly, this Court should grant Applicants intervention as of right in this matter.

Federal Rule of Civil Procedure 24(a) establishes the criteria for intervention as of right:

---

[3] *See* Combs Decl. at ¶¶ 9–10.

[4] The extent of Petitioners' argument in this matter will determine the extent of the potential adverse impacts on Applicants. At the very least, should this Court rule in favor of Petitioners, Applicants will be prohibited from engaging in the currently lawful practice of producing, selling, shipping, purchasing, and receiving Non-Firearm Objects without the use of a Federal Firearms Licensee or federal background check. That change will fundamentally and negatively impact Applicants' currently legal business and personal practices.

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a), (a)(2).

This Circuit employs a four-part test to evaluate intervention as of right: (1) the applicant's motion must be timely; (2) the applicant must assert an interest relating to the transaction or property that is the subject of the action; (3) the applicant must demonstrate that its interest may be impaired by the action; and (4) the interests of the applicant must not be adequately represented by the parties already involved in the action. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817–18 (9th Cir. 2001); *Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993). This intervention test is "broadly construed in favor of proposed intervenors." *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992); *see Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 ("In general, we construe Rule 24(a) liberally in favor of potential intervenors."); *United States v. Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) ("A liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.").

### A. Applicants' Motion Is Timely

The Ninth Circuit considers three factors when evaluating the timeliness of a motion to intervene: (1) the stage of the proceedings; (2) the prejudice to the other parties; and (3) the reason for and length of any delay. *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997); *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place For Us, Inc.*, 62 F.3d 1217, 1219 (9th Cir. 1995). Here, Petitioners filed their Complaint on September 29, 2020, and Defendants have yet to file an answer or other response. *See* ECF No. 1 (filed September 29, 2020); *see generally* Docket. The administrative record has not yet been lodged, no briefing schedule has been established, and no dispositive motions have been filed. Indeed, this case remains in its infancy. Accordingly, the existing parties will not be prejudiced by Applicants' intervention and this Motion is timely.

### B.     Applicants Have Significant, Protectable Interests

Applicants and their customers and members have significant, protectable interests in the production, sale, purchase, and possession of Non-Firearm Objects, all of which directly implicate constitutionally and statutorily protected property and/or activities. Applicants have a significant interest in ensuring they can continue to engage in personal and business activities as they do now, without involvement of Federal Firearms Licensees and federal background checks, which will, at a minimum, further restrict Applicants' ability to engage in lawful, constitutionally protected conduct and significantly increase the cost of producing and purchasing Non-Firearm Objects and manufacturing those items into "firearms" as defined by the GCA.

To intervene as a matter of right, an applicant must establish "a 'protectable interest' in the outcome of the litigation of sufficient magnitude to warrant inclusion in the action." *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981). Rule 24(a)(2) does not require a specific type of legal or equitable interest to support intervention. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818. "Rather, it is generally enough that [1] the interest is protectable under some law, and [2] that there is a relationship between the legally protected interest and the claims at issue." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d at 1484). A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Id.* (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)).

Various types of interests have supported intervention. For example, the Ninth Circuit has held that "[a]n applicant demonstrates a 'significantly protectable interest' when 'the injunctive relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on separate grounds by Wilderness Soc'y*, 630 F.3d at 1177–80). In addition, an economic interest that is "concrete and related to the underlying subject matter of the action" may support intervention under Rule 24(a)(2). *United States v. Alisal Water Corp.*, 370 F.3d 915, 919–20 (9th

Cir. 2004). "A non-speculative, economic interest may be sufficient to support a right of intervention." *Id.* (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1088 (9th Cir. 2003)).

The outcome of the instant litigation poses a direct and substantial threat to the constitutionally and statutorily protected property rights of Applicants, their customers, and their members. Applicants Fort, Barton, and FPC have purchased and would continue to purchase the Non-Firearm Objects that are at issue in this case. Applicant Fort has individually manufactured at least one Non-Firearm Object into a "firearm" as defined by the GCA for personal use using his own effort and expertise. Applicants Fort and Barton also intend to individually manufacture Non-Firearm Objects into "firearms" as defined by the GCA for personal use in the future, using their own effort and expertise. Applicant FPC has and would continue to purchase Non-Firearm Objects in furtherance of its mission and advocacy for the natural and individual right to keep and bear arms. Applicants' purchases were conducted without involvement of a Federal Firearms License and without need for a federal background check, which practice Applicants seek to continue. Because Petitioners seek to make illegal, or significantly restrict, Applicants Fort, Barton, and FPC's currently legal property, activities, and/or practices Applicants Fort, Barton, and FPC have a legally protectable interest sufficient to support intervention as of right under Rule 24(a). *See Sw. Ctr. for Biological Diversity*, 268 F.3d at 817–18 (9th Cir. 2001) (granting intervention based upon a determination that the proposed intervenor had a reliance interest that would be affected if the challenge agreement were invalidated).

Applicant 80% Arms is a producer and seller of the Non-Firearm Objects at issue in this matter. Applicant 80% Arms is explicitly implicated in this matter by Petitioners' Complaint. ECF 1, at ¶¶ 10 n.5; 47 n.32; 50 n.43; 52 n.44, n.45; 77 n.83, n.86; 121 n.114. Moreover, Applicant 80% Arms seeks to represent the interests of its customers, who are too numerous to conveniently intervene in this matter and who, due to the nature of the property in question, are chilled from coming forward to represent their own interests, due to the degrading and vitriolic abuse they may suffer for exercising their constitutionally protected rights—including, but not limited to,

harassment, SWATing, and doxing.[5]  Accordingly, Applicant 80% Arms asserts a legally protectable interest on behalf of its customers sufficient to support intervention as of right under Rule 24(a).

Applicant 80% Arms also has significant financial interests in this matter.  This lawsuit calls into question Applicant 80% Arms' continued ability to produce, sell, and distribute its products, as it currently does, across the United States.  If this Court were to grant Petitioners the relief they request, the outcome would, at minimum, expose Applicant 80% Arms to significant increases in its operation and compliance costs and, at worst, could put Applicant 80% Arms out of business.  Because this case attempts to make illegal Applicant 80% Arms' current business practices by, at the very least, restricting the production, sale, and delivery of Non-Firearm Objects, Applicant 80% Arms has a legally protectable interest sufficient to support intervention as of right under Rule 24(a).

Finally, Applicant FPC represents itself, and the interests of its members across the nation. Numerous FPC members are producers, sellers, purchasers, and possessors of Non-Firearm Objects, including Applicants Fort, Barton, and 80% Arms.  Because this case attempts to make illegal and/or severely restrict the currently lawful individual and business practices of Applicant FPC's members, Applicant FPC and its members have a legally protectable interest sufficient to support intervention as of right under Rule 24(a).

---

[5] *See* Fernando Alfonso III, *Lawyer Doxes 50 Journalists Who Doxed Gun Owners*, DAILY DOT (Mar. 2, 2020, 11:25 PM), https://www.dailydot.com/unclick/christopher-fountain-journal-news-gun-owners/ (last visited Nov. 2, 2020); John Cook, *Here Is a List of All the Assholes Handsome Law-Abiding Citizens Who Own Guns Some People in New York City* [sic], GAWKER (Jan. 8, 2013, 3:10 PM), https://gawker.com/5974190/here-is-a-list-of-all-the-assholes-who-own-guns-in-new-york-city (last visited Nov. 2, 2020); Editorial Staff, *Gawker Posts Full List Of All New York City Licensed Gun Owners*, THE WASHINGTON EXAMINER (Jan 9, 2013, 9:06 AM) https://www.washingtonexaminer.com/red-alert-politics/gawker-posts-full-list-of-all-ahole-new-york-city-licensed-gun-owners (last visited Nov. 2, 2020); K.C. Maas and Josh Levs, *Newspaper Sparks Outrage for Publishing Names, Addresses of Gun Permit Holders*, CNN (Dec. 27, 2012, 10:23 AM), https://www.cnn.com/2012/12/25/us/new-york-gun-permit-map/index.html (last visited Nov. 2, 2020); Perry Chiaramonte, *Gun Control Groups Accused of 'Swatting' Open-Carry Permit Holders, Putting Lives at Risk*, Fox News (Sept. 1, 2015, Updated Jan. 12, 2017), https://www.foxnews.com/us/gun-control-groups-accused-of-swatting-open-carry-permit-holders-putting-lives-at-risk (last visited Nov. 2, 2020);  Bob Owens, *Gun Control Group Tells Followers to "SWAT" Gun Owners*, Bearing Arms (Dec. 15, 2015, 3:24 PM), https://bearingarms.com/bob-o/2015/12/15/gun-control-groups-tells-followers-swat-gun-owners/ (last visited Nov. 2, 2020).

### C.     Applicants' Interests Will Be Impaired by the Relief Sought

Applicants', their customers', and their members' interests in the production, sale, purchase, and possession of Non-Firearm Objects will be significantly impaired if the Court grants Petitioners the relief they seek, as it would likely render illegal the otherwise entirely lawful and constitutionally protected property, activities, and/or business practices of Applicants, and of their customers and members.

The third element in the four-part test, impairment, "follows from the factors" related to Applicants' protectable interest. *See Sierra Club v. EPA*, 995 F.2d at 1486. The applicant's burden here is minimal. The Advisory Committee Notes for Rule 24 provide that, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Advisory Committee's Notes, Fed. R. Civ. P. 24 (1966); *see also Forest Conservation Council*, 66 F.3d at 1498 (quoting Advisory Committee's Notes). A prospective intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y*, 630 F.3d at 1178 (quoting *Lockyer*, 450 F.3d at 441). Accordingly, where the proceeding has the potential to subject the movant to governmental regulation or to significantly change how the movant does business, the prospective intervenor has a protectable interest that will be impaired by the relief sought. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003); *Military Toxics Project v. U.S. Envtl. Prot. Agency*, 146 F.3d 948, 954 (D.C. Cir. 1998).

In the present case, an invalidation of the ATF's determination concerning Non-Firearm Objects would significantly impair Applicants' interests. Applicants, their customers, and their members include individuals and businesses that produce, sell, purchase, and possess Non-Firearm Objects, all of whom would be directly and adversely affected by the invalidation of the ATF's longstanding rule. Depending on the extent of Petitioners' argument, this Court's ruling, and the ATF's decision, Applicants could be exposed to criminal liability based on continued performance of previously legal activities; could be forced to disclose the existence of certain constitutionally protected property to the federal government; and would be prohibited from engaging in otherwise

lawful and constitutionally protected activities, including but not limited to the direct purchase of Non-Firearm Objects and, potentially, the unregulated manufacture of those objects into firearms. Additionally, Applicant 80% Arms and those similarly situated would be forced to comply with substantial additional legal and regulatory burdens, not only causing significant financial stress but potentially putting them out of business.

Furthermore, because adjudication of this case may impact certain Non-Firearm Objects or firearms in Applicants', their customers', and their members' possession, Applicants' constitutionally protected right to keep and bear arms may be impaired. Applicants have produced, sold, purchased, and currently possess Non-Firearm Objects, and would continue to engage in those lawful practices in the future. In addition, Applicants, their customers, and their members have and possess individually manufactured firearms from Non-Firearm Objects for personal use. All of this has been in reliance on years of ATF precedent. If this Court were to reverse the ATF's determination regarding Non-Firearm Objects, depending on the extent of this Court's ruling and the ATF's decision, Applicants' currently constitutionally protected, lawful practices will be adversely affected, and their Second Amendment protected rights could be unconstitutionally impaired.

Thus, the third element for intervention as of right is met.

### D. The Existing Parties Will Not Adequately Represent Applicants' Interests

Applicants' interests are not adequately represented by the ATF, which does not speak directly for individual owners and purchasers of Non-Firearm Objects, for businesses engaged in the production or sale of the same, nor for organizations seeking to preserve and restore individuals' constitutionally protected rights—including the individual right to manufacture arms for the lawful purpose of, *inter alia*, self-defense.

The fourth prong of the test for intervention as of right is a showing that the proposed intervenors' interests will not be adequately protected by the existing parties. The burden under this prong is "minimal," that is, a party seeking to intervene need only show that representation of its interest "may be inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). The Ninth Circuit considers numerous factors to determine whether the applicant for

intervention's interests will be adequately represented by an existing party, including: "(1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996). Although the applicant for intervention bears the burden of demonstrating that the existing parties may not adequately represent its interest, it is sufficient for applicants to show that, because of the difference in their interests, it is likely that the parties will not advance the same arguments as would the proposed intervenor. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.

Here, because the ATF is litigating on behalf of the general public, it is obligated to consider a wide spectrum of views, many of which may conflict with the particular interests of Applicants and their customers. *See Forest Conservation Council*, 66 F.3d at 1494 (9th Cir. 1995), *abrogated on separate grounds by Wilderness Soc'y*, 630 F.3d at 1177–80 (the government will not adequately represent petitioners when petitioners seek to raise issues broader than the scope of the government's argument) (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994)). Representation is inadequate when a proposed intervenor would be damaged by the adjudication of its interest, but the agency being sued would not. *See S.E.C. v. Everest Management Corp.*, 475 F.2d 1236, 1239 (2d Cir. 1972) (S.E.C. inadequately represents an intervenor who seeks damages).

Applicants seek to protect and defend their, their customers', and their members' right to produce, sell, purchase, and possess Non-Firearm Objects; their Second Amendment protected rights; and their justifiable reliance on the ATF's long held legal position. By contrast, the ATF's interest in this suit is limited to defending the legitimacy of its rulemaking process and enforcement orders. Petitioners' arguments encapsulate issues and narratives outside the ATF's narrow focus on its classification of Non-Firearm Objects, which issues and narratives can and will be addressed by Applicants. Moreover, because the ATF must consider a wide spectrum of views, at least some of their interests in the suit will necessarily differ from Applicants' interest in continuing their currently lawful individual activities and business practices. When, like here, a party has private interests, as opposed to the government's public interests, this difference is sufficient to warrant

intervention. *Sierra Club v. Espy*, 18 F.3d at 1208; *Fresno County v. Andrus*, 622 F.2d 436, 438–39 (9th Cir. 1980).  Thus, Applicants' interests are not adequately represented by the existing parties.

Additionally, Defendants will not adequately represent or protect Applicants' economic interests.  As fully demonstrated above, the outcome of this litigation could have a substantial monetary effect on Applicant 80% Arms business practice, as well as the individual practices of other Applicants and their members.  The ATF does not share the same real and immediate economic interests of Applicants and has no duty, nor reason, to protect Applicants' economic interests. Applicants could be required to cease lawful practices, report the existence of constitutionally protected property to the federal government, or even lose their businesses, but the ATF only seeks to uphold its determination as to Non-Firearm Objects.  Accordingly, Applicants interests are not sufficiently represented.

Overall, Applicants more than satisfy the Ninth Circuit's four-part test and this Court should grant Applicants intervention as of right pursuant to Rule 24(a).

## II. ALTERNATIVELY, THIS COURT SHOULD GRANT APPLICANTS PERMISSIVE INTERVENTION

Federal Rule of Civil Procedure 24(b) governs permissive intervention and provides:

> On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact. . . .  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b)(1), (b)(3).  Under Rule 24(b), the possibility of impairment of a significant protectable interest is not required.  Instead, all that is necessary for permissive intervention is that intervenor's "claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b); *see also Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110–11 (9th Cir. 2002) (permissive intervention was granted even though intervenors did not have a direct interest in the government rulemaking because the intervenor had an asserted interest in the use and enjoyment of the subject of the rule).  Rule 24(b) "plainly dispenses with any requirement that

the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *Sec. & Exch. Comm'n v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940).

In this case, Applicants have defenses to the claims asserted by Petitioners and to the relief being sought, which is a challenge to the ATF's determination that Non-Firearm Objects are not firearms pursuant to the GCA, upon which Applicants, their customers, and their members have relied.

Rule 24(b) also requires the court to consider whether permissive intervention would cause undue delay or would prejudice adjudication of the rights of the original parties. *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). In this case, there would be neither prejudice nor undue delay. The case is still in its infancy, as Defendants have yet to file an answer or otherwise respond, the only material pleading is the Complaint, and no record has been lodged. Applicants have demonstrated their interests, a legal position they seek to advance, a probable relation to the case, that their interests are not adequately represented, and that intervention will not burden other parties. *See supra*, Argument, Section I; *see also Spangler*, 552 F.2d at 1329 (setting forth relevant factors in granting permissive intervention). Thus, at a minimum, this Court should grant Applicants permissive intervention because Applicants' defenses to the claims asserted by Petitioners raise common questions of fact and law.

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that this Court grant them intervention as of right pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, Applicants requests this Court exercise its discretion and grant permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

1  DATED this 24th day of November, 2020.

2                                                            Respectfully Submitted,

4                                                            /s/ George M. Lee
                                                             George M. Lee [Cal. SBN 172982]
5                                                            **SEILER EPSTEIN LLP**
                                                             275 Battery Street, Suite 1600
6                                                            San Francisco, CA 94111
                                                             Tel. (415) 979-0500
7                                                            Fax (415) 979-0511
                                                             gml@seilerepstein.com

9                                                            Cody J. Wisniewski*
                                                             *Pro Hac Vice application forthcoming
10                                                           **MOUNTAIN STATES LEGAL FOUNDATION**
                                                             2596 S. Lewis Way
11                                                           Lakewood, CO 80227
12                                                           Tel. (303) 292-2021
                                                             Fax (303) 292-1980
13                                                           cody@mslegal.org

14                                                           *Attorneys for Applicants in Intervention*