GIBSON, DUNN & CRUTCHER LLP
AVI WEITZMAN, *pro hac vice*
aweitzman@gibsondunn.com
LEE R. CRAIN, *pro hac vice*
LIESEL SCHAPIRA, *pro hac vice*
KAYLIE SPRINGER, *pro hac vice*
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
VIVEK GOPALAN, SBN 296156
VGopalan@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 374-8306

*Attorneys for Plaintiffs Bryan Muehlberger,
Frank Blackwell, and Giffords Law Center to
Prevent Gun Violence*

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General
R. MATTHEW WISE, SBN 238485
Matthew.Wise@doj.ca.gov
Deputy Attorney General

1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone:  (916) 210-6046
Facsimile:  (916) 324-8835

*Attorneys for Plaintiff State of California, by
and through Attorney General Xavier Becerra*

[*Additional Counsel Listed on Next Page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES et al., <br><br> Defendants. | CIVIL CASE NO.:  3:20-CV-06761-EMC <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; AND FIREARMS POLICY COALITION, INC.'S MOTION TO INTERVENE** <br><br> Hon. Edward M. Chen <br><br> Hearing Date:  January 14, 2021 <br> Hearing Time:  1:30 pm PT |

1   Additional Counsel

2   GIFFORDS LAW CENTER TO
3   PREVENT GUN VIOLENCE
    HANNAH SHEARER, SBN 292710
4   268 Bush St. # 555
    San Francisco, CA 94104
5   Telephone: (415) 433-2062
    Facsimile: (415) 433-3357
6
7   J. ADAM SKAGGS, *pro hac vice*
    DAVID M. PUCINO, *pro hac vice*
8   223 West 38th St. # 90
    New York, NY 10018
9   Telephone: (917) 680-3473

10  *Attorneys for Plaintiffs Bryan Muehlberger,*
11  *Frank Blackwell, and Giffords Law Center to*
    *Prevent Gun Violence*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.  PRELIMINARY STATEMENT.................................................................................... 1

II.  BACKGROUND ..................................................................................................... 4

III.  ARGUMENT .......................................................................................................... 6

    A.  Applicants Have Not Established the Requirements for Intervention As of
        Right............................................................................................................... 6

        1.  Applicants Have Failed to Demonstrate Inadequacy of Representation........... 7

        2.  Applicants Lack a Significant Protectable Interest in This Litigation
            that May Be Practically Impaired. ................................................................ 10

    B.  The Court Should Deny Permissive Intervention. ...................................... 15

        1.  Intervention Will Unduly Delay and Prejudice the Adjudication of the
            Existing Parties' Rights................................................................................ 15

        2.  All of the Discretionary Factors the Court May Consider Support
            Denying Permissive Intervention................................................................. 17

    C.  The Government's Suggestion that BlackHawk Is a Necessary Party Is Plainly
        Incorrect. ...................................................................................................... 20

IV.  CONCLUSION...................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alto v. Black,*
    738 F.3d 1111 (9th Cir. 2013)........................................................................................21

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003)................................................................7, 8, 9, 10, 15

*Bush v. Viterna,*
    740 F.2d 350 (5th Cir. 1984)........................................................................................19

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Comty. v. Cal.,*
    547 F.3d 962 (9th Cir. 2008).........................................................................................21

*Cahto Tribe of Laytonville Rancheria v. Risling,*
    2010 WL 4721060 (E.D. Cal. Nov. 12, 2010) ........................................................9, 10

*Cal. v. Wheeler,*
    2020 WL 4915601 (N.D. Cal. Aug. 13, 2020)...................................................2, 9, 19

*City of Syracuse, et al., v. Bureau of Alcohol, Tobacco, Firearms, and*
    *Explosives, et al.,*
    20-cv-6885-GHW (Nov. 23, 2020).................................................................................4

*Ctr. for Biological Diversity v. Lubchenco,*
    2010 WL 1038398 (N.D. Cal. Mar. 19, 2010) ............................................................16

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) .....................................................................................................12

*Estate of Dixon v. Commissioner,*
    666 F.2d 386 (9th Cir. 1982).......................................................................................17

*Donaldson v. United States,*
    400 U.S. 517 (1971) .....................................................................................................11

*Donnelly v. Glickman,*
    159 F.3d 405 (9th Cir. 1998).....................................................................10, 11, 15, 17

*Drakes Bay Oyster Co. v. Salazar,*
    2013 WL 451813 (N.D. Cal. Feb. 4, 2013) ................................................................18

*E. Bay Sanctuary Covenant v. Trump,*
    950 F.3d 1242 (9th Cir. 2020).......................................................................................3

ii

1
2

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

3

*E&B Nat. Res. Mgmt. Corp. v. Cty. of Alameda,*
　　2019 WL 5697912 (N.D. Cal. Nov. 4, 2019) ...............................................................19

4

5

*Eashoo v. Iovate Health Scis. U.S.A., Inc.,*
　　2015 WL 12696036 (C.D. Cal. May 26, 2015) .............................................................15

6

*Freedom from Religion Found., Inc. v. Geithner,*
　　644 F.3d 836 (9th Cir. 2011).........................................................................................8

7

8

*Greene v. United States,*
　　996 F.2d 973 (9th Cir. 1993).......................................................................................11

9

10

*Guardians v. U.S. Fish & Wildlife Serv.,*
　　2018 WL 1023104 (D. Mont. Feb. 22, 2018) ..............................................................20

11

12

*Jackson v. City & County of San Francisco,*
　　746 F.3d 953 (9th Cir. 2014).......................................................................................12

13

14

*Karuk Tribe of Cal. v. U.S. Forest Serv.,*
　　2005 WL 8177402 (N.D. Cal. June 13, 2005) .............................................................17

15

*Kootenai Tribe of Idaho v. Veneman,*
　　313 F.3d 1094 (9th Cir. 2002).....................................................................................18

16

17

*L.A. Taxi Coop., Inc. v. Uber Techs., Inc.,*
　　2015 WL 5071949 (N.D. Cal. Aug. 27, 2015) .............................................................17

18

*Lilith Games (Shanghai) Co. v. uCool, Inc.,*
　　2015 WL 4914694 (N.D. Cal. Aug. 17, 2015) .........................................................15, 17

19

20

*Makah Indian Tribe v. Verity,*
　　910 F.2d 555 (9th Cir. 1990).......................................................................................21

21

*Med. Advocates for Healthy Air v. U.S. E.P.A.,*
　　2011 WL 4834464 (N.D. Cal. Oct. 12, 2011)...........................................................13, 14

22

23

*Nat'l Urban League v. Ross,*
　　2020 WL 6290353 (N.D. Cal. Oct. 26, 2020) .............................................................19

24

25

*New York v. U.S. Dep't of Educ.,*
　　2020 WL 3962110 (S.D.N.Y. July 10, 2020) ..............................................................16

26

*O'Shea v. 24 Hour Fitness USA, Inc.,*
　　2018 WL 10560899 (N.D. Cal. Mar. 21, 2018)........................................................11, 12

27

28

*Opperman v. PATH, Inc.,*
　　2015 WL 12941889 (N.D. Cal. Jan. 5, 2015) ..............................................................18

1

**TABLE OF AUTHORITIES** (*continued*)

2

Page(s)

3

*Pena v. Lindley*,
　898 F.3d 969 (9th Cir. 2018) ...............................................................................................12, 18

4

5

*Salt River Project Agr. Imp. & Power Dist. v. Lee*,
　672 F.3d 1176 (9th Cir. 2012) ....................................................................................................21

6

*Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*,
　310 U.S. 434 (1940) ...................................................................................................................18

7

8

*Seminole Nation of Oklahoma v. Norton*,
　206 F.R.D. 1 (D.D.C. 2001) .......................................................................................................10

9

*Silvester v. Harris*,
　843 F.3d 816 (9th Cir. 2016) ......................................................................................................12

10

11

*Spangler v. Pasadena City Bd. of Ed.*,
　552 F.2d 1326 (9th Cir. 1977) ....................................................................................................17

12

13

*Sw. Ctr. for Biological Diversity v. Berg*,
　268 F.3d 810 (9th Cir. 2001) ...................................................................................................7, 13

14

*Sw. Ctr. for Biological Diversity v. Babbitt*,
　150 F.3d 1152 (9th Cir. 1998) ....................................................................................................21

15

16

*UMG Recordings, Inc. v. Bertelsmann AG*,
　222 F.R.D. 408 (N.D. Cal. 2004) ...........................................................................................15, 17

17

18

*United States v. $129,374 in U.S. Currency*,
　769 F.2d 583 (9th Cir. 1985) ......................................................................................................15

19

20

*United States v. Alisal Water Corp.*,
　370 F.3d 915 (9th Cir. 2004) ...................................................................................................7, 13

21

*United States v. Ballantyne*,
　2013 WL 4716234 (S.D. Cal. Sept. 3, 2013) ..............................................................................15

22

23

*United States v. City of L.A.*,
　288 F.3d 391 (9th Cir. 2002) .......................................................................................................7

24

25

*United States v. Marzzarella*,
　614 F.3d 85 (3d Cir. 2010) .....................................................................................................12, 18

26

*Ward v. Apple Inc.*,
　791 F.3d 1041 (9th Cir. 2015) ....................................................................................................20

27

28

**TABLE OF AUTHORITIES** (*continued*)

Page(s)

**Statutes and Public Laws**

5 U.S.C. § 706 ..............................................................................................................5, 13

18 U.S.C. § 921 ..............................................................................................................1, 5

Pub. L. 90-618 (1968) .........................................................................................................4


**Rules and Regulations**

27 C.F.R. § 478.11 ..............................................................................................................1

28 C.F.R. § 0.130 ................................................................................................................5

Fed. R. Civ. P. 19 ........................................................................................................20, 21

Fed. R. Civ. P. 24 ........................................................................................2, 4, 6, 7, 11, 15

The State of California, Bryan Muehlberger, Frank Blackwell, and Giffords Law Center to Prevent Gun Violence ("Plaintiffs") respectfully submit this Memorandum of Law in Opposition to the Motion to Intervene submitted by Zachary Fort, Frederick Barton, BlackHawk Manufacturing Group, Inc. ("BlackHawk"), and the Firearms Policy Coalition, Inc. ("FPC") (together, the "Applicants").

## I.        PRELIMINARY STATEMENT

This case is about a series of actions taken by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") that are contrary to the Gun Control Act of 1968 ("GCA") and are arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). Specifically, ATF has put countless lives in peril by ruling that *the* key component of a firearm—called a frame or receiver[1]—can be sold without requiring the purchaser to undergo a background check and without affixing a traceable serial number as long as that critical firearm piece is "not fully machined." ATF allows this despite knowing that it takes mere minutes and nothing more than common household tools to convert these frames and receivers into fully operational firearms. ATF's decisions disregard the plain meaning of the GCA, which expressly defines a "firearm" as "the frame or receiver of any [] weapon" which is "designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). As a result, so-called "ghost guns"—firearms made from "unfinished" or "80 percent" frames or receivers lacking serial numbers and purchased without background checks—have proliferated throughout the country, particularly in the State of California, and have forever altered the lives of so many Americans, including Plaintiffs Bryan Muehlberger and Frank Blackwell and their families.

Now, a group of two individuals, a private company, and a nonprofit gun rights advocacy organization seek leave to intervene in this action, to defend the federal government against an APA challenge, and—despite characterizing the central components at issue here as "Non-Firearm Objects"—to make this case about something else entirely: the Second Amendment to the Constitution and the right to keep and bear arms. *See* Memorandum in Support of Zachary Fort; Frederick Barton;

---

[1]  *See* 27 C.F.R. § 478.11 (defining "frame or receiver" as the "part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel"). This Motion uses the terms "receiver" and "frame," and the terms "80 percent receiver" and "80 percent frame," interchangeably unless otherwise noted.

BlackHawk; and FPC's Motion to Intervene, ECF No. 24-1 ("Mot. to Intervene") at 2, 3, 4, 7, 8, 10, 11, 13.  And they claim that, despite the government having already filed a motion to dismiss in this action, somehow the government cannot adequately defend its interpretation of the GCA and its determinations with respect to the 80 percent receivers and frames at issue.

That is plainly wrong.  Instead, intervention would result in a sideshow and waste of this Court's time.  This is an APA case, where the critical questions—whether ATF has construed properly the GCA and whether it has acted arbitrarily and capriciously—can be and regularly are adequately defended by the government without the help of industry and other third parties.  This is not a Second Amendment case, and Applicants' attempt to contort this narrow action—one for which discovery should be minimal and the legal questions discrete—into an unprecedented constitutional dilemma should be rejected.  At best, Applicants assert generalized policy interests in this case, but they fail to show that the U.S. Department of Justice cannot adequately defend ATF's final agency actions.  As numerous courts in this district have held, such a generalized interest is hardly sufficient to justify intervention—particularly where a party's policy preferences can be vindicated through the submission of ordinary-course amicus briefs.  *See, e.g.*, *Cal. v. Wheeler,* 2020 WL 4915601, at *1 (N.D. Cal. Aug. 13, 2020) ("The moving parties will be permitted to contribute to that process by submitting amicus briefs").

Applicants have not met the requirements for intervention as of right under Federal Rule of Civil Procedure ("FRCP") 24(a)(2), nor have they made a sufficient showing for permissive intervention under Rule 24(b).  The Motion to Intervene should be denied for three reasons:

*First,* Applicants fail to make the requisite "compelling showing" required to rebut the presumption of adequate representation, thus rendering intervention as of right inappropriate.  They utterly fail to show (as they must to warrant intervention) that the federal government will not "vigorously defend" against the claims in large part because the government has already done just that.  Indeed, Defendants' recent full-throated motion to dismiss this case in full underscores its intent and ability to defend the legality of the ATF's actions concerning ghost guns.  Applicants' intervention would not aid the defense, because any germane positions they would or even could advance are adequately represented already.

***Second,*** Applicants' stated "legally protectable interests" are not at risk, and many of their purported interests are not even implicated in this case. Contrary to Applicants' assertions, Plaintiffs' requested relief <u>would not</u> automatically require ATF to hold that the production, sale, possession, and individual manufacture of frames or receivers are categorically illegal. The relief requested is simply to set aside prior ATF determinations and for ATF to revisit its analysis, applying the GCA as it is written and considering the relevant factors as ATF must. *See E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1283 (9th Cir. 2020) (in an APA case, "the ordinary result is that the [agency] rules are vacated"). Similarly, the individual Applicants' invocations of their purported Second Amendment rights, Mot. to Intervene at 8, 10-11; ECF. No. 24-3 ("Barton Decl.") ¶ 7; ECF. No. 24-5 ("Combs Decl.") ¶ 5; ECF. 24-2 ("Fort Decl.") ¶ 2, are a red herring. The Second Amendment is not implicated here, where any ruling will not impact anyone's ability to keep and bear arms. If Plaintiffs prevail in full and ATF applies the GCA as written, Applicants will, at most, simply have to undergo a background check before purchasing additional 80 percent receivers and frames, and those will have to be serialized as federal law has required for over half a century without implicating the Second Amendment. Plaintiffs' prospective relief simply does not threaten to "expose[] [Applicants] to criminal liability" or to render their property "illegal." Mot. to Intervene at 2, 10. Similarly, BlackHawk's invoked "significant increase[] in its operation and compliance costs," Mot. to Intervene at 9, is overblown given that ATF determinations as to BlackHawk's products fall outside the relevant limitations period, *see* Complaint, ECF No. 1 ("Compl.") ¶ 77, n.83, and that as a consequence Plaintiffs have not challenged those specific determinations. Moreover, a favorable outcome for Plaintiffs will, at most, require BlackHawk to serialize its products—something its website claims it already does for many products today.[2]

***Third,*** the proposed intervention will unduly delay and prejudice the adjudication of Plaintiffs' narrow APA claims, militating against permissive intervention as well. Applicants are not seeking to

---

[2] *See* Ex. A, *Custom CA Compliant Serialized 80% Lowers*, 80% Arms, https://www.80percentarms.com/products/custom-ca-compliant-serialized-80-lowers/ (last visited Dec. 14, 2020) (noting that "[w]e now offer you the ability to order your 80% lower receiver with a custom ATF compliant serial number engraved into it" and touting that "[w]e use a powerful laser to precision engrave text to a depth greater than 0.003 inches as required by ATF's specification for serial number marking"); Ex. B, *AR-15 Lower Engraving*, 80% Arms, https://www.80percentarms.com/ar-15-engraving/ (last visited Dec. 8, 2020).

litigate the discrete legal questions presented based on the narrow administrative record that will be produced.[3]  Instead, they seek to expand this case to address their unrelated constitutional claims.  Nor would intervention contribute to the development of the factual issues in this case, which again, will be resolved primarily on the administrative record.  Any factual insights Applicants could offer are properly the subject of amicus briefs, not party participation.

Applicants do not remotely satisfy the test for as of right or permissive intervention under FRCP 24(a)(2) and 24(b).  They wish to change fundamentally the course and scope of this narrow case—a lawsuit that asserts discrete questions of administrative law.  The Motion to Intervene should be denied.

## II.     BACKGROUND

In 1968 Congress enacted the GCA with a stated purpose of providing "support to Federal, State, and local law enforcement officials in their fight against crime and violence."  Gun Control Act, Pub. L. 90-618 (1968).  The GCA was passed against the backdrop of multiple tragic assassinations— including the death of John F. Kennedy with a rifle ordered through the mail.  Compl. ¶ 30.  The GCA aims to prohibit certain individuals from purchasing "firearms," including minors, individuals with disqualifying criminal convictions, people with records of domestic violence, those suffering from serious mental illness, or those who are addicted to drugs.  *Id.* ¶ 31.  In order to effectuate those prohibitions, the GCA requires that "firearm" purchasers pass a federal background check prior to purchase and that "firearms" include an identifying serial number, which facilitates record-keeping and law enforcement's ability to investigate crimes.  *Id.* ¶¶ 31, 24.  By requiring a background check, the GCA prohibits minors, those with disqualifying criminal convictions, or those suffering serious mental illnesses from buying guns.  *Id.* ¶¶ 31-32.  Similarly, by requiring a serial number, the GCA permits federal, state, and local law enforcement officials to trace a firearm recovered at a crime scene back to its original retail sale, enhancing criminal investigations.  *Id.* ¶¶ 37-40.

Critically, to effectuate its twin goals of preventing prohibited purchasers from obtaining guns and aiding law enforcement fighting crime and violence, the GCA defined regulated "firearms" to include more than just fully operable weapons.  *Id.* ¶¶ 33-34.  The GCA's definition also includes the

---

[3]   The administrative record produced in an analogous case being litigated in the U.S. District Court for the Southern District of New York is approximately 800 pages.  *See* Dkt. 54, *City of Syracuse, et al., v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, et al.*, 20-cv-6885-GHW (Nov. 23, 2020).

core *building blocks* of firearms—frames for pistols, and receivers for rifles—so long as those core components are "designed to be or may be readily converted" into operable weapons.  18 U.S.C. § 921(a)(3).  ATF was delegated the responsibility to enforce the provisions of the GCA.  Compl. ¶ 35; 28 C.F.R. § 0.130(a)(1).  Among other final determinations, ATF issues "Classification Letters" determining whether particular types of frames and receivers qualify under the GCA as firearms. Compl. ¶ 36.  ATF also publishes formal "Rulings" in order "to promote uniform understanding and application of the laws and regulations it administers"[4] and provides information related to compliance with the GCA on its website.[5]  *Id.*  Early on, ATF concluded that frames and receivers qualified as "firearms" if they required some degree of machining to complete but could be converted into fireable weapons in under 75 minutes or in a similarly "minimal amount of time." *Id*. ¶¶ 63-65.  But ATF subsequently changed its approach, ultimately determining that 80 percent receivers and frames are not "firearms" under the GCA, thereby permitting them to be sold without serial numbers or background checks, and allowing the guns they are used to build (known as "ghost guns") to proliferate across the country.  *Id*. ¶¶ 66-70.

Plaintiffs filed this action on September 29, 2020, asserting that ATF's decisions relating to ghost guns violate the APA because they are contrary to the GCA and arbitrary and capricious. Plaintiffs do *not* seek to set aside ATF Classification Letters for any products manufactured by putative intervenor BlackHawk, as those letters fall outside the applicable statute of limitations.  *See* Compl. ¶ 77, n.83 (noting the July 15, 2013 date of the Classification Letter pertaining to a BlackHawk product).  Plaintiffs seek an order declaring certain Classification Letters relating to *a different* ghost gun manufacturer, Polymer80, and decisions posted on ATF's website relating to ghost guns "null, void, and with no force and effect" and "arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A)," and enjoining ATF from "implementing and enforcing" those Classification Letters and that website guidance.  Plaintiffs also seek an order compelling ATF to "conduct affirmative rulemaking" regarding 80 percent receivers and frames in accordance with the GCA, "[a]warding

---

[4]  *Rulings*, ATF.gov, https://www.atf.gov/rules-and-regulations/rulings (last visited Dec. 14, 2020).

[5]  *See, e.g.*, *Receiver Blanks*, ATF.gov, https://www.atf.gov/qa-category/receiver-blanks (last visited Dec. 8, 2020).

Plaintiffs their reasonable costs" in bringing this claim, and "[g]ranting such other and further relief as this Court deems just and proper."  Compl. at 56 (Prayer for Relief).

On November 24, 2020, Applicants filed the instant Motion to Intervene.  Applicants include two individuals, each described as a "law-abiding citizen who owns and possesses constitutionally protected arms," Mot. to Intervene at 3-4; one private company that manufactures and sells frames and receivers directly to consumers; and a nonprofit organization with the core mission of "defending and promoting the People's rights—especially but not limited to First and Second Amendment protected rights," *id.* at 4-5.  In their motion, Applicants contend that ATF's "well-established agency precedent" regarding receivers and frames should not be reversed, and they are entitled to intervene in this action in order to defend against a potential change in ATF policy.  *Id.* at 1-2.  Applicants also argue that their protected interest "in the production, sale, purchase, and possession of [frames and receivers]" will be impaired if they are not able to intervene here.  *Id.* at 7, 10.  Applicants further allege that the federal Defendants will not adequately represent their interest in maintaining current ATF policy regarding frames and receivers.  *Id.* at 11-13.

Less than a week after Applicants sought to intervene, Defendants moved to dismiss in full.  In their motion, Defendants argued that Plaintiffs' action should be dismissed for a variety of procedural and merit-based reasons, including that each Plaintiff purportedly lacks standing to bring suit and certain claims are outside the six-year statute of limitations, and that ATF's determinations such as the Polymer80 Classification Letters are consistent with the GCA and are not arbitrary and capricious.  Just as Applicants argued in their Motion to Intervene, Defendants too claimed that ATF's policy regarding frames and receivers reflects a "longstanding position" that "comports with the text of the [GCA]."  Defendants' Notice of Motion and Motion to Dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief; [Proposed] Order, ECF No. 29 ("Mot. to Dismiss") at 2.

### III.    ARGUMENT

**A.    Applicants Have Not Established the Requirements for Intervention As of Right.**

Federal Rule of Civil Procedure 24(a)(2) permits intervention as of right to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its

interest, unless existing parties adequately represent that interest." FRCP 24(a)(2). The Ninth Circuit applies a four-part test under Rule 24(a): "(1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (citation omitted). "Each of these four requirements must be satisfied to support a right to intervene." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citation omitted). Here, because Applicants—the party that bears burden, *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)—have failed to satisfy the elements of that test, the intervention motion should be denied.

### 1. Applicants Have Failed to Demonstrate Inadequacy of Representation.

Applicants have not shown that Defendants inadequately represent their interests in this litigation, and that alone renders as of right intervention inappropriate. In evaluating adequacy of representation, the Court considers: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki*, 324 F.3d at 1086. Here, where Defendants have already moved to dismiss all of Plaintiffs' claims, Applicants cannot satisfy this test, on which they bear the burden. *United States v. City of L.A.*, 288 F.3d 391, 398 (9th Cir. 2002). Each of the arguments they offer—including their specious invocation of the Second Amendment—falls squarely within Defendants' already-pending motion to dismiss, making clear that Defendants are wholly able to protect any interest Applicants have in this action. *See* Mot. to Dismiss at 20-21; Mot. to Intervene at 11-12.

The "most important factor" in evaluating adequacy of representation is "how the interest compares with the interests of existing parties." *Arakaki*, 324 F.3d at 1086. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a

*compelling showing* should be required to demonstrate inadequate representation." *Id*. (emphasis added) (internal citations omitted).

Here, the presumption of adequate representation applies, and Applicants have not overcome it. Applicants clearly "share the same ultimate objective" as Defendants—dismissing Plaintiffs' claims and upholding ATF's classification decisions regarding 80 percent receivers and frames. Defendants' motion to dismiss makes that plain. *See* Mot. to Dismiss at 1 ("[Plaintiffs'] claims should be dismissed."). Applicants argue that "ATF's interest in this suit is limited to defending the legitimacy of its rulemaking process and enforcement orders" and that "Petitioners' arguments encapsulate issues and narratives outside the ATF's narrow focus," such as this lawsuit's alleged relationship to Applicants' Second Amendment rights. Mot. to Intervene at 11-12. But Defendants' Motion to Dismiss belies that claim. *See* Mot. to Dismiss at 20-21 (addressing Second Amendment interests implicated by regulations pursuant to the GCA). In any event, differences in litigation strategy do not justify intervention. *See Arakaki*, 324 F.3d at 1086 ("Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention.").

Nor have Applicants shown that Defendants are not "capable and willing to make" the same arguments that Applicants would make if their Motion to Intervene were granted. *Id*. To the contrary, Defendants have *already* made many of the same arguments that Applicants plan to advance if the Court grants their Motion to Intervene in this litigation. *See* Mot. to Dismiss (arguing Plaintiffs cannot establish standing for their claims, the statute of limitations bars Plaintiffs' claims, and Plaintiffs' APA claims cannot succeed); Proposed Answer, ECF 24-6 ("Answer") at 24 (arguing "Petitioners lack standing to assert the causes of action contained in their Complaint," "Petitioners' claims are barred by the applicable statute of limitations," and "Petitioners' Complaint fails to state a claim upon which relief can be granted"). Consequently, the presumption of adequate representation applies, and Applicants must make a "compelling showing" to overcome it. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011) (where proposed intervenors "presented no evidence that would lead us to doubt that Defendants' ultimate objective is to uphold the challenged" government action, presumption of adequate representation applies and can be rebutted only by a compelling showing).

Applicants have failed to make the "compelling showing" required to rebut the presumption of adequate representation. *Arakaki*, 324 F.3d at 1086. Applicants conclusorily assert that they "seek to protect" their "justifiable reliance on the ATF's long held legal position," but Applicants also concede that Defendants have a clear "interest in this suit" in "defending the legitimacy of its rulemaking process and enforcement orders." Mot. to Intervene at 12. In other words, Applicants *admit* that both they and Defendants seek to defend the legitimacy of the very decisions on which Applicants purport to rely. Applicants also assert that Defendants cannot adequately represent them "because ATF must consider a wide spectrum of views" and "at least some of [the government's] interests in the suit will necessarily differ from Applicants' interest in continuing their . . . individual activities and business practices." *Id*. But the government must *always* "consider a wide spectrum of views" in defending itself in litigation. Were that "spectrum" relevant here, intervention in APA actions would be granted as a matter of course. *But see*, *e.g.*, *Wheeler*, 2020 WL 4915601, at *1; *Cahto Tribe of Laytonville Rancheria v. Risling*, 2010 WL 4721060, at *2 (E.D. Cal. Nov. 12, 2010), *aff'd in part, appeal dismissed in part sub nom. Cahto Tribe of Laytonville Rancheria v. Dutschke*, 524 F. App'x 362 (9th Cir. 2013).

In fact, courts in this Circuit have regularly found that, where, as here, Plaintiffs' claims involve violations of the APA, "there is no reason to conclude the moving parties' interests will be inadequately represented." *Wheeler*, 2020 WL 4915601, at *1; *see also Cahto Tribe*, 2010 WL 4721060, at *2. In *Wheeler*, for example, various states filed suit against the United States Environmental Protection Agency ("EPA") and others, seeking judicial review under the APA of a new rule promulgated by the EPA defining "waters of the United States." 2020 WL 4915601, at *1. Two motions to intervene were filed: one by individuals who owned real property allegedly impacted by the at-issue EPA definition of "waters of the United States," and one by businesses asserting that the definition impacted their "operations and economic interests." *Id*. The Court denied both motions to intervene. *Id*. at *2. Although the Court determined that the moving parties "likely have significantly protectable interests at stake" and that "a ruling in plaintiffs' favor likely would impair the moving parties' ability to protect their interests[,]" the Court concluded that the applicants "have not shown their interests will be inadequately represented":

9

> [T]here is no reason to conclude the moving parties' interests will be inadequately represented. The matter will be adjudicated on the administrative record. Absent an exception to the general rule, there will be no discovery. This is not a situation where there will be protracted litigation, with numerous opportunities to make differing strategic decisions that shape the ultimate course of the case or the arguments and evidence that will be available. Rather, the case presumably will be decided on cross-motions for "summary judgment," which likely will merely amplify the arguments presented in the preliminary injunction proceedings, but without the additional issue of "irreparable harm."

*Id*. at *1-2. Similarly, in *Cahto Tribe of Laytonville Rancheria v. Risling*, the Court denied a motion to intervene in an APA action because "judicial review is limited to the administrative record, and 'the only potential for [inadequate representation] is the risk that the [government defendants] will not vigorously defend [themselves] against Plaintiff's APA claim.'" 2010 WL 4721060, at *4 (quoting *Seminole Nation of Oklahoma v. Norton*, 206 F.R.D. 1, 10 (D.D.C. 2001)); *see also Norton*, 206 F.R.D. at 10 ("While the Court recognizes a potential interest of the [proposed intervenors] in the present litigation, in the narrow confines of the APA, the interests of the [proposed intervenors] are adequately represented by the Department of the Interior at this stage in the litigation.").

Here, there is little to no risk that Defendants will not "vigorously defend" themselves against Plaintiffs' APA claims. Defendants have already done so, and if their Motion to Dismiss is denied, the parties will file cross-motions for summary judgment, giving the government another chance to defend ATF's classification decisions regarding 80 percent receivers and frames. Applicants have failed to demonstrate that the federal government's defense of this APA challenge will inadequately represent Applicants' interests. On that basis alone, the Motion to Intervene should be denied. *See Arakaki*, 324 F.3d at 1083.

### 2. Applicants Lack a Significant Protectable Interest in This Litigation that May Be Practically Impaired.

Even if Applicants could demonstrate that Defendants would not adequately represent their interests—and they cannot—the Court should deny the Motion to Intervene because it fails to identify any "*significant* protectable interest" of Applicants that may be practically impaired or impeded by the disposition of this case. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (emphasis added);

10

*see also Donaldson v. United States*, 400 U.S. 517, 531 (1971).  A proposed intervenor has a "significant protectable interest" only "if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *Donnelly*, 159 F.3d at 409 (internal quotations omitted).  Additionally, intervention as of right is appropriate only where a would-be intervenor shows that she "would be substantially affected in a practical sense by the determination made in an action." *O'Shea v. 24 Hour Fitness USA, Inc.*, 2018 WL 10560899, at *2 (N.D. Cal. Mar. 21, 2018) (quoting FRCP 24, Advisory Committee Notes to 1966 Amendments).  The "relationship" required between an applicant's interest and the plaintiff's claims is satisfied only where "resolution of the plaintiff's claims actually will affect the applicant." *Donnelly*, 159 F.3d at 410; *see also Greene v. United States*, 996 F.2d 973, 976-78 (9th Cir. 1993) (holding that applicant lacked a "significant protectable interest" in an action when the resolution of the plaintiff's claims would not affect the applicant directly).  Here, Applicants argue that they "have a significant interest in ensuring they can continue to engage in personal and business activities as they do now," Mot. to Intervene at 7, but Applicants fail to show (i) any legally protectable interest that is implicated by Plaintiffs' claims and (ii) any practical effect that the outcome of this litigation will have on them.

Applicants spend much of their Motion arguing that intervention as of right is appropriate because "[Applicants'] Second Amendment protected rights could be unconstitutionally impaired" if the Court rules in Plaintiffs' favor.  *Id*. at 11.  Applicants allege that they have a "legally protectable interest" in "the continued production, sale, purchase, possession, and individual manufacture" of 80 percent receivers or frames, *id*. at 5, and that Applicants' "constitutionally protected right to keep and bear arms may be impaired" by the disposition of this case.  *Id*. at 11; *see also* Ex. F, *California Sues the ATF to Stop 80% Lowers Nationwide!*, 80% ARMS (Oct. 7, 2020) https://www.80percentarms. com/blog/california-sues-the-atf-to-stop-80-lowers-nationwide/.  But BlackHawk, Fort, Barton, and FPC have no Second Amendment right to buy, sell or possess "ghost gun" components.  And even if Plaintiffs obtain complete relief, it will have no effect on Applicants' ability to purchase additional guns or to continue possessing the firearms they already own, including those they have previously constructed using 80 percent frames or receivers.  Federal law has required gun buyers to undergo

background checks and that firearms be serialized for more than fifty years.  And courts have repeatedly held that these requirements do not run afoul of the Constitution.

The notion that Applicants have some constitutionally protectable right to *avoid* these common-sense gun safety regulations is contrary to decades of federal law and practice.  No Court has ever recognized a Second Amendment right to avoid a federal firearms background check (Fort Decl. ¶ 5; Barton Decl. ¶ 5; Combs Decl. ¶ 13), or to purchase weapons from an unlicensed dealer (ECF. 24-4 ("Smith Decl.") ¶ 10; Combs Decl. ¶ 13).  *See, e.g., Silvester v. Harris*, 843 F.3d 816, 830 (9th Cir. 2016) (Thomas, C.J., concurring) (firearms background check and waiting requirements do not implicate the Second Amendment); *Jackson v. City & County of San Francisco*, 746 F.3d 953, 959 (9th Cir. 2014) ("*Heller* indicated that the Second Amendment does not preclude certain 'longstanding prohibitions' and 'presumptively lawful regulatory measures,' such as . . . 'laws imposing conditions and qualifications on the commercial sale of arms.'") (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008)).  Nor do Applicants have a Second Amendment right to an unserialized firearm.  *See United States v. Marzzarella*, 614 F.3d 85, 93-94, 101 (3d Cir. 2010) (rejecting claim that "the Second Amendment must protect firearms without serial numbers"); *see also Pena v. Lindley*, 898 F.3d 969, 981-82 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 207 L. Ed. 2d 1050 (June 15, 2020) (firearm microstamping requirement adopted to aid law enforcement investigation of crime passes constitutional muster).

Even if Applicants could show some relationship between their Second Amendment rights and Plaintiffs' claims (and they cannot), Applicants fail to allege how the disposition of this case will have any practical effect on those rights.  *See O'Shea*, 2018 WL 10560899, at *2 (denying motion to intervene in part because applicant "made absolutely no showing as to how [disposition of the case] would affect him").  Applicants allege that, "[d]epending on the extent of Petitioners' argument, this Court's ruling, and the ATF's decision, Applicants could be exposed to criminal liability . . .; could be forced to disclose the existence of certain constitutionally protected property to the federal government; and would be prohibited from engaging in otherwise lawful and constitutionally protected activities." Mot. to Intervene at 10-11; *see also* Barton Decl. ¶ 8; Fort Decl. ¶ 8.  None of these claims has merit, and (because they cannot) Applicants never explain how a ruling in Plaintiffs' favor will lead to any of

these results.  Indeed, nothing in the relief Plaintiffs seek would prevent any Applicant from acquiring, possessing, or using any firearm for self-defense or any other lawful purpose.  Plaintiffs seek a very narrow ruling from this Court that Defendants have violated their obligations under the APA.  To the extent Plaintiffs' claims succeed, and to the extent ATF later engages in rulemaking or the issuance of a final determination that implicates Applicants' purported interests in 80 percent frames and receivers, Applicants would be free to challenge that rulemaking in a later proceeding—including advancing whatever constitutional arguments they wish.  *See* 5 U.S.C. § 706(2)(B) (authorizing APA actions where administrative rulings purportedly violate the Constitution).

Applicants rely on *Berg* for the proposition that intervention is appropriate in this case.  268 F.3d 810.  But there, the Ninth Circuit held that a construction contractor had a significant protectable interest in a suit alleging that a city's land management plan and species conservation program did not comply with requirements of the Endangered Species Act because the proposed intervenor was a beneficiary to approved building projects, and the relief sought by the plaintiffs would have revoked the plan to complete those projects.  *Id*. at 820-22.  Here, Plaintiffs' claims, even if successful, will have no direct impact on any property owned by Applicants; indeed, nowhere do Applicants explain how even total victory by Plaintiffs will render any guns they own retroactively unlawful.  That is because they cannot:  The background check and serialization provisions Plaintiffs rely on address *purchase* and *sale*, not *possession*, and Plaintiffs' requested relief does not include retroactively requiring serialization or a background check on any firearms the individual Applicants have previously purchased or built.  Any potential "impairment" of Applicants' interests arising from this case itself is entirely speculative and "too tenuous" to support their intervention in this litigation.  *Med. Advocates for Healthy Air v. U.S. E.P.A.*, 2011 WL 4834464, at *4 (N.D. Cal. Oct. 12, 2011) (citations omitted) (denying motion to intervene in APA case even where resolution in favor of plaintiffs may increase regulation unfavorable to Applicant's members).

To the extent Applicants argue they have an economic interest in this litigation, that interest is also entirely speculative and does not support a right of intervention.  "To trigger a right to intervene . . . an economic interest must be concrete and related to the underlying subject matter of the action."  *Alisal Water Corp.*, 370 F.3d at 919.  Applicants argue that "the outcome of this litigation could have

13

a substantial monetary effect on Applicant 80% Arms [sic] business practice, as well as the individual practices of other Applicants and their members," Mot. to Intervene at 13, and that the "involvement of Federal Firearms Licensees and federal background checks" will "significantly increase the cost of producing and purchasing Non-Firearm Objects and manufacturing those items into 'firearms' as defined by the GCA." *Id*. at 7.

This claim of purported economic burden is unpersuasive.  With respect to Applicant BlackHawk's purported economic interest, BlackHawk is already a federally licensed firearms dealer and will bear no further cost in connection with a FFL application. *See* Ex. C, Federal Firearms Listings, ATF.gov, https://www.atf.gov/firearms/listing-federal-firearms-licensees (last visited Dec. 14, 2020).[6]  Additionally, to the extent Plaintiffs' claims prevail and ATF requires serialization of 80 percent receivers and frames, BlackHawk (i) already sells 80 percent receivers and frames with serial numbers on them, and (ii) offers an 80 percent lower receiver serialization service "to precision engrave text to a depth greater than 0.003 inches as required by ATF's specification for serial number markings and California law." *See* Ex. D, California 80 Lower Laws & FAQs, 80% Arms, https://www.80percentarms.com/pages/california-laws-80-lower (last visited Dec. 14, 2020). BlackHawk asserts that a ruling in Plaintiffs' favor will create "significant increases in [BlackHawk's] operation and compliance costs," Mot. to Intervene at 9, but fails to connect a favorable decision for Plaintiffs in this case—where ATF's prior actions are voided and the Court orders ATF to engage in rulemaking—to that alleged increase in business costs.  Applicants fail to allege how, if at all, this litigation will have an economic impact on Fort, Barton, or FPC's "individual practices." *Id.* at 13. Applicants' conclusory, speculative assertions to the contrary are plainly insufficient. *Med. Advocates for Healthy Air*, 2011 WL 4834464, at *3.

*     *     *

In sum, Applicants have failed to demonstrate inadequacy of representation, or a significant protectable interest that will be impaired by the outcome of this litigation.  Because proving each of

---

[6]  BlackHawk Manufacturing Group Inc. is listed as having a Type 7 Federal Firearms License.  Type 7 Licenses are for Manufacturers of Firearms Other Than Destructive Devices.  Ex. C, *Federal Firearms Listings*, ATF.gov, https://www.atf.gov/firearms/listing-federal-firearms-licensees (last visited Dec. 14, 2020).

those factors is necessary to establish a right to intervene, *Arakaki*, 324 F.3d at 1083, intervention as of right should be denied.

**B.      The Court Should Deny Permissive Intervention.**

The Court should also deny Applicants' request for permissive intervention.  Mot. to Intervene at 13-14.  While a court *may* permit intervention where an applicant who files a timely motion and "has a claim or defense that shares with the main action a common question of law or fact," *see* FRCP 24(b)(1)(B), it has wide discretion to deny intervention even if those requirements are met, *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).  In exercising such discretion, "the court *must* consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FRCP 24(b)(3) (emphasis added).  Here, Applicants fail to justify their request for permissive intervention.  They add no value to the resolution of the issues in this case, and yet their inclusion will substantially complicate the issues and delay the action.  Permissive intervention should be denied.

**1.      Intervention Will Unduly Delay and Prejudice the Adjudication of the Existing Parties' Rights.**

"[T]he possibility of prejudice to the original parties is in fact the 'principal consideration' when deciding a motion to intervene." *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 415 (N.D. Cal. 2004).  The fact that "Defendants [had] yet to file an answer" and "no record [had] been lodged" is irrelevant.  *Contra* Mot. to Intervene at 14.  Considerations of delay and prejudice are distinct from the issue of timeliness.  Instead, courts assess whether intervention would create "unnecessary complexity," *United States v. $129,374 in U.S. Currency*, 769 F.2d 583, 587 (9th Cir. 1985), by "necessitat[ing] the consideration of extraneous legal and factual issues that [Plaintiffs'] lawsuit would not otherwise invoke," *Lilith Games (Shanghai) Co. v. uCool, Inc.*, 2015 WL 4914694, at *4 (N.D. Cal. Aug. 17, 2015).  *See also Eashoo v. Iovate Health Scis. U.S.A., Inc.*, 2015 WL 12696036, at *9 (C.D. Cal. May 26, 2015) ("[Intervention] could cause complications and delay, as the parties will be forced to expand their discovery efforts and devote time and resources to researching and crafting a new litigation strategy."); *United States v. Ballantyne*, 2013 WL 4716234, at *5 (S.D. Cal. Sept. 3, 2013) (denying motion for permissive intervention where the prospective intervenor would unduly complicate and potentially prolong the lawsuit by "attempt[ing] to shift the focus of the litigation" and

1  "overshadow[]" the issues in the original suit).  Here, Applicants' intervention would create precisely
2  such complexity.

3  Indeed, Applicants attempt to shift the focus of the litigation by inappropriately injecting an
4  irrelevant constitutional issue into an otherwise narrow APA case.  In their Motion to Intervene and
5  supporting declarations, Applicants, which include the FPC—an organization whose purpose includes
6  "advocat[ing] for important constitutionally protected rights . . . under the . . . Second [Amendment],"
7  Combs Decl. ¶ 6—repeatedly reference their interest in broadening this lawsuit to include a
8  constitutional issue.  *See, e.g.*, Mot. to Intervene at 2 ("Applicants . . . would be prevented from
9  engaging in, [] the constitutionally and statutorily protected conduct they currently engage in should
10  this Court grant the Petitioners' requested relief.").[7]  Moreover, in several public statements, Applicants
11  have boasted that their purpose in attempting to join this lawsuit is to defend the Second Amendment
12  rights that they mistakenly claim are at issue in this case.  *See*, *e.g.*, Ex. E, *We Join Lawsuit to Fight*
13  *for 80% Nationwide!,* 80% ARMS (Nov. 19, 2020), https://www.80percentarms.com/blog/we-join-
14  lawsuit-to-fight-for-80-nationwide/ ("We have no intention of just sitting by and watching as gun-
15  grabbers try to destroy our constitutional rights.  This is why we are happy to announce that we have
16  teamed up with the [FPC] and have filed a motion to intervene against this lawsuit.").

17  But whether "[the ATF's rulings] must be upheld because it is constitutionally required" is
18  "extraneous to whether the [ATF's rulings] [are] valid under the APA and [] unaffected by this
19  litigation." *New York v. U.S. Dep't of Educ.*, 2020 WL 3962110, at *4 (S.D.N.Y. July 10, 2020); *see*
20  *also Ctr. for Biological Diversity v. Lubchenco*, 2010 WL 1038398, at *9 (N.D. Cal. Mar. 19, 2010)
21  (finding intervention was unwarranted when "the only issue in [the] phase of the case . . . [was] whether
22  the government complied with its statutory duties in making its [rulings]").  Indeed, Plaintiffs have
23  only asked the Court to vacate the challenged rulings and order ATF to engage in further rulemaking
24  consistent with the APA and GCA.  Applicants' Second Amendment claims are not yet ripe:  If and

---

7  *See also* Mot. to Intervene at 10 ("[I]f the Court grants Petitioners the relief they seek, [] it would likely render illegal
the otherwise entirely lawful and constitutionally protected property, activities, and/or business practices of Applicants,
and of their customers and members."); *id.* at 11 ("[Applicants'] Second Amendment protected rights could be
unconstitutionally impaired."); Fort Decl. ¶ 6 ("I have a legal right to be able to purchase Non-Firearm Objects,
manufacturing jigs, and other firearm manufacturing tools."); Barton Decl. ¶ 6 (same); *see also* Answer at 24
("Applicants reserve the right to assert any other claims or defenses that may be available or may become available
during the course of these proceedings.").

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO INTERVENE
CASE NO. 3:20-CV-06761-EMC

when new rulemaking occurs, and *if* such rulemaking implicates Second Amendment rights (and, to be clear, it will not), Applicants will be "ab[le] to pursue [their] claims through [this] alternative mechanism without any prejudice to [their] own rights." *L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 2015 WL 5071949, at *4 (N.D. Cal. Aug. 27, 2015) (quoting *UMG Recordings,* 222 F.R.D. at 415) (asserting that an Applicant's ability to bring their claims in an alternative proceeding is "significant in the context of [their] motion to intervene"). Applicants will also have the opportunity to submit requests for classification, and pursue their claims if ATF's determinations are adverse to their interests. Allowing Applicants to intervene at this point, where their claims and contentions are both unripe and speculative, "would [only] divert time and resources from the principal thrust of [Plaintiffs'] lawsuit," *Lilith Games (Shanghai) Co.*, 2015 WL 4914694, at *4 (internal quotations and citations omitted), and "needlessly distract this Court from the task at hand, which is a review of the administrative record pursuant to the Administrative Procedure Act," *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 2005 WL 8177402, at *3 (N.D. Cal. June 13, 2005); *see also Donnelly*, 159 F.3d at 412 (denying permissive intervention when "allowing intervention would only serve to undermine the efficiency of the litigation process").[8]

### 2. All of the Discretionary Factors the Court May Consider Support Denying Permissive Intervention.

In addition to balancing the delay and prejudice to the existing parties, this Court may also consider additional factors, including: (1) "the nature and extent of the intervenors' interest," (2) "whether the intervenors' interests are adequately represented by other parties," (3) "the legal position they seek to advance[] and its probable relation to the merits of the case," and (4) "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Applicants fail to satisfy any of these factors.

---

[8] Permitting intervention in this narrow, focused APA challenge might also "cause a 'flood' of motions for intervention" from other Second Amendment groups and manufacturers and distributors of 80 percent receivers and frames, which would further complicate and prolong the case. *See Estate of Dixon v. Commissioner*, 666 F.2d 386, 389 (9th Cir. 1982).

The first two factors are plainly not met:  Applicants' interest in this case is minimal at best, and the federal government can plainly represent whatever speculative interests Applicants claim to have in this case.[9]  *See supra* Section A.  Applicants cannot meet the third factor either: The legal position they advance is unrelated to the merits of the case.  The non-corporate Applicants do not have any cognizable legal right to purchase weapons without a background check or serial number.  The Ninth Circuit has already determined that laws requiring that guns, when fired, imprint ammunition shells with unique serial numbers (to assist law enforcement in investigating crimes) "place *almost no burden* on the physical exercise of Second Amendment rights."  *Pena*, 898 F.3d at 977-78, 981-82 (emphasis added).  So, too, with requiring serial numbers on the firearms themselves.  *See Marzzarella*, 614 F.3d at 98 (finding regulation that prohibited the possession of unserialized firearms passes constitutional muster as it "does not limit the possession of any class of firearms" because "unmarked weapons are functionally no different from marked weapons").  *See also supra* Section A.2.  Similarly, BlackHawk can hardly claim a cognizable injury when at most the result of Plaintiffs' victory in this case will be that BlackHawk might need to serialize its products, which it already does for some.

Lastly, Applicants will not significantly contribute to the development of the factual record and adjudication of the legal questions presented.  Although Applicants have indicated that they have some relevant expertise, in, for example, assembling 80 percent receivers and frames, *see, e.g.*, Fort Decl. ¶ 3, Applicants "have not shown that [their] experience and knowledge exceed that of the existing parties, potential experts, and other witnesses."  *Opperman v. PATH, Inc.*, 2015 WL 12941889, at *2 (N.D. Cal. Jan. 5, 2015); *see also Drakes Bay Oyster Co. v. Salazar*, 2013 WL 451813, at *9 (N.D. Cal. Feb. 4, 2013), *aff'd sub nom. Drakes Bay Oyster Co. v. Envtl. Action Comm. of W. Marin*, 571 F. App'x 605 (9th Cir. 2014) ("[W]hile Proposed Intervenors may have a unique point of view and

---

[9]  Contrary to Applicants' contentions, the impairment of a protectable interest *is* a significant factor for the Court to consider in assessing permissive intervention.  *Contra* Mot. to Intervene at 13.  Whether the applicants had interests sufficient to justify intervention was a factor in the cases Applicants cite, and these cases are also distinguishable by unique considerations.  *See Sec. & Exch. Comm'n v. U.S. Realty & Imp. Co.*, 310 U.S. 434 (1940) ("[W]e think it plain that the Commission has a *sufficient interest* in the maintenance of its statutory authority and the performance of its public duties to entitle it through intervention to prevent reorganizations, which should rightly be subjected to its scrutiny from proceeding without it.") (emphasis added); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1107 (9th Cir. 2002) (permitting environmental groups to defend the federal government's implementation of a conservation rule in the "unusual procedural setting," in which the "defendants have decided not to appeal the district court's preliminary injunction" and the "presence of intervenors would assist the court in its orderly procedures leading to the resolution of this case").  No such interest exists here.

expertise, intervention as a party will not necessarily facilitate resolution on the merits, but it is likely to result in duplicative briefing adding a layer of unwarranted procedural complexity."); *E&B Nat. Res. Mgmt. Corp. v. Cty. of Alameda,* 2019 WL 5697912, at *7-8 (N.D. Cal. Nov. 4, 2019), *appeal dismissed sub nom.* 2020 WL 2945032 (9th Cir. Mar. 16, 2020) ("[T]here is no reason that discovery or the use of experts could not resolve any information gap between the Center and the County.").  Indeed, the entire premise of ATF's Motion to Dismiss is that *it* is the expert on weapons and ghost guns, *see, e.g.*, Mot. to Dismiss at 3, 18, 23, rendering any perceived expertise by Applicants totally irrelevant and at the very least superfluous.[10]  And Applicants do not dispute the material facts alleged by Plaintiffs concerning the mechanics of their 80 percent receivers and frames and the ease with which those products can be converted into fully functional weapons.  *See, e.g.*, Answer ¶ 10 ("Applicants admit that some producers and retailers have developed tools that individuals can purchase to use to help facilitate the individual manufacture of firearms for personal use."); Ex. F (stating on 80% Arms' website, "IS IT AS EASY AS THE ATF SAYS? Well, we certainly didn't reserve the term "Easy Jig®" because it was difficult").  The proper means of receiving Applicants' arguments in this case it to permit them to participate as amici, not as full-fledged parties to the litigation.  *See Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) ("Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention."); *Nat'l Urban League v. Ross*, 2020 WL 6290353, at *3 (N.D. Cal. Oct. 26, 2020) ("[T]he States' best course going forward . . . is to file amicus briefs, that supplement the parties' thorough presentation of the issues."); *Wheeler*, 2020 WL 4915601, at *2 ("The moving parties will be permitted to contribute to that process by submitting amicus briefs.").

*        *        *

In sum, Applicants' intervention is unnecessary for the full and fair presentation of the factual and legal issues implicated in this lawsuit, and would prejudice the parties and needlessly cause delay. Permissive intervention should be denied.

---

[10]  Moreover, Plaintiffs' lawsuit, which challenges Polymer80's Classification Letters, *see* Compl. ¶¶ 118, 133, does not address any Classification Letters concerning BlackHawk's products, furthering limiting the relevance of any expertise BlackHawk may allege it has.

1   **C.      The Government's Suggestion that BlackHawk Is a Necessary Party Is Plainly**
2   **Incorrect.**

3           This Court should decline to credit Defendants' "Response" to the Motion to Intervene.
4   Although Defendants agree with Plaintiffs that the six-year statute of limitations forbids Plaintiffs from
5   challenging directly BlackHawk's July 15, 2013 Classification Letter mentioned in a footnote of
6   Plaintiffs' Complaint, Defendants go on to argue that Blackhawk is "likely" a necessary party in this
7   action nonetheless—a bizarre argument that even Blackhawk did not deem sufficiently credible to
8   assert.  Defendants' Response to Motion to Intervene, ECF No. 38 ("Defs.' Resp.") at 2; *cf.* Mot. to
9   Intervene at 8-11.  But even if the BlackHawk classification letter fell within the limitations period,
10  BlackHawk plainly is not a "required party."  Pursuant to Rule 19(a)(1), a party is "required" in only
11  two instances—where (1) "in that person's absence, the court cannot accord complete relief among
12  existing parties" or (2) "that person claims an interest relating to the subject of the action and is so
13  situated that disposing of the action in the person's absence" may "impair or impede the person's ability
14  to protect the interest" or "leave an existing party subject to a substantial risk of incurring double,
15  multiple, or otherwise inconsistent obligations."  FRCP 19(a)(1); *see also Ward v. Apple Inc.*, 791 F.3d
16  1041, 1048 (9th Cir. 2015).  Neither instance applies here.

17          *First*, the Court can accord complete relief without BlackHawk's participation.  "Complete
18  relief" in this case involves a ruling that Defendants have violated their obligations under the APA,
19  which would vacate and set aside certain ATF Classification Letters and require ATF to determine
20  whether 80 percent receivers and frames are "firearms" applying a proper interpretation of the GCA.
21  *See supra* III.B.1; Compl. at 56 (Prayer for Relief).  BlackHawk need not be a party to accord that
22  narrow relief under the APA.[11]  Indeed, the federal government has previously taken the position that
23  the subjects of challenged regulations are not required parties in APA challenges.  *See, e.g.*, Fed.
24  Defendants' Opposition to Defendant-Intervenors' Motion to Dismiss at 7, *Guardians v. U.S. Fish &*
25  *Wildlife Serv.*, 2018 WL 1023104 (D. Mont. Feb. 22, 2018) (contending that in an APA lawsuit "for
26  review of an administrative record—i.e., an action limited strictly to the evaluation of Federal

27  _____

28  [11]  If Blackhawk were somehow deemed a required party, potentially dozens of ghost gun manufacturers and countless
     retailers and others could well be required under this unprecedented and overbroad standard.

Defendants' stated rationale and conclusions— . . . the United States [is] the only necessary Defendant") (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 559 (9th Cir. 1990)); *Alto v. Black*, 738 F.3d 1111, 1129 (9th Cir. 2013) (affirming district court decision that a tribe was not a necessary party in an APA challenge concerning a decision by the Bureau of Indian Affairs where government defendants argued tribe was not a required party).  The Government offers no explanation for its newfound change in position.

*Second*, disposing of the action in BlackHawk's absence will <u>not</u> "impair or impede" BlackHawk's ability to protect its interests.  As an initial matter, BlackHawk *lacks* a significant protectable interest in this case.  *See supra* III.A.2.  Despite Defendants' assertion, Plaintiffs are plainly not challenging any "informal adjudication" that BlackHawk is "a party to."  Defs.' Resp. at 4. Defendants *themselves* argue that the BlackHawk Classification Letter is outside the limitations period. *Id.* at 2.  In any event, any interests BlackHawk might have are adequately represented by Defendants. *See supra* II.A.1; *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180 (9th Cir. 2012) ("An absent party with an interest in the action is not a necessary party under Rule 19(a) if the absent party is adequately represented in the suit.") (internal quotations omitted).  BlackHawk's purported interests can also be properly vindicated in multiple forums, including in an amicus brief, by submitting future requests for ATF classification, and by pursuing any claims if and when ATF makes a ruling adverse to BlackHawk's interests.

*Finally*, there is no risk Defendants will incur "inconsistent obligations" here—a claim Defendants nowhere make in their brief.  *Compare Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1154 (9th Cir. 1998) (rejecting possibility of "potentially inconsistent" obligations where parties failed to demonstrate "how such a conflict might actually arise in the context of [the action at hand]").  The relief requested would result only in an obligation for ATF to reconsider its analysis of 80 percent receivers and frames.  It would impose no obligations on BlackHawk alone, let alone "inconsistent" ones.  *See Cachil Dehe Band of Wintun Indians of the Colusa Indian Comty. v. Cal.*, 547 F.3d 962, 976 (9th Cir. 2008) ("[I]nconsistent obligations are not . . . the same as inconsistent adjudications or results.  Inconsistent obligations occur when a party is unable to comply with one

court's order without breaching another court's order concerning the same incident.") (internal citations omitted).

## IV.   CONCLUSION

The Court should deny Applicants' Motion to Intervene.


*Dated:* December 15, 2020                          */s/      Avi Weitzman*


                                                    GIBSON, DUNN & CRUTCHER LLP
                                                    AVI WEITZMAN, *pro hac vice*
                                                    aweitzman@gibsondunn.com
                                                    LEE R. CRAIN, *pro hac vice*
                                                    LIESEL SCHAPIRA, *pro hac vice*
                                                    KAYLIE SPRINGER, *pro hac vice*
                                                    200 Park Avenue
                                                    New York, NY  10166-0193
                                                    Telephone: (212) 351-4000
                                                    Facsimile: (212) 351-4035

                                                    VIVEK GOPALAN, SBN 296156
                                                    VGopalan@gibsondunn.com
                                                    555 Mission Street, Suite 3000
                                                    San Francisco, CA 94105-0921

                                                    GIFFORDS LAW CENTER TO
                                                    PREVENT GUN VIOLENCE
                                                    HANNAH SHEARER, SBN 292710
                                                    268 Bush St. # 555
                                                    San Francisco, CA 94104
                                                    Telephone: (415) 433-2062
                                                    Facsimile: (415) 433-3357

                                                    J. ADAM SKAGGS, *pro hac vice*
                                                    DAVID M. PUCINO, *pro hac vice*
                                                    223 West 38th St. # 90
                                                    New York, NY 10018
                                                    Telephone: (917) 680-3473

                                                    *Attorneys for Plaintiffs Bryan Muehlberger, Frank*
                                                    *Blackwell, Giffords Law Center to Prevent Violence*

1    *Dated:* December 15, 2020                    /s/      R. Matthew Wise

2                                              XAVIER BECERRA
3                                              Attorney General of California
                                               THOMAS S. PATTERSON
4                                              Senior Assistant Attorney General
                                               MARK R. BECKINGTON
5                                              Supervising Deputy Attorney General
                                               R. MATTHEW WISE, SBN 238485
6                                              Matthew.Wise@doj.ca.gov
                                               Deputy Attorney General
7
8                                              1300 I Street, Suite 125
                                               P.O. Box 944255
9                                              Sacramento, CA 94244-2550
                                               Telephone:  (916) 210-6046
10                                             Facsimile:  (916) 324-8835

11                                             *Attorneys for Plaintiff State of California, by*
12                                             *and through Attorney General Xavier Becerra*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>ATTORNEY ATTESTATION</u>

Pursuant to Civil Local Rule 5-1(i)(3), I, Avi Weitzman, hereby attest that concurrence in the filing of this document has been obtained from all signatories.


*Dated*:  December 15, 2020                    By:  _/s/_          _Avi Weitzman_
                                                                    Avi Weitzman