John F. Olsen (SBN 157465)
FERDINAND IP, LLP
800 West El Camino Real, Suite 180
Mountain View, CA 94040
Phone: (858) 412-4515
jolsen@fiplawgroup.com

James J. McGuire*
Michael R. Patrick*
Mark A. Berube*
(*pro hac vice application to be filed)
Barton, LLP
711 Third Avenue, 14th floor
New York, New York 10017
Phone:  212-687-6262

*Attorneys for Proposed Intervenor
Polymer80*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, and GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE, | CASE NO. 3:20-cv-06761-EMC |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES OF POLYMER80, INC. IN SUPPORT OF ITS MOTION TO INTERVENE IN THIS ACTION** |
| v. | |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, REGINA LOMBARDO, in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco, Firearms and Explosives, MICHAEL R. CURTIS, in his official capacity as Chief, Firearms Technology Industry Services Branch of Bureau of Alcohol, Tobacco, Firearms and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and WILLIAM BARR, in his official capacity as Attorney General of the United States, | Date:  January 28, 2021<br>Time: 1:30 PM<br>Courtroom 5<br>Judge: Hon. Edward M. Chen |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................i

PRELIMINARY STATEMENT...........................................................................................1

STATEMENT OF ISSUES TO BE DECIDED ...................................................................3

PERTINENT FACTS ..........................................................................................................3

ARGUMENT .......................................................................................................................9

THE COURT SHOULD GRANT THE INSTANT MOTION..............................................9

   A.   Polymer80 Is Entitled To Intervention As Of Right. ....................................................9

      1.   Polymer80's Motion is Timely. ..............................................................................10

      2.   Polymer80 Has A Significant Protectable Interest In The
          Outcome Of This Action. .......................................................................................11

      3.   The Disposition Of This Action May Impair Polymer80's Ability
          To Protect Its Interests. ..........................................................................................12

      4.   These Defendants Do Not And Cannot "Adequately Represent" Polymer80...........12

         (a)   Defendants Surely Will Not Make All Of Polymer80's Arguments..................14

         (b)   Neither DOJ, Nor ATF, Nor Their Officials Are Capable
              Of Or Willing To Make All Of Polymer80's Arguments. ..................................15

         (c)   Polymer80 Offers And Injects A Necessary Element Into This
              Action That Would Otherwise Be Missing And/Or Neglected. .........................16

         (d)   Polymer80 Has Satisfied Its Obligations Under The "Minimal" Test For
              Showing The Inadequacy Of The Government's Representation
              Of It In This Action...............................................................................................16

      5.   Thus, Polymer80 Has The Right To Intervene. .......................................................17

   B.   Alternatively, The Court Should Grant Polymer80 Permissive Intervention. ...............17

      1.   The "Independent Ground For Jurisdiction" Factor Is Of No Moment Here.............18

      2.   The Instant Motion Is Timely. .................................................................................18

      3.   Common Questions Of Law And Fact Exist In The Complaint's
          Allegations And Polymer80's Core Position That All Three
          Classification Letters Were And Are Wholly Lawful And Proper. ...........................19

CONCLUSION ...................................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arakaki v. Cayeteno*,
324 F.3d 1078 (9th Cir. 2003)..................................................................................... 11, 13

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
966 F.2d 470 (9th Cir. 1992).............................................................................................. 17

*Blake v. Pallan*,
554 F.2d 947 (9th Cir. 1977).............................................................................................. 10

*Cal ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006).............................................................................................. 11

*Citizens for Balanced Use v. Montana Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011)..................................................................................... 9, 12, 13

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife*,
2012 WL 13049186 (N.D. Cal. Mar. 22, 2012) ........................................................ 11, 14, 17

*Forest Conservation Council v. U.S. Forest Serv.*,
66 F.3d 1489 (9th Cir. 1995).............................................................................................. 14

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011)....................................................................................... 17, 18

*Fresno Cty. v. Andrus*,
622 F.2d 436 (9th Cir. 1980).............................................................................................. 14

*Gonzalez v. Ariz.*,
485 F.3d 1041 (9th Cir. 2007)............................................................................................ 13

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995).............................................................................................. 10

*In Def. of Animals v. U.S. Dep't of the Interior*,
2011 WL 1085991 (Mar. 21, 2011 E.D. Cal. 2011)................................................................ 13

*Kootenai Tribe of Idaho v. Veneman*,
313 F.3d 1094 (9th Cir. 2011)............................................................................................ 19

*League of Wilderness Defenders--Blue Mountain Biodiversity Project v. Forsgren*,
184 F. Supp. 2d 1058 (D. Or. 2002).................................................................................... 13

*Levin Richmond Terminal Corp. v. City of Richmond*,
2020 WL 5074263 (N.D. Cal. Aug. 27, 2020)........................................................................ 19

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)......................................................................................................... 10

*Nikon Corp. v. ASML Lithography B.V.*,
222 F.R.D. 647 (N.D. Cal. 2004) ........................................................................................ 11

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006).......................................................................... 13

*Sagebrush Rebellion, Inc. v. Watt*,
   713 F.2d 525 (9th Cir. 1983) ............................................................................ 13

*Sierra Club v. EPA*,
   2013 WL 5568253 (N.D. Cal. Oct. 9, 2013) ............................................ 9, 13

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ........................................................................ 14

*Sierra Club v. U.S.E.P.A.*,
   995 F.2d 1478 (9th Cir. 1993) ............................................................... 10, 17

*Smith v. Los Angeles Unified Sch. Dist.*,
   830 F.3d 843 (9th Cir. 2016) ......................................................................... 10

*Sw. Ctr. For Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ...................................................................... 9, 11

*United Farm Workers v. U.S.E.P.A.*,
   2008 WL 3929140 (N.D. Cal. Aug 26, 2008) ......................................... 11, 17

*United States v. Aerojet Fen. Co.*,
   606 F.3d 1142 (9th Cir. 2010) ..................................................................... 10

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004) .................................................................. 11, 12

*United States v. City of Los Angeles*,
   288 F.3d 391 (9th Cir. 2002) .............................................................. 9, 12, 13

*Univ. of Cal. v. FEMA*,
   2017 WL 11528958 (N.D. Cal. Oct. 26, 2017) ........................................... 18

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) ........................................................... 9, 14, 19

**<u>Statutes</u>**

5 U.S.C. § 706(2)(A) ....................................................................................... 6, 8
5 U.S.C. §§ 500 .................................................................................................... 6
18 U.S.C. §§ 921 .................................................................................................. 4
28 U.S.C. § 1331 ................................................................................................ 18

**<u>Rules</u>**

Fed. R. Civ. P. 12 ................................................................................................. 8
Fed. R. Civ. P. 24 .............................................................. 1, 2, 7, 9, 11, 12, 19, 20

Polymer80, Inc. ("Polymer80" or "Company") hereby respectfully submits this Memorandum of Points and Authorities ("Memorandum"), along with the Declaration of David L. Borges, dated December 21, 2020, ("Borges Declaration"), in support of its motion ("Motion") to intervene in this action as of right, pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, or, alternatively, to so intervene with the permission of this Court, pursuant to Fed. R. Civ. P. 24(b).  For all of the reasons set forth below and in the remainder of the record of this matter, the Motion is meritorious, and the Court should authorize Polymer80's intervention herein.

## PRELIMINARY STATEMENT

In this action, various plaintiffs challenge the lawfulness under the Administrative Procedure Act ("APA") of three "classification letters" ("Classification Letters") that defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") issued to Polymer80 during the Obama Administration, in February 2015, November 2015, and January 2017, respectively, regarding certain of its products, including the Company's "PF940C" Blanks.  In each and every one of those letters, ATF concluded, after in-depth scrutiny and consideration, that all of the Polymer80 products under review, including those Blanks, were decidedly *not* "firearms" under federal law.  However, the "Complaint For Declaratory And Injunctive Relief" ("Complaint") herein avers that those Letters were and are, in short, "unlawful" and "arbitrary and capricious" under the APA.  Upon this background, on November 30, 2020, ATF and its codefendants, including the Department of Justice ("DOJ"), filed a motion to dismiss that Complaint.  At first blush, the filing more than indicates that the government is standing behind all three Classification Letters.  That motion is pending.

Ten (10) days later, on December 10, 2020, in a previously unannounced move that shocked Polymer80, given its longstanding practice of full cooperation with federal, State, and local law enforcement authorities across the country, a group of ATF agents, armed with a "Search and Seizure Warrant" ("Search Warrant") approved by a United States Magistrate Judge, appeared

1

at the Company's Dayton, Nevada offices at 5 a.m.  Those agents remained there seizing and carrying away voluminous information and materials for over five hours and during that time also served Polymer80 with an expansive Grand Jury Subpoena ("Subpoena") emanating from the Office of the United States Attorney for the Central District of California.

It was not until over three days later that the government turned over the Affidavit of an ATF agent upon which the Search Warrant was predicated ("Search Warrant Affidavit").  That Affidavit shockingly stated, *inter alia*, that ATF now considers certain of Polymer80's products, known as "kits," to be "firearms" under federal law.  And, most tellingly for present purposes, that Affidavit also revealed that ATF now asserts that the kit related to the possible building of a "PF940C" Blank is also a "firearm," notwithstanding ATF's January 2017 Classification Letter to the contrary.  Additionally, according to the Search Warrant Affidavit, ATF appears now also to posit that the individual items within those kits may, in certain circumstances, themselves be deemed "firearms" under federal law.  And then, on December 14, 2020, the Assistant United States Attorney for the Central District of California, who had turned over the Search Warrant Affidavit the day before, orally notified Polymer80 that it was under investigation by his Office (which was and is working with ATF and is itself functionally a part of DOJ) and the Grand Jury that issued the Subpoena.  Suffice to say, Polymer80 will vigorously oppose any efforts to charge the Company with engaging in criminal activity of any sort, which it has *never* done.

In these premises, Polymer80 has had little choice but to file this Motion, seeking intervention in this action "as of right," pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  As we demonstrate below, Polymer80 easily meets the four settled criteria for such intervention of: (i) a timely motion; (ii) a significant protectable interest arising from this case; (iii) the possibility of that interest being affected or curtailed by this matter; and (iv) the inadequacy of the current defendants in representing all of Polymer80's interests and concerns.  As to the latter, often dispositive factor, in the circumstances that have developed since December 10, 2020,

2

neither the ATF, nor DOJ, nor any of their senior officials can possibly adequately represent the Company in all respects in this proceeding in light of their curious and conflicting pronouncements on certain of the Company's products.   Thus, Polymer80's intervention as of right is wholly warranted.

Should the Court disagree, and as we further illustrate below, Polymer80 is alternatively entitled to intervene here "permissively," pursuant to Fed. R. Civ. P. 24(b).

In any event, this Court should grant the instant Motion and accord Polymer80 intervention as a defendant in this suit.

## STATEMENT OF ISSUES TO BE DECIDED

The first, and perhaps only, issue to be decided upon the instant motion is whether Polymer80 may intervene as of right in this action, pursuant to Fed. R. Civ. P. 24(a)(2).  Should the Court deny Polymer80 intervention as of right, then the alternative issue for decision is whether this Court will permit Polymer80 to so intervene, pursuant to Fed R. Civ. P. 24(b).

## PERTINENT FACTS

Polymer80 is a Nevada corporation with its principal place of business in Dayton, Nevada. Borges Decl. ¶ 4, at p. 2.   Founded in 2013, the company designs, develops, and sells innovative products and aftermarket accessories.  A foundational principle of the Company has always been its customers' inalienable Constitutional right to bear arms and their ability to engage lawfully with its products.

 Plaintiff's Complaint mentions Polymer80 no fewer than seventy-five (75) times.  Both of its two "Claims for Relief" turn on -- and seek to reverse -- U.S. government actions directly relating to the legality of several products of Polymer80.  However, Polymer80 is not named as a party to the suit.

Plaintiffs commenced this case on September 29, 2020 by and through the filing of their Complaint.  Simply put, that pleading constitutes a frontal assault largely on the lawfulness and

3

legitimacy of, *inter alia*, three Classification Letters that defendant ATF issued to Polymer80 during the Administration of then-President Barack Obama, in February 2015, November 2015, and January 2017, respectively.  Those Letters each and all concluded, after the federal authorities weighed and considered voluminous submissions from concerned and affected parties, that several of Polymer80's products did *not* constitute "firearms" within the meaning of that term under the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921 *et seq*.  The products addressed in the Classification Letters were and are an AR-15 Pattern Receiver Casting (February 2015), AR-10 type item (November 2015), and a "GC9" Blank and two "PF940C" Blanks (January 2017), respectively.[1]  Borges Decl. ¶ 5, at p. 2.  According to plaintiffs, these Letters "[h]ave [p]ermitted and [e]ncouraged the [p]roliferation of [g]host [g]uns."[2]  Complaint at p. 32.

Indeed, the Complaint expends multiple pages (in Paragraphs 78-91 at Pages 35-38) propounding a rambling, inaccurate, and immaterial set of averments as to Polymer80 and its business activities, including its manufacturing, advertising, sales, and distribution practices.  Among the inflammatory and erroneous allegations in this lengthy section of the Complaint are the following:

- "As a result of these three Classification Letters, Polymer80 has become a prominent manufacturer of 80 percent receivers and frames and other ghost gun parts." *Id*. ¶ 78, at p. 35.

- "On information and belief, Polymer80 ghost guns have become so ubiquitous that law enforcement in some jurisdictions colloquially refer to all DIY handguns they recover as "Polys," even if a recovered gun was assembled with parts bought from a different seller." *Id*. ¶ 79, at p. 35.

- "And, … Polymer80 allows bulk purchases of firearm kits without restriction." *Id*. ¶ 82, at p. 36.

---

[1] According to the January 2017 Classification Letter at issue, the PF940C Blank is "a solid core unibody design made out of a single casting and without any core strengthening inserts … [and] void of any indicators that designate or provide guidance in the completion of the firearm."  Complaint, Ex. 10.

[2] This Motion is neither the vehicle -- nor is it the appropriate time -- to respond in depth to the Complaint's unfounded and far-ranging assertions.  For instance, Polymer80 does *not* manufacture "ghost gun" kits, nor are those kits, in the Company's view, "firearms" in any respect.  Suffice to say, plaintiffs are meaningfully in error, as Polymer80 will establish, if the Court grants the instant Motion.

4

- Polymer80's requirement that prospective purchases of its products from its website confirm the following as an advance condition of any such purchase is "a classic attempt to avoid liability":

  - I am not under indictment or information in any court for a felony, or any other crime, for which the judge could imprison me for more than one year.

  - I have never been convicted in any court of a felony, or any other crime, for which the judge could have imprisoned me for more than one year, even if I received a shorter sentence including probation.

  - I am not prohibited by federal, state or local laws from purchasing, acquiring, possessing, manufacturing, using or owning a firearm.

  - I agree to comply all with state, federal, and local laws relating to purchasing, acquiring, possessing, manufacturing, using or owning a firearm.

  - I am not an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance.

  - I am not a fugitive from justice.

  - I have never been adjudicated mentally defective (which includes a determination by a court, board, commission, or other lawful authority that I am a danger to myself or others or am incompetent to manage my own affairs.)

  - Nor have I been involuntarily held for a mental health evaluation within the last 5 years.

  - I have never been committed to a mental institution.

  - I have never renounced my United States Citizenship.

  - I am not an alien illegally in the United States.

  - I am not prohibited from possessing firearms under federal or state law.

  - I have not had any of the training and instruction provided for any unlawful purpose.

  - I have read and understand all legislation that pertains to ownership of 80% products, building a firearm at home, and firearm ownership in the State that I reside in.

5

1   *Id.* ¶ 84, at p. 37.

2          The Complaint also asserts a bounty of both anodyne and misleading assertions, including

3   the virtually ceaseless repetition of plaintiffs' "ghost guns" mantra, as follows:

4
5                  Polymer80 advertises to its customers that its sales practices are legal
                   and that its 80 percent receivers and frames do not qualify as firearms
                   under the GCA.  The company's position that its ghost gun products
6                  are legal is based on the Classification Letters ATF issued to the
                   company, described above. …  Polymer80's website provides no
7                  information regarding the legality of its products other than those
                   addressed in the Classification Letters, and no information regarding
8                  the legality of its products under particular states' laws.

9   *Id.* ¶ 85, at p. 38.

10         The Complaint later summarizes many of its allegations regarding Polymer80, as follows:

11
                   The Classification Letters that ATF issued to Polymer80 between
12                 2015 and 2017 – for AR-15, AR-10, and Glock-type receivers and
                   frames – have significantly contributed to California's ghost gun
13                 epidemic.  Upon information and belief, weapons derived from these
                   Polymer80 components constitute a significant share of all ghost guns
14                 recovered in California, including ghost guns used in the commission
                   of various crimes.  Were it not for the Classification Letters that ATF
15                 has issued to Polymer80, the manufacturers of 80 percent receivers
                   and frames used to build ghost guns would have no legal safe harbor
16                 for their sales, these unserialized parts could not have been sold, and
                   many of these untraceable weapons would never have been created.
17                 The Classification Letters thus have enabled more individuals unable
                   to legally purchase firearms to build or obtain ghost guns and have
18                 emboldened would-be criminals by allowing them to commit crimes
                   using untraceable firearms.  Therefore, the Classification Letters
19                 issued to Polymer80 and similarly situated manufacturers have
                   substantially contributed to California's ghost gun violence epidemic.

20  *Id.* ¶ 102, at p. 45.

21         The Complaint proceeds to propound two Claims For Relief.  In Count One, plaintiffs aver

22
23  that ATF has acted in contravention of the APA 5 U.S.C. §§ 500 *et seq.*, in, *inter alia*, issuing the

24  three Classification Letters, since those letters were and are "not in accordance with law."  5 U.S.C.

25  § 706(2)(A).  *See id.* ¶ 120, at p. 51.  In this respect, Count One further alleges that the

26  Classification Letters run afoul of the GCA.  *Id.* ¶¶ 122-30, at pp. 52-53.  Count Two similarly

27  alleges that, *inter alia*, the Classification Letters were issued in "arbitrary and capricious" fashion,

28  also in violation of the APA.  5 U.S.C. § 706(2)(A).  *See id.* ¶ 134, at p. 54.

                                        6

The Complaint's "Prayer for Relief" contains three specific requests aimed specifically at Polymer80 for "an order and judgment," as follows:

> a. Declaring ATF's Classification Letters to Polymer80 (and other 80 percent receiver and frame manufacturers) and online guidance finding that 80 percent receivers and frames are not "firearms" under the GCA are null, void and with no force and effect;
>
> b. Declaring that ATF's Classification Letters to Polymer80 (and other 80 percent receiver and frame manufacturers) and online guidance finding that 80 percent receivers and frames are not "firearms" under the GCA are arbitrary and capricious within the meaning of 5 U.S.C. § 706(2)(A);
>
> c. Preliminary and permanently enjoining Defendants from implementing and enforcing ATF's Classification Letters to Polymer80 (and other 80 percent receiver and frame manufacturers) and online guidance finding that 80 percent receivers and frames are not "firearms" under the GCA . . . .

*Id.* at p. 56.

Recently, on November 30, 2020, defendants moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) the Federal Rules of Civil Procedure. Defendants have contended, *inter alia*, that for various reasons the Classification Letters pass muster as a matter of law under the APA, and that those Letters were and are neither "arbitrary" nor "capricious". The motion is pending as of the filing of this Memorandum.

Even more recent events are highly relevant to the Court's adjudication of the instant motion. Most tellingly, for some five hours, during the early morning of December 10, 2020, ATF agents executed the Search Warrant, as authorized on December 9, 2020 by United States Magistrate Judge for the District of Nevada, William G. Cobb, at Polymer80's Dayton, Nevada headquarters. Borges Decl. ¶ 9, at p. 3. At the same time, those agents also served Polymer80 with the expansive Subpoena directed to it, dated December 10, 2020, issued out of the United States District Court for the Central District of California in support of a criminal investigation being conducted by both the United States Attorney for that District (an arm of DOJ) and ATF. *Id.* As the Borges Declaration makes more than clear, the events of December 10, 2020 and their

7

aftermath have demonstrated that there is now a patently adversarial relationship between Polymer80, on one hand, and defendants DOJ and ATF, on the other.

Indeed, that Search Warrant sought detailed and sensitive information related to, *inter alia*, numerous Polymer80 products and/or "kits" that have some connection to the Classification Letters at the center of this action. Moreover, it now appears to be ATF's new-found position that certain of Polymer80's so-called "Buy Build Shoot Kits," including the Kit linked with the same Glock PF940C Blanks that ATF's January 2017 Classification Letter pronounced "*not firearms*," *do* constitute "firearms" under the GCA, a stance that ATF prior to December 10, 2020 had never articulated to Polymer80 or the public before. *Id.* ¶¶ 12-14, at p. 4-5. Furthermore and not surprisingly, an Assistant United States Attorney for the Central District of California has informed Polymer80 that it is under criminal investigation by a Grand Jury in that District, and that that investigation engendered the Search Warrant and Subpoena. *Id.* ¶ 15, at p. 5. Suffice to say, as of the filing of this paper, no reasonable observer, given these palpably adversarial recent interactions and those new disclosures by the government within the past two weeks, could responsibly contend or believe that DOJ and/or ATF can adequately represent the interests of Polymer80 in this proceeding. Accordingly, this Motion has ensued.

To the best of our knowledge, this Court has yet to rule upon defendants' potentially dispositive, pending motion and has set an initial Case Management Conference for January 21, 2021.

**Memo of Points and Authorities**                                        **Case No. 3:20-cv-06761**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I**

**THE COURT SHOULD GRANT THE INSTANT MOTION.**

As illustrated below, the legal standards governing this Motion are clear and settled. Thereunder, Polymer80 is entitled to intervene in this action as of right pursuant to Fed. R. Civ. P. 24(a). Alternatively, should this Court disagree, Polymer80's, "permissive intervention" under Fed. R. Civ. P. 24(b) is warranted here.

**A. Polymer80 Is Entitled To Intervention As Of Right.**

Rule 24(a)(2) of the Federal Rules of Civil Procedure mandates that a Court award intervention "as of right" to any nonparty, who "claims an interest relating to the property or transaction that is subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." To intervene as of right, then, an applicant must show that the: (i) application is timely; (ii) intervenor has a significant protectable interest relating to the property or transaction that is subject of the action; (iii) disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (iv) existing parties may not adequately represent the applicant's interest. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) ("*Citizens*") (internal citation omitted); *Sierra Club v. U.S.E.P.A.*, 995 F.2d 1478, 1481 (9th Cir. 1993) ("*Sierra Club*"). While the proposed intervenor bears the burden of showing that those four elements are met, "the requirements are broadly interpreted in favor of intervention." *Id. See also Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) ("*Southwest Center*") ("In general, we construe Rule 24(a) liberally in favor of potential intervenors."). In fact, "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) ("*Wilderness Soc'y*"), citing *United States v. City of*

9

*Los Angeles*, 288 F.3d 391, 397-98 (9th Cir. 2002) ("*City of Los Angeles*").

For the reasons that follow, Polymer80 easily meets these entrenched standards and is entitled to intervene in this action "as of right" pursuant to Fed. R. Civ. P. 24(a)(2).

### 1. **Polymer80's Motion is Timely.**

The first factor -- timeliness -- governing a motion to intervene "is a flexible concept." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) ("*Alisal*"). It is "determined by the totality of the circumstances facing would-be intervenors[.]" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016). Three factors guide a determination as to timeliness: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.* (citation omitted).

Polymer80 has filed this motion within three months after commencement of this action and a month prior to the initial January 21, 2021 Case Management Conference set by this Court. We are aware of no authority in this District or the Ninth Circuit that would -- even remotely -- suggest that the instant application is untimely. In truth, intervention motions made later in other cases have been deemed timely. *United States v. Aerojet Fen. Co.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (intervention motion timely, when filed four months after learning of consent decree); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (intervention motion timely filed four months after commencement of suit, with the Court noting that that "a very early stage" of the case). *See also Blake v. Pallan*, 554 F.2d 947, 951-52 (9th Cir. 1977) (intervention timely eleven months after filing of the Complaint); *Nikon Corp. v. ASML Lithography B.V.*, 222 F.R.D. 647, 649 (N.D. Cal. 2004) (intervention timely, when made "during the discovery phase of this protracted litigation, a period well before this Court has addressed any of the parties'… dispositive motions").

There is, consequently, no question but that Polymer80's Motion is timely.

10

**2.   Polymer80 Has A Significant Protectable Interest In The Outcome Of This Action.**

At its core, the second "significant protectable interest" element amounts to whether or not the intervenor "will suffer a practical impairment of [its] interests as a result of the pending litigation." *Cal ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("*Lockyer*"). Intervention as of right is especially warranted, where the relief "sought by plaintiff will have direct, immediate and harmful effects upon [the proposed intervenor's] legally protectable interests." *Southwest Center*, 268 F.3d at 818.

As the Borges Declaration establishes, if plaintiffs here are successful in causing the invalidation or withdrawal of the Classification Letters, well over half of Polymer80's average annual revenue could be lost -- a truly sizable portion of the Company's business.  Borges Decl. ¶ 6, at p. 2.  Such a possible blow certainly qualifies as a sufficient "practical impairment" of Polymer80's interests so as to meet the "significant protectable interest" test.  *Southwest Center*, 268 F.2d at 818.  *See also Ctr. for Biological Diversity v. U.S. Fish & Wildlife*, 2012 WL 13049186 at *2 (N.D. Cal. Mar. 22, 2012) ("*Biological Diversity*") (holders of pesticide licenses permitted to intervene, where case threatened total or partial revocation of those licenses, possibly subjecting intervenors to large financial losses); *United Farm Workers v. U.S.E.P.A.*, 2008 WL 3929140 at *2 (N.D. Cal. Aug 26, 2008) ("*United Farm Workers*") (intervenor as of right had significantly protectable interest as the predominant manufacturer of chemicals, whose registrations were under attack).

In addition, an <u>economic</u> interest that is "concrete and related to the underlying subject matter of the action" may support an intervention as of right.  *Alisal,* 370 F.3d at 919-20.  Moreover, a "non-speculative economic interest may be sufficient to support a right of intervention."  *Id., citing Arakaki v. Cayeteno*, 324 F.3d 1078, 1088 (9th Cir. 2003) ("*Arakaki*").  Polymer80 certainly has such an economic interest here.  *See* Borges Decl. ¶ 6, at p. 2.

11

### 3.   The Disposition Of This Action May Impair Polymer80's Ability To Protect Its Interests.

The third factor, closely related to the second, is whether a proposed intervenor is "so situated that the disposition of the action may as a practical matter impair or impede the movant's ability to protect its interest." Fed. R. Civ. P. 24(a)(2).  The inquiry, significantly, is "whether the [Court's decision] 'may' impair rights 'as a practical matter' rather than whether the decree will 'necessarily' impair them." *City of Los Angeles*, 288 F.3d at 401.  The Advisory Committee Notes to Rule 24(a) are also instructive and state that "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 Advisory Comm. nn. (Am. 1966).  At bottom, once a movant's interest is established, a Court should have "little difficulty concluding that the disposition of th[e] case may, as a practical matter, affect" the intervenor. *Citizens*, 647 F.3d at 898.  Furthermore, where an action can potentially subject the intervenor to substantial government regulation or meaningfully change how the intervenor does business, the requisite impairment may well exist. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).

Again, the Borges Declaration demonstrates, given the volume of Polymer80's revenue and business that may be prejudiced by and/or lost through an adverse outcome as to the Classification Letters in this case, that the instant Motion passes muster under this third controlling consideration.  Without question, such an outcome "may... impair [the Company's] rights... as a practical matter." *City of Los Angeles,* 288 F.3d at 401.  This action unquestionably threatens Polymer80's interests.

### 4.   These Defendants Do Not And Cannot "Adequately Represent" Polymer80.

In assessing the fourth factor for intervention as of right -- whether or not a present party will adequately represent an intervenor-applicant's interests -- this Court should consider "several factors, including whether [a present party] will undoubtedly make all of the intervenor's

12

arguments, whether [a present party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) ("*Prete*"), quoting *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).  The showing required to meet this test is "minimal" and "satisfied if the applicant shows that representation of its interests 'may be' inadequate[.]" *Prete,* 438 F.3d at 956 (internal citations omitted)"  "A proposed intervenor should be treated as the best judge whether the existing parties adequately represent… [its] interests, and … any doubt regarding adequacy of representation should be resolved in [its] favor." 6 Edward J. Brunet, Moore's Federal Practice § 24.03[4][a] (3d ed. 1997).  *See also In Def. of Animals v. U.S. Dep't of the Interior*, No. 2-10-cv-1852, 2011 WL 1085991 at *3 (Mar. 21, 2011 E.D. Cal. 2011).

Additionally, Polymer80 well recognizes the established presumption that "when the government is acting on behalf of a constituency that it represents . . . it is presumed that the government adequately represents its citizens when the [party seeking intervention] shares the same interests." *Sierra Club v. EPA*, No. 13-cv-2809-YGR, 2013 WL 5568253, at *4 (N.D. Cal. Oct. 9, 2013), *citing Arakaki*, 324 F.3d at 1086; *City of L.A.*, 288 F.3d at 401; and *Gonzalez v. Ariz.*, 485 F.3d 1041, 1052 (9th Cir. 2007).  Nevertheless, where the government is involved, "inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public." *League of Wilderness Defenders--Blue Mountain Biodiversity Project v. Forsgren*, 184 F. Supp. 2d 1058, 1061 (D. Or. 2002).  And, while Polymer80 concedes that this presumption of adequacy "must be rebutted with a compelling showing" (*see Citizens*, 647 F.3d at 898 (citation omitted)), it cannot credibly be claimed at this juncture that DOJ and/or ATF represent or share the same interests as Polymer80.  *See* Borges Decl. ¶¶ 8-15, at pp. 2-5.  As such, Polymer80 has made the requisite "compelling showing."

We turn now, *seriatim*, to the factors relevant to the Court's "adequate representation" calculus and determination.

13

**(a) <u>Defendants Surely Will Not Make All Of Polymer80's Arguments.</u>**

In the first instance, it is indisputable DOJ and ATF are litigating on behalf of the general public and so are obliged to consider a wide spectrum of views, unlike Polymer80, which has a singular traditionally corporate focus.  To be sure, those public interests, as allegedly facilitated here by DOJ and ATF, often come into conflict with those of profit-making entities.  *See Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds*, *Wilderness Soc'y,* 630 F.3d at 1177-80.  *See also Biological Diversity*, 2012 WL 13049186 at *2 ("While the government represents the interests of the public at large, [intervenor] represents its own financial interests in the potential regulation of its product.").  Where, as here, an intervenor has clear private interests, the difference between them and the public interest is sufficient to warrant intervention.  *See Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *Fresno Cty. v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980).

The Borges Declaration leaves no doubt that at least as of and after December 10, 2020, and perhaps even before, defendants DOJ and ATF, and certain of their top officials  in sundry jurisdictions, have had a highly adversarial relationship with Polymer80, are investigating the Company, and are seeking to propagate the notion that certain of the Company's products, including those directly at issue in this case (the PF940C Blanks addressed in the January 2017 Classification Letter), are "firearms" to the great detriment of Polymer80.  Actually, little would be more destructive of Polymer80's commercial well-being.  Since one of the core issues in this case will be whether the ATF's prior determinations in the Classification Letters that the subject Company products (including those Blanks) are not such "firearms" under the GCA, it is difficult to fathom how, particularly given the upcoming change in Administrations and the realities arising from the facts set forth in the Borges Declaration, Polymer80 can effectively coexist "on the same side of the 'V.'" as the government defendants, let alone how those defendants could possibly

advance all of Polymer80's arguments about its products and overall interests. That surely would be asking and expecting much too much.

In this regard, Polymer80 recognizes that but ten (10) days before execution of the Search Warrant and service of the Subpoena, the government defendants herein moved to dismiss the Complaint and essentially argued that all three Classification Letters were lawfully and properly issued and were and are by no means "arbitrary and capricious." That helpful and sound motion is juxtaposed against events since December 10, 2020, which raise a host of key questions and, regrettably, apparent contradictions as to the government's positions on the subject Polymer80 products. With those key questions presently unanswered and those apparent contradictions unresolved, the only fair and reasonable conclusion is that Polymer80's interests would be severely jeopardized, if the Company were forced to rely upon those defendants to advocate for and forward all of its interests. Moreover, to the extent that the government defendants believe that they can honestly and consistently take the positions espoused in their dismissal motion, while simultaneously pursuing a criminal investigation of the Company on the grounds indicated in the papers supporting the Search Warrant, that belief also serves as cogent proof that those defendants do not and cannot adequately report Polymer80's interest in this case.

### (b) Neither DOJ, Nor ATF, Nor Their Officials Are Capable Of Or Willing To Make All Of Polymer80's Arguments.

Again, the necessarily adversarial nature of the current relationship between Polymer80 and DOJ/ATF and certain of their officials, as illustrated in the Borges Declaration, eviscerates any possible claim that those agencies and/or bureaucrats are capable of asserting, and are willing to assert, all of Polymer80's contentions in this matter. That indubitably adversarial interaction, which promises to go on for quite some time with Polymer80 under federal Grand Jury

15

investigation, ensures a widening legal and practical gulf between Polymer80's interests and those of the presently named defendants -- for an indefinite period.[3]

### (c)  Polymer80 Offers And Injects A Necessary Element Into This Action That Would Otherwise Be Missing And/Or Neglected.

Polymer80 is a "for profit" business, proud of its links with and commitment to its products and customers.  Even in the best of circumstances, two public entities and various affiliated public officials, whose highest responsibilities are plainly to public, not private, interests, do not and cannot responsibly embody and facilitate the goals and aspirations of a profit-oriented venture. Layering on top on that the demonstrably adversarial relationship currently existing between the federal government (especially DOJ and ATF) and Polymer80 tends to demonstrate that the Company would offer and inject into this case, if intervention were granted, elements outside the purview or predilections of those public entities and officials.

### (d)  Polymer80 Has Satisfied Its Obligations Under The "Minimal" Test For Showing The Inadequacy Of The Government's Representation Of It In This Action.

It is indisputable that ATF (and DOJ) have some explaining to do.  In January 2017, ATF concluded in its Classification Letter of that date that two of Polymer80's PF940C Blanks were not "firearms" under federal law.  This lawsuit, in part, challenges the legal correctness of that conclusion, and defendants, one would think, are duty-bound to thwart that challenge.  Now, in the wake of defendants' pending dismissal motion and the events of December 10, 2020 and thereafter, including the execution of the Search Warrant, service upon the Company of the Subpoena, and the pronouncement from a knowledgeable Assistant United States Attorney that Polymer80 is under criminal investigation -- the apparent premise of which is that Polymer80's Buy Build Shoot Kits relating to the PF940C Blanks (and component parts of those Kits) *are*

---

[3] The comments above about defendants' pending dismissal motion as juxtaposed against events since December 10, 2020 are equally applicable, and also ring true, in this respect.

**Memo of Points and Authorities**                                                    **Case No. 3:20-cv-06761**

"firearms" under federal law -- it is uncertain how DOJ and ATF will properly and convincingly defend this case, as pleaded, while also propagating and protecting all of Polymer80's interests.

In these premises, therefore, it is crystalline that the current defendants cannot possibly adequately represent the interests of Polymer80.  Terming their dilemma regarding their positions on the PF940C Blanks and related Kits a "conflict of interest" would be a vast understatement and misnomer, indeed.  Otherwise put, a huge contradiction has been exposed that, we submit, requires this Court to find that said defendants inadequately represent Polymer80's interests in this action.

### 5.   Thus, Polymer80 Has The Right To Intervene.

All in all, upon the extant record, there can be little doubt that Polymer80 is entitled to intervene as of right here, and that that result is in accord with numerous decisions from this Circuit and District.  *See, e.g.*, *Sierra Club*, 995 F.2d at 1482-84 (where intervenor held Clean Water Act permits that could have been modified as a result of the underlying litigation); *Biological Diversity*, 2012 WL 13049186 at *2 (where action could have caused the complete or partial revocation of intervenor's pesticide licenses); *United Farm Workers*, 2008 WL 3929140 at *2 (where action sought to curtail registration for certain pesticides, of which intervenor was the predominant manufacturer).  This Court should follow those rulings upon this Motion.

### B.   Alternatively, The Court Should Grant Polymer80 Permissive Intervention.

Permissive intervention under Fed. R. Civ. P 24(b)(1)(B), as the Ninth Circuit has "often stated," requires "(1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) ("*Freedom From Religion*"), citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir. 1992). As detailed below, Polymer80 can discharge its burden in each of the three requisite respects. Should the Court not accord intervention as of right, then Polymer80's permissive intervention, alternatively, is wholly warranted.

17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.     <u>The "Independent Ground For Jurisdiction" Factor Is Of No Moment Here.</u>

The jurisdictional prong of the permissive intervention test stems from the Court's concern that intervention may be used to inappropriately enlarge the jurisdiction of District Courts, most prevalently in diversity cases, where a proposed intervenor seeks to use permissive intervention to gain a federal forum for state-law claims in the absence of true subject matter jurisdiction. *Freedom From Religion*, 644 F.3d at 843.  However, in federal-question cases, as here, the identity of the parties is irrelevant, and the District Court's jurisdiction is grounded in the federal question(s) raised by plaintiffs. *Id.* at 844, citing 28 U.S.C. § 1331.  "The jurisdictional requirement, therefore, prevents the enlargement of federal jurisdiction in such cases only where a proposed intervenor seeks to bring new state-law claims. . . Where the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away. ... We therefore clarify that the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims.") *Id. See also Univ. of Cal. v. FEMA*, 2017 WL 11528958, at *2 (N.D. Cal. Oct. 26, 2017) ("[W]here the proposed intervenor in a federal-question case brings no new claims, the jurisdictional concern drops away.").  Accordingly, the initial permissive intervention factor is inconsequential in this action.

### 2.     <u>The Instant Motion Is Timely.</u>

For all of the reasons stated, and upon the authorities cited, in Section I A. 1. of this Memorandum, Polymer80's Motion is timely.

18

### 3. Common Questions Of Law And Fact Exist In The Complaint's Allegations And Polymer80's Core Position That All Three Classification Letters Were And Are Wholly Lawful And Proper.

The seminal allegation in the Complaint is that the three Classification Letters as to various Polymer80's products were and are unlawful and in contravention of the APA.  Polymer80, not surprisingly, takes a wholly contrary stance and contends that those Letters were and are lawful and correct in every respect.  Obviously, the Classification Letters embody the "common question of law and fact" needed for Polymer80 to permissively intervene in this case.

The Court may exercise its discretion to grant permissive intervention, where there is such a common question.  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2011) (finding Rule 24 "requires only that [the intervenor's] claim or defense and the main action have a question of law or fact in common," and thus "[c]lose scrutiny of the kind of interest of the intervenor is . . . especially inappropriate," quoting 7C Wright, Miller & Kane, Federal Practice and Procedure § 1911, 357–63 (2d ed. 1986)), *abrogated on other grounds, Wilderness Soc'y*, 630 F.3d at 1173.  *See also Levin Richmond Terminal Corp. v. City of Richmond*, --- F. Supp. 3d ----, 2020 WL 5074263, at *15 (N.D. Cal. Aug. 27, 2020) ("Proposed intervenors intend to defend the Ordinance against each of the claims raised in plaintiffs' complaints, and thus, their defenses share common questions of law with the main action.").

Thus, since the necessary "common question" exists *and* Polymer80 passes muster under the other two pertinent factors in the Court's decision-making, the Company's permissive intervention, alternatively, is warranted here.

19

1

## **CONCLUSION**

2
For all of the reasons set forth herein and in the remainder of the record of this matter, it is

3
respectfully submitted that the Court should grant the instant Motion and find that Polymer80:

4
(i) has the right to intervene herein pursuant to Fed. R. Civ. P. 24(a); or, alternatively, (ii) may

5
permissively intervene pursuant to Fed. R. Civ. P. 24(b); and (iii) should be awarded such further

6
relief as the Court may deem just and proper.

7

8

9
Dated:  December 21, 2020

Respectfully submitted,

10
⠀⠀⠀⠀⠀/s/ *John F. Olsen*
⠀⠀⠀⠀⠀⠀⠀⠀John F. Olsen (SBN 157465)

11
James J. McGuire*
Michael R. Patrick*

FERDINAND IP, LLP
800 West El Camino Real, Suite 180

12
Mark A. Berube*
(*pro hac vice application to be filed)

Mountain View, CA 94040
Phone: (858) 412-4515

13
Barton, LLP
711 Third Avenue, 14th floor

jolsen@fiplawgroup.com

14
New York, New York 10017
Phone:  212-687-6262

15

16
*Attorneys for Proposed Intervenor Polymer80*

17

18

19

20

21

22

23

24

25

26

27

28

**Memo of Points and Authorities**

**Case No. 3:20-cv-06761**