UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, and GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE,**<br><br>Plaintiffs,<br><br>v.<br><br>**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, REGINA LOMBARDO,** in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco, Firearms and Explosives, **MICHAEL R. CURTIS,** in his official capacity as Chief, Firearms Technology Industry Services Branch of Bureau of Alcohol, Tobacco, Firearms and Explosives, **UNITED STATES DEPARTMENT OF JUSTICE,** and **WILLIAM BARR,** in his official capacity as Attorney General of the United States,<br><br>Defendants. | **Case Number: 3:20-cv-06761-EMC**<br><br><br><br>**DECLARATION OF DAVID L. BORGES IN SUPPORT OF MOTION OF POLYMER80, INC. TO INTERVENE IN THIS ACTION** |

I, **David L. Borges**, hereby declare under penalties of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct to the best of my knowledge:

1. I am over eighteen (18) years of age, am fully competent to testify, have personal knowledge of the matters set forth herein, and respectfully submit this Declaration in support of the motion of Polymer80, Inc. ("Polymer80" or "Company") to intervene in this action.

2. I am a citizen of the United States of America and reside in the State of Texas.

3. I am one of the founders of Polymer80. From its inception in 2013 up to present, I have been both the Chief Executive Officer and Chief Financial Officer of the Company. As its senior officer, I am deeply familiar with all of its business and commercial activities.

4. Polymer80 is incorporated under the laws of the State of Nevada and has its principal place of business in Dayton, Nevada.

5. I am fully familiar with three "Classification Letters" issued to Polymer80 by the United States Bureau of Alcohol, Tobacco, Firearms and Explosive ("ATF") in February 2015, November 2015, and January 2017, respectively. By and through each of those Letters, ATF expressly concluded that several products of Polymer80, an AR-15 Pattern Receiver Casting, an AR-10 type item, and a "GC9" Blank and two "PF940C" Blanks, respectively, were *not* "firearms" under federal law. Such a "Blank" is essentially a casting in various stages not yet ready to house firing components   As a consequence, those Letters are extremely important to Polymer80 and key components and foundations of its business today.

6. Based upon my knowledge of Polymer80's business activities, were those Classification Letters to be invalidated, reversed, and/or withdrawn as a result of this action or otherwise, it is my considered opinion that Polymer80's annual revenue would be diminished by more than fifty (50) percent, and perhaps by as much as seventy-five (75) percent. In short, the invalidation, reversal, and/or withdrawal of those Letters would be a crippling blow to Polymer80 and its commercial prospects and interests.

7. From in or about 2019 until December 15, 2020, Polymer80 sold and distributed "Buy Build Shoot Kits" that contain various components and parts that enable our customers to play a role in building a final product. Since its founding, the Company has also sold and distributed many other products.

8. Neither plaintiffs (obviously) nor defendants in this action can or do adequately represent the interests of Polymer80. To begin with, all of the current defendants are public agencies or officials, whose public interests and responsibilities are significantly different than those of Polymer80, a private, for-profit corporation. Even absent recent events, which I am about

to describe, those public entities and individuals could not possibly speak to, represent, or fully advocate for all of Polymer80's interests and concerns.

9. At or about 5 a.m., Pacific Standard Time, on December 10, 2020, a group of ATF agents, wholly previously unannounced and without any forewarning to Polymer80, appeared at the Company's Dayton, Nevada headquarters with a "Search and Seizure Warrant" ("Search Warrant"), authorized by United States Magistrate Judge for the District of Nevada William G. Cobb. The agents remained on premises for at least five hours, during which time they seized and carried away voluminous information (most of it digital and contained on computers) about the Company. In addition, the agents also served Polymer80 with a federal Grand Jury Subpoena ("Subpoena"), dated December 10, 2020, emanating from the Office of the United States Attorney for the Central District of California, referencing on its face ATF and that Office, itself an arm of the Department of Justice ("DOJ").

10. The Search Warrant and Subpoena came as a surprise to me and Polymer80, not only because they were, as noted, unannounced but also because for some time, and as of December 10, 2020, Polymer80 had been fully cooperating with law enforcement agencies across the country and typically been able to resolve all questions with them consensually. Indeed, within the several weeks before December 10, 2020, Polymer80 had engaged in active and cooperative dialogue with federal law enforcement authorities in the States of Delaware, Maryland, and California.

11. In fact, in the latter State on November 25, 2020, shortly after learning that one of the Company's customers -- one Saeed Najah Ghazi -- was on the "Wanted List" of the Federal Bureau of Investigation ("FBI"), counsel to the Company, with its full knowledge and approval and absent any request from the government, provided to the FBI a great deal of data about that individual. The next day, the FBI expressly thanked Polymer80 in writing.

12. No one from the government provided Polymer80 with the Affidavit or other papers supporting the application for the Search Warrant until December 13, 2020. At that point, after receiving a written request from counsel to Polymer80, an Assistant United States Attorney for the Central District of California turned it over.

13. I have carefully read that Affidavit, as sworn to by ATF Special Agent Tolliver Hart on December 9, 2020, ("Hart Affidavit"). A substantial portion of its contents was extremely surprising and disappointing to me and Polymer80. Among other things, the Hart Affidavit stated as follows:

- Polymer80's PF940C and PF940v2 Buy Build Shoot Kits are now viewed by ATF as "firearms" under federal law.

- As a result, according to ATF, Polymer80 itself has possibly been involved in criminal activities related to the sale and distribution of such Kits.

- It may also be ATF's position that the sale and distribution of the individual component items contained within those Kits may also constitute criminal activity.

14. The PF940C Kit alluded to above and now deemed a "firearm" by ATF relates to the same two aforementioned PF940C Blanks addressed in the January 2017 Classification Letter. Thus, whereas in that Letter ATF concluded that those Blanks were *not* "firearms" under federal law, the Hart Affidavit seems to assert that the Company's Buy Build Shoot Kits that include those Blanks (as well as other individual items/parts within those Kits) *are* such "firearms." The inconsistency is glaring and obvious and a further reflection of why ATF cannot adequately represent the interests of the Company in this case.

15. On December 14, 2020, the same aforementioned Assistant United States Attorney for the Central District of California, who had the prior day turned over to the Company the Hart Affidavit and other materials related to the Search Warrant, advised Polymer80 that it was under investigation by his Office/DOJ and ATF, as reflected by the Search Warrant and Subpoena. Consequently, DOJ (as with ATF) cannot possibly adequately represent Polymer80's interests in this case.

Dated, this 21st day of December, 2020.

_____
David L. Borges