George M. Lee [Cal. SBN 172982]
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Tel. (415) 979-0500
Fax (415) 979-0511
gml@seilerepstein.com

Cody Wisniewski*
*Admitted *Pro hac vice*
**MOUNTAIN STATES LEGAL FOUNDATION**
2596 South Lewis Way
Lakewood, CO 80227
Tel. (303) 292-2021
Fax (303) 292-1980
cody@mslegal.org

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, and GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE,<br><br>        *Petitioners*,<br><br>    v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; REGINA LOMBARDO, in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco Firearms and Explosives; MICHAEL R. CURTIS, in his official capacity as Chief, Firearms Technology Industry Services Branch of Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and WILLIAM BARR, in his official capacity as Attorney General of the United States,<br><br>        *Defendants*,<br><br>    and<br><br>ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; and FIREARMS POLICY COALITION, INC.,<br><br>        *Applicants in Intervention*. | Case Number: 3:20-cv-06761-EMC<br><br>**REPLY IN SUPPORT OF ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; AND FIREARMS POLICY COALITION, INC.'S MOTION TO INTERVENE** |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. Federal Defendants Do Not Adequately Represent Applicants' Interests | 3 |
| A. Applicants Add Necessary Elements That Other Parties Would Neglect | 3 |
| B. This Circuit's Standard Only Requires Applicants Demonstrate That Federal Defendants' Representation "May Be" Inadequate | 7 |
| II. Applicants Have Demonstrated Significant Interests That Will Be Impaired If Petitioners Are Successful | 9 |
| III. Petitioners' Request That This Court Review The Appropriateness Of The ATF's Operative Definition Of "Firearms" Necessarily Implicates The Second Amendment | 11 |
| CONCLUSION | 13 |
| CERTIFICATE OF SERVICE | 14 |

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                     **Page(s)**

3

*Arakaki v. Cayetano,*
    324 F.3d 1078 (9th Cir. 2003)............................................................... 3

4

5

*California ex rel. Lockyer v. United States,*
    450 F.3d 436 (9th Cir. 2006)........................................................... 4, 6, 9

6

*Citizens for Balanced Use v. Montana Wilderness Ass'n,*
7
    647 F.3d 893 (9th Cir. 2011)........................................................... 3, 4, 7

8

*Forest Conservation Council v. U.S. Forest Serv.,*
9
    66 F.3d 1489 (9th Cir. 1995)............................................................... 9

10

*Idaho Farm Bureau Fed'n v. Babbitt,*
11
    58 F.3d 1392 (9th Cir. 1995)............................................................... 9

12

*Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.,*
13
    463 U.S. 29 (1983)............................................................................ 5

14

*Sagebrush Rebellion, Inc. v. Watt,*
    713 F.2d 525 (9th Cir. 1983)............................................................... 4

15

16

*Smith v. Los Angeles Unified Sch. Dist.,*
    830 F.3d 843 (9th Cir. 2016)............................................................... 8

17

*Sw. Ctr. For Biological Diversity v Berg,*
18
    268 F.3d 810 (9th Cir. 2001)........................................................... 7, 9

19

*Trbovich v. United Mine Workers of Am.,*
20
    404 U.S. 528 (1972)......................................................................... 7

21

*United States ex rel. McGough v. Covington Techs. Co.,*
22
    967 F.2d 1391 (9th Cir. 1992)............................................................. 7

23

*United States v. Alisal Water Corp.,*
    370 F.3d 915 (9th Cir. 2004)........................................................... 8, 9

24

25

*United States v. Los Angeles,*
    288 F.3d 391 (9th Cir. 2002)............................................................... 7

26

*Utah Ass'n of Cntys. v. Clinton,*
27
    255 F.3d 1246 (10th Cir. 2001)........................................................ 4, 7

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*WildEarth Guardians v. U.S. Forest Serv.*,
    573 F.3d 992 (10th Cir. 2009).................................................... 4, 7

*Wilderness Soc'y v. U.S. Forest Serv.*,
    630 F.3d 1173 (9th Cir 2011)..................................................... 9

**Statutes**

18 U.S.C. 922.......................................................................... 12

26 U.S.C. 5822........................................................................ 12

**Rules**

Fed. R. Civ. P. 5...................................................................... 14

Fed. R. Civ. P. 19.................................................................... 5

Fed. R. Civ. P. 24(a)(2)............................................................ 13

Fed. R. Civ. P. 24(b).............................................................. 13

**Regulations**

27 CFR 478.39......................................................................... 12

27 CFR 479.62......................................................................... 12

27 CFR 479.105....................................................................... 12

1    Applicants in Intervention, Zachary Fort; Frederick Barton; BlackHawk Manufacturing
2    Group, Inc., d/b/a 80% Arms ("80% Arms"); and Firearms Policy Coalition, Inc. ("FPC")
3    (collectively, "Applicants"), have demonstrated a direct and personalized interest in the matter
4    before this Court that is not adequately represented by Federal Defendants and more than justifies
5    Applicants' intervention in this matter.

## INTRODUCTION

7    Federal Defendants admit they do not adequately represent Applicants' interests in
8    upholding the legal conclusion that Non-Firearm Objects (as defined in Applicants' *Motion*) are
9    not "firearms" as defined by the Gun Control Act of 1968 ("GCA"). Federal Defendants do not
10   produce, sell, buy, or own Non-Firearm Objects, nor will they be materially or economically
11   harmed if this Court rules in Petitioners' favor. In contrast, Applicant 80% Arms has at least one
12   determination letter akin to the Polymer80 Letters challenged by Petitioners, has been directly
13   implicated in Petitioners' Complaint, and could have its currently lawful business practice made
14   illegal should Petitioners succeed. *See Complaint*, No. 20-cv-06761-EMC, ECF No. 1 ¶ 77 n.83[1]
15   (citing to an Applicant 80% Arms Classification Letter to support Petitioners' second claim for
16   relief). Remaining Applicants each own Non-Firearm Objects and intend to continue to directly
17   purchase Non-Firearm Objects in the future—which would be made illegal if Petitioners prevail.
18   Applicant FPC, whose members include other Applicants, also represents numerous, similarly
19   situated individuals across the United States. Federal Defendants serve in none of these roles and
20   do not represent Applicants' reliance or economic interests in the ATF's current interpretation.
21   Instead, Federal Defendants must balance competing statutory and regulatory duties, while
22   managing agency resource concerns and may therefore compromise legally defensible positions
23   that Applicants will uniquely advance.

24   Applicants' goal is not to obtain a broad ruling or "make this case about something" other
25   than the ATF's interpretation at issue. Applicants' goal is to preserve the status quo and uphold

---

[1] All citations to the Court's CM/ECF system are to the electronic docket maintained for this case and the page number citations are to the page numbers applied by the CM/ECF system, not to internal pagination numbers.

the longstanding definition of "firearm" under the GCA.[2] Applicants have relied on that definition to establish business and personal practices, have livelihoods at stake, and can offer this Court unique insight into the law-abiding citizens and businesses within the Non-Firearm Object industry—interests not represented by Federal Defendants and wrongly demonized by Petitioners. Furthermore, the ATF's recent actions, detailed below, demonstrate that the ATF's interests diverge from Applicants'. Excluding Applicants from this matter would allow Petitioners' unchecked mischaracterizations of Applicants' actions to monopolize the narrative, disallowing any representation or defense of Applicants' interests, and depriving the Court of the truth finding purpose of the adversarial system.

Petitioners attempt to discredit Applicants' interest by downplaying the extent of Petitioners' request for relief is unpersuasive and inappropriate. The erosion, or complete loss, of Applicants' business, personal practices, and property is not a "sideshow" or a "waste of this Court's time." *Pet. Resp.*, at 9. If Petitioners succeed, Applicants will be directly affected even though Applicant 80% Arms' Classification Letters are not specifically challenged and even though individual Applicants could acquire actual firearms, instead of Non-Firearm Objects. Petitioners seek to alter *the entire regulatory regime* for Non-Firearm Objects. If Petitioners are successful, the ATF will be forced to undergo a rulemaking, where it may be forced to consider Non-Firearm Objects as "firearms." If that happens, Applicant 80% Arms' Classification Letters would likely no longer allow it to sell Non-Firearm Objects direct to consumers.[3] Applicants would

---

[2] Petitioners also misstate the extent of Applicants' argument to support Petitioners' contention that if this Court were to allow Applicants permissive intervention to defend their substantial interests, it would expand the scope of or "unduly delay and prejudice" Petitioners' Administrative Procedure Act ("APA") claims. *Pet. Resp.*, at 22. Based on the actual extent of Applicants' interest and argument, as established in Applicants' Motion and further demonstrated *infra*, this case will remain limited to the APA issues before the Court. Further, Petitioners do not explain how they can be prejudiced by Applicants' inclusion when Petitioners specifically implicate Applicants in their Complaint and arguments. Finally, Applicants' will not delay adjudication of this matter. Despite Petitioners requesting and receiving multiple extensions of time in this matter, Applicants have not requested any such extensions. Applicants also fully expect to comply, without extension, with all currently established briefing deadlines. Applicants' additional arguments in this Reply also support Applicants' permissive intervention in this matter, under the standards and argument as fully presented to this Court in Applicants' Motion. ECF Nos. 24, at 2; 24-1, at 17–18.

[3] While Petitioners correctly note that Applicant 80% Arms offers some serialization options, that would not allow Applicant 80% Arms to sell Non-Firearm Objects directly to customers should the ATF alter its definition to consider those objects "firearms." Instead, those sales would be subject to the universe of current federal and state firearm regulation, which are much more restrictive than mere serialization.

also be prohibited from purchasing and using materials to individually manufacture personal use firearms—a practice Petitioners do not contest as illegal and that is protected by the Second Amendment.

If Petitioners succeed, the ATF may be required to regulate materials of all kinds, including Non-Firearm Objects, simply because individuals, through their own knowledge and skill, can manufacture them into firearms. This Court should grant Applicants intervention to defend their interest, their industry, and their personal practices from Petitioners' attack.

## ARGUMENT

## I. FEDERAL DEFENDANTS DO NOT ADEQUATELY REPRESENT APPLICANTS' INTERESTS

### A. Applicants Add Necessary Elements That Other Parties Would Neglect

Applicants have met this Circuit's liberal standard for demonstrating an inadequacy of representation—an inadequacy explicitly supported by Federal Defendants. *See Federal Defendants' Response to Motion to Intervene* ("*Def. Resp.*"), ECF No. 38, at 3–5. Not only have Applicants demonstrated a substantial reliance and economic interest in the ATF's current interpretation of "firearm," Petitioners seek to misuse Applicant 80% Arms' statements and website while preventing Applicants from defending themselves and their industry. Only, Applicants, however, can provide this Court with information and expertise relating to the Non-Firearm Object industry and market participants, and the interplay between federal law and individual rights implicated in the relief Petitioners' seek.

When determining the adequacy, or lack thereof, of existing parties' representation of a proposed intervenor's interest, this Circuit looks to: (1) whether the interest of an existing party is such that it will undoubtedly make all of a proposed intervenor's arguments, (2) whether the existing party is capable and willing to make such arguments, and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that existing parties would neglect. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a

particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001)). A proposed intervenor may meet all three elements if it demonstrates a point of view fundamentally different from the existing parties or if the governmental party has abandoned or conceded a potentially meritorious reading of the statute at issue. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 444–45 (9th Cir. 2006). Additional expertise to that of the government agency can also prove a material difference in perspective. *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

In *Sagebrush Rebellion, Inc.*, this Circuit held that a national wildlife organization and other applicants were entitled to intervene as a matter of right because "[i]n addition to having expertise apart from that of the Secretary, the intervenor offers a perspective which differs materially from that of the present parties to this litigation." 713 F.2d at 528. This Circuit specifically noted that the proposed intervenor's additional expertise and materially different perspective offered a necessary element to the proceedings to support their intervention. *Id.* at 528. Similarly, in *Citizens for Balanced Use*, this Circuit recognized that an applicant's interest in securing the broadest possible restriction, in contrast to the Forest Service's position that a narrower restriction would suffice, "represents more than a mere difference in litigation strategy, which might not normally justify intervention, but rather demonstrates the fundamentally differing points of view between Applicants and the Forest Service on the litigation as a whole." 647 F.3d at 899 (citing *California ex rel. Lockyer*, 450 F.3d at 444–45). This fundamentally different point of view of proposed intervenors qualified as a compelling showing of inadequate representation by the existing government party.

Federal Defendants here acknowledge that the interests of Applicants Blackhawk, Fort, and Barton are substantially different from those of Federal Defendants. *Def. Resp.*, at 3–5. Federal Defendants specifically support intervention as of right for Applicant 80% Arms, noting that because Petitioners "criticize ATF's action in part based on statements of [80% Arms] subsequent to ATF's action . . . the APA may constrain ATF's ability to adequately represent [80% Arms']

interests . . . ." *Def. Resp.*, at 3. Petitioners argue otherwise by claiming they "do *not* seek to set aside ATF Classification Letters for any products manufactured by putative intervenor [80% Arms], as those letters fall outside the applicable statute of limitations." *Pet. Resp.*, at 12. This argument fails for two reasons. First, Petitioners seek to undermine the definition of "firearm" underpinning Applicant 80% Arms' Classification Letters—thereby seeking to undermine the very foundation of Applicant 80% Arms' currently lawful business.[4] Second, Petitioners specifically cite to Applicant 80% Arms' Classification Letter to support the proposition that "[i]ndividually and even more so collectively, these Classification Letters have resulted in exponential explosion of the size of the [Non-Firearm Object] market . . . ." *Compl.* ¶ 77. This fact, Petitioners argue, supports their contention that the ATF "entirely fail[s] to consider an important aspect of the problem . . . ." *Compl.* ¶ 138–41 (quoting *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Petitioners' inability to challenge the specific letters issued to Applicant 80% Arms does not mean Petitioners can seek to undermine the entire Non-Firearms Object industry, specifically implicate Applicants by name, use Applicants' statements to support Petitioners' argument, and then exclude Applicants from the litigation.[5]

As to Applicants Fort and Barton, Federal Defendants note that their "alleged reliance interests are substantially different from the interests of the manufacturers of [Non-Firearm Objects] to whom ATF's classification letters are issued . . . and this weighs in favor of intervention." *Def. Resp.*, at 4–5.[6] Accordingly, Federal Defendants do not adequately represent Applicant Fort's and Barton's reliance interests.

Finally, while Federal Defendants take no position on Applicant FPC's intervention, Applicants note that FPC not only represents the interests of its members—including Applicants

---

[4] Petitioners specifically argue that "individuals and businesses alike rely on ATF's Classification Letters . . . when purchasing, selling, and/or designing [Non-Firearm Objects] in the United States." *Compl.* ¶ 85. Applicants, in their Proposed Answer, "admit that they rely, in part, on the ATF's Classification Letters, as well as a number of other sources, when purchasing, selling, and/or buying Non-Firearm Objects." ECF No. 24-6 ¶ 85.

[5] Of note, Applicant 80% Arms is a party that is required to be joined in this lawsuit pursuant to Federal Rule of Civil Procedure 19, which joinder Applicant 80% Arms may pursue should this Court deny Applicants' intervention.

[6] Federal Defendants argue this Court should grant Applicants Fort and Barton permissive intervention, but Applicants note that Federal Defendants' statements demonstrate they do not adequately represent the interests of Applicants Fort and Barton and thus support Applicants argument for intervention as of right as well as Applicants' permissive intervention.

Fort, Barton, and 80% Arms, and those in substantially similar positions—but FPC is also an individual owner and purchaser of Non-Firearm Objects. Applicant FPC uses those objects to educate legislatures, politicians, and the public about Non-Firearm Objects, the GCA, and the proper definition of a "firearm." ECF No. 24-5 ¶¶ 9–11. Applicant FPC's intervention allows this Court to conveniently and efficiently grant intervention to all of FPC's members, through FPC's representation of their shared interests.

In addition to Federal Defendants affirmative disclaimer of adequate representation, a likelihood that a government party will abandon or concede a potentially meritorious reading of the statute is sufficient to meet a showing for inadequate representation. *California ex rel. Lockyer*, 450 F.3d at 444. Recent events demonstrate that the ATF may have already shifted its interpretation of the definition of "firearms"—in a way that significantly departs from Applicants' interests. ATF evidenced this drastic change in policy on December 11, 2020, when it raided a Polymer80 facility in Dayton, Nevada.[7] According to the affidavit used to apply for the search warrant, ATF's investigation of Polymer80 hinges on the sale of a "Buy Build Shoot Kit," which includes a Non-Firearm Object and other non-firearm parts.[8] In the affidavit, the ATF relies on a definition of "firearm" that may include Non-Firearm Objects in certain circumstances and is, in part, based on temporal considerations—a definition more consistent with Petitioners' desired outcome than Applicants' interests.[9] Given the ATF's change in course, Federal Defendants interests in the outcome of this case are at odds, and certainly do not cover the full extent of Applicants' interests. Federal Defendants do not adequately and completely represent Applicants' interests.

---

[7] Scott Glover, *Feds raid 'ghost gun' maker whose products they say are linked to 'hundreds of crimes'*, CNN (Dec. 11, 2020 2:52 PM), https://www.cnn.com/2020/12/11/us/atf-raid-ghost-gun-manufacturer-invs/index.html.

[8] "The ATF Senior Special Agent, who is an ATF certified firearms expert, determined that the 'Buy Build Shoot Kit' as designed, manufactured, and distributed by Polymer80, is a 'firearm' as defined under federal law, as a weapon 'which will or is designed or may readily be converted to expel a projective by the action of an explosive,' as well as 'handgun,' defined as 'a firearm which has a short stock and is designed to be held and fired by the use of a single hand' and 'any combination of parts form which a firearm . . . can be assembled.'" *Hart Affidavit* ¶8, Case No. 3:20-mj-123-WGC (D. Nev. Dec. 9, 2020). A copy of the affidavit is also available at https://s.wsj.net/public/resources/documents/ghostraid-121420-warrant.pdf.

[9] The ATF notes that the "kit" only contains "components" and that "a confidential informant working with the ATF assembled a fully functional firearm in approximately 21 minutes." *Hart Affidavit* ¶ 8.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

As demonstrated by Ninth Circuit precedent and Federal Defendant's own statements, Federal Defendants do not adequately represent Applicants' substantial interests in the outcome of this litigation. Applicants' unique perspective as consumers and businesses involved in the Non-Firearm Object market would provide a perspective that differs materially from that of the present parties and provides necessary elements to the action neglected by the existing parties.

### B.     This Circuit's Standard Only Requires Applicants Demonstrate That Federal Defendants' Representation "May Be" Inadequate

Petitioners' assertion that Applicants are adequately represented, despite the foregoing, misconstrues the liberal Supreme Court standard employed by this Circuit in allowing for intervention where an applicant's interest *may not* be adequately represented. Applicants in this case have appropriately demonstrated inadequate representation, in addition to the other elements of intervention as of right, and therefore meet this Circuit's lenient standard for intervention.

"The requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest '*may be*' inadequate; and the burden of making that showing *should be treated as minimal*." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citing 3B J. MOORE, FEDERAL PRACTICE § 24.09—1(4) (1969)) (emphasis added). In *Trbovich*, the Supreme Court determined that the Secretary of Labor might not adequately represent the proposed intervenor's interests even though the Secretary had a *statutory obligation* to represent the individual, because the Secretary had a competing interest in protecting a broader public interest. *Id.* at 538–39.

In the Ninth Circuit, the test for intervention is also liberally construed in favor of intervenors. *United States ex rel. McGough v. Covington Techs. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992); *Sw. Ctr. For Biological Diversity*, 268 F.3d at 818; *United States v. Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002). "[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009); *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir.

2001)). "To the extent there is any doubt as to [proposed intervenors] establishment of this factor, our resolution of it in favor of intervention is consistent with the rule that 'the requirements for intervention are [to be] broadly interpreted in favor of intervention.'" *Smith v. Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 864 (9th Cir. 2016) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004)) (some alteration in original).

Applicants have met the minimal burden to show that their interests *may not* be adequately represented by the ATF in this case. As a preliminary matter, not only do Federal Defendants not have any requirement—statutory or otherwise—to represent Applicants' individual and corporate interests in the production, sale, purchase, or possession of Non-Firearm Objects, but Federal Defendants also do not represent Applicants' exercise of their legal right to continue to purchase Non-Firearm Objects or to individually manufacture those objects into personal use firearms.

The ATF alleges a general interest in representing and protecting public health and safety, as well as balancing statutory and regulatory concerns with agency resource constraints. In contrast, Applicants' reliance interests, their currently lawful individual and business practices, their substantial financial interests, and their right to individually manufacture personal use firearms all fall outside the scope of Federal Defendants' interests. Because Federal Defendants must balance the interests of the general public against the rights of individuals, and must defend the ATF's decision-making, Federal Defendants representation of Applicants' more specific interests is likely to be inadequate.

This Court should apply this Circuit's liberal standard in determining Applicants' interests are not *completely* represented by Federal Defendants, including, as demonstrated above, Applicants' reliance on the ATF's interpretation to structure their business and individual practices, their intent to continue to produce, sell, purchase, and possess Non-Firearm Objects without government interference, and their ability to individually manufacture personal use firearms from the same. Accordingly, Applicants are entitled to intervention as of right.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   APPLICANTS HAVE DEMONSTRATED SIGNIFICANT INTERESTS THAT WILL BE IMPAIRED IF PETITIONERS ARE SUCCESSFUL

Applicants, their customers, and their members, as participants in the Non-Firearm Object market, have direct, substantial, and legally protectable reliance and economic interests in the outcome of this matter. These interests will be impaired if Petitioners' relief is granted, thereby jeopardizing Applicants' ability to engage in their currently lawful individual and business practices.

A prospective intervenor has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation. *California ex rel. Lockyer v. United States*, 450 F.3d at 441. In addition, an applicant's interest is "significantly protectable" when the relief sought by petitioners "will have direct, immediate, and harmful effects" on the applicant's interests. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on separate grounds by Wilderness Soc'y*, 630 F.3d at 1177–80)). Specifically, an economic interest that is "concrete and related to the underlying subject matter of the action" can support intervention as of right. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919–20 (9th Cir. 2004).

In *Idaho Farm Bureau Fed'n v. Babbitt*, plaintiffs brought an action for declaratory and injunctive relief against Fish and Wildlife Service and other federal agencies and officers, alleging violations of Endangered Species Act and Administrative Procedure Act. 58 F.3d 1392, 1398 (9th Cir. 1995). A conservation group sought and was granted intervention in that matter because the court found an impairment of the intervenor's ability to protect their interest in the Springs Snail and its habitat because "the action could, and did, lead to a decision to remove the Springs Snail from the list of endangered species." *Id.* at 1398.

Like the intervenors in *Idaho Farm Bureau Fed'n*, Applicants here will experience impairment of their ability to protect their interests in producing, selling, purchasing, and owning Non-Firearm Objects if those objects are inappropriately subsumed within the ATF's jurisdiction. Applicants have each transacted in Non-Firearm Objects and intend to continue transacting in Non-

Firearm Objects in the future under the ATF's current definition of "firearm" specifically *because* that definition excludes Non-Firearm Objects.

Applicant 80% Arms produces and sells Non-Firearm Objects—which business would be significantly and negatively impacted should Petitioners prevail in this matter. If Petitioners are successful and the ATF is required to alter its interpretation of "firearms" to include Non-Firearm Objects, then the basis for Applicant 80% Arms' Classification Letters, and potentially other aspects of its business, will be called into question and/or made illegal. Accordingly, Petitioners' charge that Applicant 80% Arms "invoked 'significant increase[] in its operation and compliance costs,' . . . is overblown," *Pet. Resp.*, at 10, fundamentally misunderstands how APA litigation works and the extent of the relief Petitioners request. It is unclear if Petitioners are insincerely trying to minimize the harm to Applicant 80% Arms or are truly ignorant of the fact that if Non-Firearm Objects are considered "firearms," Applicant 80% Arms may have to cease, or at least suspend, the direct sale of Non-Firearm Objects to consumers. This would completely impair Applicant's business practices and would result in significant lost revenue and increased compliance costs.

In addition, if Petitioners' request for relief is granted, Applicants Fort, Barton, and FPC would no longer be able to legally transact in Non-Firearm Objects, and their economic behavior is likely to be deterred when the administrative burden of regulating these products is inevitably passed on as a cost to the consumer. Contrary to Petitioners' statement that "a favorable outcome for [Petitioners] will, at most, require BlackHawk to serialize its products," *Pet. Resp.*, at 10, a favorable outcome for Petitioners could result in criminal or civil liability for businesses and their customers, and may, as demonstrated by recent events, result in the seizure of currently lawful items.[10] Further, because this case attempts to make illegal and/or severely restrict the lawful practices of Applicant FPC's members, Applicant FPC and its members have a legally protectable interest sufficient to support intervention as of right under Rule 24(a).

---

[10] *See GHOSTED: ATF Visiting End Users; Requesting Forfeiture of Polymer80 Kits* (Dec. 11, 2020), https://www.thefirearmblog.com/blog/2020/12/11/polymer80-kits/.

1
2

### III. PETITIONERS' REQUEST THAT THIS COURT REVIEW THE APPROPRIATENESS OF THE ATF'S OPERATIVE DEFINITION OF "FIREARMS" NECESSARILY IMPLICATES THE SECOND AMENDMENT

3

4

Petitioners seek to have items that are not firearms regulated as if they were, thereby calling

5

into question the appropriate interpretation of a "firearm." If Petitioners succeed, the interpretation

6

they seek to force upon the ATF would be outside the scope of both the text and intent of the GCA

7

and the constitutional and statutory scope of the ATF's authority, which could result in the ATF

violating Americans' Second Amendment protected rights.

8

Still Petitioners err in assuming *Applicants* seek to make this a Second Amendment case.

9

*Pet. Resp.*, at 10. Not so. Instead, Applicants will, within the narrow scope of review under the

10

APA, offer a perspective that is not currently advanced by Petitioners or Federal Defendants.

11

Applicants can and will offer a clear framework for the appropriate interpretation of the original

12

public meaning of the GCA, related firearms laws, and the extent of individuals' Second

13

Amendment protected rights. Applicants' arguments, however, will necessarily be constrained by

14

the scope of this Court's review under the APA. Furthermore, Petitioners could not justifiably seek

15

extra-record discovery in this APA, record review case, *Pet. Resp.*, at 9, 22–23, and Applicants do

16

not intend to expand the case beyond the lodged administrative record. Indeed, the stage set by

17

Petitioners, not Applicants, already exceeds the relevant considerations in this matter.

18

Petitioners' supposition that the relief they seek would impose "simple" burdens and will

19

not implicate Applicants' rights to currently held property is unwarranted. *Pet. Resp.*, at 10.[11] The

20

ATF has evidenced that is not the case. On December 10, 2020, an individual was apparently

21

visited by ATF agents who seized a Non-Firearm Object, lawfully owned by the individual,

22

allegedly in furtherance of an ongoing investigation.[12] Petitioners cannot credibly assert this same

23

ATF represents Applicants' interests and that Applicants should not be concerned about their

24

25

26

27

28

---

[11] If Non-Firearm Objects are regulated as firearms, Applicant 80% Arms cannot simply conduct a background check, affix a serial number to the object, and then mail that item directly to consumers. Individual Applicants also cannot simply order a serialized Non-Firearm Object for direct delivery, even after a background check. Both of these practices would violate federal, and likely state, law and would subject Applicants to liability—which law would be enforced against Applicants by Federal Defendants here.

[12] *See GHOSTED: ATF Visiting End Users; Requesting Forfeiture of Polymer80 Kits* (Dec. 11, 2020), https://www.thefirearmblog.com/blog/2020/12/11/polymer80-kits/.

current and lawfully owned property. This seizure firmly calls into question the ATF's current interpretation of "firearm," and the completeness of the argument that will be presented by Federal Defendants—it is also decidedly not "simple." The ATF's actions also implicate individual's right to acquire non-firearm materials and, through their own knowledge and expertise, manufacture those materials into personal use firearms.

The extent of Petitioners' arguments and the ATF's recent actions—including its raid of a Polymer80 facility, its seizure of lawfully owned property from an individual, and its alleged investigation of the legal status of Non-Firearm Objects (potentially when sold with other, non-firearm objects)—demonstrate two facts: (1) Petitioners' invocation of the appropriate extent of the definition of "firearm" will necessarily require this Court to examine the scope of the GCA, and its interplay with individual rights, and (2) Federal Defendants do not represent the extent of Applicants' interests in defending individual Americans from government's unconstitutional and statutory overreach. Applicants are not inappropriately expanding the scope of this litigation. Applicants will, however, under the original meaning of the GCA and related firearm laws, demonstrate to this Court that the ATF's current interpretation of "firearm" is not only accurate, but that the ATF is without any constitutional or statutory authority to regulate Non-Firearm Objects—a position not likely to be advanced by Federal Defendants

Petitioners' demand that certain items be regulated as if they were firearms, while arguing that individual's firearm rights are not implicated is self-defeating—Applicants intend to defend their interests in the Non-Firearm Object industry, which include their individual and organizational interests in exercising and supporting the right to individually manufacture firearms for personal use.[13] Petitioners have, at no point, argued that individuals do not have such a right. Federal Defendants have an interest in defending their rulemaking process, but they do not, and cannot, express an interest in ensuring that individuals are able to exercise their natural rights independent of inappropriate government interference. Applicants' right to individually

---

[13] The ATF's own guidance indicates that a license is not required to make a firearm solely for personal use, so long as regulations are followed under 18 U.S.C. 922(o), (p), and (r); 26 U.S.C. 5822; and 27 CFR 478.39, 479.62, and 479.105. ATF, *Does an individual need a license to make a firearm for personal use?* (Mar. 17, 2020), https://www.atf.gov/firearms/qa/does-individual-need-license-make-firearm-personal-use.

manufacture personal use firearms merely informs the proper interpretation of the GCA, and related federal law—it does not expand the scope of those laws or this litigation.

## CONCLUSION

For the foregoing reasons, Applicants respectfully request that this Court grant them intervention as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2). In the alternative, Applicants requests this Court exercise its discretion and grant permissive intervention pursuant to Federal Rule of Civil Procedure 24(b).

DATED this 22nd day of December 2020.

Respectfully Submitted,

*/s/ Cody J. Wisniewski*
Cody J. Wisniewski*
*Admitted *Pro Hac Vice*
**MOUNTAIN STATES LEGAL FOUNDATION**
2596 S. Lewis Way
Lakewood, CO 80227
Tel. (303) 292-2021
Fax (303) 292-1980
cody@mslegal.org

George M. Lee [Cal. SBN 172982]
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Tel. (415) 979-0500
Fax (415) 979-0511
gml@seilerepstein.com

*Attorneys for Applicants in Intervention*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2020, I electronically filed the foregoing with the

Clerk of the Court using this Court's CM/ECF system, which will send notification to all counsel

of record, pursuant to Fed. R. Civ. P. 5 and Civil L.R. 5-1:

Clerk of the Court
United States District Court
Northern District of California | San Francisco
Phillip Burton Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102

<u>Attorneys for Petitioners:</u>

GIBSON, DUNN & CRUTCHER LLP
AVI WEITZMAN, *pro hac vice* forthcoming
aweitzman@gibsondunn.com
LEE R. CRAIN, *pro hac vice* forthcoming
LIESEL SCHAPIRA, *pro hac vice* forthcoming
KAYLIE SPRINGER, *pro hac vice* forthcoming
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035
VIVEK GOPALAN, SBN 296156
VGopalan@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone: (415) 393-8200
Facsimile: (415) 374-8306

GIFFORDS LAW CENTER TO PREVENT
GUN VIOLENCE
HANNAH SHEARER, SBN 292710
268 Bush St. #555
San Francisco, CA 94104
Telephone: (415) 433-2062
Facsimile (415) 433-3357
J. ADAM SKAGGS, *pro hac vice* forthcoming
DAVID M. PUCINO, *pro hac vice* forthcoming
223 West 38th St. # 90
New York, NY 10018
Telephone: (917) 680-3473

XAVIER BECERRA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
MARK R. BECKINGTON
Supervising Deputy Attorney General
R. MATTHEW WISE, SBN 238485
Matthew.Wise@doj.ca.gov
Deputy Attorney General

1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone: (916) 210-6046
Facsimile: (916) 324-8835

1

<u>Attorneys for Defendants</u>:

2

| | |
|---|---|
| Regina Lombardo | U.S. Department of Justice |
| Acting Deputy Director | 950 Pennsylvania Avenue, NW |
| Bureau of Alcohol, Tobacco, Firearms, and Explosives | Washington, DC  20530-0001 |
| U.S. Department of Justice | |
| 99 New York Avenue, Northeast | |
| Washington, DC  20226 | |

3

4

5

6

| | |
|---|---|
| Michael R. Curtis | The Honorable William P. Barr |
| Chief of the Firearms Technology Industry Services | Attorney General of the United States |
| Branch of ATF | U.S. Department of Justice |
| Bureau of Alcohol, Tobacco, Firearms, and Explosives | 950 Pennsylvania Avenue, NW |
| 44 Needy Road, Suite 1600 | Washington, DC  20530-0001 |
| Martinsburg, WV  25405 | |

7

8

9

10

Civil Division
United States Attorney's Office
Federal Courthouse
450 Golden Gate Avenue, 11th Fl.
San Francisco, CA  94102

11

12

13

14

/s/ Cody J. Wisniewski
_____
Cody J. Wisniewski
**MOUNTAIN STATES LEGAL FOUNDATION**

15

16

17

18

19

20

21

22

23

24

25

26

27

28