George M. Lee [Cal. SBN 172982]
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Tel. (415) 979-0500
Fax (415) 979-0511
gml@seilerepstein.com

Cody Wisniewski*
*Admitted *Pro hac vice*
**MOUNTAIN STATES LEGAL FOUNDATION**
2596 South Lewis Way
Lakewood, CO 80227
Tel. (303) 292-2021
Fax (303) 292-1980
cody@mslegal.org

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, and GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE, <br><br> *Petitioners*, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; REGINA LOMBARDO, in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco Firearms and Explosives; MICHAEL R. CURTIS, in his official capacity as Chief, Firearms Technology Industry Services Branch of Bureau of Alcohol, Tobacco, Firearms and Explosives; UNITED STATES DEPARTMENT OF JUSTICE; and WILLIAM BARR, in his official capacity as Attorney General of the United States, <br><br> *Defendants*, <br><br> and <br><br> ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; and FIREARMS POLICY COALITION, INC., <br><br> *Applicants in Intervention*. | Case Number: 3:20-cv-06761-EMC <br><br> **[PROPOSED] RESPONSE BY APPLICANTS ZACHARY FORT; FREDERICK BARTON; BLACKHAWK MANUFACTURING GROUP, INC.; AND FIREARMS POLICY COALITION, INC. IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS** <br><br> Hearing Date: February 25, 2021 <br> Time: 1:30 PM PST <br> Place: Courtroom 5, 17th Floor |

Applicants in Intervention, Zachary Fort; Frederick Barton; BlackHawk Manufacturing Group, Inc., d/b/a 80% Arms ("80% Arms"); and Firearms Policy Coalition, Inc. ("FPC") (collectively, "Applicants"), while awaiting this Court's decision on Applicants' *Motion to Intervene*, No. 20-cv-06761-EMC, ECF No. 24,[1] file this *[Proposed] Response of Applicants in Support of Federal Defendants' Motion to Dismiss* in order to preserve Applicants' arguments and interests during this phase of the litigation, to avoid any delay stemming from intervention, and to provide this Court with additional, relevant bases that this Court should consider in granting Federal Defendants' Motion, ECF No. 29, and dismissing Petitioners' claims.

## ARGUMENT

Federal Defendants demonstrate that each of the Petitioners, the State of California ("California"); Brian Muehlberger; Frank Blackwell (collectively, "Individual Petitioners"); and Giffords Law Center to Prevent Gun Violence ("Giffords"), lack standing to pursue this matter. ECF No. 29 at 15–22. Federal Defendants devote much of their standing argument to, and have adequately covered, California's and Individual Petitioners' lack of standing. *Id.* at 17–22. In addition to Federal Defendants' arguments regarding Giffords, which focus on Giffords' lack of organizational standing, *id.* at 25, Applicants demonstrate, *infra*, Section I, that Giffords also lacks representational standing.

Should this Court determine that any of the Petitioners have standing, in addition to the substantial arguments offered by Federal Defendants regarding the statute of limitations, *id.* at 22–24, and Petitioners' failure to state a claim upon which relief can be granted, *id.* at 24–34, Applicants further demonstrate, *infra*, Section II, that Petitioners' claim that the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") failed to consider an important aspect of the problem is refuted by Petitioners' own Complaint and exhibits.[2]

---

[1] All citations to the Court's CM/ECF system are to the electronic docket maintained for this case and all page number citations are to the page numbers applied by the CM/ECF system, not to internal pagination numbers.

[2] Applicants do not necessarily admit to the veracity of the contents of those exhibits, nor to their general applicability to this Court's Administrative Procedure Act ("APA") inquiry should this case survive Federal Defendants' Motion, which should be limited to the as yet lodged administrative record in this matter. 5 U.S.C. § 706. This Court can, however, at the motion to dismiss phase, look to the facts contained in the complaint, take judicial notice of adjudicative facts, such as "matters of public record" and "documents filed in judicial and administrative proceedings,"

Accordingly, Applicants respectfully request this Court grant Federal Defendants' *Motion to Dismiss*.[3]

## I.   GIFFORDS LACKS STANDING IN THIS MATTER

Giffords, in addition to lacking organizational standing in this matter, as fully argued by Federal Defendants, ECF No. 29, at 16–17, also fails to meet this Circuit's test to establish standing as a non-membership organization to pursue this case.  Giffords alleged interest in the "problem" of the ATF's interpretation of the meaning of "firearm" to not include Non-Firearm Objects does not adversely affect or aggrieve Giffords as an organization.

The APA's "right of review" extends to "[a] person suffering legal wrong because of agency action, or *adversely affected or aggrieved by agency action* within the meaning of a relevant statute."  5 U.S.C. § 702 (emphasis added).  "[A] mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself to render the organization 'adversely affected' or 'aggrieved' within the meaning of the APA."  *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972).  The Ninth Circuit has explicitly acknowledged "the Supreme Court's repeated admonitions against taking jurisdiction over cases involving something less than a 'personal,' 'particularized' and 'concrete' injury."  *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 822 (citing *Sierra Club*, 405 U.S. at 734; *Japan Whaling Assoc. v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

In *Sierra Club*, the Supreme Court reviewed the Ninth Circuit's determination that Sierra Club lacked standing to pursue its challenge to a Forest Service plan to allow for development in the Mineral King Valley in the Sierra Nevada Mountains in California.  405 U.S. at 728–31.  The

---

*Rupert v. Bond*, 68 F. Supp. 3d 1142, 1154 (N.D. Cal. 2014), and government documents made "available on government agency websites," *Gustavson v. Wrigley Sales*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013).  *See* ECF No. 29, at 15.

[3] Should Federal Defendants not continue to prosecute their *Motion to Dismiss* in this matter, Applicants incorporate Federal Defendants' arguments herein.  This Court has an independent duty to examine the basis for the Court's jurisdiction regardless of the current or existing parties' arguments.  *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185, 1189 (9th Cir. 1986).  Applicants do not, however, incorporate Federal Defendants' arguments that this Court should afford the ATF deference in its interpretation or implementation of the Gun Control Act of 1968 ("GCA").  ECF No. 29, at 28–29, 33–34.  The ATF's interpretation and implementation of the GCA in reasoning that Non-Firearm Objects do not meet the definition of "firearms" is accurate as a matter of law, based on the plain text and original public meaning of the GCA.  This Court need not wade into the rapidly shrinking realm of agency deference.

Supreme Court affirmed the Ninth Circuit's determination[4] that the Sierra Club "had [not] made an adequate showing of irreparable injury . . . ." *Id*. at 731.

> The Sierra Club is a large and long-established organization, with a historic commitment to the cause of protecting our Nation's natural heritage from man's depredations. But if a 'special interest' in this subject were enough to entitle the Sierra Club to commence this litigation, there would appear to be no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization however small or short-lived.

*Id*. at 739.  The Supreme Court noted this standard preserves the original intentions of the APA by preventing litigation by "organizations or individuals who seek to do no more than vindicate their own value preferences through the judicial process." *Id*. at 740.[5]

In *Schmier*, the Ninth Circuit examined Schmier's suit against the Circuit and the Judicial Council for the Circuit alleging that Ninth Circuit Rule 36-3, prohibiting citation to unpublished dispositions as precedent, violated certain of Schmier's constitutionally protected rights.  279 F.3d at 819.  There, in determining Schmier lacked standing, this Circuit noted that a party can "argue the public interest in support of his claim" *only after* the individual demonstrates the facts necessary to establish an injury in fact.  *Id*. at 822–23 (citing *Sierra Club*, 405 U.S. at 739) (other citations omitted in original).

Giffords has failed to allege an actual injury, sufficient to establish standing, to the organization itself nor any individuals it purportedly represents.  Like in *Schmier*, Giffords cannot assert the "public good," or its mission to "save lives" in order to establish standing—rather Giffords must satisfy this Court's individual injury in fact analysis.  279 F.3d at  822–23; *Compl.*

---

[4] "We do not believe that the Sierra Club's complaint alleges that it or its members possess a sufficient interest for standing to be conferred. There is no allegation in the complaint that members of the Sierra Club would be affected by the actions of defendants-appellants other than the fact that the actions are personally displeasing or distasteful to them."  *Sierra Club v. Hickel*, 433 F.2d 24, 33 (9th Cir. 1970) *aff'd sub nom. Sierra Club*, 405 U.S. 727.

[5] *Sierra Club*, and later applications thereof, allowed for organizational standing when the case is brought by membership organization along with at least one member properly alleging the facts necessary to establish standing. 405 U.S. at 739 ("It is clear that an organization whose members are injured may represent those members in a proceeding for judicial review.") (citing *NAACP v. Button*, 371 U.S. 415, 428 (1963)); *see American Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Com'n*, 389 F.3d 536, 542–43 (6th Cir. 2004) (determining Sierra Club, there, had standing based on the injuries in fact adequately pled by a member of Sierra Club).  That distinguishing factor is inapplicable here, however, given Giffords is not a membership organization and thus has not and cannot allege an injury on behalf of its non-existent members.  *See Compl.* ¶ 22; *see also* ECF No. 29, at 16–17.

¶¶ 113–15.  Further, as required by the APA and elucidated in *Sierra Club*, Giffords cannot establish that the alleged harms of the ATF's interpretation of "firearm" actually adversely affects or aggrieves the organization.  *See* 5 U.S.C. § 702; *Sierra Club*, 405 U.S. at 739.  Giffords has failed, not only to adequately support its assertion that the "proliferation" of firearms manufactured from Non-Firearm Objects is an actual injury, but has entirely failed to allege that said "proliferation" adversely affects Giffords beyond vague allusions to the organization's "core policy platform of supporting background check and licensing laws at the federal and state level," a "redoubl[ing] [of] its violence prevention efforts and direct[ing] even more resources into addressing gun violence," and an "increased expenditure of human and financial capital by Giffords [] toward work supporting violence intervention programs and violence reduction work . . . ." *Compl.* ¶¶ 113–15.[6]  As the Supreme Court found in *Sierra Club*, "a mere 'interest in a problem,' no matter how longstanding the interest and no matter how qualified the organization is in evaluating the problem, is not sufficient by itself . . . ." *Sierra Club*, 405 U.S. at 739.  Giffords' pursuit of its mission, through advocacy and community outreach, does not adversely affect or aggrieve the organization.

Accordingly, in addition to the arguments advanced by Federal Defendants, this Court should determine that Giffords lacks standing to pursue this matter under the APA.

## II.   PETITIONERS' ALLEGATIONS DEFEAT THEIR OWN ARBITRARY AND CAPRICIOUS CLAIM

Should this Court determine that any of the Petitioners have standing, Petitioners' argument that the ATF's actions are arbitrary and capricious, in part, because the ATF "entirely fail[s] to consider an important aspect of the problem,"[7] is without merit and is firmly undercut by

---

[6] While Giffords will likely argue these contentions confer Giffords with organizational standing, Federal Defendants demonstrate those assertions do not meet this Circuit's standard for organizational standing.  ECF No. 29, at 16–17.

[7] Petitioners also allege that the ATF's action are arbitrary and capricious because the agency "has never acknowledged it switch from its original temporal approach . . . to its current mechanical approach of analyzing which machining operations still need to be performed to determine whether an [Non-Firearm Object] is a 'firearm' under the GCA." *Compl.* ¶¶ 135–37.  Applicants defer to Federal Defendants' arguments on this matter, ECF No. 29, at 13–21, except to incorporate Applicants' argument, as presented in Applicants' *Motion to Intervene*, that Petitioners' contention that the ATF's "determinations are the product of an unexplained regulatory reversal beginning in 2006" is not accurate. ECF No. 24-1, at 5–6 n.1 (citing ATF letters subject to notice by this Court, *see supra* at 1 n.2); *Compl.* ¶ 8.

[PROP.] RESP. IN SUPP. OF FED. DEFENDANTS' MOTION TO DISMISS | CASE NO. 3:20-cv-06761-EMC

Petitioners' Complaint.  *See Compl.* ¶ 138 (quoting *Motor Veh. Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)) (alteration in Complaint).  Petitioners fail to adequately allege that the ATF actually failed to consider any such issue, and in fact, specifically acknowledge the ATF has considered that alleged "problem."

As established by Federal Defendants, this Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice . . . ."  *Daniels-Hall v. NEA*, 629 F.3d 992, 998 (9th Cir. 2010); *see* ECF No. 29, at 30. "Courts may dismiss a claim as not plausible where its supporting factual allegations are contradictory."  *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, No. 16-cv-00253-WHO, 2016 WL 6393503 at *5 (N.D. Cal. Oct. 28, 2016).  Such is the case here.

"Normally, an agency rule would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem . . . ."  *State Farm*, 463 U.S. at 43; *see Greater Yellowstone Coalition v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010) (same) (quoting *The Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*), *overruled on other grounds by Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008)) (quotations and citations omitted); *Environmental Defense Center, Inc. v. U.S. E.P.A.*, 344 F.3d 832, 871 (9th Cir. 2003) (same) (citing *State Farm*, 463 U.S. at 43).  The reviewing court's inquiry is limited to whether the agency *considered* the alleged problem, not whether the agency pursued any particular alternative favored by the petitioner.  *Greater Yellowstone Coalition*, 628 F.3d at 1150 ("[T]he record demonstrates that the agencies fully evaluated Dr. Carlson's concerns," even though the agency decided to rely "on the O'Kane studies . . . ."); *cf. California Energy Com'n v. Department of Energy*, 585 F.3d 1143, 1153 (9th Cir. 2009) ("Whether those data and analysis were sufficient to meet [petitioner's] burden is not for this court to decide in the first instance.  It is clear, however, that whether or not the data and analysis were sufficient, the [federal agency] simply did not evaluate them.").

In *California Energy Commission*, the Ninth Circuit reviewed the Commission's application for a preemption waiver under the Energy Policy and Conservation Act from the Department of Energy, which waiver the Department denied.  585 F.3d at 1146.  The Commission filed suit, alleging the Department's denial was arbitrary and capricious, in part, because the

Department failed to consider "whether California's standards were preferable or necessary compared to alternatives." *Id.* at 1153. This Circuit agreed with the Commission and determined that the Department, based on the record before it when it made its decision, did not evaluate data provided to the Department regarding California's standards in denying the Commission's preemption waiver. *Id.* Accordingly, "the [Department] failed to consider an important factor or aspect of the problem." *Id.*

In *Greater Yellowstone Coalition*, this Circuit evaluated the petitioners' challenge to the U.S. Bureau of Land Management's ("BLM") allowed expansion of the Smokey Canyon Mine in the Caribou National Forest on the basis that BLM's decision was arbitrary and capricious, in part, because the BLM failed to consider certain scientific evidence regarding seasonal variations in selenium pollution. 628 F.3d at 1146–47, 1148–50. The petitioners pointed to specific concerns from the U.S. Forest Service's National Ground Water Program Leader, Dr. Carlson, who sat on the BLM's evaluation team; namely, Dr. Carlson's concerns that the studies BLM relied on failed to adequately model peak flows. *Id.* at 1149–50. The Circuit determined, however, that even though the BLM continued to rely on the studies and did not heed the advice of Dr. Carlson, that did not amount to a failure to consider. *Id.* Instead, the Circuit noted that "the record demonstrates that the agencies fully evaluated Dr. Carlson's concerns." *Id.* at 1150. Further, "[a]lthough the [evaluation] team admitted to uncertainty about the short-term accuracy of the model, this limited qualification of the team's conclusions falls far short of [petitioners'] assertion that it 'failed to consider and important aspect of the problem.'" *Id.* (citing *State Farm*, 463 U.S. at 43).

This case is much more akin to *Greater Yellowstone Coalition* than *California Energy Commission*—based on Petitioners' own assertions. In Petitioners' Complaint, they first allege the ATF failed to consider whether Non-Firearm Objects "are designed to be or 'may readily be converted' into fully-functional firearms within the meaning of the GCA." *Compl.* ¶ 139. This is plainly refuted by Petitioners' Complaint and the exhibits attached thereto. For example, in *every* Classification Letter Petitioners append to their Complaint, the ATF explicitly evaluates the sample provided to the ATF against the GCA's definition of a "firearm"—which includes "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to

expel a projectile by the action of an explosive; [and] (B) the frame or receiver of any such weapon . . . ."—either by citing to or directly quoting from the relevant definition in the Act. 18 U.S.C. § 921(a)(3); s*ee Compl.*, Ex. 4, at 2 (citing); Ex. 5, at 3 (citing); Ex. 6, at 3 (citing); Ex. 7, at 2 (citing); Ex. 8, at  2 (quoting); Ex. 9, at 2–3 (citing); Ex. 10, at 2–3 (quoting); Ex. 11, at 2 (citing); Ex. 12, at 2–3 (quoting); Ex. 13, at 2 (quoting); Ex. 14, at 2–3 (citing); Ex. 15, at 2 (quoting).  For example, in Exhibit 8, a 2012 letter from John R. Spencer, Chief of the ATF's Firearms Technology Branch, to Mr. Alan Aronstein, the ATF began by quoting the definition of "firearm" from the GCA.  *Compl.*, Ex. 8, at 2 (quoting 18 U.S.C. § 921(a)(3)).  After establishing the legal standard, the ATF then examined the two samples submitted by Mr. Aronstein to determine, based on objective criteria listed in the letter, whether the samples met the specific definition of "firearm" under the GCA.  *Id.* at 2–3.  In that case, the ATF determined that the two samples, based on the established criteria, did not meet the definition of "firearms."  *Id.*  Accordingly, Petitioners cannot defend their assertion that the ATF has failed to consider whether Non-Firearm Objects are designed to be or may be readily converted into fully-functional firearms.

Further, Petitioners append screen-captures of the ATF's website, which also specifically base the agency's interpretation of Non-Firearm Objects in relation to "the definition of a 'firearm' as defined in the Gun Control Act (GCA)."  Ex. 16, at 3, 5.  Petitioners cannot allege that the ATF failed to consider whether Non-Firearm Objects meet the definition of "firearm"—which is plainly controverted by Petitioners' own supplied evidence—simply because Petitioners disagree with the ATF's interpretation.  This is akin to the petitioners in *Greater Yellowstone Coalition*.  The ATF has, as demonstrated, considered whether Non-Firearm Objects meet the definition of "firearms" at every turn and thus cannot be said to have "failed to consider and important aspect of the problem."

Petitioners next allege that the ATF failed to consider that a "proliferation" of untraceable firearms would result from the ATF's interpretation of Non-Firearm Objects not meeting the GCA's definition of "firearms," thereby impeding law enforcement efforts, in part, because Non-Firearm Objects are sometimes sold in kits that contain other unregulated objects that can aid in the individual manufacture of firearms, or that those objects can be purchased from one retailer.

*Compl.* ¶¶ 140–41. Petitioners, however, in the very next paragraph, note that the "*ATF understands this problem*, as its website states that when a firearm [manufactured] from [Non-Firearm Objects] are [*sic*] recovered by law enforcement, 'it is usually not possible to trace the firearm or determine its history, which hinders crime gun investigations and jeopardizes public safety.'" *Compl.* ¶ 141 (quoting *Receiver Blanks*, ATF.gov, https://www.atf.gov/qa-category/receiver-blanks) (emphasis added). Petitioners also append screen-captures of the ATF's website demonstrating the ATF's consideration of the non-serialization of Non-Firearm Objects, Ex. 16, at 3–5, unmarked firearms manufactured from Non-Firearm Objects being used in a crime, *id.* at 6, unmarked firearms manufactured from Non-Firearm Objects being difficult to trace, *id,* at 8, and the unregulated purchase of Non-Firearm Objects, *id.* at 11. Regardless of Petitioners' view of the ATF's interpretation, Petitioners cannot allege that the ATF has failed to consider an important aspect of the problem. This Court should summarily reject Petitioners' charge, based on this Circuit's precedent established in *Greater Yellowstone Coalition*.

Accordingly, in addition to the arguments advanced by Federal Defendants, this Court should find that Petitioners' have contradicted and failed to adequately support their contention that the ATF's interpretation that Non-Firearm Objects do not meet the definition of "firearms" under the GCA is arbitrary and capricious because the ATF has not failed to consider an important aspect of the problem. As such, this Court should dismiss Petitioners' second claim for relief, as stated in their Complaint, with prejudice.

## CONCLUSION

For the foregoing reasons and those set forth in Federal Defendants' *Motion to Dismiss*, incorporated herein, Applicants respectfully request this Court dismiss each of Petitioners' claims as set forth in Petitioners' Complaint for Declaratory and Injunctive Relief, ECF No. 1.

DATED this 30th day of December 2020.

Respectfully Submitted,


/s/ Cody J. Wisniewski
Cody J. Wisniewski*
*Admitted *Pro Hac Vice*
**MOUNTAIN STATES LEGAL FOUNDATION**
2596 S. Lewis Way
Lakewood, CO 80227
Tel. (303) 292-2021
Fax (303) 292-1980
cody@mslegal.org

George M. Lee [Cal. SBN 172982]
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, CA 94111
Tel. (415) 979-0500
Fax (415) 979-0511
gml@seilerepstein.com

*Attorneys for Applicants in Intervention*