## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

-------------------------------------------------------

STATE OF CALIFORNIA, BRYAN
MUEHLBERGER, FRANK BLACKWELL,
and GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE,

      Plaintiffs,

      v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, REGINA
LOMBARDO, in her official capacity as Acting
Deputy Director of Bureau of Alcohol,
Tobacco, Firearms and Explosives, MICHAEL
R. CURTIS, in his official capacity as Chief,
Firearms Technology Industry Services Branch
of Bureau of Alcohol, Tobacco, Firearms and
Explosives, UNITED STATES
DEPARTMENT OF JUSTICE, and WILLIAM
BARR, in his official capacity as Attorney
General of the United States,

      Defendants.

-------------------------------------------------------

CIVIL CASE NO.: 3:20-cv-06761

 

**BRIEF OF THE DISTRICT OF COLUMBIA AND THE STATES OF COLORADO,
CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, MARYLAND, MICHIGAN,
MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA,
OREGON, RHODE ISLAND, VERMONT, VIRGINIA, WASHINGTON, AND
WISCONSIN AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION AND INTEREST OF *AMICI* STATES .......................................................... 1

ARGUMENT ................................................................................................................................ 2

   I.    Defendants' Misinterpretation of the GCA Infused Doubt into the Ghost Guns Legal
Landscape, Leaving States to Address the Rise in Untraceable Weapons. ................................ 2

   II.    Ghost Gun Dealers Exploited This Landscape, Selling More and More Weapons and
Misleading Consumers. ............................................................................................................. 5

   III.    Defendants' Error Places the Burden on States to Regulate Ghost Guns but There is No
Adequate Substitute for Proper Application of the GCA. ......................................................... 7

CONCLUSION ............................................................................................................................. 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia v. Polymer80, Inc.*,
   No. 2020 CA 002878 ...................................................................................................5

*Moore v. State*,
   189 Md. App. 90 (2009) .............................................................................................3

**Statutes**

18 Pa. C.S. § 6101 *et seq.* ..............................................................................................3

18 U.S.C. § 921(a)(3) .....................................................................................................1

67 D.C. Reg. 3945 (2020) ..............................................................................................4

Cal. Penal Code § 29180 (2016) ....................................................................................4

Conn. Pub. Act No. 19-6 (2019) ....................................................................................4

D.C. Code § 7–2501.01(9) .............................................................................................2

Md. Code Ann., Public Safety § 5-101 .........................................................................3

N.J. Stat. Ann. § 2C:39-9 (2018) ...................................................................................4

R.I. Gen. Laws § 11-47-2(5) ..........................................................................................3

**Other Authorities**

*AG Grewal Files First State Lawsuit Against "Ghost Gun" Company for
   Offering Untraceable Guns in NJ* (Mar. 22, 2019),
   https://www.nj.gov/oag/newsreleases19/pr20190322a.html ....................................6

*A.G. Schneiderman Announces Thirty-Two Count Indictment of Two Defendants
   Charged with Illegally Trafficking Untraceable 'Ghost Guns,'* Office of the
   Attorney General of the State of New York (Sept. 21, 2015),
   https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-thirty-two-
   count-indictment-two-defendants-charged ...............................................................8

Commonwealth of Pennsylvania, Office of the Attorney General, Legal Opinion
(Dec. 16, 2019), https://www.attorneygeneral.gov/wp-
content/uploads/2019/12/19.12.16-Receivers-Legal-Opinion.pdf..............................................4

*Company for Offering Untraceable Guns in NJ* (Mar. 22, 2019),
https://www.nj.gov/oag/newsreleases19/pr20190322a.html ......................................................6

Everytown Research and Policy, *Untraceable: The Rising Specter of Ghost Guns*
(May 14, 2020), at 12, https://everytownresearch.org/report/the-rising-specter-
of-ghost-guns/ ......................................................................................................................5

Giffords Law Center to Prevent Gun Violence, *Ghost Guns*,
https://giffords.org/lawcenter/gun-laws/policy-areas/hardware-
ammunition/ghost-guns/ ......................................................................................................4

Josiah Bates, *The Saugus High School Shooter Used an Illegal 'Ghost Gun.'
Authorities Warn More Criminals Are Using Untraceable Weapons to
Get Around Gun Laws*, Time Magazine (Nov. 23, 2019) ...............................................5, 6

*L.A. Gangs Stockpile Untraceable 'Ghost Guns' that Members Make Themselves*,
Los Angeles Times (July 6, 2018) ...........................................................................................8

Maxwell Reil, *Man indicted after selling 'ghost gun' in Hammonton*, *Atlantic City
Press* (Apr. 13, 2018), https://www.pressofatlanticcity.com/news/man-
indicted-after-selling-ghost-gun-in-hammonton/article_16aa48bc-519c-50d5-
b66b-748689e9c5b4.htm ...........................................................................................................8

Polymer80, *FAQs* (last visited Dec. 5, 2020), https://www.polymer80.com/faqs.........................6

S.P. Sullivan, *Cocaine bust led cops to 'ghost gun' network that sold
untraceable AR-15s, AG says*, NJ.com (Mar. 18, 2019),
https://www.nj.com/politics/2019/03/cocaine-bust-led-cops-to-ghost-gun-
network-that-sold-untraceable-ar-15s-ag-says.html .............................................................7

## INTRODUCTION AND INTEREST OF *AMICI* STATES

The District of Columbia and the States of Colorado, Connecticut, Delaware, Hawaii, Illinois, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, Washington, and Wisconsin (collectively, "*Amici* States") file this brief as *amici curiae* in support of plaintiffs' opposition to defendants' motion to dismiss. Nearly complete and unserialized firearms that are easily converted into fully functioning weapons, commonly known as "ghost guns," increasingly endanger the residents of *Amici* States and impede law enforcement's ability to investigate and prosecute criminal activity.

The model of the ghost gun industry is to manufacture and sell handgun frames and semi-automatic receivers that lack any identifying and traceable marks and can be fully operational shortly after receipt. But those weapons are expressly prohibited by the plain language of the Gun Control Act ("GCA"), which requires "firearms" to include serial numbers and purchasers of those weapons to pass a background check, among other requirements. The statute defines "firearm" as "any weapon which will or **is designed to or may readily be converted to** expel a projectile by the action of an explosive" or "**the frame or receiver of any such weapon**." 18 U.S.C. § 921(a)(3) (emphasis added).

Defendants' enforcement of the GCA is inconsistent with this language. Through interpretive rules and determination letters, Defendants determined that the handgun frames and semi-automatic receivers that now dominate the ghost gun industry are not firearms under federal law because they lack certain machining or are solid in certain areas. This misinterpretation of the GCA, which ignores the "designed to be" or "readily be converted" standard in the statute, coincides with an exponential growth in the ghost gun industry. Ghost guns were rarely recovered in *Amici* States prior to changes in Defendants' guidance. Since then,

however, these weapons have spread increasingly across the country and are now a consistent and pervasive component of crime in our communities. According to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), 30 percent of firearms recovered in California in 2019 were unserialized. Ghost gun recoveries in the District of Columbia have spiked from 3 in 2017 to 116 in 2019. Absent a remedy, these trends will only worsen and the residents of *Amici* States will suffer the consequences. Defendants' motion to dismiss should be denied.

## ARGUMENT

### I.  Defendants' Misinterpretation of the GCA Infused Doubt into the Ghost Guns Legal Landscape, Leaving States to Address the Rise in Untraceable Weapons.

Defendants' altered regulatory guidance, which effectively legalized the ghost gun industry on the federal level, encouraged the sale of such products nationwide, including into States with statutes that effectively mirror the GCA. These State statutes, by their plain language, prohibit ghost gun dealers from selling weapons in their jurisdictions. Yet, ghost gun dealers concluded that such statutes would be interpreted the same way ATF interpreted the GCA, thereby permitting the sale of their weapons in those jurisdictions. Thus, Defendants' interpretive error scrambled the legal landscape around ghost guns by calling into question understood terms such as "frame or receiver," "designed," and "readily converted."

Many State statutes track the language in the GCA and by their plain language prohibit ghost gun dealers from selling weapons in those jurisdictions. For example, prior to this year, the District of Columbia's pertinent statute defined "firearm" as "any weapon, regardless of operability, which will, or **is designed** or redesigned, made or remade, **readily converted**, restored, or repaired, or is intended to, expel a projectile or projectiles by the action of an explosive" or "**the frame or receiver of any such device**." D.C. Code § 7–2501.01(9) (emphasis

added). The bolded language, which prohibits weapons that are designed or readily converted to a fully functioning weapon, as well as the frame or receiver of such a weapon, is very similar to the GCA.

Maryland similarly defines a "firearm" as "(i) a weapon that expels, **is designed to expel, or may readily be converted to expel** a projectile by the action of an explosive; or (ii) **the frame or receiver of such a weapon**." Md. Code Ann., Public Safety § 5-101 (emphasis added). There, the Maryland legislature intended for the statute to be consistent with the GCA. *See Moore v. State*, 189 Md. App. 90, 110 (2009). Rhode Island defines a "firearm" as "any machine gun, pistol, rifle, air rifle, air pistol, blank gun, BB gun, or other instrument from which steel or metal projectiles are propelled, **or that may readily be converted** to expel a projectile . . . . **The frame or receiver of the weapon shall be construed as a firearm under the provisions of this section**." R.I. Gen. Laws § 11-47-2(5) (emphasis added). And in Michigan, a "firearm" is defined as "any weapon which will, **is designed to**, **or may readily be converted** to expel a projectile by action of an explosive." Mich. Comp. § 8.3t (emphasis added).

Defendants' interpretive rules and determination letters inserted newfound doubt as to the meaning of these terms, leaving States to deal with the fallout. Without the protections of the GCA, States employed various approaches to combat the rise in ghost gun recoveries. All have done so *after* Defendants' actions emboldened the ghost gun industry. The clear line between Defendants' failure to accurately interpret the GCA and States' attempts to remedy their error is unmistakable. For example, given the increasing presence of ghost guns in the State, the Pennsylvania Attorney General issued an opinion at the request of the State Police regarding a statute that, like the GCA, defines a firearm as any weapon "designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any

such weapon." 18 Pa. C.S. § 6101 *et seq.* The Attorney General concluded that a ghost gun receiver is a firearm under the statute. Commonwealth of Pennsylvania, Office of the Attorney General, Legal Opinion (Dec. 16, 2019), https://www.attorneygeneral.gov/wp-content/uploads/2019/12/19.12.16-Receivers-Legal-Opinion.pdf.

Other States moved to address the proliferation of ghost guns through further legislation. Prior to 2016, no State had a ghost gun-specific statute. Since 2016, California, Connecticut, the District of Columbia, Hawaii, New Jersey, Rhode Island, and Washington enacted legislation to address the proliferation of those weapons. *See* Cal. Penal Code § 29180 (2016); Conn. Pub. Act No. 19-6 (2019); 67 D.C. Reg. 3945 (2020); Hawaii H.B. 2744 (2019); N.J. Stat. Ann. § 2C:39-9 (2018); RI HB 7102 and RI SB 2004 (2020); WA HB 1739 (2019). These laws attempt to address the problem of illegal unserialized ghost guns, which federal law has allowed to proliferate. *See* Giffords Law Center to Prevent Gun Violence, *Ghost Guns*, https://giffords.org/lawcenter/gun-laws/policy-areas/hardware-ammunition/ghost-guns/.

While States undoubtedly possess the power to enforce and interpret their own laws, State-level prosecutions of ghost gun producers are uniquely difficult *because* their weapons are untraceable. Law enforcement may recover illegal firearms from individuals, but the lack of a serial number prohibits officials from identifying a point of sale or, in many cases, a manufacturer. *See* Giffords Law Center to Prevent Gun Violence, *Ghost Guns*, https://giffords.org/lawcenter/gun-laws/policy-areas/hardware-ammunition/ghost-guns/ ("When law enforcement agencies recover firearms that have been used in crimes, the agencies can usually trace the firearms to their first retail purchaser and use that information to investigate and solve the crime. Tracing is a powerful investigative tool, but it is dependent on the ability to identify firearms based on their serial numbers . . . Without a serial number, law enforcement

cannot run a trace search on a firearm, making it difficult, if not impossible, to determine the chain of custody from the gun itself."). The unlawful guidance at issue in this case is what permits the ghost gun industry to operate and proliferate in the first place. State-level responses are, by themselves, unable to fully address a complex interstate issue of Defendants' own making.

## II. Ghost Gun Dealers Exploited This Landscape, Selling More and More Weapons and Misleading Consumers.

Defendants' regulatory guidance emboldened the ghost gun industry, fueling its rapid expansion across the country. Ghost guns were virtually absent from many jurisdictions prior to Defendants' altered interpretation of the GCA. Now, according to a recent report, there are 80 online sellers of partially unfinished frames and receivers. *See* Everytown Research and Policy, *Untraceable: The Rising Specter of Ghost Guns* (May 14, 2020), at 12, https://everytownresearch.org/report/the-rising-specter-of-ghost-guns/. The increase in ghost gun sales is readily apparent at the local level. For instance, prior to 2017, the Metropolitan Police Department ("MPD") of the District of Columbia had never recovered a ghost gun. In 2017, MPD recovered three such weapons. In 2018, that number rose to 25, and then nearly quintupled, to 116, in 2019. Three of the ghost guns recovered in 2019 were involved in murders. That trend has continued this year. As of May 29, 2020, MPD has recovered 106 ghost guns. At that rate, the number of ghost guns recovered in 2020 will more than double the number recovered in 2019. *District of Columbia v. Polymer80, Inc.*, No. 2020 CA 002878 B, Complaint at 7 (D.C. Super. June 24, 2020).

Other jurisdictions have experienced similar trends. The Oceanside, California police department recovered 19 ghost guns in 2018, a 280 percent increase over the prior year. San Jose, California's increase was even more stark with 52 guns recovered in 2018 – a 940 percent

5

rise over 2017. Josiah Bates, *The Saugus High School Shooter Used an Illegal 'Ghost Gun.'*
*Authorities Warn More Criminals Are Using Untraceable Weapons to Get Around Gun*
*Laws*, Time Magazine (Nov. 23, 2019). ATF now estimates that 30 percent of *all* guns
recovered in California are unserialized. *Id.*

Amidst this surge, ghost gun dealers have proudly promoted ATF's determination
letters, using them to disregard State laws similar to the GCA and to mislead consumers.
Manufacturers like Polymer80 – one of the nation's largest producers of ghost guns – took
advantage of the confusion created by Defendants' interpretation and exclaimed the purported
legality of its products without any mention of State laws. Prior to the initiation of a lawsuit by
the District of Columbia against Polymer80 for its illegal sales to District consumers, the
company's online homepage asked simply, "Is it legal?" and responded, "YES!" Polymer80 then
linked to one of Defendants' determination letters as the sole basis for that assertion. Only after
being sued, did Polymer80's website no longer include the affirmative, all caps declaration of
legality. However, instead of notifying consumers that their products are illegal in multiple
States, the company now absurdly instructs consumers to retain an attorney "to obtain an opinion
letter specific to your jurisdiction." Polymer80, *FAQs* (last visited Dec. 5, 2020),
https://www.polymer80.com/faqs.

Ghost guns dealer Patriot Armory similarly misled consumers in New Jersey, using
identical language on its website – "Is it legal?" and "YES!" – despite the State's clear
prohibition on the sale of ghost guns. *AG Grewal Files First State Lawsuit Against "Ghost Gun"*
*Company     for     Offering Untraceable     Guns     in     NJ*     (Mar.     22,     2019),
https://www.nj.gov/oag/newsreleases19/pr20190322a.html. Major ghost gun dealers continue to
mislead consumers by maintaining the uniform legality of their businesses or by shifting the

burden to individual consumers to research and determine the legality of the products in their respective States. Defendants' interpretive error contributes to these unlawful practices.

### III. Defendants' Error Places the Burden on States to Regulate Ghost Guns but There is No Adequate Substitute for Proper Application of the GCA.

States' ability to address the injuries inflicted by Defendants and ghost gun dealers is limited. There is no substitute for a correct interpretation of the GCA and a national solution to a national problem. The need for a clear national standard is particularly apparent in the context of gun trafficking. In many instances, the only measure that prevents ghost guns trafficking in the first place is effective enforcement at the national level of the plain language of the GCA. In its absence, individuals can purchase nearly finished firearms online from ghost guns dealers, particularly in States without statutory restrictions on purchasing or possessing such firearms, and move them into States with such restrictions. Even if law enforcement in the destination States recover those firearms, they will be unable to determine their point of origin. The result is that ghost gun sales will proliferate and their use in criminal activity will continue to intensify.

The increasing prevalence of ghost guns in general has led to increased trafficking of those weapons. Following New Jersey's 2018 ghost guns ban, the State Attorney General indicted a group of individuals who sought to have ghost gun kits shipped to Pennsylvania, which they believed to lack ghost gun restrictions at the time, and then bring them across the border to possess and sell in New Jersey. One defendant allegedly told another, "They changed some laws and s--- so we gotta go over to Philly and pick it up." S.P. Sullivan, *Cocaine bust led cops to 'ghost gun' network that sold untraceable AR-15s, AG says*, NJ.com (Mar. 18, 2019), https://www.nj.com/politics/2019/03/cocaine-bust-led-cops-to-ghost-gun-network-that-sold-untraceable-ar-15s-ag-says.html.

In 2015, New York law enforcement uncovered a plot to "order[] unfinished gun parts from different manufacturers across the country and assemble[] them into at least a dozen fully-functional ghost guns." *A.G. Schneiderman Announces Thirty-Two Count Indictment of Two Defendants Charged with Illegally Trafficking Untraceable 'Ghost Guns,'* Office of the Attorney General of the State of New York (Sept. 21, 2015), https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-thirty-two-count-indictment-two-defendants-charged. And in 2018, officials seized 45 pistols and AR-15-style semi-automatic weapons that were finished at home from parts purchased over the internet and sold to gang-involved individuals in the Los Angeles area. Richard Winton, *L.A. Gangs Stockpile Untraceable 'Ghost Guns' that Members Make Themselves*, Los Angeles Times (July 6, 2018), http://www.latimes.com/local/lanow/la-me-la-gangsters-homemade-guns-20180706-story.html. That same year, law enforcement recovered nearly 20 untraceable firearms from the home of a New Jersey man who was engaged in manufacturing and selling ghost guns. Maxwell Reil, *Man indicted after selling 'ghost gun' in Hammonton*, *Atlantic City Press* (Apr. 13, 2018), https://www.pressofatlanticcity.com/news/man-indicted-after-selling-ghost-gun-in-hammonton/article_16aa48bc-519c-50d5-b66b-748689e9c5b4.htm.

States face an uphill battle in addressing this growing crisis. A remedy in this matter would halt production and trafficking before it begins, as Congress intended.

## CONCLUSION

This Court should deny Defendant's motion to dismiss.

8

Respectfully submitted,

/s/ Alacoque Nevitt
ALACOQUE NEVITT
Bar No. 268768
Assistant Attorney General
Public Advocacy Division
Office of the Attorney General
400 6th St. NW, Suite 10th Floor
Washington, DC 20001
202-717-1368
Alacoque.Nevitt@dc.gov

On behalf of:

KARL A. RACINE
Attorney General
District of Columbia
400 6th St., NW, Suite 8100
Washington, DC 20001

PHIL WEISER
Attorney General
State of Colorado
1300 Broadway, 10th Floor
Denver, CO 80203

WILLIAM TONG
Attorney General
State of Connecticut
165 Capitol Ave.
Hartford, CT 06106

KATHLEEN JENNINGS
Attorney General
State of Delaware
820 North French St.
Wilmington, DE 19801

CLARE E. CONNORS
Attorney General
State of Hawaii
425 Queen St.
Honolulu, HI 96813

KWAME RAOUL
Attorney General
State of Illinois
100 West Randolph St., 12th Floor
Chicago, IL 60601

BRIAN E. FROSH
Attorney General
State of Maryland
200 Saint Paul Place
Baltimore, MD 21202

DANA NESSEL
Attorney General
State of Michigan
535 W. Ottawa St.
Lansing, MI 48906

KEITH ELLISON
Attorney General
State of Minnesota
75 Rev. Dr. Martin Luther King Jr. Blvd
St. Paul, MN 55155

GURBIR S. GREWAL
Attorney General
State of New Jersey
25 Market St.
Trenton, NJ 08625

HECTOR BALDERAS
Attorney General
State of New Mexico
P.O. Drawer 1508
Santa Fe, NM 87504

JOSH STEIN
Attorney General
State of North Carolina
114 West Edenton St.
Raleigh, NC 27603

PETER F. NERONHA
Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903

MARK R. HERRING
Attorney General
Commonwealth of Virginia
202 North 9th Street
Richmond, VA 2321917

JOSH KAUL
Attorney General
State of Wisconsin
17 W Main St.
Madison, WI 53703

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, NY 10005

ELLEN F. ROSENBLUM
Attorney General
State of Oregon
1156 Court St. NE
Salem, OR 97301

THOMAS J. DONOVAN, JR.
Attorney General
State of Vermont
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
Attorney General
State of Washington
1125 Washington St. SE, PO Box 40100
Olympia, WA 98504