UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

```
STATE OF CALIFORNIA; BRYAN        )
MUEHLBERGER, FRANK BLACKWELL,     )
AND GIFFORDS LAW CENTER TO        )
PREVENT GUN VIOLENCE,             )
                                  )
            Plaintiffs,           )
                                  )
    VS.                           )     NO. C 20-06761 EMC
                                  )
BUREAU OF ALCOHOL, TOBACCO,       )
FIREARMS AND EXPLOSIVES; et       )
al.,                              )
                                  )
            Defendants.           )
_____    )
```

San Francisco, California
Friday, February 26, 2021

### TRANSCRIPT OF PROCEEDINGS BY ZOOM WEBINAR

### APPEARANCES BY ZOOM WEBINAR:

For Plaintiffs:

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166
**BY:  LEE R. CRAIN, ATTORNEY AT LAW**

OFFICE OF THE ATTORNEY GENERAL
State of California
1300 I Street - Suite 125
P.O. Box 944255
Sacramento, California  94244
**BY:  R. MATTHEW WISE, DEPUTY ATTORNEY GENERAL**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
              Official Reporter

**APPEARANCES BY ZOOM WEBINAR**:   (CONTINUED)

For Plaintiffs:
                        GIFFORDS LAW CENTER
                        223 West 38th Street - Box 90
                        New York, New York  10018
              BY:  **JOHN A. SKAGGS, ATTORNEY AT LAW**

For Defendants:
                        U.S. DEPARTMENT OF JUSTICE
                        Civil Division - Federal Programs Branch
                        20 Massachusetts Avenue, NW - Room 6141
                        Washington, D.C.  20530
              BY:  **DANIEL D. MAULER, TRIAL ATTORNEY**
                   **LESLEY FARBY, ASSISTANT BRANCH DIRECTOR**

For Intervenors Zachary Fort; Frederick Barton; BlackHawk
Manufacturing Group, Inc.; and Firearms Policy Coalition, Inc.:
                        SEILER EPSTEIN LLP
                        275 Battery Street - Suite 1600
                        San Francisco, California  94111
              BY:  **GEORGE M. LEE, ATTORNEY AT LAW**

                        MOUNTAIN STATES LEGAL FOUNDATION
                        2596 South Lewis Way
                        Lakewood, Colorado  80227
              BY:  **CODY J. WISNIEWSKI, ATTORNEY AT LAW**

For Intervenor Polymer80, Inc.:
                        BARTON LLP
                        711 Third Avenue - 14th Floor
                        New York, New York  10017
              BY:  **JAMES J. MCGUIRE, ATTORNEY AT LAW**

                        THE LAW OFFICE OF JOHN F. OLSEN
                        800 West El Camino Real - Suite 180
                        Mountain View, California  94040
              BY:  **JOHN F. OLSEN, ATTORNEY AT LAW**

| | |
|---|---|
| 1 | <u>**Friday - February 26, 2021**</u>                    <u>**9:30 a.m.**</u> |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Court is now in session.  The Honorable |
| 5 | Edward M. Chen is presiding. |
| 6 | Calling Civil action 20-6761, State of California, et al., |
| 7 | vs. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al. |
| 8 | Counsel, please state your appearances for the record |
| 9 | beginning with counsel for plaintiffs. |
| 10 | **MR. CRAIN:**  Good morning, Your Honor.  Lee Crain for |
| 11 | plaintiffs Frank Muehlberger -- Bryan Muehlberger, Frank |
| 12 | Blackwell, and the Giffords Law Center to Prevent Gun Violence. |
| 13 | **THE COURT:**  All right.  Good morning, Mr. Crain. |
| 14 | **MR. OLSEN:**  Good morning, Your Honor.  This is John |
| 15 | Olsen from Ferdinand IP, California counsel for intervenor |
| 16 | Polymer80. |
| 17 | **THE COURT:**  All right.  Good morning, Mr. Olsen. |
| 18 | **MR. WISE:**  Good morning.  Matthew Wise, Deputy |
| 19 | Attorney General, for the State of California. |
| 20 | **THE COURT:**  All right.  Good morning, Mr. Wise. |
| 21 | **MR. WISNIEWSKI:**  Good morning, Your Honor.  Cody |
| 22 | Wisniewski for applicants in intervention Zachary Fort, |
| 23 | Frederick Barton, BlackHawk Manufacturing, and Firearms Policy |
| 24 | Coalition. |
| 25 | **THE COURT:**  All right.  Good morning, Mr. Wisniewski. |

1    **MR. LEE:**  Good morning, Your Honor.  This is George

2  Lee also appearing on behalf of the proposed intervenors Fort,

3  Barton, BlackHawk Manufacturing, and Firearms Policy Coalition.

4    **THE COURT:**  All right.  Good morning, Mr. Lee.

5    **MR. LEE:**  Good morning.

6    **MR. McGUIRE:**  Good morning, Your Honor.  This is James

7  McGuire of Barton LLP.  I am a New York lawyer.  You have

8  admitted me *pro hac vice* and, if permitted, I'll be addressing

9  the Court today in connection with Polymer80's motion to

10  intervene.

11    **THE COURT:**  All right.  Thank you, Mr. McGuire.

12    **MR. MAULER:**  Good morning, Your Honor.  Daniel Mauler

13  with the U.S. Department of Justice on behalf of the defendants

14  Bureau of Alcohol, Tobacco, Firearms and Explosives, Regina

15  Lombardo in her official capacity as the Acting Deputy Director

16  of the ATF, and all the other defendants in this case.

17    **THE COURT:**  All right.  Thank you, Mr. Mauler.

18    **MR. MAULER:**  Your Honor, I also have my colleague,

19  Lesley Farby, who is with the Federal Programs Branch of the

20  Department of Justice, with me as well.

21    **THE COURT:**  All right.  Good morning, Ms. Farby.

22    **MS. FARBY:**  Good morning.  Thank you.

23    **THE COURT:**  Other appearances?  Has everybody made

24  their appearance in this case?

25    **THE CLERK:**  Mr. Skaggs?

**MR. SKAGGS:** Apologies. Adam Skaggs, chief counsel with Giffords Law Center to Prevent Gun Violence on behalf of Giffords Law Center, Frank Blackwell, and Bryan Muehlberger.

**THE COURT:** All right. Thank you, Mr. Skaggs.

**THE CLERK:** Mr. Pascual.

**MR. PASCUAL:** Good morning, Your Honor. This is Christopher Pascual from the D.C. Office of the Attorney General. I'm just observing today. I may have inadvertently clicked the raised hand button so I'm not participating in today's hearing.

**THE COURT:** All right. That's fine.

All right. Well, let's get to what seems to be the core issue here, and that is the question of adequacy of representation when we're looking at Rule 24.

And if we know what Judge Woods decided, what's the difference in this case? Why is there inadequate representation if at least it appears that the intervenors -- the applicants for intervention share the same view in terms of sustaining the ATF's current interpretation?

**MR. WISNIEWSKI:** Your Honor, Cody Wisniewski for applicants for intervention. I can speak directly to Judge Woods' order as well as why this case is slightly different.

Just to note for the Court, we have actually appealed that order as well. It is currently going up before the

Second Circuit.  So that decision will be reviewed by that court.

Judge Woods' order is distinguishable from this case for two particular reasons.  First, it's based on Second Circuit case law, which is more stringent than the test that's applied in the Ninth Circuit.  In fact, Judge Woods actually noted that in his order stating that the Second Circuit demands a more rigorous showing than the *Trbovich* standard, which is the Supreme Court standard.

Additionally --

**THE COURT:**  What about compared to the Ninth Circuit *Arakaki* standard that similarly requires a compelling showing if there's -- if the interests are aligned -- otherwise aligned?  Isn't that -- that sounds similar to the Second Circuit standard.

**MR. WISNIEWSKI:**  It is similar, Your Honor, however, the Ninth Circuit standard is slightly lower than the bar that the Second Circuit sets.  If this Court looks at *Southwest Center for Biological Diversity* or *Wilderness Society*, this Court will see that applicants' burden is really just to show that there is a difference of interest, that we will take a different position than that of the federal defendants.  In fact, that court specifically said that it's not applicants' burden to anticipate specific differences in trial strategy.

And with the filing of our proposed motion to -- sorry --

our proposed response, which isn't at issue today, applicants
have already demonstrated that we have a different viewpoint
than the federal defendants.

Furthermore, Your Honor, applicants are not arguing for
the expansive jurisdiction of the ATF in this case.  We're not
arguing for *Chevron* deference, or any deference for that
matter, which federal defendants will likely argue for in this
case.  Instead, we're arguing as a matter of law and the actual
original public meaning of the Gun Control Act and its
application thereto.

Furthermore, Your Honor, applicants have a different
experience than that of the federal defendants, and that was
what was at issue in the *Sagebrush Rebellion Case v. Watt*.  And
it's clear here that applicants' experience on the other end of
the ATF's rule making submitting samples to be determined
whether or not they meet the definition of firearm and their
participation in the market is significantly different than
that of the federal defendants; thus, will add a different
element to this case, which is the standard for intervention in
the Ninth Circuit, Your Honor.

THE COURT:  Well, but the issue is framed as an APA --
this case is framed as an APA case.  So given that framework,
what are the -- where is a divergence of argumentation between
ATF and the intervenors?

MR. WISNIEWSKI:  Two points to that, Your Honor.

1    First, petitioners, plaintiffs in this case, have included a

2    certain amount of extra-record evidence in their filings, all

3    of -- and some record evidence that relates specifically to one

4    of my clients, which is 80 Percent Arms, BlackHawk

5    Manufacturing.  Federal defendants have already noted that the

6    APA constrains their argument and that they won't necessarily

7    be able to address those arguments.  So that's one instance.

8        While that evidence is still potentially before the Court,

9    we might argue that it's not appropriately before the Court for

10   the purposes of the inevitable adjudication, but that is still

11   before the Court right now.

12       The other side, Your Honor, is the deference issue is very

13   key here, as well as the market issue.  So the federal

14   defendants in the *Syracuse* case, for example, Your Honor,

15   argued for *Chevron* deference to uphold their -- the

16   interpretation of their application of the definition in that

17   case.

18       Applicants do not believe that *Chevron* deference is

19   appropriate in this matter.  Deference to the agency is

20   unnecessary, and we would -- will not argue for that position.

21   In fact, we'll argue against it, Your Honor.

22       **THE COURT:**  And so your substantive position is that

23   the current interpretation is not a matter of administrative

24   discretion under the APA but legally mandated under the

25   statute?  Is that --

1      **MR. WISNIEWSKI:**  That is correct, Your Honor.

2      **THE COURT:**  All right.  Let me hear plaintiffs'

3   response to that.  Why isn't there enough -- well, let me first

4   ask your views about Second Circuit versus Ninth Circuit law on

5   the standard of assessing adequacy of representation under

6   Rule 24.

7      **MR. CRAIN:**  Thank you, Your Honor.  Lee Crain for

8   plaintiffs Blackwell and Muehlberger and Giffords and with the

9   consent of California.

10      The standard is materially indistinguishable.  *Arakaki*, as

11   Your Honor said, places a very compelling evidence standard on

12   the burden of applicants to rebut a presumption of adequacy

13   that Polymer80 has already conceded exists in this case.

14      So our view is the standard is completely on point between

15   Judge Woods' decision and here.  There is nothing in the case

16   law we've seen to apply it differently.

17      In terms of some of the other points Mr. Wisniewski made,

18   whether *Chevron* deference is appropriate or not doesn't

19   actually help them on this position because *Chevron* deference

20   actually -- the question under *Arakaki* is whether the ultimate

21   objective of the intervenors and the defendants is the same.

22   The ultimate objective is the preservation of the decisions by

23   the ATF.

24      So *Chevron* deference is an argument the government has

25   made towards that ultimate objective.  They've made it in their

motion to dismiss already in this case.  The question in *Arakaki* is whether the government will make all the arguments that will support the objective of the two parties -- of the party and the putative intervenor.

The other point in terms of *Sagebrush*, Your Honor, *Sagebrush* is entirely distinguishable.  That case --

**THE COURT:**  Let me -- before you go further, I mean, obviously even where the parties -- the applicant for intervention and the defendant -- share the same objective, there's obviously room to find a compelling showing, and wouldn't one of those situations be, for instance, if the defendant has no interest in enhancing the record in some way but the intervenor does, which could add another line of defense, for instance, or make an argument, a legal line of argument, that the -- same objective but make a legal -- assert kind of another kind of legal defense that is not asserted, wouldn't those be examples of where there might be a compelling showing that would admit an intervention?

**MR. CRAIN:**  Your Honor, to the extent that there were arguments or evidence in the record that were relevant to the case, I would say it is theoretically possible.  Judge Kosinski's decision in *Lockyer* makes that point with respect to the government's position that had already been made in that case to narrow the statute that they were defending.

That's different from this case for a number of reasons.

In part, because the government has argued not only for *Chevron* deference here, but they've also argued that the statute comes out exactly as my friend on the other side says.

In terms of additional record material, I note the government on page 3 of its response says -- it points to the same record material that Mr. Wisniewski does and in the very next clause says that that record material is irrelevant to this case.

This case is a narrow APA case. It will be resolved on the administrative record. So to the extent that my friends on the other side take issue with some of our allegations and argue that they're extra-record, number one, the government is already representing that position; and, number two, we have recognized in our own briefing that this case will be resolved on an administrative record that the government will produce barring some sort of exception to the discovery -- the normal discovery procedures in the APA statute.

So while it is technically possible that if they bring relevant evidence and differing legal positions to bear that matter, that's not been shown in this case. This case is much more akin to cases like *Arakaki* and *Geithner* where any minute differences would be ones of legal strategy and not of actual argumentation.

And I'd refer Your Honor to my friends on the other side. They filed an answer, a proposed answer, and a proposed what we

construe to be a motion to dismiss, and they make the same
arguments that the government does.  The affirmative defenses
address standing.  They address the merits of our claims.  They
address the statute of limitations.  These are point by point
the arguments that the government has made not only in our case
but also in the *Syracuse* case, and same thing with respect to
the proposed again what I'll say the motion to dismiss, which
was docketed I think at 53.

What it does is it dances standing arguments and arbitrary
and capriciousness arguments.  There might be some minute
differences in the legal strategy, but *Arakaki* tells us
explicitly that legal strategy differences are not enough.

So in terms of what these applicants bring to bear at the
table, I don't think they've nearly approached their high
burden to rebut the presumption of adequacy that exists here --
that Polymer80 concedes exists.

In terms, Your Honor --

**THE COURT:**  Let me ask you.  When you say *Arakaki*
speaks of differences in legal strategy, what's the line
between sort of legal strategy and differences in arguments, in
actual legal theories which may come in conflict?

It's generally not in the agency's interest to argue
against *Chevron*.  *Chevron* is usually a reliable tool; but the
other argument being that, "Well, there's a clear statutory
mandate here, and with or without -- we don't need *Chevron*

here."  I mean, there seems to be some potential tension
between what -- that's not an argument I don't think that the
ATF is going to make, but it is one that the intervenors want
to make.  And is that just a mere difference in legal strategy;
or is that something more material, more central in terms of
legal defenses?

       **MR. CRAIN:**  Well, Your Honor, as an initial matter,
the defendants have made that argument.  They have said that
irrespective of whether *Chevron* deference or *Skidmore* deference
or none at all applies, the statute, it says what it says and
it requires their position.  So I think that position is ably
represented already in this case.

   In terms --

       **THE COURT:**  So there is no difference you're saying?
The ATF has already subsumed that position?

       **MR. CRAIN:**  That's our read of the motion to dismiss,
Your Honor, yes.

   And in terms of the line between legal strategy and
argument, I think -- I looked at Judge Kozinski's opinion in
*Lockyer* again, and I think the big thing for him in that case
was that the government was willing to concede a limiting
construction of the statute at issue in that case.  That was a
fundamental question that was going to bear on the outcome of
the case.

   That's not the question here.  Whether the statute -- in

terms of the resolution of this case, whether the statute

mandates the ATF's decision, as we read their motion to dismiss

to argue, whether it -- whether *Chevron* deference renders it

appropriate is reasonable, whether *Skidmore* deference applies,

the ultimate question in this case is whether ATF's decisions

will stand or whether this Court will vacate them in the end.

And ultimately that position is ably represented here, and the

government from our standpoint seems to be representing all of

those points.

     **THE COURT:** All right.

     **MR. McGUIRE:** Your Honor, this is James McGuire.

Excuse me.

    I'm assuming that the Court at this point is addressing

only BlackHawk's motion to intervene? We, Polymer80, have a

separate motion to intervene. Not all of these questions

have -- not any of the questions have been directed to me, but

I don't want to be silent if Your Honor is trying to address

both intervention motions at the same time.

    Our situation is very, very different than BlackHawk's,

and we have very different answers to some of the questions

that Your Honor has posed already.

     **THE COURT:** All right. I will get to you in a minute,

but let me just go back to hear the reply to what I just heard;

that is, this is really at the end of the day a difference in

legal strategy and, in any event, the ATF has ably represented

the range of defenses that are asserted.

**MR. WISNIEWSKI:** Thank you, Your Honor.

Just a couple quick points to that. At this stage of the litigation, the ATF has -- or federal defendants have only filed a motion to dismiss. We haven't addressed the underlying claims at all.

A significant difference between the *Syracuse* case and this case is that the federal defendants have spoken on our motion to intervene in this matter and they have not opposed it.

Now, their position was that the Court should resolve the motion to dismiss first; but if the Court were not to do that, that we should be granted intervention in this matter.

So the federal defendants themselves state that they don't adequately represent the interests of my clients in this matter.

And it's clear that even though *Arakaki* stands for the proposition that there must be a compelling showing, that doesn't mean that *per se* if federal defendants are involved in this litigation that there can't be intervenors.

The Ninth Circuit is very permissive towards intervention. It is a very light standard and it is very common in this circuit for parties that have interests in the market or in the inevitable outcome to intervene in litigation. We see this all the time in APA cases involving the ESA and NEPA.

1    In fact, when looking at federal defendant -- there was a

2 bright-line federal defendants rule in NEPA litigation in this

3 circuit not more than 20 years ago, and the circuit looked at

4 that and specifically noted that such a bright-line rule does

5 not allow this Court to consider the permissive nature of

6 intervention.

7    Now, the goal for intervention in this circuit is to

8 simplify litigation and ensure that all interests are

9 represented so that the inevitable outcome of the Court will

10 weigh into consideration all of those.

11    Now, there's no reason not to allow applicants to

12 intervene in this matter who are differently situated than the

13 federal defendants, who have been on the other end of the ATF's

14 rule making, and have a significant interest in this market.

15    If plaintiffs are successful in this case, it will

16 completely undermine BlackHawk Manufacturing's entire business

17 practice.  It will completely undermine the individual

18 applicants' personal practices, which they've undergone and

19 continue -- and state that they will continue to undergo.  So

20 we're not talking about a mere overlap in position here.  We

21 have substantially different arguments.

22    And, you know, while plaintiffs construe our motion -- or

23 our response -- proposed response to the motion to dismiss to

24 be substantially similar, if the Court looks to those two

25 documents, what the federal defendants filed and what we filed

1    proposed, they're very different.  We do make very different

2    arguments than the federal defendants.  For example, we argue

3    that the plaintiffs' claims are undermined by their own

4    complaint, which is an argument the federal defendants do not

5    make in detail.

6          We're at a very early stage of this litigation,

7    Your Honor.  Plaintiffs want to seek to implicate us by citing

8    our website, by citing my clients' letters in this case, and

9    then also seek to exclude us from the conversation.  We have

10   established that we'll make different arguments than the

11   federal defendants, that we have a different position, and that

12   we are coming from a different angle.

13         And so that was -- as to adequacy of representation,

14   Your Honor, I'm happy to rest there.

15         **THE COURT:**  And why wouldn't *amicus* participation be

16   sufficient?  If you want to make legal arguments about

17   statutory construction, et cetera, why can't that interest be

18   adequately represented by way of an *amicus* participation?

19         **MR. WISNIEWSKI:**  Your Honor, *amicus* participation is

20   very limited.  It does not -- it would not require the

21   plaintiffs to respond to any arguments that we make.  While

22   this Court could consider the arguments that are made in an

23   *amicus* brief, it would not be an issue that is directly before

24   the Court.

25         Furthermore, later on in the litigation *amicus* support

would not allow applicants to have any say in the inevitable conclusion, the judgment. There would be no reply opportunity. If there are issues at the end of the case where the ATF changes position as this case was started prior to -- under a different administration and now is continuing under a new administration, applicants would be without any ability to influence the litigation at all in that stage, Your Honor.

THE COURT: Well, if the ATF changed its position, that would open -- you know, then we're in a different ballpark. I mean, in that case intervention I think would be much more obvious.

But I'm saying assuming that there is no change in policy position, it sounds like a lot of what you want to make, the main thrust is a non-*Chevron* kind of argument, a statutory interpretation that the current interpretation is one that's actually mandated by statute. That's the kind of thing that's a legal argument that an *amicus* brief would look very much like a party's brief in that regard.

MR. WISNIEWSKI: Yes, Your Honor. And that's only part of it. I simply offer that as one example where I could see -- or in that example I know that our applicants litigation strategy will differ from that of federal defendants; but there are other areas where our legal strategy and our inevitable outcome could differ and are likely to differ when it comes to the original public meaning of the Gun Control Act as it fits

into the appropriateness of federal regulation of firearms or nonfirearm objects, the overlap of those issues, the overall congressional authority that's been granted to the ATF in this matter.

The ATF has a very limited authority to regulate firearms under very specific acts, and applicants will argue for a very narrow interpretation of the ATF's authority and power in this situation, Your Honor.

The key here is -- and I know Mr. Crain says that *Sagebrush* is inapplicable here, but it's key in *Sagebrush* that there is specific language from the Ninth Circuit that we do not need to anticipate specific differences in trial strategy.

We're merely offering examples of scenarios where we know for a fact our strategy and the goal of the inevitable outcome will differ, Your Honor. But without this litigation proceeding, without seeing the opening brief of plaintiffs in this matter, we can't know necessarily exactly how we will differ from the federal defendants in this matter.

**THE COURT:** All right. Let me hear from ATF. Do you have anything to add to your papers in this regard?

**MR. MAULER:** Your Honor, thank you. Dan Mauler with the Department of Justice on behalf of ATF.

I don't have anything more to add to the papers other than to highlight the government's position that we believe the motion to dismiss should be decided first, Your Honor, before

1    the intervenor motions are decided.

2        In our moving -- in our motion to dismiss, we've asserted

3    jurisdictional and standing issues, and we believe that the

4    Court should first determine whether there is even jurisdiction

5    in this case to proceed before deciding the motion -- before

6    deciding the motion to intervene.

7        Other than that, Your Honor, we've laid forth our

8    positions regarding the specific motions in our papers.

9            **THE COURT:**  All right.  Thank you.

10       Mr. McGuire, you wanted to address your clients'

11   perspective.

12       You're muted.

13           **MR. McGUIRE:**  I guess I was, Your Honor.  Forgive me.

14           **THE COURT:**  Sure.

15           **MR. McGUIRE:**  May it please the Court and thank you

16   for the privilege of appearing before you as a *pro hac vice*

17   advocate.

18       Your Honor, our situation is extremely different and, in

19   fact, unique.  We have moved to intervene in the New York case

20   and that motion is pending.  And we have intervened here after

21   the BlackHawk entity sought to intervene because completely

22   unbeknownst and surprising to us, on December 10 of 2020,

23   approximately two months ago, the ATF, as supervised by the

24   United States Attorney's Office, which is effectively DOJ,

25   United States Attorney's Office in Los Angeles, executed a

search warrant at our company's premises in Nevada and seized a great deal of material.

During the execution of the warrant, served company officials with a federal criminal Grand Jury subpoena issued out of that L.A. U.S. Attorney's Office and a Grand Jury in that district.

And thereafter -- I can represent to the Court, I am representing the company in connection with that investigation -- I spoke to the Assistant United States Attorney handling the investigation and he advised me, using very carefully chosen words, that Polymer80 is the, quote, "clear focus of that investigation and the focus of that investigation is as is set forth in the search warrant affidavit."

Now, the search warrant affidavit, in essence, takes the position in two key respects that raise issues almost entirely on all fours with the issues before this Court.

First, my clients' so-called Buy Build Shoot Kits, a primary one of which is a Buy Build Shoot Kit for one of the Glock blanks, the PF940C Glock blank, that is the subject of the January 2017 Obama Administration classification letters -- that is one of the three letters at issue in this case -- is a firearm.

And, secondly, as set forth in paragraph 48 of the search warrant affidavit, the government, at least in connection with

that investigation -- and the government again in that

investigation are the same government entities as are the

government defendants here:  ATF, DOJ -- that those entities

are now pursuing the angle, the argument, the possibility that

the individual components of that kit themselves are firearms.

That is to say, that the precise item that in January 2017 the

ATF declared, which is now being challenged by these

plaintiffs, was not a firearm, is a firearm; and not only that,

we're under criminal inquiry and exposure with respect to that

product among others.

Now, in those premises, Your Honor, for the Court to deny

intervention, the Court would have to find that the same

government entities can adequately represent all -- and the

Ninth Circuit cases are clear -- all of Polymer80's arguments

and concerns when they are criminally investigating Polymer80

400 miles away through the same government entities about the

same products at issue in this case.

No other Ninth Circuit case, indeed no other

Second Circuit case, and indeed no other United States case of

which I am aware, and I have done my best to study the

scholarship and the court decisions, raises this factual

scenario.

So what I would say to the Court is, given the liberal

construction of intervention as of right in the Ninth Circuit,

given the presumption, if you will, in most cases which favors

intervention, given the minimal showing which a proposed

intervenor needs to meet, and given the fact that all we have

to show in order to be able to intervene before this Court as

of right is that these government defendants may not be able to

advance all of our concerns and issues, then we are entitled to

that intervention as of right.

Now, as Mr. Crain quite correctly stated, we accept,

acknowledge, and concede the presumption that the government

defendants in the typical case are presumed to adequately

represent those of the attempted or proposed intervenors, and

we accept and acknowledge and concede that under Ninth Circuit

law in that kind of a setting we must make a compelling

showing.

We have made that showing, Your Honor, based upon events

starting on December 10 and continuing through today.  We just

produced 39,000 pages of documents to the United States

Attorney in Los Angeles.  We have ongoing dialogue through me

and my firm with the prosecutor.  The investigation is going

on, and I've already represented to the Court what I was told

the investigation is about and what the search warrant

affidavit on its express face says.

THE COURT:  Let me ask you.  The focus, as I

understand it, is on the Buy Build Shoot Kits, which include

not only the frame and receiver but other parts, and that it's

not clear that there is an inconsistency in the ATF's position;

that is, with respect to what is at issue in this case, which
is not the kits but something narrower than the kits, and the
possibility that they are investigating a larger assembly here.
What evidence do you have that the ATF has taken a 180 on the
actual, you know, policy position as evidenced by the letters
on the receiver and the frame?

MR. McGUIRE:  In response, Your Honor, I would call
the Court's attention respectfully to paragraph 48 of the
search warrant affidavit, which as we read it and as I have
been told by the Assistant United States Attorney at minimum
suggests that the ATF's newfound position is, leaving the kits
aside, given the fact that the kits contain individual products
which can be purchased separately and individually, that if
those purchases can take place and if they do, in fact, take
place, the purchase of the individual components of the kits,
the receivers, et cetera, themselves become firearms under the
ATF -- at least ATF's -- at least as to us, Polymer80's
investigation, and the position legally that the ATF is taking.

Your Honor, again, respectfully, please remember the
letters at issue in this case were issued to us.  The letters
in this case deal with our products.  The letters in this case,
if overturned, will, as the record shows, diminish our
company's revenue by somewhere between 50 and 75 percent.  We
clearly have an interest here.

ATF is publicly on record at minimum suggesting that they

are moving away from a posture that the individual components
of those kits are not firearms and one of the individual
components of those kits, the frame, if you will, of the Glock
pistol, the PF940C, which is the subject of the January 2017
classification letter where they say it is a firearm, ATF now
is at minimum suggesting it isn't.

And if I could just give Your Honor a specific example as
to how ATF -- and I say this with all respect and I don't mean
this critically -- they have their own agenda and they're
representing their clients zealously to the best of their
ability; but we would have made, and if given the opportunity
will make, a very different motion to dismiss on the precise
legal issues and questions before the Court, to wit,
Your Honor, in order for that PF940C blank to be deemed a
firearm under the Gun Control Act, there are two steps or two
questions that must be addressed.

The ATF in its motion to dismiss, for its own appropriate
purposes I suppose, only attacked or addressed one of them.  It
was the second step; that is, whether that -- what we would
call a frame, a blank, whether that is in a sufficient stage of
completion or construction or manufacture to constitute a
firearm.  And we agree with the ATF and would take the same
position as the ATF; but what the ATF didn't do in this case,
Your Honor, and again I say this respectfully, is argue the
antecedent point.

         Under the Gun Control Act and Section 478.11 of the Code
of Federal Regulations, which is tied to the Gun Control Act,
that frame in and of itself must be deemed a receiver; and to
be a receiver, it must have four separate components.

         And without getting into the weeds, if you will, of
firearms issues at this premature point, we would show this
Court that our frame has only one of those components such that
you don't reach the second question unless the frame itself is
a firearm, and it's not.  ATF didn't make that argument here.

         Why do I think they didn't make it?  Because of paragraph
48 and maybe other reasons.  Because they want to reserve the
option in the criminal investigation 400 miles away from you
being conducted by these same defendants that those individual
components in this case, the frame of that Glock pistol, are
firearms.

         So I don't mean to be contentious with a party or parties
with whom I hope I'm on the same side of the V, if Your Honor
will permit; but I will tell the Court in good faith that we
would address and attack the core legal issues before the Court
in a very different way than ATF, and that is just one glaring
example.

         **THE COURT:**  Is that a legal issue that's relevant to
what the issues as framed by the plaintiffs' complaint is --

         **MR. McGUIRE:**  Yes.

         **THE COURT:**  -- which more generally challenges the

classification letters and not necessarily its application to

specific, you know, as you say into the weeds?

It's not obvious to me, but tell me.  Why --

**MR. CRAIN:**  Lee Crain on behalf of plaintiffs.

**MR. McGUIRE:**  Yes, Your Honor.

Your Honor, were you addressing that question to me,

Mr. McGuire?

**THE COURT:**  I'm going to ask you and then I'm going to

ask -- I'm going to hear from the government as well as from

the plaintiffs, but I'll let you respond to that.

**MR. McGUIRE:**  My response to the Court's question

would be absolutely it is directly on point, Your Honor,

because we would say -- correct me, but the plaintiff in this

case alleges that the classification letters under the APA,

number one, are unlawful; and, number two, are arbitrary and

capricious.  And we would argue in both cases, as would ATF we

concede, that they were lawful and they were not arbitrary and

capricious.

And in the particular example that I tried to describe for

Your Honor, we would cite that as a basis of why the decision

that those frames with regard to that particular letter are not

firearms was well-founded, was correct, was not arbitrary and

capricious.

Now, if there are ten arguments as to why the ATF's

decision was correct and the ATF only makes five of them or six

of them, even nine of them and we would make the other one, I
would submit to the Court, respectfully, that that finding,
that fact is enough to allow us certainly to intervene as of
right and absolutely to intervene --

**THE COURT:**  I guess I'm having trouble understanding
how your specific argument about the interpretation of your
particular blank or receiver and how it's applied to the facts
should come out a certain way, how that informs the larger
legal question as to whether the general position taken by
these classification letters somehow violates the APA.  I'm not
seeing the connection.

**MR. McGUIRE:**  I'm sorry.  It's my shortcoming then.
Let me try to be simpler and clearer.

The reason is -- the answer is that the argument that I
made to Your Honor is one of many reasons why the conclusion
that that frame, that blank was not a firearm was correct and
that the decision was lawful and that the decision was not
arbitrary and capricious because if our blanks or our frames
don't have the four necessary components, that is a
foundational fundamental question as to whether or not the item
itself is a firearm.

That portion -- that part of the item has to itself be a
firearm.  If it isn't, then the larger issue of whether or not
it's a firearm is decided.  And if you don't make that
argument, you take away a substantial reason and basis and

relevant basis for finding that the ATF's letter was lawful and not arbitrary and capricious.

**THE COURT:** All right. I'll let the plaintiffs respond first. Then I want to hear from the government.

**MR. CRAIN:** Thank you, Your Honor.

I confess this is the first I'm hearing of this issue from Mr. McGuire because, unfortunately, although the government's motion to dismiss came in well before his reply brief, this was not briefed.

So the burden is on applicants here to make a very, very compelling showing that Mr. McGuire I appreciate conceded applies here. They have not identified a single argument in their brief that the government did not make here.

With respect to the search warrant, Your Honor, I think in terms of the arguments that are being made in this case, any argument that Mr. McGuire could think to make I believe the government has made in their reply brief on page 10.

The government has already taken extensive efforts to try and distinguish the search warrant and the prosecution, at least as the record stands, as to what that prosecution represents from our claims that may or may not be right, that may or may not be distinguishable on when this Court resolves the motion to dismiss. But that's not the question here because the question here is only whether the arguments are being ably made and adequately represented.

So the government here in this case has addressed the search warrant and has addressed it just as well, I presume, as Mr. McGuire would and Mr. Wisniewski would to the extent he wanted to. So our view is the search warrant has changed nothing.

And then in terms of the additional issue --

**THE COURT:** In your mind that doesn't suggest a potential divergence of position?

**MR. CRAIN:** In terms of positions being made in this case, there is no present divergence. And what the Ninth Circuit has told us is that looking at *Lockyer* and looking at *Geithner*, the question is what the government has done in the case.

So what perturbed Judge Kozinski so much in *Lockyer* was that the government in its summary judgment briefing had actually taken a position that was adverse to the intervenors' interests.

The government has not done that here. They've taken a position exactly as the intervenors would want them, which is to say that the search warrant is distinguishable. Again, that may or may not be right, but the question here is whether the argument is being made and whether it's being made by the able representation of Mr. Mauler and Ms. Farby, and they have written a brief on it. They filed a brief before Your Honor.

So that's the only question at this stage in the case; and

on the record before you with none of these arguments that Mr. McGuire has made in his brief, with none of the -- no additional evidence on the status of the prosecution, today, Your Honor, there's no divergence in this case.

**THE COURT:**  Well, what about the argument, and you said you're hearing it for the first time, about the two steps and the first predicate step?  What's your response to that?

**MR. CRAIN:**  Candidly, Your Honor, I don't really follow how it's relevant today, and I think we need a little opportunity to brief it.

It doesn't seem relevant to the way we've formulated our claims; but, again, this is the first I've heard of it was four minutes ago.  So I think I don't have a better answer unfortunately; but from my perspective, it's not relevant to our claims but, candidly, I'd need a little more time to think about it.

**THE COURT:**  All right.  Thank you.

Mr. Mauler.

**MR. MAULER:**  Thank you, Your Honor.

I'm in the same boat as Mr. Crain where this is a bit of a new argument that I have not had much time to think about.

As I sit here today, I have not heard anything here that changes the government's position that we asserted in our responses to the motions to intervene.

I'll just point out that the government plan will be

defending the ATF's decisions upon the administrative record, and for the most part we're going to be limited to the administrative record. We stated that in our responses to the motions to intervene.

**THE COURT:** What's your comment about the divergence between the positions that might be taken by the applicant and the government, particularly in light of the search warrant question?

**MR. MAULER:** Thank you, Your Honor.

Your Honor, I see the search warrant as distinguishable from this particular case. Your Honor put your finger on the issue at the beginning when the search warrant first came up.

Specifically the search warrant, as I understand it, is focused upon the Buy Build Shoot Kits, which includes more than just the receiver blank. It includes all the necessary parts needed to complete an operating firearm. That's not the issue in this case. In this APA case that's before us, we are focused exclusively on the ATF's determination regarding receiver blanks.

And so I see the -- I really see the search warrant as not particularly relevant to this case. I think the ATF's determination regarding receiver blanks by themselves will rise or fall upon the administrative record and the text of the Gun Control Act.

**THE COURT:** Okay. And you think -- I know your client

supports intervention; but, in your view, the strongest point

in terms of divergence of view or lack of adequacy of

representation, if you could highlight the most compelling

illustration, remind me again what that would be.

MR. MAULER:  Sure, Your Honor.  It's specifically the

limits of the administrative record.  The plaintiffs themselves

have cited a number of statements on behalf of BlackHawk --

BlackHawk and Polymer80, I believe, specifically including

portions of those parties' websites in their papers.  That's

not something that the government will be able to appropriately

speak to in this case as we are relying on the administrative

record.  And so in that regard, the government is not able to

adequately address those particular issues.

So, Your Honor, to summarize, I think from our perspective

it's the limitations of the administrative record in this case.

THE COURT:  Now, if the Court were to conclude that

nothing -- given the nature of this case that extra-record

material would not be considered, that the Court would be

confined to the administrative record as it typically is in APA

cases, what about difference in sort of legal theories or kind

of approaches?  What's your view of that?

MR. MAULER:  Your Honor, as I sit here today, I

can't -- I'm not aware of any specific legal differences or

legal argument differences between the defendants and the

parties other than what we've -- period.  End of statement --

1  end of sentence.

2          **THE COURT:**  Okay.

3          **MR. MAULER:**  It goes back to the administrative record

4  from my perspective, Your Honor.

5          **THE COURT:**  All right.

6          **MR. McGUIRE:**  Your Honor, this is Mr. McGuire.  May I

7  just be heard briefly in reply?

8          **THE COURT:**  Before you do, let me hear from Mr. Crain.

9      I want to know your position on the administrative record.

10  I take it your position at this point, you're contemplating

11  that these proceedings would not be confined to the

12  administrative record?

13          **MR. CRAIN:**  Your Honor, generally in APA cases, as you

14  said, the review is on the administrative record.  So while

15  things may come up in the administrative record that prompt a

16  request for discovery, we've not reviewed the administrative

17  record yet so I can't say that.

18      But I think the government's position that this case is

19  almost -- is highly likely to be resolved on exclusively the

20  administrative record is the right answer as it stands today,

21  and I think it renders their discussion of the interests

22  inconsistent because they say the only things they can't

23  represent are things beyond the administrative record but the

24  Court can't look to the administrative -- the Court can only

25  look to the administrative record.

So I think we, at least as of today, having not seen the administrative record or having not had it produced in this case, we've seen bits and pieces of it from the *Syracuse* case, we think that's correct, that's the right --

**THE COURT:** As defined, though, as what constitutes the administrative record, we all know how that's defined in the APA, the plaintiffs are not anticipating -- if the full record is properly assembled, you're not anticipating bringing in sort of extrinsic evidence?

**MR. CRAIN:** That is correct, Your Honor. And I'll also note many of the things that the government has identified and that my friends on the other side have identified, they're also arguing they're time barred because there's a six-year limitation and some of the letters Mr. Wisniewski's clients -- that address to Mr. Wisniewski's clients are more than six years old. So those would be presumably not -- you know, not before Your Honor to the extent they're more than the six-year limitations period.

**THE COURT:** All right. Thank you.

Mr. McGuire, you wanted to comment.

**MR. McGUIRE:** I think three points, Your Honor. Paragraph 48 of the search warrant affidavit, as we read it, clearly says that the government is considering equating the sale of the individual components of the Buy Build Shoot Kits to the sale of the Buy Build Shoot Kits. Why? Because you

could buy each and every one of those parts from our company

individually or you could buy them all together at one time in

a kit.  If that's the case, then there is the critical

contradiction and divergence, which I articulated before and is

laid out in our papers.

Secondly, Your Honor --

**THE COURT:**  Let me ask you.  If their position in this

case, notwithstanding what you believe would be an inconsistent

contradictory position taken by the ATF, if their position in

this case still is to maintain the legality of the original

letter and that's what's being challenged, I guess -- unless

you're saying they are so disingenuous I can't trust them, I

still don't see the relevance of your point.

**MR. McGUIRE:**  I would suggest to the Court and argue

to the Court that the relevance of my point is that we will

make more, different, and, I would submit respectfully, better

arguments and present expert testimony from better experts who

are former government agents who know these issues inside and

out over decades of experience; that this current ATF

simultaneously taking the position that it's taking in this

court and 400 miles away taking positions apparently

179.9 degrees different from where they are here gives rise to

the possibility, Your Honor, and that's all we have to show to

the Court, that these government defendants may not be able to

raise all of the arguments.

1      And I think, respectfully, that we should be entitled --

2      **THE COURT:**  Is that the standard?  Is that the

3  standard, Mr. McGuire, that "may not be able"?  That meets the

4  compelling interest standard by showing there's a 1 percent

5  chance that they may not be able because 400 miles away they're

6  taking a narrow view of their own letter?

7      **MR. McGUIRE:**  Well, I would say that the --

8      **THE COURT:**  I'm not sure that's the test.

9      **MR. McGUIRE:**  Well, what I believe is the law is that

10  the general position is the "may not be able to make all the

11  arguments."

12      And, agreed, in a government case, as I've said we

13  concede, there's the presumption which can only be overcome by

14  a compelling showing I believe where we're simultaneously

15  dealing with the ATF in connection with this case and that are

16  adversarial to them potentially facing criminal charges that

17  would threaten the very existence of the company on the very

18  same issues that are before the Court, I think that's a

19  compelling showing that there may be instances or arguments

20  where we should be entitled to make those arguments where the

21  ATF would not.

22      And I think I put my finger on one of them and,

23  respectfully to government counsel, I don't hear him responding

24  to that argument in substance.

25      **THE COURT:**  All right.

1    **MR. McGUIRE:** Finally, Your Honor, last point, please,

2 and then I'll be quiet. Excuse me.

3    **THE COURT:** Go ahead. Yeah.

4    **MR. McGUIRE:** If the Court would permit -- we didn't

5 put this in our papers because it would be in substance what we

6 would, if permitted, move to dismiss on or move for summary

7 judgment on. If the Court would like it, we will submit a

8 detailed memorandum backed by expert testimony to explain to

9 the Court the arguments that we would make that the ATF has not

10 made on the very core issues, the precise issues of whether or

11 not those letters are unlawful, number one; and arbitrary and

12 capricious, number two, if the Court would like and would

13 permit.

14    **THE COURT:** All right. I'll take the matter under

15 submission. Obviously I'm going to need to resolve this

16 quickly because we really can't proceed unless we know exactly

17 who's a party to this case, and I'm wanting to move this along.

18    Is there any indication that the Second Circuit appeal,

19 Judge Woods' order, is being expedited? Or is there a fast

20 track for interlocutory motions in the Second Circuit?

21    **MR. WISNIEWSKI:** No, Your Honor. An appeal from

22 denial of intervention isn't actually interlocutory. It's an

23 appeal from the final decision so it doesn't qualify for the

24 expedited track in the Second Circuit.

25    We are, however, in the process of moving the appeal along

1   as quickly as we can and are going to be, you know,

2   establishing briefing deadlines here likely as soon as we come

3   off of this hearing.

4        THE COURT:  What's your experience these days in the

5   Second Circuit?  How quickly in an average civil case are

6   they -- what's their median time for disposition?

7        MR. WISNIEWSKI:  It's not the slowest circuit in the

8   nation, Your Honor, but I also do not believe that it's the

9   fastest circuit in the nation.

10       THE COURT:  Okay.

11     All right.  Well --

12       MR. WISNIEWSKI:  Your Honor, if I may.

13       THE COURT:  Yeah.

14       MR. WISNIEWSKI:  I know that I -- one thing came up

15  during Mr. Crain's argument that I think is relevant that

16  didn't come up initially, and I would just like to address it

17  briefly if that's okay.

18       THE COURT:  Sure.

19       MR. WISNIEWSKI:  And that's the *Lockyer* case.  And

20  that case actually wasn't cited in their response to our motion

21  to intervene, but Mr. Crain did mention that in that case

22  Judge Kozinski was troubled with the summary judgment briefing.

23     And I think what's clear here is that we have a temporal

24  problem really.  We have intervened at a very early stage of

25  this case or are seeking intervention at a very early stage of

1  this case so it's impossible to know what will be briefed at

2  the summary judgment stage if this case proceeds; and that's

3  exactly the *Trbovich* standard, the Supreme Court standard for

4  intervention, which is whether or not there is a sufficient

5  doubt as to the adequacy of representation.

6      And if an hour-long hearing as to the matter doesn't

7  expose that there is a sufficient doubt, Your Honor, I'm not

8  sure what else may.

9      And I would just like to briefly address as well that

10  we're speaking about intervention as of right.  However, we

11  have not addressed permissive intervention, but that is fully

12  briefed and the standard in the Ninth Circuit for permissive

13  intervention is very low.

14      In the *Kootenai Tribe* case, which is really -- is directly

15  applicable here, it's clear that there the court found that

16  intervenors didn't even have an interest in the rule making,

17  which isn't at issue here, but still they had an interest in

18  the use and enjoyment of roadless lands and in the conservation

19  of roadless lands which was at issue.

20      Well, my clients, Your Honor, have an interest in the use

21  and enjoyment of the products that are at issue in this case,

22  and I just wanted to address that briefly since it came up.

23      **THE COURT:**  No, I'm aware of that.  I'm aware of the

24  low standard.  I'm also aware the Court has more discretion

25  obviously by definition in the permissive intervention.

And, you know, the choice is threefold here. One is to deny but perhaps allow *amicus* brief at various junctures where it's appropriate to make arguments that otherwise perhaps might supplement the government's position. The other is permissive intervention, and that can be done with conditional rights. I think the Court has the power to say, "Well, I'll allow you to participate as a permissive intervenor, but you're not going to have full rights as a party. They'll be limited to X, Y, and Z"; or I could grant permissive -- mandatory intervention as of right under Rule 24(a). So I'm aware of the range of opportunities here.

I still observe that this is an APA case and in terms of record building, you know, whether the record is going to extend beyond the typical APA is certainly a factor to consider. And the courts have looked at -- you know, they tend to treat APA cases a little bit differently. That's not to say intervention is never permitted but, I mean, that's one factor.

And I've got to look at the potential divergence of interests; and it may be -- you know, certainly in any event this is a significant case and whatever I decide, I think the Court would be interested in getting a range of views on both -- you know, on the question that is at issue.

So I will take all that into consideration and take this motion under submission and hopefully will get out a ruling shortly on that.

1    So I appreciate your argument.  It's helpful.  Thank you.

2         **MR. WISNIEWSKI:**  Thank you, Your Honor.

3         **MR. McGUIRE:**  Thank you, Your Honor.

4         **THE CLERK:**  Court is adjourned.

5              (Proceedings adjourned at 10:29 a.m.)

6                        ---oOo---

7

8

9                   <u>**CERTIFICATE OF REPORTER**</u>

10        I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13   DATE:   Sunday, February 28, 2021

14

15

16

17   _____

18        Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                  U.S. Court Reporter
19

20

21

22

23

24

25