John F. Olsen (SBN 157465)
FERDINAND IP, LLP
800 West El Camino Real, Suite 180
Mountain View, CA 94040
Phone: (858) 412-4515
jolsen@fiplawgroup.com

James J. McGuire (*pro hac vice*)
Michael R. Patrick*
Mark A. Berube (*pro hac vice*)
(*pro hac vice* application to be filed)
Greenspoon Marder, LLP
590 Madison Avenue, Suite 1800
New York, New York 10022
Phone: 212.524.5000

*Attorneys for Proposed Intervenor*
*Polymer80, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, BRYAN MUEHLBERGER, FRANK BLACKWELL, and GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE,<br><br>                              Plaintiffs,<br><br>          v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, REGINA LOMBARDO, in her official capacity as Acting Deputy Director of Bureau of Alcohol, Tobacco, Firearms and Explosives, MICHAEL R. CURTIS, in his official capacity as Chief, Firearms Technology Industry Services Branch of Bureau of Alcohol, Tobacco, Firearms and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and WILLIAM BARR, in his official capacity as Attorney General of the United States, | CASE NO. 3:20-cv-06761-EMC<br><br>**RESPONSE OF PROPOSED INTERVENOR POLYMER80, INC. TO PLAINTIFFS' STATEMENT OF RECENT DECISION**<br><br>Hon. Edward M. Chen |

Proposed Intervenor Polymer80, Inc. ("Polymer80") hereby respectfully submits its Response to "Plaintiffs' Statement of Recent Decision" ("Statement"), filed by Giffords Law Center to Prevent Gun Violence, Bryan Muehlberger, Frank Blackwell, and State of California on March 19, 2021, in regard to Polymer80's pending motion ("Motion") to intervene in this action pursuant to Fed. R. Civ. P. 24. This Response is necessary to correct the procedurally improper, incomplete, and seriously misleading Statement plaintiffs have put before this Court.

The Statement, tendered purportedly pursuant to this Court's Local Rule 7.3(d)(2), runs afoul of that provision. The Rule states that "[b]efore the noticed hearing date" counsel may call the Court's attention to an opinion published after the filing of opposition or reply papers but must do so "without argument." Plaintiffs filed the Statement not "before" but *after* the February 26, 2021 hearing upon the Motion. And, fairly read, the Statement contains "argument."

In addition, the Statement is incomplete and thus misleading, because while attaching the March 19, 2021 Memorandum Opinion and Order ("Opinion and Order") of the United States District Court for the Southern District of New York (Woods, J.) in *City of Syracuse, NY, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, *et al.*, No. 1:20-cv-06885–GHW (S.D.N.Y. Mar. 19, 2021), Dkt. No. 113 (also annexed hereto), granting Polymer80's motion to intervene permissively in that similar case, the Statement represented (at its Page 2) that the Court's decision "limited Polymer80 to litigating summary judgment in that proceeding." The representation was, and is, false.

As this Court can readily see, Judge Woods' ruling did not so confine Polymer80. Indeed, among other remarks and determinations favorable to Polymer80, he stated that "[t]he Court will permit intervention for the limited purpose of litigating Plaintiffs' claims as presented in the operative complaint." Opinion and Order at 17. To the extent that plaintiffs here have sought to

tell this Court that Polymer80 is, as a result, "limited to litigating summary judgment" in the New York federal suit, they are manifestly in error. Nothing in the Opinion and Order bars Polymer80 from litigating the merits of that case in all stages thereof. In other words, Judge Woods has allowed Polymer80 to defend its property interests against the New York plaintiffs' claims "as presented in the operative complaint."

Polymer80 regrets that the submission of this additional paper has, in all the circumstances, been required to set the record straight.

Dated: March 22, 2021

Respectfully submitted,

_/s/ John F. Olsen_____
John F. Olsen (SBN 157465)

James J. McGuire (*pro hac vice*)
Michael R. Patrick*
Mark A. Berube (*pro hac vice*)
(*_pro hac vice_ application to be filed)
Greenspoon Marder, LLP
590 Madison Avenue, Suite 1800
New York, New York 10022
Phone: 212.524.5000

FERDINAND IP, LLP
800 West El Camino Real, Suite 180
Mountain View, CA 94040
Phone: (858) 412-4515
jolsen@fiplawgroup.com

*Attorneys for Proposed Intervenor Polymer80*

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2021, I electronically filed the foregoing with the Clerk of the Court using this Court's CM/ECF system, which will send notification to all counsel of record, pursuant to Fed. R. Civ. P. 5 and Civil L.R. 5-1:

Office of the Attorney General
Department of Justice
1300 I Street, Suite 125
Sacramento, CA 95814

*Attorneys for State of California*

Gibson, Dunn & Crutcher LLP
Avi Weitzman, Esq.
Lee R. Crain, Esq.
Liesel Schapira, Esq.
Kaylie Springer, Esq.
200 Park Avenue
New York, NY 10166-0193

Vivek Gopalan, Esq.
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921

Giffords Law Center to Prevent
Gun Violence
Hannah Shearer, Esq.
268 Bush St. #555
San Francisco, CA 94104

J. Adam Skaggs, Esq.
David M. Pucino, Esq.
223 West 38th St. # 90
New York, NY 10018

*Attorneys for Plaintiff Bryan Muehlberger,*
*Frank Blackwell and Giffords Law Center to*
*Prevent Gun Violence*

Eric Joseph Soskin, Esq.
US Dept of Justice
Office of the Assistant Attorney General,
Civil Division
RFK Main Justice Building,
Room 3416
Washington, DC 20530

*Attorney for Defendants*
*Regina Lombardo,*
*Michael R Curtis,*
*United States Department of Justice,*
*William P. Barr*

George M. Lee
Seiler Epstein LLP
275 Battery Street, Suite 1600
San Francisco, CA 94111

*Attorney for Intervenors*
*Zachary Fort*
*Frederick Barton*
*BlackHawk Manufacturing Group, Inc.*
*Firearms Policy Coalition, Inc.*

/s/ *John Olsen*
John Olsen

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/19/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
CITY OF SYRACUSE, NY, *et al.*,                    :
                                                   :
                              Plaintiffs,          :
          -against-                                :          1:20-cv-06885-GHW
                                                   :
BUREAU OF ALCOHOL, TOBACCO,                        :          MEMORANDUM OPINION
FIREARMS AND EXPLOSIVES, *et al.*,                 :          AND ORDER
                                                   :
                              Defendants.          :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

Plaintiffs brought this action under the Administrative Procedure Act (the "APA"),

challenging an interpretive rule and three determination letters issued to Polymer80, Inc. ("Polymer

80") by the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"), and the ATF's

failure to respond to their petition for rulemaking. Polymer80 has moved to intervene as a

defendant in this action. Plaintiffs oppose the motion; Defendants have not taken a position.

Because Polymer80 has not carried its burden to show that Defendants do not adequately represent

its interests, it may not intervene as of right. However, because this litigation challenges

determination letters issued to Polymer80, the Court exercises its discretion to permit Polymer80 to

intervene as a defendant, with conditions to limit the prejudice to Plaintiffs resulting from the late

addition of Polymer80 to the case.

## I.     BACKGROUND

Plaintiffs Everytown for Gun Safety Support Fund and Everytown for Gun Safety Action

Fund (the "Everytown Plaintiffs") and the cities of Syracuse, NY, San Jose, CA, Chicago, IL, and

Columbia, SC (the "City Plaintiffs," and together with the Everytown Plaintiffs, "Plaintiffs") have

brought this action against the ATF, Regina Lombardo (Acting Director of the ATF), the United

States Department of Justice ("DOJ"), and the Attorney General of the United States

("Defendants"). The Everytown Plaintiffs, a nonprofit membership corporation and its education, research, and litigation arm, constitute the country's largest gun violence prevention organization. Dkt. No. 11, Compl. ¶¶ 41–42. The City Plaintiffs are four major cities that have been impacted by gun violence, specifically gun violence involving the use of "ghost guns," which do not have a serial number or other identifying markings and are, as a result, untraceable. *Id.* ¶¶ 1, 11, 23–38.

This action arises from Defendants' interpretation and enforcement of the Gun Control Act (the "GCA"). Plaintiffs allege that Defendants have failed to apply the explicit terms of the GCA in determining what constitutes a "firearm" under federal law, and therefore, what items are subject to regulation under that Act. *Id.* ¶¶ 3–7. Specifically, Plaintiffs argue that the terms of the GCA clearly define regulated "firearms" to include both operable weapons and the core building blocks of those weapons, such as unfinished frames and receivers, if they are designed to be or may readily be convertible into operable weapons. *Id.* ¶¶ 3, 63 (citing 18 U.S.C. § 921(a)(3)). Plaintiffs allege that by using a gun-building kit containing these items, purchasers can assemble a "ghost gun" within a few hours. *Id.* ¶¶ 10–11. Because such kits are not regulated under the ATF's interpretation of the GCA and do not require a background check, they are available to individuals who would otherwise be ineligible to purchase firearms. *Id.* ¶¶ 9, 134.

In early 2015, the ATF promulgated an interpretive rule distinguishing a firearm from an unregulated frame or receiver based on a solidity test. Later that same year and again in 2017, the ATF issued three determination letters to that effect to gun-building kit supplier and proposed intervenor, Polymer80, which features the letters on its websites as proof of its right to legally sell gun-building kits. *Id.* ¶¶ 82–87, 108–18, 168–98; *see id.* ¶¶ 78–81, 88–92. Plaintiffs argue that because the ATF has excluded unfinished frames and receivers from the definition of regulated firearms under the GCA, companies like Polymer80 are permitted to sell gun-building kits nationwide without regulation. *See id.* ¶¶ 9, 93, 97–107. On December 11, 2019, the Everytown

Plaintiffs submitted a petition for rulemaking asking Defendants to recognize that unfinished frames and receivers used to make ghost guns qualify as "firearms" under federal law and accordingly, that they should be regulated. *Id.* ¶¶ 148–49, 152. The City Plaintiffs subsequently joined the petition. *Id.* ¶¶ 163–66. At the time Plaintiffs initiated this action, Defendants had not responded to the petition other than to confirm receipt. *Id.* ¶¶ 161, 167.

Plaintiffs request that the Court set aside as arbitrary, capricious, and contrary to law the 2015 interpretive rule memorializing the ATF's interpretation of the GCA and the three determination letters issued by the ATF in 2015 and 2017 to Polymer80. *Id.* ¶¶ 168–98. Plaintiffs also seek relief for Defendants' delay in failing to respond to their petition for rulemaking. *Id.* ¶¶ 199–206. The parties are currently briefing their respective motions for summary judgment, and briefing will be complete on March 19, 2021. *See* Dkt. Nos. 35, 55, 61–64, 69, 85, 87, 97–100, 112. The Court has received and granted six requests for leave to file amicus briefs. *See* Dkt. Nos. 71–74, 76–77, 104–105, 108–109.

Polymer80 is a Nevada-based company that designs, develops, and sells aftermarket gun accessories, including unfinished lower receivers or frames that can be bought as kits and assembled at home. Polymer80 became aware of this action after Plaintiffs filed their complaint, which contained references to Polymer80, its business practices, and its products. Dkt. No. 79, Mem. Law Supp. Polymer80, Inc.'s Mot. to Intervene ("Mem.") at 4–7. However, Polymer80 did not intervene when they became aware of the action. Instead, it appears, the company made a tactical decision to wait to decide about intervention until after it could evaluate Defendants' responses to the complaint. *Id.* at 7 ("Indeed, the Company was most interested in scrutinizing and assessing all of the initial submissions from the present defendants in response to the Complaint."). Polymer80 says that a change in its approach was provoked by a dramatic event at the company's facility in early

December—a raid by the ATF focused on the sale of the company's "Buy Build Shoot" ("BBS") kits. *Id.* at 8.

Some additional background may be helpful in order to place the raid, and the issues resulting from it, in context. As the Court has described, three ATF determination letters issued to Polymer80 are at the center of this case. Those letters were issued between 2015 and 2017. In the second of these letters, issued in November 2015, the ATF determined that a Polymer80 unfinished pistol frame was not "sufficiently complete to be classified as the frame or receiver of a firearm; and thus, is not a 'firearm' as defined in the GCA." Dkt. No. 92-2, Pls.' Mem. Law Opp'n to Mot. to Intervene ("Opp'n") Ex. B. ¶ 40. The ATF noted that its "determination was relevant only to the item as submitted, and that if the design or configuration of the item was changed, the opinion expressed in the letter would not apply and a new analysis and determination would be needed." *Id.* Polymer80 subsequently submitted two more unfinished frames for ATF analysis. *Id.* ¶ 37. Polymer80's submission contained only unfinished frames. *Id.* ¶ 38. In response, the ATF issued a January 2017 determination letter concluding that Polymer80's unfinished frames, as constituted, were not sufficiently complete to be classified as firearms under the GCA. *Id.* ¶ 39.

In December 2017, Polymer80 submitted a lone PF940V2 Blank for analysis by the ATF. *Id.* ¶ 42. On February 20, 2018, the ATF issued a determination letter stating "[i]t is clear . . . that the submitted sample is only a component used in the assembly of an end-item" and identifying "additional components that are advertised as being sold in combination with the PF940V2 Blank on Polymer80's website." *Id.* ¶ 43 (citing Dkt. No. 92-2, Opp'n Ex. B., ECF pp. 93-96). The ATF advised that it did not evaluate partial product submissions and requested that Polymer80 submit its complete model PF940V2 BBS kit for evaluation. *Id.* ¶ 44. It is unclear whether Polymer80 submitted its BBS kit to the ATF for review. *Id.* ¶ 45 ("[I]t is my understanding that, as of December 4, 2020, Polymer80 had not resubmitted the complete PF940V2 pistol kit to [ATF].").

In February 2020, the ATF learned that Polymer80 actively sold BBS kits in addition to firearm components. *Id.* ¶¶ 7, 46. Polymer80's website advertised that its BBS kits "contain[ed] all the necessary components" to assemble a fully functioning firearm, including "the 80% frame kit, complete slide assembly, complete frame parts kit, 10 round magazine and a pistol case." *Id.* On February 26, 2020, an undercover ATF agent placed an online order through Polymer80's website for two BBS kits, models PF940V2 and PF940C, respectively. *Id.* ¶¶ 49, 52–53. After receiving the kits from Polymer80, *Id.* ¶ 56, an ATF agent noted that "[u]nlike the parts that Polymer80 asked the ATF to render an opinion on, . . . this kit appeared to contain all components necessary to assemble a complete pistol." *Id.* ¶ 58. After assembling the kits, ATF agents determined that they were firearms under federal law. *Id.* ¶¶ 8, 65. A month later, a different undercover ATF agent purchased the same kits from Polymer80. *Id.* ¶ 66. After assembling the kits, the ATF reached the same conclusion: Polymer80's BBS kits, which contained all the components necessary to assemble a fully functioning pistol, were firearms under 18 U.S.C. § 921(a)(3) and handguns under 18 U.S.C. § 921(a)(29). *Id.* ¶ 72.

On December 10, 2020, ATF agents served Polymer80 with a subpoena supporting a criminal investigation conducted by the Defendants through the United States Attorney's Office for the Central District of California. Mem. at 2. The search warrant authorized the search of Polymer80's premises and the seizure of any "evidence, contraband, fruits, or instrumentalities" in violation of federal law. Dkt. No. 92-1, Opp'n Ex. A, at v (Attachment B to the Search Warrant). The ATF's investigation focused on the "unlawful manufacturing and distribution of firearms . . . by Polymer80" for its advertising and sale of BBS kits. Dkt. No. 92-2, Opp'n Ex. B. ¶¶ 6–8. Specifically, the ATF's search warrant directed ATF agents to seize Polymer80 "components" only if the components were "compiled or arranged in close proximity to one another indicating they were intended to be compiled into 'Buy, Build, Shoot' kits." Dkt. No. 92-1, Opp'n Ex. A, at v. The

ATF's search warrant application also highlighted the many different components included in the Polymer80 BBS kits, describing the kits as "including 'the 80% frame kit, complete slide assembly, complete frame parts kit, 10 round magazine and a pistol case.'" Dkt. No. 92-2, Opp'n Ex. B. ¶ 7. The search warrant application further distinguished between the unfinished frames that the ATF had determined not to be firearms and the complete BBS kits, which "include the slide, springs, ammunition magazine, and various other parts." *Id.* ¶¶ 37–39.

Polymer80 decided as a result of the search that it could not rely on the DOJ and the ATF to defend its interests in this case. The Court understands that the company reached that conclusion largely because it believed that the DOJ and the ATF had taken a position in the criminal investigation that was contrary to the position that would be needed for them to adequately defend the position taken by the ATF in its determination letters.

Polymer80 moved to intervene in this case on December 30, 2020. Dkt. Nos. 78–81. Plaintiffs opposed the motion, Opp'n, and Polymer80 replied, Dkt. No. 102 ("Reply"). As of this date, Defendants have taken no position concerning Polymer80's intervention in this matter.

## II.    DISCUSSION

The Second Circuit has "explained that intervention is a procedural device that attempts to accommodate two competing policies." *Floyd v. City of New York.*, 770 F.3d 1051, 1057 (2d Cir. 2014) (per curiam) (quotation and brackets omitted). "[O]n the one hand," intervention is designed to permit courts to "efficiently administ[er] legal disputes by resolving all related issues in one lawsuit." *Id.* (quotation omitted). "[O]n the other hand," permitting parties to intervene haphazardly makes lawsuits "unnecessarily complex, unwieldy or prolonged." *Id.* (quotation omitted). The Second Circuit has repeatedly emphasized the "fact-intensive nature" of this inquiry. *Id.*; *see also United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69 (2d Cir. 1994) ("In resolving the tension that exists between these dual concerns, the particular facts of each case are important . . . .").

6

### A. Intervention as of Right

Federal Rule of Civil Procedure 24(a) provides for intervention as of right . . . : "On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

*Floyd*, 770 F.3d at 1057 (quoting Fed. R. Civ. P. 24(a)(2)) (emphasis and ellipsis omitted).

Thus, "[a] district court must grant an applicant's motion to intervene under Rule 24(a)(2) if (1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *Laroe Ests., Inc. v. Town of Chester*, 828 F.3d 60, 66 (2d Cir. 2016), *vacated and remanded on other grounds*, 137 S. Ct. 1645 (2017) (quotation omitted). "[A] failure to satisfy any one of these four requirements is a sufficient ground to deny the application." *Floyd*, 770 F.3d at 1057 (quotation, emphasis, and brackets omitted). "In seeking intervention under this Rule, the proposed intervenor bears the burden of demonstrating that it meets the requirements for intervention." *Kamdem-Ouaffo v. PepsiCo, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016); *see also Pitney Bowes*, 25 F.3d at 70 ("Under Rule 24(a)(2) the purported intervenor must show that its interest is not adequately represented, while under [a different statute], the government bears that burden.").

#### 1. Timeliness

Polymer80's application is timely. "Whether a motion to intervene is timely is determined within the sound discretion of the trial court from all the circumstances." *Pitney Bowes*, 25 F.3d at 70.

Timeliness defies precise definition, although it certainly is not confined strictly to chronology. Among the circumstances generally considered are: (1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.

*Id.* "It is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties." *Hartford Fire Ins. Co. v. Mitlof*, 193 F.R.D. 154, 160 (S.D.N.Y. 2000) (quotation and citation omitted).

### a. Time Before Intervention Request

Polymer80 waited nearly four months after the case was filed before filing its request to intervene. As described above, Polymer80 had early notice of the action but chose not to seek intervention until after the December 2020 ATF raid on its facility. There is no specific length of time that has been deemed to be the appropriate time period in which to file a motion to intervene. Courts have found filings after longer delays to be timely. *See, e.g.*, *S.E.C. v. Credit Bancorp, Ltd.*, No. 99 CIV. 11395 (RWS), 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) (noting that for a motion to intervene under Rule 24, a five-month delay "was not so protracted as to render [the] motion untimely under all the circumstances"); *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991) (application timely when filed almost two years after notice of interest in the case, because proposed intervenors filed after interest became direct). In contrast, proposed intervenors' requests for intervention have also been denied when the amount of time has been the same as here. *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People v. New York.*, 413 U.S. 345, 366–69 (1973) (application untimely when filed four months after suit commenced and suit had reached a critical stage). The reason is that "a lapse of time is only one of several factors to be considered when deciding timeliness under Rule 24(a)(2), and [that] it is incorrect to adopt a *per se* rule focused solely on that factor." *See United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987).

The length of time between Polymer80's knowledge of the action and its request to intervene does not weigh heavily against a finding of timeliness. While the Court appreciates the arguments raised by Plaintiffs that Polymer80's original decision to delay seeking intervention was tactical, the company's decision to seek intervention following the ATF raid was a reasonable change

in position due to changed circumstances. And the aggregate amount of time that elapsed before the company made its request was not excessive.

### b. Prejudice to Existing Parties

Polymer80's intervention will result in some prejudice to Plaintiffs, but that prejudice does not weigh heavily against a finding of timeliness. Defendants do not contest Polymer80's intervention in this case. Plaintiffs argue that Polymer80's intervention will prejudice them because it will "delay the resolution of this case, and, consequently, delay the redress sought by Plaintiffs from the ongoing public health emergency caused by ATF's actions." Opp'n at 11.

Intervention by Polymer80 will delay the resolution of the case to a degree. The Court will need to provide the company with an opportunity to be heard with respect to the issues presented in the pending motions for summary judgment, and that will add some amount of time to the briefing process. The Court does not minimize at all the concerns articulated by Plaintiffs regarding their view of the urgency of this action. At the same time, as Polymer80 points out, the rule at issue was issued in 2015, and the latest of the three determination letters at issue here was issued 4 years ago. This case was not filed until late 2020. In light of that history, the Court does not believe that a short additional delay to permit Polymer80 to be heard with respect to the pending summary judgment motion will result in substantial prejudice to Plaintiffs. The Court ascribes the prejudice to Plaintiffs from intervention meaningful, but not dispositive weight.

### c. Prejudice to Polymer80

While the existing parties will not be unduly prejudiced by Polymer80's intervention, Polymer80 will be prejudiced if the Court denies it the opportunity to intervene, as described in more depth below.

#### d. Unusual Circumstances

The unusual circumstances surrounding the ATF raid on Polymer80's facility support the Court's conclusion that Polymer80's request to intervene was timely. Plaintiffs argue that Polymer80's actions leading up to intervention constitute gamesmanship and that the "unusual circumstances surrounding Polymer80's attempted intervention confirm that Polymer80's motion should be deemed untimely." *Id.* The Court accepts Plaintiffs' argument that a party's tactical decision to delay seeking intervention can weigh against a finding of timeliness. Here, however, the Court understands that Polymer80 assumed that Defendants' interests would line up well enough with its own to make intervention unnecessary. Polymer80's decision to seek intervention at a late date does not appear to have been driven by an internal strategic consideration, however. It was provoked by an external prompt—the truly unusual circumstance of the ATF raid, which understandably led Polymer80 to change its approach. But for that, the Court has no reason to conclude that Polymer80 would have sought to intervene in this case. A raid and possible criminal prosecution by the entities that the company was relying on to defend it are certainly unusual circumstances. Here, they weigh strongly in favor of a finding that Polymer80's request to intervene was timely.

#### 2. Sufficient Interest

Polymer80 has a sufficient interest in the subject of this action to intervene as of right. Rule 24(a)(2) provides for intervention of right where the applicant "claims an interest relating to the property or transaction that is the subject of the action." Fed. R. Civ. P. 24(a)(2). For an interest in the underlying action to be cognizable by Rule 24(a)(2), "it must be direct, substantial, and legally protectable." *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (citation omitted). "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the

occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citation omitted).

Polymer80 has asserted an undeniable interest in the outcome of this action. Here, Polymer80 seeks to defend the ATF's 2015 interpretative rule and the three ATF determination letters it received, which permitted Polymer80 to sell individual solid frames and blanks to its customers. If the Court were to invalidate the ATF's determination letters, Polymer80 would no longer be able to rely on those letters to sell its products. The company argues that it stands to lose "over half of its annual revenue" should Plaintiffs prevail. Mem. at 13. This financial interest is certainly "direct" and "legally cognizable." Polymer80 has adequately demonstrated a sufficient interest relating to the transaction that is the subject of the action.

### 3. Impairment

Polymer80 has established that its inability to intervene may impair its ability to protect its interests. "Rule 24(a)(2) also requires the movant to show that it is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede its ability to protect its interest." *Laroe Ests.*, 828 F.3d at 70 (quotation and brackets omitted). As a non-party, Polymer80's ability to participate in this litigation and an appeal of any unfavorable decision would be limited. This fact, coupled with the adverse consequences of an unfavorable ruling in this case, is sufficient to satisfy this factor.

### 4. Adequate Representation

Polymer80 is not entitled to intervene as of right because it has not established that Defendants do not adequately represent its interests with respect to the issues raised in this action. While the Court appreciates the tension between Polymer80 and Defendants with respect to the BBS kits, the interests of Polymer80 and Defendants remain fully aligned with respect to their support for the rule and determination letters at issue in this case—as evidenced by Defendants' full

throated defense here.  The Supreme Court has emphasized that a proposed intervenor need only show that "representation of his interest 'may be' inadequate."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (citation omitted).  "The burden to demonstrate inadequacy of representation is generally speaking 'minimal.'"  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (quoting *Trbovich*, 404 U.S. at 538 n.10); *see also Laroe Ests.*, 828 F.3d at 70 (citation omitted).  However, the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective."  *Butler*, 250 F.3d at 179.  Instead of providing "a hard-and-fast rule of what form of showing must be made to rebut a presumption of adequate representation when there is an identity of interest between the putative intervenor and an existing party to the action," the Second Circuit has offered general criteria.  *Id.* at 180.  "Although perhaps not an exhaustive list, we generally agree . . . that evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy."  *Id.*  Moreover, "[t]he proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*."  *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999) (citing *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 985 (2d Cir. 1984)); *see also* 7C Charles Alan Wright & Arthur R. Miller ("Wright & Miller"), *Federal Practice and Procedure* § 1909 & nn.24–27 (3d ed. 2007 & supp. 2019) ("The rare cases in which a member of the public is allowed to intervene in an action in which the United States, or some other governmental agency, represents the public interest are cases in which a very strong showing of inadequate representation has been made.").

The Second Circuit has instructed that "[s]o long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions, a district judge does not exceed the bounds of discretion by concluding that the interests of the intervenor are adequately represented."  *New York v. U.S. Dep't. of Health & Hum. Servs. ("HHS")*, No. 19 CIV. 4676 (PAE),

2019 WL 3531960, at *6 (S.D.N.Y. Aug. 2, 2019) (quoting *NRDC, Inc. v. N.Y. State Dep't of Env't Conservation*, 834 F.2d 60, 62 (2d Cir. 1987)). Consequently, a government party adequately represents its citizens when the applicant shares the same objective. *Id.* at *4.

The complaint asks the Court to determine whether the ATF's interpretation of the GCA is arbitrary, capricious, and contrary to law, in violation of the APA. Polymer80 seeks to uphold the interpretive rule and the validity of the determination letters at issue in this case. Given that Defendants have already filed briefing in this case, the Court does not need to guess at whether Defendants will support Polymer80's position with respect to the rule and the determination letters. They have, mounting a forceful defense of the 2015 interpretive rule and individual determination letters at issue in this case. There is no daylight between the Defendants and Polymer80 on the matters being challenged in this case. Defendants are adequately representing Polymer80's interests with respect to the challenged rule and determination letters.

Polymer80 argues that representation is inadequate because Defendants "are litigating on behalf of the general public and so are obliged to consider a wide spectrum of views" and cannot sufficiently defend Polymer80's economic interest in the outcome.[1] Mem. at 15–16. Polymer80 also contends that it "will make a more vigorous argument on the economic issues at bar than would the governmental defendants." *Id.* at 16. However, both the Defendants and Polymer80 share the same goal: upholding the ATF's 2015 interpretative rule and individual determination letters.

The DOJ's investigation of Polymer80's BBS kits does not overcome the Defendants' presumption of adequacy. Polymer80 argues that a new Administration[2] and the DOJ's

---

[1] Polymer80 relies on out-of-Circuit cases holding that proposed intervenors had a right to intervene in similar factual circumstances. *See* Mem. at 15–16 (collecting cases from the Fifth and Ninth Circuits). However, these cases are not binding on this Court.

[2] The Court is not persuaded that a change in Administration necessarily implies that the Government will no longer adequately represent the parties shared interests. *See HHS*, 2019 WL 3531960, at *6 (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) ("In allowing intervention in this case we are mindful that the mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits.")). Moreover, as Polymer80's briefing references multiple times, the rule

investigation of its business practices and products signal a change in the ATF's position, specifically regarding the Glock blank that is the subject of the 2017 determination letter at issue in this case. *Id.*; Reply at 7. Consequently, Polymer80 contends that Defendants now view such blanks as "firearms" in direct contradiction to its 2017 determination letter. Given that investigation, Polymer80 argues that the Defendants cannot possibly or adequately argue for its determination letters' legality in this proceeding. Reply at 7–8.

As a factual matter, Polymer80's assertion that Defendants cannot possibly argue for its determination letters' legality is simply not accurate. They are doing that here. Similarly, the record does not support the position that the ATF has changed its position regarding the 2017 determination letter, as described above. Instead, it appears that the ATF views the BBS kits as something different than the "80%" frames that they have determined not to be firearms.

The record shows that the issues raised by the challenge to the rule and the determination letters are distinguishable from those implicated by the BBS kits. The Court's earlier description of the investigation explains how they differ. The determination letters involve unfinished frames. The documents submitted regarding the warrant show that the ATF views those as different from the BBS kits. The BBS kits were advertised to contain all of the necessary components to assemble a fully functioning firearm including the "80% frame kit." An ATF agent noted the distinction between the BBS kit and the product endorsed by the ATF: "*[u]nlike* the parts that Polymer80 asked the ATF to render an opinion on, . . . this kit appeared to contain all components necessary to assemble a complete pistol." Dkt. No. 92-2, Opp'n Ex. B ¶ 58 (emphasis added).

The Court accepts that Polymer80 and the ATF disagree about whether Polymer80's BBS kits are properly considered to be firearms. But the legality of the BBS kits is not at issue here. The

_____

and two of the relevant determination letters were issued during the presidency of Barack Obama. As a result, the Court does not assume that the incoming administration will change its position with respect to them.

ATF and the DOJ continue to litigate in support of the legality of the rule and the determination letters. And their position here is not facially inconsistent with their apparent position in the investigation of the BBS kits. The government does not believe that an "80%" unfinished frame is a firearm. But that does not require that it conclude that an "80%" frame sold together with the other components of a gun is also not a firearm. Regardless of their position with respect to the BBS kits, Defendants have demonstrated that they are adequately representing the interests of Polymer80 in this litigation by defending the legality of the ATF's rule and determination letters.

### B. Permissive Intervention

Although Polymer80 has failed to demonstrate that it may intervene as of right, Polymer80 should be permitted to intervene under Rule 24(b). "Federal Rule of Civil Procedure 24(b) provides for intervention by permission . . . : 'on timely motion, the court may permit anyone to intervene who has a claim or defense that shares with the main action a common question of law or fact.'" *Floyd*, 770 F.3d at 1057 (quoting Fed. R. Civ. P. 24(b)(1)(B)) (ellipsis, emphasis, and brackets omitted). "A 'district court's discretion under Rule 24(b) is broad.'" *HHS*, 2019 WL 3531960, at *6 (quoting *Restor-A-Dent Dental Labs., Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 876 (2d Cir. 1984)); *see also Floyd*, 770 F.3d at 1062 n.38 (2d Cir. 2014) ("A denial of permissive intervention has virtually never been reversed." (quotation omitted)). Unlike intervention as of right under Rule 24(a), "Rule 24(b) does not require a finding that party representation [is] inadequate." *HHS*, 2019 WL 3531960, at *6 (citing *United States v. Columbia Pictures Indus., Inc.*, 88 F.R.D. 186, 189 (S.D.N.Y. 1980)); *Bldg. & Realty Inst. of Westchester & Putnam Cntys., Inc. v. New York*, 19-CV-11285 (KMK), 2020 WL 5658703, at *12 (S.D.N.Y. Sept. 23, 2020) (collecting cases). "The 'principal consideration' for permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Battle v. City of New York*, No. 11 CIV. 3599 (RMB), 2012 WL 112242, at *6 (S.D.N.Y. Jan. 12, 2012) (quoting *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)).

"Moreover, it is within the Court's discretion to limit the scope of any intervention." *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 (LAK), 2011 WL 2150450, at *5 (S.D.N.Y. May 31, 2011) (citing *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 378 (1987)).

The Court will permit Polymer80 to intervene under Rule 24(b). Given that their determination letters are directly implicated by the Court's decision in this case, permissive intervention is clearly appropriate. Polymer80 and its business will be directly affected by the Court's ruling in this case. If Plaintiffs prevail, Polymer80's business will suffer dramatically. While Defendants adequately represent Polymer80 under governing Second Circuit law, this is an unusual situation. Polymer80's concerns about having its interests represented by the DOJ and the ATF while they are known to be pursuing a criminal prosecution against the company are tangible and real. Forcing Polymer80 to entrust the representation of its interests to the entities that are simultaneously pursuing a criminal investigation of it in would simply not be fair. These considerations distinguish Polymer80 from other interested persons whose request to intervene the Court previously denied. *See* Dkt. No. 83.

Plaintiffs argue that permitting permissive intervention in this case "would seriously prejudice Plaintiffs, who have repeatedly emphasized the need for a quick, expedient resolution in order to put a halt to the ongoing public health emergency presented by ATF's failure to classify 'ghost gun' components as 'firearms.'" Opp'n at 17. As before, the Court acknowledges the delay that will result from the addition of Polymer80 to the case. The Court will need to provide Polymer80 with the opportunity to voice its position, which will require an extension of the briefing schedule. However, "[a]dditional parties always take additional time which may result in delay, but this does not mean that intervention should be denied. The rule requires the court to consider whether intervention will 'unduly delay' the adjudication." *Ass'n of Conn. Lobbyists LLC v. Garfield*, 241 F.R.D. 100, 102 (D. Conn. 2007) (quoting Wright & Miller, § 1913). Given the importance of

the issues in this case to Polymer80, the delay attendant to its intervention will not be undue. And the Court believes that the prejudice can be minimized by adding reasonable conditions to their intervention.

Under all of the circumstances of this case, the Court is exercising its informed discretion to grant permissive intervention on a conditional basis. *See Stringfellow*, 480 U.S. at 378. The conditions to be imposed by the Court are designed to protect against undue delay and further prejudice to the adjudication to the rights of the original parties. "[A] district judge's decision on how best to balance the rights of the parties against the need to keep the litigation from becoming unmanageable is entitled to great deference." *Id.* at 380 (citing Fed. R. Civ. P. 24(b)(3) ("In exercising its discretion [concerning permissive intervention] the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.")). Thus, the Court may condition the grant of permissive intervention by limiting the issues that the intervenor is permitted to contest.

The Court will permit intervention for the limited purpose of litigating Plaintiffs' claims as presented in the operative complaint. Here, Plaintiffs seek relief under the Administrative Procedure Act, 5 U.S.C. § 706(2), requesting that this Court set aside as arbitrary, capricious, and contrary to law the 2015 interpretive rule memorializing the ATF's interpretation of the GCA and the three determination letters issued by the ATF in 2015 and 2017 to Polymer80. Plaintiffs also seek relief under 5 U.S.C. § 706(1) because of the ATF's failure to respond to their petition for rulemaking. The case raises claims exclusively under the APA with respect to those predicate acts. At this stage in the case, the expansion to legal or factual issues not raised in the case would be unduly prejudicial to the other parties to the case and result in undue delay in the resolution of this case.

The record with respect to the Court's evaluation of those issues is limited to the administrative record, which has been presented in support of the current summary judgment briefing. The Court does not expect to open this case to discovery or to the presentation of extra-record evidence. The Court is concerned that permitting the introduction of extra-record evidence would expand the scope of this case and result in substantial delays because the Court would then need to reopen the briefing for the parties. Moreover, if extra-record evidence were permitted, the Court expects that it would need to provide the opportunity for parties to conduct plenary discovery from all parties, including Polymer80, which would result in substantial delays in the development of this case.

### III.    CONCLUSION

Because Polymer80 has failed to demonstrate that Defendants will not adequately represent its interests, it may not intervene as of right. However, because the determination letters at issue in this case were issued to Polymer80 and specifically pertain to Polymer80's products, and Polymer80 has been relying on those documents in conducting its business, the Court exercises its discretion to permit Polymer80 to intervene on a conditional basis. Thus, Polymer80's motion to intervene is GRANTED.

The parties are directed to confer and to propose an acceptable schedule for Polymer80's participation in the summary judgment briefing, by no later than March 26, 2021.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 78.

SO ORDERED.

Dated:  March 19, 2021
New York, New York

GREGORY H. WOODS
United States District Judge