| | |
|---|---|
| GIBSON, DUNN & CRUTCHER LLP<br>SCOTT A. EDELMAN (SBN 116927)<br>sedelman@gibsondunn.com<br>2029 Century Park East<br>Los Angeles, CA 90067-3026<br>Telephone: (310) 552-8500<br>Facsimile: (310) 551-8741<br><br>LEE R. CRAIN, *pro hac vice*<br>LIESEL SCHAPIRA, *pro hac vice*<br>200 Park Avenue<br>New York, NY 10166-0193<br>Telephone: (212) 351-4000<br><br>PAUL HASTINGS LLP<br>Avi Weitzman, *pro hac vice*<br>200 Park Avenue<br>New York, NY 10166<br>Telephone: (212) 318-6000<br><br>*Attorneys for Plaintiffs Bryan Muehlberger,*<br>*Frank Blackwell, and Giffords Law Center to*<br>*Prevent Gun Violence* | ROB BONTA<br>Attorney General of California<br>THOMAS S. PATTERSON<br>Senior Assistant Attorney General<br>R. MATTHEW WISE, SBN 238485<br>Supervising Deputy Attorney General<br>S. CLINTON WOODS<br>Deputy Attorney General<br><br>Matthew.Wise@doj.ca.gov<br>1300 I Street, Suite 125<br>P.O. Box 944255<br>Sacramento, CA 94244-2550<br>Telephone: (916) 210-6046<br>Facsimile: (916) 324-8835<br><br>*Attorneys for Plaintiff State of California, by*<br>*and through Attorney General Rob Bonta* |

[*Additional Counsel Listed on Next Page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES et al.,<br><br>　　　　　Defendants. | CIVIL CASE NO.: 3:20-CV-06761-EMC<br><br>**JOINT STATUS REPORT**<br><br>Action Filed: September 29, 2020<br><br>Status Conference: September 20, 2022 at 2:30 p.m<br><br>Hon. Edward M. Chen |

Additional Counsel

GIBSON, DUNN & CRUTCHER LLP
JILLIAN LONDON, SBN 319924
jlondon@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone:  (213) 229-7671

GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
DAVID M. PUCINO, *pro hac vice*
244 Madison Ave Ste 147
New York, NY 10016
Telephone: (917)524-7816

*Attorneys for Plaintiffs Bryan Muehlberger, Frank Blackwell, and Giffords Law Center to Prevent Gun Violence*

Pursuant to this Court's May 13, 2022 Order directing the filing of a joint status report (ECF No. 107), Plaintiffs the State of California, Bryan Muehlberger, Frank Blackwell, and Giffords Law Center to Gun Prevent Violence, and Defendants Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), Steven Dettelbach, Daniel Hoffman, United States Department of Justice, and Merrick B. Garland (collectively, the "Parties"), by and through their respective counsel of record, hereby submit the following:

As the Court is aware, this case concerns ATF's interpretations of the regulatory terms "firearm" and "frame or receiver" in ATF classification or determination letters and enforcement guidance posted to ATF's website. Specifically, Plaintiffs' Complaint alleges that ATF's interpretations were contrary to provisions of the Gun Control Act defining "firearms" as inclusive of frames or receivers that are "designed to or may readily be converted" into functioning weapons (18 U.S.C. § 921(a)(3)), and arbitrary and capricious in violation of the Administrative Procedure Act. (ECF No. 1.)

On April 11, 2022, ATF issued a final rule titled "Definition of 'Frame or Receiver' and Identification of Firearms." The Final Rule was published in the Federal Register on April 26, 2022. *See* Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24652, codified at 27 C.F.R. pts. 447, 478 and 479 ("Final Rule" or "Rule").

Because the Final Rule was not set to take effect until August 24, 2022—120 days after it was published in the Federal Register—the Parties previously proposed "that the Court either (a) stay the case and continue the case management conference currently scheduled for May 17, 2022 until after the effective date of the Final Rule; or (b) grant an administrative closure of the case, without prejudice to reopening it within fourteen days after the effective date of the Final Rule." ECF No. 106 (May 10, 2022 Joint Status Report). Subsequently, the Court continued the May 17, 2022 Status Conference to September 20, 2022.

The Parties set forth their respective positions below:

**Plaintiffs' Position:** In the previous Joint Status Report, Plaintiffs explained that staying the case was appropriate because "Plaintiffs will be in a better position to know whether further proceedings in this matter are necessary after the effective date of the Final Rule. Specifically, until

the Final Rule goes into effect, Plaintiffs will not know how ATF will re-classify the Polymer80 products identified in their Complaint and/or how ATF will modify its online guidance." ECF No. 106. While Defendants agreed with the stay, they argued that "ATF's issuance and publication of the Final Rule moots Plaintiffs' claims in this action." *Id.*

In the past few weeks since the Final Rule went into effect, Defendants' own statements in court and in public as well as the ghost gun industry's reaction to the Final Rule have confirmed that this action has not been mooted by the Final Rule. Plaintiffs' claims remain live because, even after the August 24, 2022 effective date of the Final Rule, the same products challenged in the Complaint—"unfinished" or "80 percent" frames and receivers—continue to be sold without serial numbers, without background checks, and without record-keeping—all critical requirements under federal law that the ghost gun industry is defying. *See, e.g.,* ECF No. 1 at 55 (requesting in the Prayer for Relief that this Court declare ATF's guidance that "that 80 percent receivers and frames are not 'firearms' under the [Gun Control Act]" as null and void and/or arbitrary and capricious, and that this Court order "affirmative rulemaking" concerning the 80 percent receivers and frames).

For example, putative intervenor Polymer80 continues to sell its unserialized 80% frame products without complying with the point-of-sale obligations that federal law imposes. *See* Exhibit A ("P80 80% Pistol Blanks"). This is the identical product at issue in the Complaint. *See* ECF No. 1 ¶¶ 75-76 (discussing ATF classification letters for Polymer80's Glock-type "PF940C Blanks"). Polymer80 has even issued a press release in light of ATF's Final Rule, noting that its unserialized 80% products are in full compliance with the Final Rule. Exhibit B ("Polymer80 Product Changes in Accordance with ATF Final Rule"). Similarly, 80 Percent Arms, another manufacturer identified in the Complaint (ECF No. 1 ¶ 77), issued a statement on August 25, 2022 proclaiming: LOWERS ARE STILL SHIPPING: YOU CAN KEEP PLACING ORDERS FOR LOWER RECEIVERS." Exhibit C ("ATF Rule 2021R-05F | Complete Breakdown").

Other ghost gun dealers have received specific guidance from ATF confirming that they can continue to legally make and sell 80% receivers without serial numbers, background checks, and record-keeping under the Final Rule. For example, Tactical Machining stated that ATF "approved in writing" the company's ability to continue to sell 80% receivers. Exhibit D (Vice News) (explaining

2
JOINT STATUS REPORT – CASE NO. 3:20-CV-06761-EMC

1  that ATF instructed the company that the "manufacture and selling of unfinished receivers with a lower parts kit does not meet the firearm threshold").  And in proceedings before a federal court in another district, Defendants took the position that other 80% receivers are entirely unaffected by the issuance of the Final Rule.  Specifically, in *Division 80 v. Garland*, lead counsel for Defendants in this case stated that the Final Rule continues to allow manufacturers to "sell[] receiver blanks . . . without a – without license."  Exhibit E (Excerpt from Hearing Transcript in *Div. 80 v. Garland*, No. 3-22-CV-00148).

During the parties' email discussions as to the status of this case in advance of this report, Defendants appeared to confirm that position.  When asked whether 80 percent receivers would be treated as firearms under the Final Rule, counsel for Defendants referred Plaintiffs to the portion of the Final Rule that states:  "Companies that sell or distribute only unfinished frame or receiver billets or blanks, and not any associated jigs, templates, or similar tools to the same customer are not required to be licensed or to mark those articles with identifying information."  87 Fed. Reg. 24,700.

In short, the issues initially brought before this Court two years ago have not been mooted by the Final Rule.  Plaintiffs thus respectfully request that the Court lift the stay, deny Defendants' pending Motion to Dismiss (ECF No. 29) and the putative intervenors' Motion for Leave to File a Response In Support of Defendants' Motion to Dismiss (ECF No. 53), and direct the Parties to prepare a joint status report proposing a schedule for further proceedings in this matter.

**Defendants' Position:**  In the previous Joint Status Report, the Parties informed the Court that "Defendants believe that ATF's issuance and publication of the Final Rule moots Plaintiffs' claims in this action."  ECF No. 106 at 4.  That remains Defendants' position, and Defendants believe this Court should dismiss Plaintiff's Complaint in this action as moot.

As Plaintiffs acknowledge, the Final Rule that became effective on August 24, 2022, 87 Fed. Reg. 24,652, amends the operative definitions of the statutory terms "firearm" and "frame or receiver" under the Gun Control Act.  Specifically, the Final Rule expressly includes in the definition of "firearm," 27 C.F.R. § 478.11, ATF's previously-held interpretation that "a weapon parts kit that is designed to or may readily be completed, assembled, restored, or otherwise converted to expel a projectile by the action of an explosive."  87 Fed. Reg. 24,735.  The Final Rule also amended the

definition of "frame or receiver." The previous definition simply provided that a "frame or receiver" was "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." 87 Fed. Reg. 24,652. The Final Rule amends the definition in part to contain a subparagraph specifically addressing under what circumstances a "[p]artially complete, disassembled, or nonfunctional frame or receiver" constitutes a "frame or receiver" under federal firearms laws. In particular, it provides that the terms "frame" or "receiver" "shall include a partially complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver, *i.e.*, to house or provide a structure for the primary energized component…" 87 Fed. 24,739.

The claims in Plaintiffs' complaint are specifically predicated on classification decisions and determinations made by ATF applying the previous definitions of terms that have since been amended in the Final Rule. *See, e.g.*, Compl. ¶ 17 ("ATF's *determinations* that 80 percent receivers are not firearms are arbitrary and capricious, for multiple reasons."). Plaintiffs repeatedly reference and attack the so-called "machining operations" approach, which Plaintiffs allege was the operative standard ATF used in issuing classification decision under the previous definitions. *See* Compl. ¶¶ 67-70. Plaintiffs also base their claims on specific classification letters ATF issued Polymer 80 – a manufacturer and seller of certain weapon components and parts – prior to the Final Rule. *See* Compl. ¶¶ 71-77. Plaintiffs also make a number of allegations regarding public guidance ATF issued regarding "ghost guns" under the previous definitions of the relevant terms. *See id*. ¶¶ 86-91.

The Final Rule unquestionably updated and amended the relevant regulatory terms. Indeed, a number of plaintiffs, including manufacturers and sellers of weapon components that could be impacted by the amended definitions, have brought suit in other courts seeking to enjoin ATF from implementing or enforcing the amended definitions. *See Division 80, LLC v. Garland, et al.*, No. 3:22-cv-00148 (S.D. Tex.); *Morehouse Enterprises, LLC, et al. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, et al.*, No. 3:22-cv-00116-PDW-ARS (D.N.D.); *VanDerStok, et al. v. Garland, et al.*, No. 4:22-cv-00691-O (N.D. Tex.). Specifically, there is no question that the Final Rule's amended definition of "frame or receiver" was in part designed to address the widespread unregulated sales of

so-called "80 percent receivers" by sellers not federally licensed to sell firearms. As the Rule specifically states, "[t]he NPRM stated that partially complete or unassembled frames or receivers, commonly called '80% receivers,' are often sold in kits where the frame or receiver can readily be completed or assembled to a functional state. The Department stated that the supplemental definition is necessary for clarity because companies are not running background checks or maintaining transaction records when they manufacture and sell these kits." 87 Fed. Reg. 24,663. There can be no question, then, that the Final Rule expands the range of components and component kits considered to be a "frame or receiver" under federal firearms statutes.

The Final Rule is also clear that prior classification letters classifying some frame or receiver components as *not* a "frame or receiver" are no longer operative now that the Final Rule has taken effect. *See* 87 Fed. Reg. 24,654 ("[I]n keeping with the public safety goals of the rule, this rule grandfathers existing complete frame or receiver designs previously determined by the Director to be the firearm 'frame or receiver' of a given weapon. It does *not* grandfather partially complete, disassembled, or nonfunctional frames or receivers, including weapon or frame or receiver parts kits, that ATF did *not* classify as firearm 'frames or receivers' as previously defined.") (emphasis added). In other words, if a previous component or components was previously classified as a "frame or receiver" under the previous definition of that term, it is still a "frame or receiver." But if a component or components received a previous classification decision that it was *not* a frame or receiver, as plaintiffs' position seems to rely upon, that classification decision is no longer operative and it may still be considered a "frame or receiver" under the amended definition of that term contained in the Final Rule.

In short, the materials cited by Plaintiffs in their Complaint as the basis for their claims – the so-called "machining" standard applied by ATF under the previous definitions, guidance documents issued by ATF explaining the previous definitions of the terms "firearm" and "frame or receiver," and classification decisions made by ATF regarding specific submission and products in which ATF determined that the weapon component or components submitted did not constitute a "frame or receiver" under the previous definition of "frame or receiver" – are no longer in effect as of the issuance of the Final Rule on August 24, 2022.

The Final Rule, and the amended definitions contained therein, have been in effect for less than a month.  Many sellers and manufacturers have submitted classification requests to ATF, and ATF is just beginning the process of considering and issuing decisions on such requests.  Tellingly, Plaintiffs can produce no actual decision, action, or classification letter of ATF to which they object.  The fact that some manufacturers and sellers are still advertising or selling certain products does not mean or even imply that ATF has specifically authorized them to do so.  Likewise, any representation by a seller or manufacturer regarding whether its product is considered a "frame or receiver" under the amended definition contained in the Final Rule does not mean that Defendants have made such a determination.

It is possible that, under the amended definition of "frame or receiver" contained in the Final Rule, ATF may determine that a component or component submitted for a classification decision is not a "frame or receiver," and Plaintiffs may believe that such a decision is arbitrary or capricious in violation of the APA or otherwise legally objectionable.  But the appropriate course of action is for them to wait until such an action occurs, and then bring their challenge at that point in time.  None of the actions Plaintiffs challenge their Complaint are still operative, and therefore all of Plaintiffs' claims in the present action are moot.  Accordingly, Defendants intend to file a motion to dismiss this matter within 21 days of the filing of this Joint Status Report.

*Dated*: September 15, 2022          */s/ Scott A. Edelman*

GIBSON, DUNN & CRUTCHER LLP
SCOTT A. EDELMAN
sedelman@gibsondunn.com
LEE R. CRAIN, *pro hac vice*
LIESEL SCHAPIRA, *pro hac vice*
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

JILLIAN LONDON, SBN 319924
JLondon@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7671

|   |   |
|---|---|
| | Facsimile: (213) 229-6671 |
| | |
| | PAUL HASTINGS LLP |
| | Avi Weitzman, *pro hac vice* |
| | 200 Park Avenue |
| | New York, NY 10166 |
| | Telephone: (212) 318-6000 |
| | GIFFORDS LAW CENTER TO |
| | PREVENT GUN VIOLENCE |
| | DAVID M. PUCINO, *pro hac vice* |
| | 223 West 38th St. # 90 |
| | New York, NY 10018 |
| | Telephone: (917) 680-3473 |
| | |
| | *Attorneys for Plaintiffs Bryan Muehlberger, Frank Blackwell, Giffords Law Center to Prevent Violence* |
| *Dated:* September 15, 2022 | /s/ S. Clinton Woods |
| | |
| | ROB BONTA |
| | Attorney General of California |
| | THOMAS S. PATTERSON |
| | Senior Assistant Attorney General |
| | R. MATTHEW WISE, SBN 238485 |
| | Supervising Deputy Attorney General |
| | S. CLINTON WOODS |
| | Deputy Attorney General |
| | |
| | Matthew.Wise@doj.ca.gov |
| | 1300 I Street, Suite 125 |
| | P.O. Box 944255 |
| | Sacramento, CA 94244-2550 |
| | Telephone:  (916) 210-6046 |
| | Facsimile:  (916) 324-8835 |
| | |
| | *Attorneys for Plaintiff State of California, by and through Attorney General Rob Bonta* |
| Dated: September 15, 2022 | BRIAN M. BOYNTON |
| | Principal Deputy Assistant Attorney General |
| | Civil Division |
| | LESLEY FARBY |
| | Assistant Branch Director |
| | Federal Programs Branch, Civil Division |
| | |
| |  /s/ Martin M. Tomlinson |
| | MARTIN M. TOMLINSON |

DANIEL RIESS
Senior Trial Counsel (SC Bar No. 76014)
Civil Division, Federal Programs Branch
United States Department of Justice
1100 L Street, N.W., Washington, D.C. 20005
Telephone: (202) 353-4556
Email: martin.m.tomlinson@usdoj.gov

*Attorneys for Defendants*

**SIGNATURE ATTESTATION**

Pursuant to Local Rule 5-1(i), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

*Dated*: September 15, 2022                                   */s/ Scott A. Edelman*