BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

MARTIN M. TOMLINSON (South Carolina Bar No. 76014)
DANIEL RIESS (Texas Bar No. 24037359)
TAISA M. GOODNATURE (New York Bar No. 5859137)
JEREMY S.B. NEWMAN (Massachusetts Bar No. 688968)
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW, Room 12504
Washington, DC 20005
Telephone: (202) 353-4556
FAX: (202) 616-8460
Martin.M.Tomlinson@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

STATE OF CALIFORNIA,
                                    *et al.*
            Plaintiffs,

        v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, and EXPLOSIVES ("ATF"),
                                    *et al.*,

            Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:20-cv-06761-EMC

**FEDERAL DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT
FOR DECLARATORY AND INJUNCTIVE
RELIEF; [PROPOSED] ORDER**

Noting Date: January 26, 2023
Time:  4:30 p.m.
Place:  Courtroom 5, 17th Floor

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 26, 2023 at 4:30 p.m. or as soon thereafter as the parties may be heard, in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Edward M. Chen, Defendants United States Department of Justice, William Barr, United States Bureau of Alcohol, Tobacco, Firearms and Explosives, Regina Lombardo, and Michael Curtis (collectively "Federal Defendants") will move this Court for an order dismissing the claims by Plaintiffs State of California, Bryan Muehlberger, Frank Blackwell, and Giffords Law Center to Prevent Gun Violence ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(1).  Federal Defendants' Motion is based on this notice; the following memorandum of points and authorities; and such oral argument as the Court may permit.

DATED:  November 18, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

By:    */s/ Martin M. Tomlinson*
MARTIN M. TOMLINSON
DANIEL RIESS
TAISA M. GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW, Room 12504
Washington, DC 20005
Telephone: (202) 353-4556
FAX: (202) 616-8460
Email: martin.m.tomlinson@usdoj.gov

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     STATUTORY AND REGULATORY BACKGROUND.........................................1

III.    PLAINTIFFS' CLAIMS........................................................................................4

IV.     LEGAL STANDARD ...........................................................................................4

V.      ARGUMENT .......................................................................................................5

        A.      Plaintiffs Cannot Establish Standing for Their Claims. ..............................5

                1.      Giffords.........................................................................................5

                2.      State of California.........................................................................7

                        i.      Injury. ...............................................................................7

                        ii.     Traceability.......................................................................8

                        iii.    Redressability....................................................................9

                3.      Mr. Muehlberger and Mr. Blackwell ("Individual Plaintiffs")............................9

        B.      Plaintiffs' Contingent Challenges to ATF's Classifications and Guidance that
                Preceded the Rule Are Unripe. ................................................................10

CONCLUSION ................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Am. Diabetes Ass'n v. U.S. Dep't of the Army,*
  938 F.3d 11475 (9th Cir. 2019) ................................................................................... 6

*ATLF v. Lake Forest (ATLF I),*
  No. SA CV 07-250, 2008 WL 114117326 (C.D. Cal. Aug. 18, 2008) *aff'd*, 624 F.3d 1083
  (9th Cir. 2010)............................................................................................................. 6

*ATLF v.* Lake Forest (*ATLF II*),
  624 F.3d 1083 (9th Cir. 2010.................................................................................6, 7

*Bova v. City of Medford,*
  564 F.3d 1093 (9th Cir. 2009) .................................................................................. 11

*Brady Campaign to Prevent Gun Violence v. Ashcroft,*
  339 F. Supp. 2d 68 (D.D.C. 2004)............................................................................. 8

*Chapman v. Pier 1 Imports*,
  631 F.3d 939 (9th Cir. 2011) ................................................................................... 10

*Chimei Innolux Corp.,*
  659 F.3d 842 (9th Cir. 2011)...................................................................................... 7

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983)....................................................................................................... 9

*Clapper v. Amnesty Int'l,*
  568 U.S. 398 (2013)..................................................................................................... 9

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006)...................................................................................................... 5

*Davidson v. Kimberly-Clark Corp.,*
  889 F.3d 956 (9th Cir. 2018)...................................................................................... 9

*Eggar v. City of Livingston,*
  40 F.3d 312 (9th Cir. 1994)...................................................................................... 10

*Fair Housing Council of Or. v. Travelers Home and Marine Ins. Co.,*
  No. 3:15-cv-00925, 2016 WL 74234147 (D. Or. Dec. 2, 2015)............................... 6

*Food & Water Watch, Inc. v. Vilsack,*
  808 F.3d 905 (D.C. 2015)........................................................................................6, 8

*Happe v. Lloyd,*
  2 F. App'x 519 (7th Cir. 2001) ................................................................................ 10

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982)..................................................................................................5, 6

*Kalani v. Starbucks Corp.,*
    81 F. Supp. 3d 876 (N.D. Cal. 2015)................................................................... 10

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992)...............................................................................................5, 9

*Manitoba v. Bernhardt,*
    923 F.3d 173 (D.C. Cir. 2019)................................................................................ 7

*Maryland v. U.S. Dep't of Educ.,*
    474 F. Supp. 3d 135 (D.D.C. 2020), *vacated as moot,* 2020 WL 7868112
    (D.C. Cir. Dec. 22, 2020)........................................................................................ 7

*Maya v. Centex Corp.,*
    658 F.3d 1060 (9th Cir. 2011)................................................................................ 8

*Pennsylvania v. New Jersey,*
    426 U.S. 660 (1976)................................................................................................ 7

*Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 2004)................................................................................ 4

*San Diego Cnty. Gun Rts. Comm. v. Reno,*
    98 F.3d 1121 (9th Cir. 1996).................................................................................. 9

*Sierra Forest Legacy v. Sherman,*
    646 F.3d 1161 (9th Cir. 2011)................................................................................ 7

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016)........................................................................................... 5

*Stavrianoudakis v. U.S. Dep't of Fish & Wildlife,*
    435 F. Supp. 3d 1063 (E.D. Cal. 2020).................................................................. 5

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009)................................................................................................ 5

*Texas v. United States,*
    523 U.S. 296 (1998)............................................................................................... 10

*Twitter, Inc. v. Paxton,*
    26 F.4th 1119 (9th Cir. 2022)............................................................................... 11

*United Transp. Union v. ICC,*
    891 F.2d 908 (D.C. Cir. 1989)................................................................................ 8

*Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens,*
    529 U.S. 765 (2000)................................................................................................ 5

NOTICE OF MOTION AND MOTION TO DISMISS FIRST
AMENDED COMPLAINT
     iii
                    C-20-761-EMC

*White v. Lee,*
    227 F.3d 12142 (9th Cir. 2000) ............................................................................................. 4

**Statutes**

18 U.S.C. §§ 921 *et. seq.* ................................................................................................................1, 2

18 U.S.C. §§ 922-923 ......................................................................................................................1, 2

18 U.S.C. § 926 ...................................................................................................................................... 2

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ...........................................................................4, 11

**Regulations**

27 C.F.R. pts 478-479 ......................................................................................................................... 2

Final Rule, Commerce in Firearms and Ammunition,
    33 Fed. Reg. 18,555 (Dec. 14, 1968) ....................................................................................... 2

Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms,
    86 Fed. Reg. 27,720 (May 21, 2021) (Notice) ...................................................................2, 3

Final Rule, Definition of "Frame or Receiver" and Identification of Firearms,
    87 Fed. Reg. 24,652 (Apr. 26, 2022) (Rule) ..................................................................2, 3, 4, 9

**Other Authorities**

Pub. L. No. 90-351, 82 Stat. 197 (1968) ...................................................................................... 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiffs initially filed this lawsuit in 2020 to challenge regulatory determinations and guidance concerning the meaning of the term "frame or receiver" under the Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq.*, and in particular classifications and guidance issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") determining that certain incomplete frames or receivers did not qualify as firearms regulated by the GCA (and therefore were not subject to the GCA's requirements such as background checks and serialization).  Since then, ATF has issued a new rule (the "Rule") governing the meanings of "firearm" and "frame or receiver" under the GCA.  Under this Rule, partially complete frames or receivers that may readily be completed to function as a frame or receiver do qualify as frames or receivers (and therefore as firearms).  Plaintiffs largely agree with the Rule, but they present a narrow disagreement with the Rule's conclusion that certain partially completed receivers without indexing or machining in critical interior areas do not qualify as firearms if not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools that would allow the product to readily be completed into a functional receiver.  Plaintiffs fail to establish that a justiciable controversy exists.

Plaintiffs cannot establish standing to maintain their claims based on the remote causal chains set forth in their First Amended Complaint.  Plaintiffs lack standing to challenge the Rule because they do not allege that they will suffer harm caused by the narrow class of products for which they disagree with ATF on classification.  Plaintiffs' challenges to classifications and guidance issued before the Rule are also unripe because Plaintiffs explicitly make these claims contingent on the Rule being vacated or set aside.  It is speculative whether the Rule will be vacated or set aside, and if that happens, whether ATF will adopt legal interpretations that match its interpretations issued under the previous regulation.

## II.     STATUTORY AND REGULATORY BACKGROUND

Congress enacted the Gun Control Act of 1968, *as amended*, 18 U.S.C. §§ 921 *et seq.* (GCA), to strengthen and update federal controls over firearms moving in or otherwise affecting interstate or foreign commerce.  Pub. L. No. 90-351, 82 Stat. 197, 225 (1968).  Accordingly, Congress enacted requirements for persons engaging in the business of importing, manufacturing, or dealing in "firearms."  *See generally* 18 U.S.C. §§ 922-923.  Congress defined "firearm" to include "any weapon . . . which will or is designed

1    to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or

2    receiver of any such weapon." *Id*. § 921(a)(3).  However, Congress did not define the terms "frame" or

3    "receiver."  *See id*. § 921.  Congress requires individuals and entities that import, manufacture, or deal in

4    firearms to obtain a federal firearms license, *id*. § 923(a), to maintain records of firearm acquisition and

5    disposition as prescribed by regulation, *id*. § 923(g)(1)(A), and to conduct background checks before

6    transferring firearms to a non-licensee, *id*. § 922(t).  Congress also requires licensed importers and

7    manufacturers to identify each firearm they import or manufacture by means of a serial number on the

8    weapon's receiver or frame.  *Id*. § 923(i).  Congress has vested in ATF the authority to prescribe

9    regulations "necessary to carry out the provisions of" the GCA.  *Id*. § 926(a).

10        ATF has promulgated regulations implementing the GCA.  *See* 27 C.F.R. parts 478-479.  More

11   than fifty years ago, ATF defined the statutory term "frame or receiver" as "[t]hat part of a firearm which

12   provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually

13   threaded at its forward portion."  Final Rule, Commerce in Firearms and Ammunition, 33 Fed. Reg.

14   18,555, 18,558 (Dec. 14, 1968).  This definition was meant to provide direction as to which portion of a

15   weapon is the frame or receiver for purposes of licensing, serialization, and recordkeeping.  Final Rule,

16   Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed. Reg. 24,652, 24,652 (Apr. 26,

17   2022) (Rule).  However, a restrictive application of this definition—as some courts have recently used—

18   would not describe the frame or receiver of most current firearms.  *Id*.  In most modern weapon designs,

19   the relevant fire control components either are housed by more than one part of the weapon or incorporate

20   a striker rather than a hammer to fire the weapon.  *Id*.

21        To update its decades-old definition of "frame or receiver," ATF published a notice of proposed

22   rulemaking.  Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed.

23   Reg. 27,720 (May 21, 2021) (Notice).  ATF promulgated the final rule on April 26, 2022, and it became

24   effective on August 24, 2022.  87 Fed. Reg. 24,652.  As relevant here, the Rule provides an updated

25   definition of the term "frame or receiver."  *See id*. at 24,652, 24,727.  The Rule further defines "frame"

26   for handguns, and "receiver" for rifles, shotguns, and other weapons that expel a projectile.  *See id*. at

27   24,727, 24,735.  Unlike the 1968 definition, these updated definitions now describe only a *single* housing

28   or structural component for a *specific* fire control component of a given weapon—including "variants

thereof," a term that is also defined. *Id*. For handguns, the frame is the housing or structure for the component—*i.e.*, the sear or its equivalent— designed to hold back the hammer, striker, bolt, or similar primary energized component before initiating the firing sequence. *Id*. For long guns, the receiver is the housing or structure for the primary component designed to block or seal the breech before initiating the firing sequence. *Id*.

The definition of "frame or receiver" includes a frame or receiver that is partially complete, disassembled, or nonfunctional—including a frame or receiver parts kit—that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver. *Id.* at 24,739; *see also id*. at 24,663, 24,727-28. However, the definitions of "frame" and "receiver" specifically exclude forgings, castings, printings, or similar articles that have not yet reached a stage of manufacture where they are clearly identifiable as unfinished component parts of weapons—*e.g.*, unformed blocks of metal, and other raw materials. *Id*. at 24,663, 24,728, 24,739. The Rule also defines "[r]eadily" to mean a process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state. *Id*. at 24,735. With respect to ATF's classification of firearms, relevant factors to making this determination include: (1) time (2) ease, (3) expertise, (4) equipment (5) parts availability, (6) expense, (7) scope, and (8) feasibility. *Id*. This definition and factors are based on case law interpreting the terms "may readily be converted to expel a projectile" in the GCA and "can be readily restored to shoot" in the National Firearms Act (NFA). 86 Fed. Reg. at 27,730 & n.58.

The Rule included several "nonexclusive examples that illustrate the definitions" of frame and receiver. Example 1 stated: "A frame or receiver parts kit containing a partially complete or disassembled billet or blank of a frame or receiver that is sold, distributed, or possessed with a compatible jig or template is a frame or receiver, as a person with online instructions and common hand tools may readily complete or assemble the frame or receiver parts to function as a frame or receiver." 87 Fed. Reg. at 24,739. Example 2 stated: "A partially complete billet or blank of a frame or receiver with one or more template holes drilled or indexed in the correct location is a frame or receiver." *Id*. Example 4 stated: "A billet or blank of an AR-15[1] variant receiver without critical interior areas having been

---

[1] The designation "AR" refers to the company that originally designed the rifle, Armalite Rifle, although the AR-15 is currently manufactured by the Colt's Manufacturing Company, and "AR-15-type" clones of

1 | indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates,

2 | equipment, or tools such that it may readily be completed is not a receiver." *Id.*

3 |      The Rule's regulatory text does not use the terms "80% frame" or "80% receiver." Those are

4 | marketing terms used by some firms in the firearms industry to describe a wide variety of partially

5 | complete frames and receivers, but those terms are not used in the GCA or ATF's regulations, and ATF

6 | does not consider the terms useful in determining whether any particular product qualifies as a firearm.

7 | *See id.* at 24,663 n.47.

8 | **III.   PLAINTIFFS' CLAIMS**

9 |      Plaintiffs' First Amended Complaint challenges the lawfulness of the Rule under the

10 | Administrative Procedure Act. In Count One, Plaintiffs claim that the Rule is not in accordance with

11 | law insofar as it does not classify certain "80 percent receiver[s]" as firearms. First Am. Compl. ¶ 144.

12 | In Count Two, Plaintiffs claim that the Rule is arbitrary and capricious insofar as it purportedly "deems

13 | as firearms only those 80 percent receivers and frames sold in kits or alongside jigs, templates, or similar

14 | aids, leaving 80 percent receivers and frames sold separately wholly unregulated." *Id.* ¶ 150. In both

15 | Counts, Plaintiffs also challenge classification letters and guidance issued before ATF issued the Rule,

16 | but only "[i]n the alternative, and to the extent the Final Rule is vacated, altered, or amended at any

17 | point." *Id.* ¶ 144; *see also id.* ¶ 153 (challenging prior ATF classifications and guidance "[a]lternatively,

18 | should the Final Rule be vacated, altered, or amended at any point").

19 | **IV.   LEGAL STANDARD**

20 |      Jurisdictional attacks under Rule 12(b)(1) may be either facial or factual. *See White v. Lee*, 227

21 | F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained

22 |

23 | this weapon are made by numerous other manufacturers.[2] The Individual Plaintiffs include allegations that

24 | they live and work in Los Angeles County, *see* First Am. Compl. ¶¶ 126, 131, suggesting they seek standing akin to the past injury plus "intent to return" recognized in certain Americans with Disability Act ("ADA") cases. *See Chapman v. Pier 1 Imports*, 631 F.3d 939, 949 (9th Cir. 2011). But this type of

25 | standing has rarely been recognized in the Ninth Circuit outside the ADA context, where it is rooted in the specific statutory protections of the ADA. *See id.* at 947. Moreover, the foundation of the likelihood

26 | of future harm in such cases involves an intent to return to a specific public accommodation, such as an individual retailer, *see, e.g.*, *id.* at 950; *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 891-92 (N.D. Cal.

27 | 2015), coupled with a *certainty* that the same harm will be experienced in that visit. The broad allegations that plaintiffs or their family members might again be victims of a crime perpetrated by someone with an

28 | unserialized firearm assembled from the type of receiver blanks that are not classified as firearms under the Rule somewhere in Los Angeles County's 4,700 square miles meet neither of these elements.

1   in a complaint are insufficient on their face to invoke federal jurisdiction," whereas in a factual attack,

2   "the challenger disputes the truth of the allegations" asserted.  *Safe Air for Everyone v. Meyer*, 373 F.3d

3   1035, 1039 (9th Cir. 2004).   In a facial attack, the Court accepts the truth of the allegations in the

4   complaint, whereas to resolve a factual attack on jurisdiction the court "need not presume the truthfulness

5   of the plaintiff's allegations" and may review evidence beyond the complaint.  *White*, 227 F.3d 1242.

6   Once jurisdiction has been challenged, the plaintiff bears the burden of establishing jurisdiction.  *See*

7   *Stavrianoudakis v. U.S. Dep't of Fish & Wildlife*, 435 F. Supp. 3d 1063, 1076 (E.D. Cal. 2020).

8   **V.     ARGUMENT**

9        **A.  Plaintiffs Cannot Establish Standing for Their Claims.**

10          None of the four Plaintiffs can meet its burden of establishing Article III standing, which requires

11   that a plaintiff must satisfy three elements.   First, Plaintiffs must identify an injury-in-fact: "an invasion

12   of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

13   conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).  Second,

14   they must show "a causal connection between the injury" and the challenged action.  *Id*.  "Third, it must

15   be likely, as opposed to merely speculative, that the . . . injury will be redressed by a favorable decision."

16   *Id*. at 561; *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) ("substantial

17   likelihood" required that "relief will remedy the alleged injury") (citation omitted).   Standing is "not

18   dispensed in gross," and a "plaintiff must demonstrate standing for each claim he seeks to press."

19   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352-53 (2006).

20          At the pleading stage, a plaintiff must "clearly . . . allege facts demonstrating each element" of

21   standing.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).   Where, as here, "the

22   plaintiff is not himself the object of the government action," standing "is ordinarily substantially more

23   difficult to establish." *Lujan*, 504 U.S. at 562 (citation omitted).   ATF's interpretations of the GCA neither

24   regulate nor forbid any action on the part of any of the plaintiffs, so this higher standard applies.  *Summers*

25   *v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).   Plaintiffs here have not established that they meet this

26   standard for any of their claims.

27        **1.     Giffords**

28          To "establish an injury," "[a]n organization suing on its own behalf" must show it has "suffered

both a diversion of its resources and a frustration of its mission." *La Asociacion de Trabajadores de Lake Forest* ("*ATLF*") *v. Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010) ("*ATLF II*") (citation omitted). Among other things, the group "must . . . show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id*. The alleged injury it seeks to counteract must be "more than simply a setback to the organization's abstract social interests." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982). This means that an organization like Giffords must show that ATF's actions "perceptibly impaired the organization's ability to provide services," not just that its "mission has been compromised" in the abstract. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (citation omitted). The organization "cannot manufacture the injury by . . . simply choosing to spend money." *ATLF II*, 624 F.3d at 1088.

Giffords' allegations do not meet either part of the standard. A "diversion of resources" exists only when it is "a necessity" for the organization to spend resources on "activities outside of its normal realm," *i.e.*, those not "in line with the organization['s] missions." *ATLF v. Lake Forest*, No. SA CV 07-250, 2008 WL 11411732, at *6 (C.D. Cal. Aug. 18, 2008) ("*ATLF I*"), *aff'd*, 624 F.3d 1083 (9th Cir. 2010). Here, Giffords is in the business of lobbying, policymaking, and carrying out legal activities related to gun safety, *see* First Am. Compl. ¶ 20; http://giffords.org. An organization cannot establish standing based on a diversion of resources theory when it is "merely going about its business as usual." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1155 (9th Cir. 2019). For Giffords, advocating for gun safety policies is business as usual. As to the second prong—the purported injury if Giffords does not "diver[t] resources"—Giffords identifies only its "ability to save lives," by carrying out its mission of advocating for gun safety laws. First Am. Compl. ¶ 135. This is a "setback to the organization's abstract social interests" that *Havens* characterized as insufficient for organizational standing. 455 U.S. 379; *see Fair Housing Council of Or. v. Travelers Home and Marine Ins. Co.*, No. 3:15-cv-00925, 2016 WL 7423414, at *7 (D. Or. Dec. 2, 2015) (allegations that companies engaged in housing discrimination described only "abstract social interests" of fair housing organization insufficient for standing). In short, Giffords cannot create an Article III injury by disagreeing with an interpretation of federal law and then "choosing to spend money" on efforts to change that interpretation. *ATLF II*, 624 F.3d at 1088; *see ATLF I*, 2008 WL 11411732, at *6 (immigrant worker interest group plaintiffs lacked organizational standing to

1  challenge Sheriff's office targeting of day laborers since plaintiffs' "actions in support of the day laborers

2  . . . are directly in line with the organizations' missions").

3       **2.    State of California**

4       **i.  Injury.**  California fails to allege that the limited portion of ATF's legal interpretation with

5  which it disagrees has caused any Article III injury that could be redressed by the relief California seeks.

6  California claims injury from "increased costs of policing and law enforcement," First Am. Compl. ¶ 111,

7  citing examples of seizures of "ghost guns" and crimes committed with "ghost guns." *Id.* ¶¶ 112-15. But

8  California nowhere links the unserialized firearms used in such crimes to any specific ATF action

9  challenged in this lawsuit.  In particular, California fails to allege that any of the unserialized firearms

10 used in these crimes were assembled from the types of incomplete receiver blanks that ATF would

11 determine not to be firearms under the Rule.  Plaintiffs accordingly fail to allege any injury from ATF's

12 actions.

13      The expenses associated with California's decision itself to regulate a broader class of receiver

14 blanks than the federal government and its "accelerated efforts to implement" its legislation, *see* First Am.

15 Compl. ¶¶ 116-17, also cannot give rise to Article III standing.  "[D]ecisions by . . . state legislatures" to

16 expend money from the public fisc or otherwise to enact new laws are "self-inflicted," and "[n]o State can

17 be heard to complain about [such] damage." *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976); *see*

18 *Maryland v. U.S. Dep't of Educ.*, 474 F. Supp. 3d 13, 35 (D.D.C. 2020) (where "nothing requires the

19 State[]" to incur expenditures, its voluntary choices to do so cannot give rise to standing), *vacated as moot*,

20 2020 WL 7868112 (D.C. Cir. Dec. 22, 2020).  California's decision to regulate a broader class of products

21 and then to accelerate that implementation reflect the State's own choice of how to expend resources

22 among a myriad of potential law enforcement activities, not an "injury" inflicted by ATF decisions.

23      Damage to California's "quasi-sovereign" interest in "protecting the security and well-being of its

24 residents," First Am. Compl. ¶¶ 111, 121, is also not a cognizable Article III injury.  This type of alleged

25 harm falls squarely within the *parens patriae* doctrine, *see Wash. v. Chimei Innolux Corp.*, 659 F.3d 842,

26 847 (9th Cir. 2011), under which it is well established that a state "does not have standing as *parens*

27 *patriae* to bring an action against the Federal Government."  *Sierra Forest Legacy v. Sherman*, 646 F.3d

28 1161, 1178 (9th Cir. 2011) (citation omitted); *see also Manitoba v. Bernhardt*, 923 F.3d 173, 183 (D.C.

Cir. 2019) (affirming "longstanding precedent that a State in general lacks *parens patriae* standing to sue the federal government"); *id.* at 181 (holding that rule against state *parens patriae* standing for suits against the federal government applies to APA claims).

**ii. Traceability.** Even if any of its alleged injuries could satisfy Article III, California has also failed to establish that such injuries are traceable to the specific actions challenged. In particular, California fails to show that any alleged injuries were caused by the Rule. Plaintiffs largely agree with the Rule, but merely argue that it leaves open what Plaintiffs call a "loophole[]" by not classifying as firearms certain incomplete receiver blanks that are not sold with jigs or supporting materials. First Am. Compl. ¶¶ 150. But California does not allege that the firearms seized or used in crimes were assembled from the types of incomplete receiver blanks that would not be considered firearms under the Rule. "In cases where a chain of causation involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' [alleged] injuries, the Supreme Court and [Ninth Circuit] have found the causal chain too weak to support standing at the pleading stage." *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (internal quotations omitted). And because this chain of injury allegedly affects Plaintiffs by increasing the risk of crime, the scale of alleged injury must be sufficient to "*substantially* increase[] the risk" of crime and other purported harms. *Vilsack*, 808 F.3d at 915 (citation omitted).

Further, California hypothesizes chains of causation involving speculation about the actions of numerous, independent third parties, and the causes of their actions, that are far too weak to support standing. To wit, California suggests that, because of ATF's Rule: (1) new companies have entered the market for receiver blanks and sold the specific subset of receiver blanks that do not qualify as firearms under the Rule; (2) those companies have then decided to market those specific receiver blanks to prohibited persons who wish to obtain firearms unlawfully; (3) such prohibited persons have decided to violate state laws barring their possession of firearms; (4) rather than obtaining finished, operative firearms through another source, those persons have chosen to make their own unserialized firearms (in further violation of the California law requiring serialization); (5) those persons have then chosen to acquire receiver blanks from a company whose activities were influenced by ATF's interpretation rather than from other companies and rather than making their own, homemade firearms from other firearms parts; and (6) after making a firearm, the prohibited persons have chosen to use those firearms in a crime. This chain of

1  unsupported speculation cannot meet the traceability requirements.  *See Brady Campaign to Prevent Gun*

2  *Violence v. Ashcroft*, 339 F. Supp. 2d 68, 77-78 (D.D.C. 2004) (plaintiff must "adduce facts showing that

3  [third parties] would not seek some alternative means" to establish traceability from attenuated increased

4  risk of crime); *United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any

5  chain of allegations for standing purposes, we may reject as overly speculative those links which are

6  predictions of future events (especially future actions to be taken by third parties) and those which predict

7  a future injury that will result from present or ongoing actions[.]").

8      **iii. Redressability.**  California fails to allege that any of its purported injuries would be redressed

9  by the relief it seeks.  In particular, the Rule already classifies as firearms incomplete frames or receivers

10  that may readily be completed to function as a receiver.  *See* 87 Fed. Reg. at 24,739.  Plaintiffs seek to set

11  aside a narrow portion of the Rule that would not treat as firearms certain receiver blanks without indexing

12  or machining in critical areas that are sold without jigs or other materials that can be used to readily

13  complete the product into a functional receiver.  *See* First Am. Compl. Prayer For Relief, ¶¶ a-c.  But

14  California fails to allege that this narrow set of disputed products causes any of their purported injuries,

15  and therefore fails to establish that its requested relief would redress any injuries.

16      California's alleged injuries are also not redressable in this action because the hypothesized

17  injuries are all caused by the independent, criminal acts of third parties. *See Lujan*, 504 U.S. at 562 (where

18  relief from injury is dependent "on the unfettered choices made by independent actors," there is no

19  redressability).

20      **3.   Mr. Muehlberger and Mr. Blackwell ("Individual Plaintiffs")**

21      Individual Plaintiffs have experienced the most heartbreaking loss imaginable: the loss of a child

22  to gun violence.  Defendants deplore acts of gun violence such as these and are working earnestly, within

23  their authority under the GCA and other statutes, to take actions to reduce gun violence.  However, because

24  Individual Plaintiffs seek only declaratory and injunctive remedies—forms of prospective relief—no past

25  injury, no matter how devastating, is legally sufficient.  To seek prospective relief, "it is insufficient for

26  [plaintiffs] to demonstrate only a past injury"; "there is a further requirement that they show a very

27  significant possibility of future harm." *San Diego Cnty. Gun Rts. Comm. v. Reno*, 98 F.3d 1121, 1126

28  (9th Cir. 1996).  To meet this standard, such future injury may not be based on a "speculative chain of

possibilities," *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410 (2013), and Plaintiffs must show that they are "realistically threatened by a repetition of [the] experience." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (to obtain a "prospective remedy . . . premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way'") (quoting *Lyons*).

The Individual Plaintiffs have not met this standard.  The First Amended Complaint lacks any specific allegation that they are "realistically threatened" by an actual likelihood they—or their surviving family members—will be the victims of a crime committed with an unserialized firearm made from a receiver blank that would not be classified as a firearm under the Rule. *Cf. Eggar v. City of Livingston*, 40 F.3d 312, 317 (9th Cir. 1994) (plaintiff who alleged repeated past injuries lacked standing to seek prospective relief because it was "speculative" whether the plaintiff would suffer future injury).  Here, Plaintiffs would need to allege not only that they would again be victims of a violent crime, but that the crime would be carried out with a firearm made from one of the receiver blanks that would not be classified as a firearm under the Rule, an allegation which would be "purely speculative." *Happe v. Lloyd*, 2 F. App'x 519, 521 (7th Cir. 2001).[2]

### B. Plaintiffs' Contingent Challenges to ATF's Classifications and Guidance that Preceded the Rule Are Unripe.

Plaintiffs challenge various classification letters and guidance documents from before issuance of the Rule, all of which interpreted the ATF's prior definition of "frame or receiver," which was superseded by the Rule.  *See* First Am. Compl. ¶¶ 144-45, 153.  Yet Plaintiffs expressly challenge these documents only "[i]n the alternative, and to the extent the Final Rule is vacated, altered, or amended at any point." *Id.* ¶ 144; *see also id.* ¶ 153 (challenging prior ATF classifications and guidance "[a]lternatively, should

---

[2] The Individual Plaintiffs include allegations that they live and work in Los Angeles County, *see* First Am. Compl. ¶¶ 126, 131, suggesting they seek standing akin to the past injury plus "intent to return" recognized in certain Americans with Disability Act ("ADA") cases. *See Chapman v. Pier 1 Imports*, 631 F.3d 939, 949 (9th Cir. 2011).  But this type of standing has rarely been recognized in the Ninth Circuit outside the ADA context, where it is rooted in the specific statutory protections of the ADA. *See id.* at 947.  Moreover, the foundation of the likelihood of future harm in such cases involves an intent to return to a specific public accommodation, such as an individual retailer, *see, e.g., id.* at 950; *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 891-92 (N.D. Cal. 2015), coupled with a *certainty* that the same harm will be experienced in that visit.  The broad allegations that plaintiffs or their family members might again be victims of a crime perpetrated by someone with an unserialized firearm assembled from the type of receiver blanks that are not classified as firearms under the Rule somewhere in Los Angeles County's 4,700 square miles meet neither of these elements.

the Final Rule be vacated, altered, or amended at any point").

Plaintiffs' contingent challenges to ATF's guidance issued under a prior regulatory regime are unripe. The ripeness doctrine seeks to prevent the adjudication of claims relating to "'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). "That is so because, if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009). It is far from certain that the Rule will be "vacated, altered, or amended." First Am. Compl. ¶¶ 144, 153. It is likewise speculative that, in the event that the Rule is vacated or amended, ATF will adopt an interpretation of "frame or receiver" that matches classifications and guidance issued under the previous version of the regulation. "The basic rationale of the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123 (9th Cir. 2022) (citations and quotations omitted). Plaintiffs' disagreement with a legal interpretation that ATF might adopt if its current legal interpretation is vacated in court is the type of abstract disagreement that the ripeness doctrine is designed to keep out of court.

Accordingly, because none of Plaintiffs has established Article III standing to bring these claims, and Plaintiffs have failed to allege any ripe claim, this Court lacks jurisdiction over Plaintiffs' Amended Complaint.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed for failure to establish subject matter jurisdiction under Federal Rule 12(b)(1).

1   DATED: November 18, 2022        Respectfully submitted,

2

3                                   BRIAN M. BOYNTON
                                   Principal Deputy Assistant Attorney General

4

5                                   LESLEY FARBY
                                   Assistant Branch Director

6                                   */s/ Martin M. Tomlinson*
                                   MARTIN M. TOMLINSON

7                                   DANIEL RIESS
                                   TAISA M. GOODNATURE

8                                   JEREMY S.B. NEWMAN
                                   Trial Attorneys

9                                   United States Department of Justice
                                   Civil Division

10                                  Federal Programs Branch
                                  1100 L Street NW, Room 12504

11                                  Washington, DC 20005
                                  Telephone: (202) 353-4556

12                                  FAX: (202) 616-8460
                                  Email: martin.m.tomlinson@usdoj.gov

13

14                                 *Attorneys for Federal Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28