GIBSON, DUNN & CRUTCHER LLP
SCOTT A. EDELMAN, SBN 116927
sedelman@gibsondunn.com
2029 Century Park East
Los Angeles, CA  90067-3026
Telephone: (310) 552-8500
Facsimile: (310) 551-8741

LEE R. CRAIN, *pro hac vice*
ERICA PAYNE, *pro hac vice*
LIESEL SCHAPIRA, *pro hac vice*
200 Park Avenue
New York, NY  10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

PAUL HASTINGS LLP
AVI WEITZMAN, *pro hac vice*
aviweitzman@paulhastings.com
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 318-6000
Facsimile: (212) 752-3620

*Attorneys for Plaintiff Giffords Law Center to Prevent Gun Violence*

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE, SBN 238485
Supervising Deputy Attorney General
S. CLINTON WOODS, SBN 246054
Deputy Attorney General
Clint.Woods@doj.ca.gov
455 Golden Gate Avenue
Suite 11000
San Francisco, CA 94102-7004
Telephone:  (415) 510-3807
Facsimile:  (415) 703-5843

*Attorneys for Plaintiff State of California, by and through Attorney General Rob Bonta*

[*Additional Counsel Listed on Next Page*]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| STATE OF CALIFORNIA, et al.,<br><br>                      Plaintiffs,<br><br>             v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, et al.,<br><br>                      Defendants. | CIVIL CASE NO.:  3:20-CV-06761-EMC<br><br>**PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND FOR LEAVE TO CONDUCT LIMITED DISCOVERY**<br><br>Action Filed:  September 29, 2020<br>Hearing: July 13, 2023 at 1:30 p.m.<br>Hon. Edward M. Chen |

1   Additional Counsel

2   GIFFORDS LAW CENTER TO
3   PREVENT GUN VIOLENCE
    DAVID M. PUCINO, *pro hac vice*
4   244 Madison Ave Ste 147
    New York, NY 10016
5   Telephone: (917) 524-7816

6   *Attorneys for Plaintiff Giffords Law*
7   *Center to Prevent Gun Violence*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

RELEVANT BACKGROUND ........................................................................................... 3

ARGUMENT ...................................................................................................................... 6

    I.      The Court Should Compel Defendants to Produce the "Whole" Record Necessary for Judicial Review Under the APA .................................................. 6

          A.      Defendants Must Complete the Administrative Record with All Materials ATF Considered When Issuing the Final Rule ............................... 8

          B.      Defendants Must Complete the Administrative Record with All Materials ATF Considered in Connection with Classification Letters Applying the Final Rule .................................................................................. 10

          C.      Defendants Must Produce a Privilege Log ................................................... 11

    II.     The Court Should Grant Plaintiffs Leave to Serve Their Targeted Discovery Requests ........................................................................................................... 12

          A.      Plaintiffs Are Entitled to Discovery Related to Their Theory that ATF Failed to Consider Relevant Factors ............................................................. 13

          B.      Plaintiffs Are Entitled to Discovery to Prove Their Standing ....................... 15

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*'Ilio'ulaokalani Coal. v. Rumsfeld*,
464 F.3d 1083 (9th Cir. 2006)..................................................................................................9

*Animal Def. Council v. Hodel*,
840 F.2d 1432 (9th Cir. 1988), *amended*, 867 F.2d 1244 (9th Cir. 1989) .....................................13

*Asbestos Disease Awareness Org. v. Wheeler*,
508 F. Supp. 3d 707 (N.D. Cal. 2020) ....................................................................................13

*Audubon Soc'y of Portland v. U.S. Army Corps of Eng'rs*,
2015 WL 13649299 (D. Or. May 5, 2015) ...............................................................................13

*Bair v. Cal. State Dep't of Transp.*,
867 F. Supp. 2d 1058 (N.D. Cal. 2012) ...................................................................................15

*Cal. Native Plant Soc'y v. EPA*,
251 F.R.D. 408 (N.D. Cal. 2008) ............................................................................................12

*Carter v. U.S. Dep't of Commerce*,
307 F.3d 1084 (9th Cir. 2002)................................................................................................12

*Citizens to Preserve Overton Park v. Volpe*,
401 U.S. 402 (1971) .........................................................................................................6, 7

*Ctr. for Biological Diversity v. Provencio*,
2014 WL 12770402 (D. Ariz. Aug. 11, 2014) ...........................................................................11

*Ctr. for Biological Diversity v. Salazar*,
2010 WL 11575282 (N.D. Cal. Sept. 27, 2010) ........................................................................13

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
2007 WL 3049869 (N.D. Cal. Oct. 18, 2007).............................................................................7

*Ctr. for Food Safety v. Vilsack*,
2017 WL 1709318 (N.D. Cal. May 3, 2017) .........................................................................7, 12

*Desert Survivors v. U.S. Dep't of the Interior*,
231 F. Supp. 3d 368 (N.D. Cal. 2017) ......................................................................................9

*Dopico v. Goldschmidt*,
687 F.2d 644 (2d Cir. 1982)....................................................................................................8

*Earth Island Inst. v. Hogarth*,
494 F.3d 757 (9th Cir. 2007)...................................................................................................9

*Env't Protection Info. Ctr. v. Blackwell*,
389 F. Supp. 2d 1174 (N.D. Cal. 2004) ...................................................................................15

*F.T.C. v. Warner Commc'ns Inc.*,
    742 F.2d 1156 (9th Cir. 1984) ...................................................................................10

*Greenpeace v. Nat'l Marine Fisheries Serv.*,
    55 F. Supp. 2d 1248 (W.D. Wash. 1999) ......................................................................9

*Innovator Enterprises, Inc. v. Jones*,
    28 F. Supp. 3d 14 (D.D.C. 2014) ...........................................................................10, 11

*Institute for Fisheries Resources v. Burwell*,
    2017 WL 89003 (N.D. Cal. Jan. 10, 2017) ..........................................................9, 10, 12

*J.L. v. Cissna*,
    2019 WL 2223803 (N.D. Cal. May 22, 2019) ...............................................................13

*Lands Council v. Powell*,
    395 F.3d 1019 (9th Cir. 2005) ....................................................................................13

*People of State of Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*,
    2006 WL 708914 (N.D. Cal. Mar. 16, 2006) ........................................................8, 9, 12

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ...................................................................................................15

*Nat. Res. Def. Council v. Gutierrez*,
    2008 WL 11358008 (N.D. Cal. Jan. 14, 2008) ..............................................................7

*Native Vill. of Point Hope v. Jewell*,
    740 F.3d 489 (9th Cir. 2014) .......................................................................................9

*Nw. Env't Advocs. v. U.S. Dep't of Com.*,
    2019 WL 110985 (W.D. Wash. Jan. 4, 2019) ..............................................................15

*Nw. Env't Def. Ctr. v. Bonneville Power Admin.*,
    117 F.3d 1520 (9th Cir. 1997) ....................................................................................15

*Oceana, Inc. v. Pritzker*,
    2017 WL 2670733 (N.D. Cal. June 21, 2017) ..............................................................10

*Portland Audubon Soc'y v. Endangered Species Comm.*,
    984 F.2d 1534 (9th Cir. 1993) .....................................................................................7

*Ramos v. Nielsen*,
    2018 WL 3109604 (N.D. Cal. June 25, 2018) ............................................................2, 8

*Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*,
    2017 WL 4642324 (N.D. Cal. Oct. 17, 2017) .............................................................7, 8

*Reno-Sparks Indian Colony v. EPA*,
    336 F.3d 899 (9th Cir. 2003) .......................................................................................9

*S.F. Bay Conservation & Dev. Comm'n v. U.S. Army Corps of Engineers*,
    2018 WL 3846002 (N.D. Cal. Aug. 13, 2018) ..............................................................8

*Sequoia ForestKeeper v. Benson*,
    108 F. Supp. 3d 917 (E.D. Cal. 2015) ............................................................. 13

*Sierra Club v. Zinke*,
    2018 WL 3126401 (N.D. Cal. June 26, 2018) ................................................. 8

*Sig Sauer Inc. v. Brandon*,
    826 F.3d 598 (1st Cir. 2016) ............................................................................ 10

*Thompson v. Dep't of Labor*,
    885 F.2d 551 (9th Cir. 1989) ........................................................................... 7

*Tribe v. Bureau of Land Mgmt.*,
    2022 WL 1778525 (E.D. Cal. June 2, 2022) ................................................... 13

**Statutes**

5 U.S.C. § 706 ................................................................................................... 6, 11

**Regulations**

27 C.F.R. pts. 447, 478–79 ................................................................................. 2

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE that on July 13, 2023, at 2:30 p.m., or as soon thereafter as the parties

3 may be heard, in the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California,

4 before the Honorable Edward M. Chen, United States District Judge for the Northern District of

5 California, Plaintiffs State of California and Giffords Law Center, by and through their undersigned

6 counsel, will move pursuant to this Court's Order (ECF No. 149) to compel completion of the

7 Administrative Record and production of a privilege log, and for leave to conduct limited party and/or

8 third-party discovery.

9      Pursuant to Civil L.R. 7-2(b), this motion is based on this notice of motion, the memorandum

10 of points and authorities in support of this motion and the exhibits attached thereto, and such oral

11 argument as the Court may permit.

12

**INTRODUCTION**

13      Plaintiffs move this Court for an order compelling Defendants to complete the administrative

14 record in this Administrative Procedure Act ("APA") case and for leave to serve narrow sets of

15 document requests on Defendants and third parties.  The case law of this District uniformly requires

16 production of the "whole" administrative record in APA proceedings, including any and all material

17 an agency directly or indirectly considered in rendering a decision.  Defendants have effectively

18 conceded they did not comply with this standard.  So, too, do courts in this Circuit broadly recognize

19 that a plaintiff can seek discovery to prove standing and to demonstrate that an agency failed to consider

20 critical factors in rendering a decision.  That is exactly the type of information Plaintiffs are seeking in

21 the narrowly tailored and targeted document requests they propose to serve on Defendants and third

22 parties.  This Court should grant this motion in full.

23      Plaintiffs filed this action more than two years ago challenging Defendants' determinations that

24 nearly finished or "80 percent" receivers and frames are not "firearms" under the Gun Control Act

25 ("GCA").  These products are designed to and can be converted quickly and easily into functional,

26 deadly weapons, colloquially called "ghost guns."  Because of Defendants' decision-making, these

27 products are widely accessible for purchase without a background check or a serial number as the GCA

28 requires.

In 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") promulgated a new rule about ghost guns that Plaintiffs had hoped would finally close the loophole that Defendants' actions had created in allowing these deadly, do-it-yourself products to exist in the market.  *See* 27 C.F.R. pts. 447, 478, and 479 (the "Final Rule").  Unfortunately, the Final Rule and ATF's decisions implementing it failed to remedy the legal deficiencies in ATF's prior determinations and still exclude significant categories of nearly finished receivers and frames from the GCA's background check and serialization requirements.  ATF's administrative actions thus continue to permit manufacturers and distributors to flood the market with untraceable weapons that can be purchased by anyone from minors to felons to domestic abusers.  Plaintiffs in their First Amended Complaint therefore challenged ATF's final agency actions under the APA as both contrary to law and arbitrary and capricious.

In reviewing a challenge to administrative action under the APA, this Court must review an agency's decision-making based on the "whole record" before the agency, meaning "all documents and materials directly or *indirectly* considered by agency decision-makers."  *Ramos v. Nielsen*, 2018 WL 3109604, at *3 (N.D. Cal. June 25, 2018) (Chen, J.) (emphasis in original) (citation omitted).  Yet Defendants have failed to lodge the "whole record" in this case.  The record Defendants lodged on April 18, 2023, *see* ECF No. 144 (the "Administrative Record"), is virtually devoid of internal memoranda, meeting notes, drafts, and communications with the White House or other federal agencies.  And during meet-and-confer sessions with Plaintiffs, Defendants confirmed that ATF excluded from the record broad swaths of materials that the agency unilaterally determined were "deliberative."  But the law is clear:  Defendants must include in the Administrative Record any and all materials that ATF considered (directly or indirectly) when issuing or applying the Final Rule.  To the extent Defendants withhold any materials as privileged, they must provide a privilege log that adequately describes the withheld materials and the basis for their withholding.

Courts reviewing administrative actions can also consider, for specific purposes, information that falls beyond the administrative record.  Here, Plaintiffs seek the Court's leave to serve targeted document requests on Defendants and on a small set of third-party ghost gun manufacturers, retailers, and distributors.  Plaintiffs' requests, attached to the Declaration of Lee R. Crain as Exhibits A and B, seek documents that are relevant to two critical issues in this case.  *First*, the requests seek documents

relevant to prove Plaintiffs' theory that Defendants' ghost gun determinations are arbitrary and capricious because Defendants failed to consider all of the relevant factors or articulate a rational explanation for their actions. By definition, such documents would not be found in the Administrative Record. Plaintiffs therefore need discovery to fill that gap. *Second*, the requests seek documents to prove Plaintiffs' standing. The law plainly permits plaintiffs to pursue *jurisdictional* discovery, even in APA cases.

**RELEVANT BACKGROUND**

***The Administrative Record.*** On April 18, 2023, Defendants lodged and served the Administrative Record. *See* ECF No. 144. Accompanying that record, ATF provided a certification stating only that "[t]he materials listed . . . , to the best of my knowledge, comprise the administrative record in this action." ECF No. 144-1 at 1. The certification does not explain how ATF assembled the record or what criteria ATF applied to select documents for inclusion. *See id.* Defendants also did not provide a privilege log or otherwise indicate that they had withheld documents from the Administrative Record.

Although the Administrative Record as served is voluminous—encompassing more than 70,000 pages—the vast majority of those pages consist of (i) comment matrices purporting to reflect that ATF has reviewed the nearly 300,000 comments submitted during the Final Rule's notice-and-comment period; and (ii) publicly available documents like news articles, webpage excerpts, and press releases. Plaintiffs were unable to identify more than a small handful of internal agency communications and almost no communications with third parties like other agencies or ghost gun manufacturers, retailers, and distributors regarding the Final Rule or related determinations. Plaintiffs were also unable to identify any agency communications with White House officials regarding the Final Rule—despite the White House's stated interest in the Final Rule, *see* Plaintiffs' Opp. to Defendants' Mot. to Dismiss, ECF No. 129 at 10—or internal drafts of or revisions to the Final Rule. Nor have Defendants identified any such materials in the Administrative Record.

On May 5, 2023, Plaintiffs sent Defendants a letter identifying specific categories of documents that appear to be missing from the Administrative Record. *See* Crain Ex. C. These documents include: "(i) non-public communications between ATF and law enforcement or other agencies regarding the

Final Rule or related guidance; (ii) non-public communications between ATF and ghost gun sellers or manufacturers, or lobbyists for such sellers and manufacturers, regarding application of the Final Rule and related guidance; (iii) draft versions of . . . the Final Rule circulated for comment . . . ; [and] (iv) communications between the White House or other executive branch offices and ATF regarding the Final Rule." *Id.* at 2. Plaintiffs' letter explained that it was "highly unlikely that no such documents or communications were considered by ATF as it drafted or promulgated the Final Rule and related guidance," especially given "the size of the record, the length of time it took to adopt the Final Rule, and the national significance of the issues involved." *Id.* Plaintiffs cited numerous cases requiring such materials to be produced as part of the Administrative Record or else placed on a privilege log. *See id.*

On May 8, 2023, Defendants responded via email that the categories of documents that Plaintiffs had identified were "internal, deliberative, and predecisional documents" that "are not properly part of an administrative record." Crain Ex. D at 3. Defendants also asserted that "[b]ecause deliberative materials are outside the scope of the administrative record," Defendants are "not required to produce a privilege log to identify them and explain their exclusion." *Id.* at 2. Defendants did not distinguish any of the cases that Plaintiffs had cited or provide any contrary authority. *See id.* In subsequent meet and confers, Defendants could not confirm that ATF had included in the Administrative Record all of the materials the agency had considered, directly or indirectly, in connection with the Final Rule and related determinations. *See* Crain Ex. E at 1 & n.1.

***Classification Letters.*** Before Defendants served the Administrative Record, Plaintiffs asked Defendants to confirm that they would include in that record or otherwise produce ATF classification letters applying the Final Rule to nearly complete receivers. *See* Joint Status Report, ECF No. 146 at 1. Classification letters are determinations that ATF issues to firearm industry members in response to inquiries about whether specific products qualify a "firearms" under the GCA and ATF's implementing regulations. Defendants have conceded in this case that ATF classification letters constitute final agency actions reviewable under the APA. *See* Defendants' Mot. to Dismiss, ECF No. 29 at 14. In response to Plaintiffs' request, Defendants agreed to produce the requested classification letters but

reserved the right to argue that these letters are not part of the Administrative Record.  *See* ECF No. 146 at 1.

On May 2, 2023, Defendants produced an initial set of classification letters.  *See* ECF No. 146 at 1.  Defendants later agreed to produce classification letters applying the Final Rule on an ongoing basis until 30 days before the deadline for Defendants' opening summary judgment brief.  *See* Crain Ex. E at 3.  Defendants refused, however, to produce any other documents or communications relating to the classification letters.  Crain Ex. C at 2.  In other words, even though Defendants have conceded that classification letters are reviewable agency actions, Defendants have refused to produce any materials the agency considered in issuing the letters, including but not limited to communications with industry members and any materials industry members provided to enable ATF to assess the legality of their products.

***Discovery Requests.***  Plaintiffs also provided six targeted Requests for Production of Documents to Defendants on May 5, 2023.  Crain Ex. A.[1]  Plaintiffs' requests generally seek (i) communications between ATF and third parties concerning the Final Rule and its application to specific products; and (ii) specific statistical information about ghost guns and ghost gun products.  *See id.*  In response, Defendants explained that they did "not intend to respond to [the] requests," asserting that "discovery generally is not permitted in APA cases."  Crain Ex. D at 4.  Defendants agreed, however, to meet and confer with Plaintiffs to explore whether any compromise was feasible.  *Id.*  While Defendants ultimately agreed to produce documents responsive to Plaintiffs' first request for classification letters, *see* Crain Ex. E at 3, and certain data responsive to Plaintiffs' fourth through sixth requests for statistical information, *see* Crain Ex. F, Defendants refused to produce any documents responsive to the following requests:

**RFP 2**: All Communications between ATF and any third party requesting a Classification or a Classification Letter since the Final Rule took effect, including but not limited to any

---

[1] Certain of Plaintiffs' document requests seek materials Plaintiffs maintain must be included in the Administrative Record. As Plaintiffs explained, "[t]o the extent our Requests for Production overlap with certain of the documents ATF is independently required to include in the Record, we serve[d] th[o]se Requests not to obviate ATF's independent obligation to provide a complete Record but rather to confirm ATF must produce those documents."  Crain Ex. C at 3.

Documents or other materials provided to ATF by any third party seeking a Classification or Classification Letter.

**RFP 3**: All Communications between ATF and Ghost Gun Manufacturers or Distributors, lobbyists, the White House, other administrative agencies, or any other third parties concerning the Notice of Proposed Rulemaking, the Final Rule, or the Advisory Letters.

Crain Ex. A; *see* Crain Ex. E at 3–4.

During the course of meeting and conferring, Plaintiffs also notified Defendants that they intend to seek limited document discovery from a small number of third-party manufacturers, retailers, or distributors of 80 percent receivers and frames. *See* Crain Ex. E at 4. Plaintiffs shared their contemplated third-party requests with Defendants as a courtesy on May 15, 2023, reiterating that the requests seek "documents necessary to prove Plaintiffs' standing and/or to complete the Administrative Record with respect to the classification letters." *Id.*; *see* Crain Ex. B.[2] However, Defendants maintained their position that Plaintiffs could not serve their requests on any third party without seeking this Court's leave. Crain Ex. E at 4–5.

Having attempted to resolve as many disputes as possible without this Court's intervention, Plaintiffs now file this motion to compel the production of the complete Administrative Record and to seek this Court's leave to serve their targeted discovery requests.

## ARGUMENT

I. **The Court Should Compel Defendants to Produce the "Whole" Record Necessary for Judicial Review Under the APA**

Judicial review under Section 706 of the APA must be based on the "whole record" before the agency when it made the challenged decision. *See* 5 U.S.C. § 706. In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), the Supreme Court explained that courts must engage in a "thorough, probing, in-depth review" of agency action, which requires a full record of all documents and information before the agency and not a curated set of documents the agency unilaterally designates and submits. *Id.* at 415. A complete record of the agency's decision-making process is critical to effective judicial review: "An incomplete record must be viewed as a 'fictional account of the actual

---

[2] Plaintiffs' proposed third-party discovery requests, attached separately to the Crain Declaration as Exhibit B, were attached as an exhibit to their May 15, 2023 letter to Defendants. *See* Crain Ex. E at 4.

PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND FOR LEAVE TO CONDUCT LIMITED DISCOVERY – CASE NO. 3:20-CV-06761-EMC

6

1   decision-making process.' . . . If the record is not complete, then the requirement that the agency

2   decision be supported by 'the record' becomes almost meaningless." *Portland Audubon Soc'y v.*

3   *Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citation omitted).

4        Consistent with *Overton Park*, the Ninth Circuit has repeatedly instructed that the "whole

5   record" includes "*everything* that was before the agency pertaining to the merits of its decision."

6   *Portland Audubon Soc'y*, 984 F.2d at 1548 (emphasis added); *see Thompson v. Dep't of Labor*, 885

7   F.2d 551, 555 (9th Cir. 1989) ("The whole administrative record . . . consists of all documents and

8   materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary

9   to the agency's position." (citations omitted) (emphasis in original)).  The whole record includes not

10  only those documents reviewed by the final agency decision-maker but also those reviewed by the

11  decision-maker's subordinates.  *See, e.g.*, *Nat. Res. Def. Council v. Gutierrez*, 2008 WL 11358008, at

12  *6 (N.D. Cal. Jan. 14, 2008) (rejecting the argument that "only those documents that reached [the

13  agency's] most senior administrators were in fact considered" as contrary to Ninth Circuit

14  "pronouncements that the record includes all documents directly or indirectly considered" (internal

15  quotations omitted)).  Moreover, "[m]aterials should not be excluded" from the administrative record

16  "simply because defendants did not 'rely' on them in arriving at the final decision." *Ctr. for Biological*

17  *Diversity v. U.S. Bureau of Land Mgmt.*, 2007 WL 3049869, at *4 (N.D. Cal. Oct. 18, 2007).

18       Drafts of documents and internal agency communications belong in the administrative record.

19  *See Ctr. for Food Safety v. Vilsack*, 2017 WL 1709318, at *4 (N.D. Cal. May 3, 2017) ("[C]ourts in

20  this district have uniformly concluded that internal agency communications and drafts are part of the

21  administrative record.").  So, too, do communications with third parties—including the White House

22  or other executive agencies—to the extent the agency considered such communications in arriving at

23  the challenged decisions.  *See, e.g.*, *Regents of Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 2017 WL

24  4642324, at *4–5 (N.D. Cal. Oct. 17, 2017).

25       Here, Defendants should be compelled to produce the full administrative record underlying the

26  Final Rule and its implementation through ATF's classification letters, as well as a privilege log.  We

27  address each in turn.

28

**A.   Defendants Must Complete the Administrative Record with All Materials ATF Considered When Issuing the Final Rule**

The Administrative Record underlying the Final Rule is facially incomplete. The Administrative Record, for instance, contains no drafts of the Final Rule or non-public communications with the White House or executive branch officials. But it "strains credulity to suggest" that ATF spent almost a year promulgating the Final Rule without circulating any drafts for comment, documenting internal meetings, or communicating with the White House, other law enforcement agencies, or ghost gun manufacturers and sellers (other than through the public notice-and-comment process). *Regents of Univ. of Cal.*, 2017 WL 4642324, at *4–5 (granting motion to compel completion of administrative record); *see also Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982) ("It is almost inconceivable that such fundamental documents—the very basis for federal decision-making—would not have been part of the administrative record."). Defendants must be compelled to produce this critical information.

Defendants have never asserted that the materials Plaintiffs identified do not exist or even that ATF attempted to locate them (apparently it did not). Instead, Defendants claim that these materials are "deliberative" in nature and that deliberative materials must be *per se* excluded from the Administrative Record. Not so.

"Deliberative material that was relied upon directly or indirectly is presumptively part of the administrative record." *Ramos*, 2018 WL 3109604, at *3. Courts in this District have resoundingly rejected Defendants' position that an agency may withhold deliberative materials from an administrative record. *See, e.g.*, *S.F. Bay Conservation & Dev. Comm'n v. U.S. Army Corps of Engineers*, 2018 WL 3846002, at *7 (N.D. Cal. Aug. 13, 2018) ("Allowing agencies discretion to determine which internal communications to include or withhold, without explanation or even bare assertion of privilege, would invite all manner of mischief."); *Sierra Club v. Zinke*, 2018 WL 3126401, at *2 (N.D. Cal. June 26, 2018) ("If agency decision-makers considered documents that could be characterized as decisional or deliberative materials, these should be included in the administrative record or noted in a privilege log."); *Regents of Univ. of Cal.*, 2017 WL 4642324, at *3 (ordering defendants to complete the record with "all emails, letters, memoranda, notes, media items, opinions and other materials" the agency considered); *People of State of Cal. ex rel. Lockyer v. U.S. Dep't of*

PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND FOR LEAVE TO CONDUCT LIMITED DISCOVERY – CASE NO. 3:20-CV-06761-EMC

8

1   *Agric.*, 2006 WL 708914, at *3 (N.D. Cal. Mar. 16, 2006) (holding that "the [administrative] record is

2   incomplete because it lacks internal and external agency documents relating to the decision-making

3   process"). For example, in *Institute for Fisheries Resources v. Burwell*, the court ordered the defendant

4   agency to complete the administrative record with "internal comments, draft reports inter- or intra-

5   agency emails, revisions, memoranda, or meeting notes," reasoning that such materials "obvious[ly]

6   would "inform an agency's final decision" and rejecting the agency's "overly narrow understanding of

7   the universe of materials that may need to be included in the administrative record." 2017 WL 89003,

8   at *1 (N.D. Cal. Jan. 10, 2017).

9        In fact, "[p]re-decisional deliberative communications may go to the heart of the question of

10   whether an agency action was arbitrary and capricious, an abuse of discretion or otherwise inconsistent

11   with the law under Section 706(2) of the APA." *Desert Survivors v. U.S. Dep't of the Interior*, 231 F.

12   Supp. 3d 368, 382 (N.D. Cal. 2017). For that reason, the Ninth Circuit routinely considers internal

13   documents—including agency emails, internal memoranda, and draft documents—when it reviews

14   agency decisions under the APA. *See, e.g.*, *Native Vill. of Point Hope v. Jewell*, 740 F.3d 489, 499–

15   502 (9th Cir. 2014) (relying heavily on "internal [agency] emails" and "draft scenario[s]" to find

16   agency's decision was arbitrary and capricious under the APA); *Earth Island Inst. v. Hogarth*, 494 F.3d

17   757, 768–69 (9th Cir. 2007) (citing agency internal memoranda in concluding that an agency's finding

18   was arbitrary and capricious); *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1096–97 (9th Cir.

19   2006) (relying on meeting minutes and comments in draft environmental impact statement to find that

20   agency action was contrary to law); *Reno-Sparks Indian Colony v. EPA*, 336 F.3d 899, 906 (9th Cir.

21   2003) (relying in part on an "internal agency memorandum" to uphold agency rule); *see also*

22   *Greenpeace v. Nat'l Marine Fisheries Serv.*, 55 F. Supp. 2d 1248, 1265 (W.D. Wash. 1999)

23   (considering both draft and final decision documents in evaluating whether agency action was arbitrary

24   and capricious).

25        Here, Defendants have confused the narrow and qualified deliberative process privilege with

26   the scope of the record it must produce. As the court explained in *Institute for Fisheries Resources*,

27   "the scope of [deliberative] privilege doesn't define the scope of the material directly or indirectly

28   considered." 2017 WL 89003, at *1. Even if "a privilege applies, the proper strategy isn't pretending

the protected material wasn't considered, but withholding or redacting the protected material and then logging the privilege." *Id.* Because ATF "applied the wrong standard in compiling the record," *Oceana, Inc. v. Pritzker*, 2017 WL 2670733, at *2 (N.D. Cal. June 21, 2017), the Court should order Defendants to complete the Administrative Record with all of the materials it considered in issuing the Final Rule, including internal memoranda, internal or external correspondence, and drafts of ATF's decisional documents, or to provide an adequate privilege log, *Inst. for Fisheries Res.*, 2017 WL 89003, at *1.[3]

### B. Defendants Must Complete the Administrative Record with All Materials ATF Considered in Connection with Classification Letters Applying the Final Rule

Although Defendants have agreed to produce ATF's classification letters applying the Final Rule, Defendants insist that those letters are not part of the Administrative Record and that the letters themselves *have* no administrative record. *See* Crain Ex. E. Defendants have therefore refused to produce any materials ATF considered when issuing the classification letters, including correspondence or documents submitted in connection with the request for classification. The Court should compel Defendants to produce these materials as part of the Administrative Record. As Defendants have conceded in this case, each classification letter is a "final agency action" subject to judicial review under the APA. *See* ECF No. 29 at 14 (acknowledging that "[c]ourts have generally held that 'ATF's issuance of a classification letter is a "final agency action" that is reviewable under the Administrative Procedure Act'" (citations omitted)); *see also Sig Sauer Inc. v. Brandon*, 826 F.3d 598, 600 n.1 (1st Cir. 2016) (holding that ATF classification letters are final agency actions because classification letters are a "definitive statement of the agency's position and ha[ve] a direct and immediate effect on the day-to-day business" of the affected parties (cleaned up)); *Innovator Enterprises, Inc. v. Jones*, 28 F. Supp. 3d 14, 21–22 (D.D.C. 2014) (reviewing ATF classification letters as final agency actions). ATF must therefore produce the whole record underlying those decisions.

Defendants do not disagree that each classification letter is an agency action subject to judicial review. Instead, they appear to claim that Plaintiffs do not seek any judicial review of the letters at all.

---

[3] Even if certain materials are subject to the deliberative process privilege, that privilege would not apply to the extent documents reflect factual, technical, and scientific material or data that the agency considered. *See F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).

1    That is wrong.  Plaintiffs' First Amended Complaint broadly challenges "ATF's determinations that

2    80 percent receivers [and frames] are *not* firearms."  FAC ¶ 13; *see also* FAC ¶¶ 14–15, 140, 142,

3    Prayer for Relief at (a)–(f).  Those determinations include ATF's classification letters.  Because

4    Plaintiffs are challenging the classification letters as final agency actions, the APA requires Defendants

5    to produce the "whole record" of its decision-making for each classification letter.  5 U.S.C. § 706.

6         Defendants' attempt to resist production of the materials underlying each classification letter

7    also conflicts with their prior positions in this case.  During the September 20, 2022 hearing before this

8    Court, Defendants specifically argued that this case should be stayed to allow "ATF to actually issue

9    [classification] decisions and . . . set forth the new rule for it to become clear how the new rule is going

10   to be applied."  Sept. 20, 2022 Hearing Tr. at 5:17–20.  They explained that classification letters

11   represent "something concrete from ATF in . . . a very specific context to point to to say, you know,

12   'See, ATF is classifying X product as – not a firearm and not a frame or receiver.'"  *Id.* at 9:10–16.

13   The Court properly rejected that argument in the context of denying Defendants' request for further

14   delay in this proceeding, but the point stands:  ATF has now issued dozens of classification letters

15   implementing the Final Rule, and Plaintiffs have sought judicial review of those determinations.  As

16   Defendants argued to this Court, the Final Rule "did not mark the end of the agency's decision-making

17   process" because ATF continues to interpret and apply the Final Rule through the classification letters

18   it has issued (and will continue to issue) to industry members.  *Ctr. for Biological Diversity v.*

19   *Provencio*, 2014 WL 12770402, at *1 (D. Ariz. Aug. 11, 2014) (finding that documents applying

20   agency guidelines were part of the administrative record because the agency's decision-making process

21   was ongoing).  The Court should therefore order Defendants to complete the Administrative Record

22   with all of the materials ATF considered in connection with classification letters implementing the

23   Final Rule.

24        **C.    Defendants Must Produce a Privilege Log**

25        A party who seeks to withhold documents based on privilege bears the burden of making "a

26   specific showing establishing the application of a privilege for each document that it contends that it

27   may withhold based on privilege."  *People of State of Cal. ex rel. Lockyer*, 2006 WL 708914, at *4.

28   The deliberative process privilege is narrow:  Only materials that "would expose an agency's decision-

1    making process in such a way as to discourage candid discussion within the agency and thereby

2    undermine the agency's ability to perform its functions" may be withheld.  *Carter v. U.S. Dep't of*

3    *Commerce*, 307 F.3d 1084, 1090 (9th Cir. 2002) (quotation marks omitted).  "The deliberative process

4    privilege is [also] qualified, and courts may order discovery even if the government meets its burdens

5    of showing the document is pre-decisional and deliberative."  *Cal. Native Plant Soc'y v. EPA*, 251

6    F.R.D. 408, 415 (N.D. Cal. 2008).

7         Because Defendants bear the burden of establishing that a privilege applies, they must reveal

8    through a detailed log any documents they have excluded from the Administrative Record.  *See Ctr.*

9    *for Food Safety*, 2017 WL 1709318, at *5; *Inst. for Fisheries Res.*, 2017 WL 89003, at *1.  Absent

10   such a log, neither Plaintiffs nor the Court can evaluate whether the materials that Defendants have

11   deemed "deliberative" are actually subject to that narrow privilege.  The Court should order Defendants

12   to produce promptly a privilege log that provides an adequate description of any withheld material and

13   the basis for withholding it.

14   **II.    The Court Should Grant Plaintiffs Leave to Serve Their Targeted Discovery Requests**

15        Plaintiffs should be permitted to serve their contemplated discovery requests on Defendants and

16   on a small set of third-party manufacturers and sellers.  Plaintiffs have proposed to serve just six

17   requests on Defendants—four of which the parties have resolved and the remainder of which may be

18   fully or partially mooted should the Court direct Defendants to fully complete the Administrative

19   Record.  *See supra* Section I.  Plaintiffs have also proposed to serve a targeted set of six third-party

20   document requests that are limited to the time period just before the Final Rule was issued to the

21   present.   Plaintiffs' requests seek evidence necessary to (i) "determine whether the agency has

22   considered all relevant factors or has explained its course of conduct or grounds of decision," *Ctr. for*

23   *Biological Diversity v. Salazar*, 2010 WL 11575282, at *2 (N.D. Cal. Sept. 27, 2010) (internal

24   quotation marks and alteration omitted); and (ii) prove that Plaintiffs have standing.  Such discovery is

25   entirely appropriate and should be allowed.

26

27

28

A.     **Plaintiffs Are Entitled to Discovery Related to Their Theory that ATF Failed to Consider Relevant Factors**

The Ninth Circuit has recognized at least four circumstances in which "extra-record documents" are necessary to help fill gaps in an administrative record and "may ultimately be considered by a court" to determine whether an agency has violated the APA. *Tribe v. Bureau of Land Mgmt.*, 2022 WL 1778525, at *3–5 (E.D. Cal. June 2, 2022) (citing *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). As relevant here, a court may inquire outside the administrative record "to determine whether the agency has considered all relevant factors or has explained its course of conduct or grounds of decision." *Ctr. for Biological Diversity*, 2010 WL 11575282, at *2 (alteration omitted) (quoting *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), *amended*, 867 F.2d 1244 (9th Cir. 1989)).[4] Because "[i]t will often be impossible . . . for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not," *Asbestos Disease Awareness Org. v. Wheeler*, 508 F. Supp. 3d 707, 733 (N.D. Cal. 2020) (Chen, J.) (internal quotation marks and citation omitted), courts in this Circuit have granted plaintiffs leave to take discovery outside the administrative record to prove that the agency failed to consider all relevant factors, *see, e.g.*, *J.L. v. Cissna*, 2019 WL 2223803, at *2–3 (N.D. Cal. May 22, 2019); *Sequoia ForestKeeper v. Benson*, 108 F. Supp. 3d 917, 922 (E.D. Cal. 2015); *Audubon Soc'y of Portland v. U.S. Army Corps of Eng'rs,* 2015 WL 13649299, at *4 (D. Or. May 5, 2015).

One of Plaintiffs' primary theories in this case is that ATF failed to consider relevant and important factors when making its ghost gun determinations. *See, e.g.*, FAC ¶¶ 150–52, 154. Plaintiffs allege that ATF is aware of the dangers and proliferation of ghost guns, *see* FAC ¶ 12; *see also* Defendants' Answer, ECF No. 138 at ¶¶ 11, 37, 60, yet it failed to consider the ways in which the Final Rule fails to close the loophole and allows ATF to make arbitrary distinctions between functionally identical ghost gun products, *see* FAC ¶¶ 150–51.

---

[4] Courts may also consider extra-record evidence when the agency has relied on documents not in the record; when supplementing the record is necessary to explain technical terms or complex subject matter; or when plaintiffs make a showing of agency bad faith. *Lands Council*, 395 F.3d at 1030.

PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND FOR LEAVE TO CONDUCT LIMITED DISCOVERY – CASE NO. 3:20-CV-06761-EMC

13

Plaintiffs' targeted document requests to Defendants seek evidence to prove this legal theory. For example, Plaintiffs seek from Defendants communications between ATF and third parties that are related to the Final Rule or other ghost gun determinations.  Crain Ex. A at RFP 3.  Plaintiffs also seek from Defendants communications between ATF and parties who requested a classification letter under the Final Rule (to the extent the Court decides those communications need not be produced as part of the Administrative Record).  *See id.* at RFP 2.  The requested documents go to Plaintiffs' theory that the Final Rule contains a loophole and/or that ATF is arbitrarily failing to classify certain ghost gun products as firearms under the Final Rule based on distinctions without difference.

Plaintiffs' document requests to third-party ghost gun manufacturers, dealers, and distributors similarly seek evidence to support Plaintiffs' theory that ATF ignored relevant factors.  Plaintiffs seek communications between third parties and ATF related to the Final Rule or other ghost gun determinations; documents relating to third parties' interpretation of the Final Rule and any communications third parties have had with one another related to the Final Rule or other ghost gun determinations; documents reflecting the ease with which a person can assemble a ghost gun from a nearly complete frame or receiver; and documents and communications regarding whether third parties believe their products are firearms under the Final Rule.  Crain Ex. B at RFPs 1, 3–4, 6.  The ghost gun industry's communications about and reactions to the Final Rule could support Plaintiffs' theory that there is an unlawful and arbitrary loophole in the Final Rule.  Such evidence could show that ATF failed to consider how easy it would be for third parties to circumvent the Final Rule and how easy it is for customers to convert ghost gun products into fully functional firearms notwithstanding the Final Rule.  *See* FAC ¶¶ 98–99.

In sum, leave should be granted for Plaintiffs to serve their targeted discovery requests on Defendants and/or third parties so that Plaintiffs can prosecute this crucial theory of their case.  *See Bair v. Cal. State Dep't of Transp.*, 867 F. Supp. 2d 1058, 1067 (N.D. Cal. 2012) (considering extra-record evidence "relevant to determine whether [defendants] considered all relevant factors").[5]

---

[5] To the extent the Court decides that a subset of these materials should be produced as part of the Administrative Record, *see supra* Section I, Plaintiffs may be able to further narrow their party and non-party discovery requests.

### B.   Plaintiffs Are Entitled to Discovery to Prove Their Standing

Plaintiffs are separately entitled to take discovery to prove that they have standing.  Because standing is an "indispensable part of [a] plaintiff's case," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), the Ninth Circuit permits jurisdictional discovery and consideration of extra-record evidence relevant to standing even in cases brought under the APA, *see Nw. Env't Advocs. v. U.S. Dep't of Com.*, 2019 WL 110985, at *1–2 (W.D. Wash. Jan. 4, 2019) (explaining that "extra-record evidence may be appropriate to establish a party's standing to bring a lawsuit" even "in [administrative] record review cases," and granting plaintiffs "leave to take discovery into the issue of standing" (citing *Nw. Env't Def. Ctr. v. Bonneville Power Admin.*, 117 F.3d 1520, 1527–28 (9th Cir. 1997))); *cf. Env't Protection Info. Ctr. v. Blackwell*, 389 F. Supp. 2d 1174, 1220–21 (N.D. Cal. 2004) (holding that plaintiff was entitled to introduce extra-record evidence "regarding standing" in APA action).  In other words, there is no limitation on or general presumption against *jurisdictional* discovery in APA cases.  *See Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 282 F.3d 818 (D.C. Cir. 2002), *vacated in part sub nom. on other grounds*, *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) (explaining that plaintiffs challenging agency action "are not confined to the administrative record" with respect to standing).

As the Court explained in its February 9, 2023 Order, Plaintiffs' standing in this case ultimately depends on the "size of the loophole" created by the Final Rule and the "predictable effects of [the Final Rule] on third parties."  *See* ECF No. 135 at 10–13.  Plaintiffs have drafted narrowly tailored discovery requests to obtain that jurisdictional evidence.  From third parties, for example, Plaintiffs seek data regarding revenue generated by the sale of ghost gun products.  Crain Ex. B at RFP 2.  That data—which would be in the exclusive possession of third parties[6]—could show that revenue from ghost gun products has remained consistent since the Final Rule and, accordingly, that the Final Rule has not addressed the "ghost gun epidemic" and that ATF has thus caused Plaintiffs' injuries.  FAC ¶¶ 12, 110–25, 135–37.  Plaintiffs also seek from third parties documents and communications

---

[6] Defendants have represented that they do not maintain statistics or data sufficient to calculate the number of ghost gun products manufactured and sold or the number of injuries and fatalities caused by ghost guns in the United States.  *See* Crain Ex. F at 4.

PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND FOR LEAVE TO CONDUCT LIMITED DISCOVERY – CASE NO. 3:20-CV-06761-EMC

15

1   concerning the use of ghost gun products in acts of violence.  Crain Ex. B at RFP 5.  Any such records

2   would substantiate Plaintiffs' allegations that the those products have caused their alleged injuries.  *See*

3   FAC ¶¶ 39–60.

4                                **CONCLUSION**

5           This Court should grant Plaintiffs' motion in full and require Defendants to complete the

6   Administrative Record and grant Plaintiffs leave to serve their contemplated party and non-party

7   discovery requests.

8

9   *Dated*: June 8, 2023                        */s/   Scott A. Edelman*

10                                           GIBSON, DUNN & CRUTCHER LLP
                                             SCOTT A. EDELMAN
11                                           sedelman@gibsondunn.com
                                             2029 Century Park East
12                                           Los Angeles, CA  90067-3026
                                             Telephone: (310) 552-8500
13                                           Facsimile: (310) 551-8741

14

15                                           LEE R. CRAIN, *pro hac vice*
                                             LIESEL SCHAPIRA, *pro hac vice*
16                                           ERICA PAYNE, *pro hac vice*
                                             200 Park Avenue
17                                           New York, NY  10166-0193
                                             Telephone: (212) 351-4000
18                                           Facsimile: (212) 351-4035

19

20                                           PAUL HASTINGS LLP
                                             AVI WEITZMAN, *pro hac vice*
21                                           aviweitzman@paulhastings.com
                                             200 Park Avenue
22                                           New York, NY 10166
                                             Telephone: (212) 318-6000
23                                           Facsimile: (212) 752-3620

24

25

26

27

28

GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
DAVID M. PUCINO, *pro hac vice*
223 West 38th St. # 90
New York, NY 10018
Telephone: (917) 680-3473

*Attorneys for Giffords Law Center to Prevent Gun Violence*

*Dated:* June 8, 2023                          */s/   S. Clinton Woods*

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
R. MATTHEW WISE, SBN 238485
Supervising Deputy Attorney General
S. CLINTON WOODS
Deputy Attorney General
1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone:  (916) 210-6046
Facsimile:  (916) 324-8835

*Attorneys for Plaintiff State of California, by and through Attorney General Rob Bonta*

1

2

**SIGNATURE ATTESTATION**

3

Pursuant to Local Rule 5-1(i), I hereby attest that concurrence in the filing of the document has been obtained from each of the other Signatories.

4

5

*Dated*: June 8, 2023

6

/s/   *Scott A. Edelman*
Scott. A. Edelman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28