BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

DANIEL RIESS (Texas Bar No. 24037359)
TAISA M. GOODNATURE (New York Bar No. 5859137)
JEREMY S.B. NEWMAN (Massachusetts Bar No. 688968)
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW, Room 12504
Washington, DC 20005
Telephone: (202) 532-3114
FAX: (202) 616-8460
jeremy.s.newman@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.* <br> Plaintiffs, <br> v. <br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS, and EXPLOSIVES ("ATF"), *et al.*, <br> Defendants. | Case No. 3:20-cv-06761-EMC <br><br> **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL COMPLETION OF THE ADMINISTRATIVE RECORD AND FOR LEAVE TO CONDUCT LIMITED DISCOVERY** <br><br> Action Filed: September 29, 2020 <br> Hearing: July 13, 2023 at 1:30 p.m. <br> Hon. Edward M. Chen |

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................... 1

II.  BACKGROUND ...................................................................................................................... 3

III. ARGUMENT ............................................................................................................................ 4

    A.   Plaintiffs Have Not Met Their Burden To Overcome The Presumption Of Completeness Of The Administrative Record. ............................................................................................................ 4

        1.   Defendants Properly Excluded Predecisional, Deliberative Materials From The Administrative Record. ........................................................................................... 4

        2.   Plaintiffs Are Incorrect That Defendants Must Produce An Administrative Record For Each Classification Letter Applying The Final Rule ..................................... 8

    B.   Plaintiffs Are Not Entitled To Discovery Beyond The Administrative Record. ...................... 10

        1.   Plaintiffs Fail To Demonstrate Applicability Of Any Of The Narrow Exceptions To The General Rule Against Discovery In APA Cases. ............................ 10

        2.   No Additional Discovery Related To Standing Is Warranted. ........................................ 14

CONCLUSION ................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Animal Def. Council v. Hodel*,
  840 F.2d 1432 (9th Cir. 1988) .................................................................................. 2, 10, 11

*ASSE Int'l, Inc. v. Kerry*,
  No. SACV1400534CJCJPRX, 2018 WL 3326687 (C.D. Cal. Jan. 3, 2018) ..................... 6, 7

*Blue Mountains Biodiversity Project v. Jefferies*,
  No. 2:20-CV-02158-SU, 2021 WL 3683879 (D. Or. Aug. 19, 2021) .............................. 6, 7

*Blue Ocean Inst. v. Gutierrez*,
  503 F. Supp. 2d 366 (D.D.C. 2007) ..................................................................................... 7

*Bruce v. Azar*,
  826 F. App'x 643 (9th Cir. 2020) ..................................................................................... 4, 5

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*,
  889 F.3d 584 (9th Cir. 2018) ............................................................................................... 8

*California v. U.S. Dep't of Lab.*,
  No. 2:13-CV-02069-KJM, 2014 WL 1665290 (E.D. Cal. Apr. 24, 2014) ........................... 7

*Camp v. Pitts*,
  411 U.S. 138 (1973) .......................................................................................................... 10

*Camreta v. Greene*,
  563 U.S. 692 (2011) ............................................................................................................ 8

*Cascadia Wildlands v. Bureau of Land Mgmt.*,
  No. 6:12-CV-01739-AA, 2013 WL 1900632 (D. Or. May 4, 2013) .................................. 13

*Citizens to Preserve Overton Park v. Volpe*,
  401 U.S. 402 (1971) ............................................................................................................ 5

*Dist. Hosp. Partners, L.P. v. Sebelius*,
  971 F. Supp. 2d 15 (D.D.C. 2013) ....................................................................................... 7

*Donjon-SMIT, LLC v. Schultz*,
  No. 2:20-CV-011, 2020 WL 1666073 (S.D. Ga. Apr. 3, 2020) ........................................... 7

*Friends of Animals v. U.S. Fish & Wildlife Serv.*,
  No. 4:18-CV-00053-DN-PK, 2019 WL 8137578 (D. Utah Dec. 27, 2019) ........................ 7

*Friends of the Earth v. Hintz*,
  800 F.2d 822 (9th Cir. 1986) ............................................................................................. 11

*Grand Canyon Tr. v. Williams*,
   No. CV13-8045 PCT DGC, 2013 WL 6577376 (D. Ariz. Dec. 16, 2013) .................................. 11, 13

*In re Clean Water Act Rulemaking*,
   No. C 20-04636 WHA, 2020 WL 6686370 (N.D. Cal. Nov. 12, 2020) ............................................. 7

*In re Delta Smelt Consol. Cases*,
   No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946 (E.D. Cal. June 21, 2010) .............................. 11

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
   156 F.3d 1279 (D.C. Cir. 1998) .................................................................................................... 5, 6

*In re United States Dep't of Def. & United States Env't Prot. Agency Final Rule: Clean Water Rule: Definition of "Waters of the United States,"*
   No. 15-3751, 2016 WL 5845712 (6th Cir. Oct. 4, 2016) .............................................................. 6, 7

*In re United States*,
   875 F.3d 1200 (9th Cir. 2017), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 443
   (2017) ................................................................................................................................................ 4

*Lands Council v. Powell*,
   395 F.3d 1019 (9th Cir. 2005) ..................................................................................................... 2, 10

*Nathanson v. Polycom, Inc.*,
   No. 13-3476, 2015 WL 12964727 (N.D. Cal. Apr. 16, 2015) ......................................................... 14

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975) ........................................................................................................................... 6

*Oceana, Inc. v. Ross*,
   920 F.3d 855 (D.C. Cir. 2019) ...................................................................................................... 5, 6

*Pinnacle Armor, Inc. v. United States*,
   923 F. Supp. 2d 1226 (E.D. Cal. 2013) ................................................................................. 8, 11, 13

*S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, Charleston Dist.*,
   611 F. Supp. 3d 136 (D.S.C. 2020) ................................................................................................... 7

*San Luis & Delta-Mendota Water Auth. v. Locke*,
   776 F.3d 971 (9th Cir. 2014) ..................................................................................................... 10, 13

*San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*,
   789 F.2d 26 (D.C. Cir. 1986) ........................................................................................................ 5, 6

*Save the Colorado v. U.S. Dep't of the Interior*,
   517 F. Supp. 3d 890 (D. Ariz. 2021) .............................................................................................. 6, 7

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) ............................................................................................................................. 5

*Sierra Club v. U.S. Fish & Wildlife Serv.*,
   No. 2:20-CV-13-SPC-NPM, 2021 WL 4478329 (M.D. Fla. Sept. 30, 2021) ................................. 6, 7

*Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*,
   100 F.3d 1443 (9th Cir. 1996) .......................................................................................10, 11, 13

*Tafas v. Dudas*,
   530 F. Supp. 2d 786 (E.D. Va. 2008) ........................................................................................ 6, 7

*Thompson v. U.S. Dep't of Labor*,
   885 F.2d 551 (9th Cir. 1989) ........................................................................................................ 8

*Tri-Valley CAREs v. U.S. Dep't of Energy*,
   671 F.3d 1113 (9th Cir. 2012) ...................................................................................................... 8

*United States v. Romm*,
   455 F.3d 990 (9th Cir. 2006) ...................................................................................................... 14

*Univ. of Washington v. Sebelius*,
   No. C11-625RSM, 2011 WL 6447806 (W.D. Wash. Dec. 22, 2011) ........................................ 10

*Valentini v. Shinseki*,
   No. 11-cv-04846, 2013 WL 12120074 (C.D. Cal. Jan. 22, 2013) ................................................ 8

*Wilderness Watch, Inc. v. Bureau of Land Mgmt.*,
   No. 209CV00302KJDGWF, 2010 WL 11579044 (D. Nev. May 11, 2010) ................................ 8

*Williamson v. Google LLC*,
   No. 15-cv-00966-BLF, 2018 WL 11414626 (N.D. Cal. Apr. 10, 2018) .................................... 14

*Yellowstone to Uintas Connection v. Bolling*,
   No. 4:20-CV-00192-DCN, 2021 WL 5702158 (D. Idaho Dec. 1, 2021) ................................. 6, 7

**Rules**

Fed. R. Civ. P. 5(a)(1)(C) ..................................................................................................................... 4

Fed. R. Civ. P. 8(a)(2) .......................................................................................................................... 9

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 6, 14

Fed. R. Civ. P. 26(b)(5) ........................................................................................................................ 6

**Regulations**

*Definition of "Frame or Receiver" and Identification of Firearms*,
   87 Fed. Reg. 24,652 (Apr. 26, 2022) ................................................................................... *passim*

I. **INTRODUCTION**

The Court should deny Plaintiffs' Motion to Compel Completion of the Administrative Record and for Leave to Conduct Limited Discovery, ECF No. 151 ("Motion" or "Mot."). Defendants produced a voluminous certified administrative record consisting of over 72,000 pages, the same administrative record that was accepted as complete in two other lawsuits challenging the Final Rule at issue in this case. Plaintiffs have not overcome the presumption that the administrative record is complete, nor have they shown that they qualify for any of the narrow exceptions to the general rule that discovery beyond the administrative record is not permitted in Administrative Procedure Act ("APA") cases.

In this action, Plaintiffs challenge a Final Rule issued last year by the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") that, among other things, defines the terms "frame" and "receiver," which in turn are defined by the Gun Control Act ("GCA") as "firearms" subject to federal regulation. *See* Final Rule, *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652 (Apr. 26, 2022). Plaintiffs argued in the Amended Complaint and motion to dismiss briefing that the Final Rule was unlawful because it purportedly contained a rule that so-called "80 percent" frames and receivers were not firearms regulated by the GCA so long as they were sold on a "standalone" basis, without jigs, templates, or other supporting materials.[1] In their briefing and oral argument on their motion to dismiss, Defendants explained that Plaintiffs had misinterpreted the Final Rule. *See* Reply in Support of Motion to Dismiss 3-5, ECF No. 130. The Final Rule provided that "partially complete" frames or receivers are firearms regulated by the GCA if they are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver[.]" 87 Fed. Reg. at 24,739; *see also id.* at 24,735 (definition of "readily"). In the months since the Final Rule went into effect, Defendants have issued dozens of letters classifying standalone partially complete frames and receivers, and roughly half of those letters have concluded that the product at issue is a firearm.

In their Motion, Plaintiffs argue both that the administrative record produced by Defendants is incomplete and that they should be permitted to seek discovery beyond the administrative record. Neither

---

[1] *See* Opposition to Motion to Dismiss 11, ECF No. 129 ("the Final Rule provides . . . that 80 percent frames and receivers sold *without* a template, jig, parts kit, or other materials are not firearms")); First Am. Compl. ¶ 90, ECF No. 122 ("Am. Compl.") (Final Rule "states that 80 percent receivers and frames are ***not firearms*** under the GCA if they are sold *without* a template, jig, or other items and materials").

argument is correct. As to Plaintiffs' argument that the administrative record for the Final Rule is incomplete, the dispute boils down to whether, as Plaintiffs contend, predecisional, deliberative materials are part of the administrative record that must either be produced or logged in a privilege log. Defendants acknowledge that courts in this district have generally accepted Plaintiffs' view. However, Defendants respectfully submit that cases in other jurisdictions (including the D.C. Circuit and other district courts within this circuit) are more persuasive, which hold that predecisional, deliberative materials are not part of the administrative record and need not be logged. These decisions are correct because administrative action is judged based on the agency's stated justifications rather than internal mental processes, making predecisional deliberations immaterial as a matter of law.

Plaintiffs also argue that Defendants must produce a full administrative record for each classification letter ATF has issued since the Final Rule went into effect. This argument fails because the Amended Complaint does not challenge those letters. To the extent the Amended Complaint did challenge agency actions other than the Final Rule, the Court dismissed such challenges as unripe.

Plaintiffs separately argue that they should be permitted to take extra-record discovery from Defendants and third parties. This argument runs headlong into the "general rule that courts reviewing an agency decision are limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005). Plaintiffs accordingly attempt to qualify for one of the narrow exceptions to this rule recognized by the Ninth Circuit, permitting discovery "to determin[e] whether the agency has considered all relevant factors or has explained its course of conduct or grounds of decision." *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988). But this exception is narrow and applies only where an agency has entirely failed to consider a relevant subject matter. Here, the Final Rule and administrative record show that ATF considered in exhaustive detail the public safety issues concerning privately made firearms and the various options for determining when a partially complete frame or receiver becomes a firearm. Plaintiffs also seek discovery from third parties relating to standing, but such discovery is unnecessary and disproportionate given the extensive information relevant to standing that Defendants have already produced.

## II. BACKGROUND

On April 26, 2022, ATF promulgated the Final Rule that Plaintiffs challenge in this action. 87 Fed. Reg. 24,652. The Final Rule took effect on August 24, 2022. *Id.* at 24,652. On October 20, 2022, Plaintiffs filed the operative First Amended Complaint in this action. *See generally* Am. Compl. The Amended Complaint contained two counts under the Administrative Procedure Act: one challenging agency actions as "not in accordance with law," Am. Compl. ¶¶ 139-146, and another challenging agency actions as "arbitrary and capricious," *id.* ¶¶ 147-155. Each count was broken down into challenges to the "Final Rule," *id.* ¶¶ 143, 150-152, and challenges to a set of other actions (including certain classification letters), but the other actions were challenged only "[i]n the alternative, and to the extent the Final Rule is vacated, altered, or amended at any point," *id.* ¶ 144; *accord id.* ¶ 153 (challenging other actions "[a]lternatively, should the Final Rule be vacated, altered, or amended at any point[]"). This Court described Plaintiffs' challenges to agency actions other than the Final Rule as their "alternative claim." Order Granting in Part & Denying in Part Defs.' Mot. to Dismiss 28, ECF No. 135 ("MTD Order").

Defendants filed a motion to dismiss, arguing that Plaintiffs lacked standing and that their challenge to actions other than the Final Rule were unripe. Defs.' Mot. to Dismiss Am. Compl., ECF No. 125. The Court granted the motion in part and denied it in part. *See generally* MTD Order. The Court held that Plaintiffs California and Giffords had alleged standing to challenge the Final Rule but that the individual Plaintiffs had not. *See id.* at 6-28. The Court also dismissed Plaintiffs' "alternative claim" as unripe. *Id.* at 28-30.

On April 18, 2023, Defendants served the certified administrative record on Plaintiffs. The administrative record was more than 72,000 pages long. It contained the materials that ATF directly or indirectly considered in issuing the Final Rule, but it did not contain predecisional, deliberative materials, consistent with Defendants' legal view that such materials are not part of the administrative record. *See infra*, Part III.A.1. Defendants have previously served the same administrative record in two other lawsuits challenging the Final Rule. *See VanDerStok v. Garland*, No. 4:22-cv-691 (N.D. Tex.); *Division 80 LLC v. Garland*, No. 3:22-cv-148 (S.D. Tex.). In neither case did any party take issue with the completeness of that administrative record.

Before and after Defendants served the administrative record, counsel for Plaintiffs and

Defendants engaged in an iterative process of meeting and conferring, by telephone and email, about the completeness of the administrative record and the potential for extra-record discovery. During this process, Plaintiffs' counsel emailed to Defendants' counsel a document titled Plaintiffs' First Requests to Defendants for Production of Documents, *see* Mot. Ex. A, ECF No. 151-2, but Plaintiffs did not serve these requests on Defendants in accordance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5(a)(1)(C); 34(a). The parties came to agreement on four of Plaintiffs' six requests. Regarding Request No. 1, seeking "All Classification Letters issued by ATF since the Final Rule took effect," Defendants produced these letters and agreed to produce any such additional letters issued up to 30 days before summary judgment briefing begins. Regarding Requests Nos. 4-6, which sought statistical information regarding ghost guns, Defendants produced data maintained by ATF concerning suspected privately made firearms recovered by law enforcement.[2] In producing these materials, Defendants did not waive and expressly preserved their arguments that Plaintiffs are not legally entitled to extra-record discovery in this action. Plaintiffs also sent Defendants a set of document requests that they intend to serve on third parties, Mot. Ex. B, ECF No. 151-3, but Plaintiffs have not revealed the identities of those third parties.

### III.  ARGUMENT

#### A. Plaintiffs Have Not Met Their Burden To Overcome The Presumption Of Completeness Of The Administrative Record.

Where, as here, an agency produces a certified administrative record, "[t]he administrative record is presumed to be complete," and a party seeking to rebut this presumption must "present 'clear evidence to the contrary.'" *Bruce v. Azar*, 826 F. App'x 643, 645 (9th Cir. 2020) (quoting *In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017), *cert. granted, judgment vacated on other grounds*, 138 S. Ct. 443 (2017)). For the reasons explained below, Plaintiffs have failed to overcome this presumption.

##### 1. Defendants Properly Excluded Predecisional, Deliberative Materials From The Administrative Record.

Plaintiffs' contention that the administrative record for the Final Rule is incomplete focuses almost entirely on predecisional, deliberative materials. Specifically, Plaintiffs seek "drafts of the Final Rule," documentation of "internal meetings," predecisional communications between government officials, and

---

[2] This data was an update and more detailed breakdown of data reported in the Final Rule's preamble. *See* 87 Fed. Reg. at 24,656.

"internal memoranda." Mot. 8, 10.[3]  As numerous courts have held, "predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record." *Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) (quotations omitted).  Consistent with that authority, Defendants did not produce predecisional, deliberative materials on the basis that they are protected by the deliberative process privilege and not part of the administrative record.[4]  Plaintiffs present the opposing view that deliberative materials are part of the administrative record, and if withheld, must be recorded on a privilege log. Mot. 8-12.  Although the case law on this issue is split, Defendants' view is more consistent with the structure of judicial review of administrative action and the better-reasoned case law.

It is well established that judicial review of agency action is based on the agency's stated justifications for the action. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943) (agency action judged on "the grounds upon which the agency acted in exercising its powers"); *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1279 (D.C. Cir. 1998) ("When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its stated reasons.").  Therefore, "there must be a strong showing of bad faith or improper behavior before [inquiry into the mental processes of the administrative decisionmaker] may be made." *San Luis Obispo Mothers for Peace v. U.S. Nuclear Regul. Comm'n*, 789 F.2d 26, 44 (D.C. Cir. 1986) (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420 (1971)).  Absent a "showing of bad faith or improper behavior," the "actual subjective motivation of agency decisionmakers is

---

[3] Without elaboration, Plaintiffs suggest that Defendants may have omitted from the administrative record communications with "ghost gun manufacturers and sellers" that ATF considered in issuing the Final Rule. Mot. 8.  Not so.  The administrative record includes notes from a March 2021 meeting between ATF and industry representatives, ATF000803-809, and two emails setting up that meeting, ATF000796; ATF000802.  Beyond that event, manufacturers and sellers shared their views by submitting public comments, which are incorporated into the administrative record, *see* ATF002688 (linking to the website where the hundreds of thousands of comments can be viewed and incorporating them into the administrative record), and ATF responded to significant comments in the Final Rule itself, *see generally* 87 Fed. Reg. at 24,674-24,727 (responding to comments in opposition to the Final Rule, some of which were submitted by participants in and representatives of the firearms industry).  Putting aside the parties' legal dispute concerning predecisional, deliberative materials, Plaintiffs have not "present[ed] clear evidence," *Bruce*, 826 F. App'x at 645 (quotation omitted), that Defendants excluded any materials considered in issuing the Final Rule.

[4] Some such materials may also be protected by attorney-client privilege or the attorney work product doctrine.

immaterial as a matter of law[.]" *In re Subpoena*, 156 F.3d at 1279-80. "Because predecisional documents are 'immaterial,' they are not 'discoverable.'" *Oceana*, 920 F.3d at 865 (quoting Fed. R. Civ. P. 26(b)(1)).

The exclusion of deliberative materials from the administrative record furthers the purpose of the deliberative process privilege, to protect the quality of agency decisionmaking. *San Luis Obispo Mothers for Peace*, 789 F.2d at 45 ("Were courts regularly to review the transcripts of agency deliberative proceedings, the discussions would be conducted with judicial scrutiny in mind. Such agency proceedings would then be useless both to the agency and to the courts.").[5] "[S]ince predecisional documents are irrelevant and therefore not 'otherwise discoverable,' they are not required to be placed on a privilege log." *Oceana*, 920 F.3d at 865 (quoting Fed. R. Civ. P. 26(b)(5)). Indeed, "[i]n practical terms, a privilege log can serve as a revealing window into an agency's deliberative process," and "[f]orcing an agency to divulge" the information typically contained in a privilege log "would likely invade, rather than protect, the integrity of [an agency's decision-making] process." *Sierra Club v. U.S. Fish & Wildlife Serv.*, No. 2:20-CV-13-SPC-NPM, 2021 WL 4478329, at *5 (M.D. Fla. Sept. 30, 2021), *objections overruled*, No. 2:20-CV-13-SPC-NPM, 2021 WL 5634131 (M.D. Fla. Dec. 1, 2021).

The D.C. Circuit recently squarely held that predecisional, deliberative materials are "not part of the administrative record" and "do not need to be logged" on a privilege log, drawing on a long line of earlier case law from the D.C. Circuit. *Oceana*, 920 F.3d at 865. As district courts within this circuit have recognized, "[m]any courts look to D.C. Circuit case law in APA review cases, as the majority of such disputes occur in that circuit." *ASSE Int'l, Inc. v. Kerry*, No. SACV1400534CJCJPRX, 2018 WL 3326687, at *2 (C.D. Cal. Jan. 3, 2018); *accord Save the Colorado v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 897 (D. Ariz. 2021); *Yellowstone to Uintas Connection v. Bolling*, No. 4:20-CV-00192-DCN, 2021 WL 5702158, at *6 (D. Idaho Dec. 1, 2021); *Blue Mountains Biodiversity Project v. Jefferies*,

---

[5] *See also, e.g.*, *In re United States Dep't of Def. & United States Env't Prot. Agency Final Rule: Clean Water Rule: Definition of "Waters of the United States,"* No. 15-3751, 2016 WL 5845712, at *2 (6th Cir. Oct. 4, 2016) ("Deliberative process materials are generally exempted from inclusion in the record in order to protect the quality of agency decisions by ensuring open and candid communications."); *Tafas v. Dudas*, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) ("excluding deliberative materials 'prevent[s] injury to the quality of agency decisions' by encouraging uninhibited and frank discussion of legal and policy matters") (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150-52 (1975)).

No. 2:20-CV-02158-SU, 2021 WL 3683879, at *4 (D. Or. Aug. 19, 2021), *objections overruled*, No. 2:20-CV-2158-MO, 2021 WL 5150659 (D. Or. Sept. 29, 2021).

Many district courts throughout this circuit have accordingly followed the D.C. Circuit's view and held that predecisional, deliberative materials are excluded from the administrative record and need not be included in a privilege log. *ASSE*, 2018 WL 3326687, at *2-3 ("Because APA review is limited to the agency's stated reasons and the agency's deliberations are immaterial, . . . the agency may 'exclude materials that reflect internal deliberations' when designating the administrative record. . . . As a corollary to the fact that privileged materials are not part of the administrative record in the first instance, an agency is not required to produce a privilege log . . . .") (quoting *Blue Ocean Inst. v. Gutierrez*, 503 F. Supp. 2d 366, 369 (D.D.C. 2007)); *Save the Colorado*, 517 F. Supp. 3d at 901 ("[D]eliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.") (quoting *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 32 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015)); *Yellowstone*, 2021 WL 5702158, at *9 (same); *California v. U.S. Dep't of Lab.*, No. 2:13-CV-02069-KJM, 2014 WL 1665290, at *13 (E.D. Cal. Apr. 24, 2014) ("[B]ecause internal agency deliberations are properly excluded from the administrative record, the agency need not provide a privilege log."); *Blue Mountains Biodiversity Project*, 2021 WL 3683879, at *4 ("The Court concurs with the reasoning of the district court in *Save the Colorado* and the D.C. Circuit. The Court concludes that deliberative materials are not properly part of the administrative record . . . .").[6]

Defendants acknowledge that some courts, particularly courts in this district, have disagreed with this authority, concluding that deliberative materials are part of the administrative record and must be logged in a privilege log if withheld. *See* Mot. 8-10 (collecting cases); *In re Clean Water Act Rulemaking*, No. C 20-04636 WHA, 2020 WL 6686370, at *1 (N.D. Cal. Nov. 12, 2020) (acknowledging "contrary caselaw in other jurisdictions" to the conclusion by courts in this district that an agency "must . . . log

---

[6] Many other courts throughout the country, including the Sixth Circuit in an unpublished decision, have come to the same view. *See, e.g., Clean Water Rule*, 2016 WL 5845712, at *1-2; *Tafas*, 530 F. Supp. at 794; *Sierra Club*, 2021 WL 4478329, at *5; *Friends of Animals v. U.S. Fish & Wildlife Serv.*, No. 4:18-CV-00053-DN-PK, 2019 WL 8137578, at *3 (D. Utah Dec. 27, 2019); *Donjon-SMIT, LLC v. Schultz*, No. 2:20-CV-011, 2020 WL 1666073, at *7 (S.D. Ga. Apr. 3, 2020); *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs, Charleston Dist.*, 611 F. Supp. 3d 136, 143 (D.S.C. 2020).

documents withheld as deliberative"). However, other district court decisions in this district are not binding. *See Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011). Defendants respectfully submit that such cases were wrongly decided. Such cases failed to take heed of the principle that because agency action is judged based on the agency's stated justifications and not the agency's mental processes, agency deliberations are generally immaterial to judicial review. This Court should follow the well-reasoned case law from the D.C. Circuit and numerous other courts, including district courts throughout this circuit, holding that predecisional, deliberative materials are not part of the administrative record and do not need to be logged.

### 2. Plaintiffs Are Incorrect That Defendants Must Produce An Administrative Record For Each Classification Letter Applying The Final Rule.

At Plaintiffs' request, Defendants voluntarily produced each of the 53 classification letters ATF has issued since the Final Rule's effective date classifying a frame or receiver (or partially complete frame or receiver) under the Final Rule. Plaintiffs assert that to complete the administrative record, Defendants must produce "any materials ATF considered when issuing the classification letters, including correspondence or documents submitted in connection with the request for classification." Mot. 10. Plaintiffs do not contend that such materials are part of the administrative record *for the Final Rule*. Nor could they. By definition, the administrative record for an administrative action does not include materials that post-date the action because such materials could not have been considered in taking the action.[7]

Rather, Plaintiffs argue that this case contains APA challenges to each of the 53 classification letters applying the Final Rule, and therefore Defendants must produce an administrative record for each

---

[7] *See, e.g.*, *Pinnacle Armor, Inc. v. United States*, 923 F. Supp. 2d 1226, 1238 (E.D. Cal. 2013) ("An administrative record need not include documents that became available after the agency made its decision ('post-decisional' documents)"); *Valentini v. Shinseki*, No. 11-cv-04846, 2013 WL 12120074, at *6 (C.D. Cal. Jan. 22, 2013) (documents that "postdate" agency decision "thus are not part of the Administrative Record"); *Wilderness Watch, Inc. v. Bureau of Land Mgmt.*, No. 209CV00302KJDGWF, 2010 WL 11579044, at *3 (D. Nev. May 11, 2010) (documents that "post-date" agency's decision "were therefore not part of the 'administrative record before the agency when it made its decision'") (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 556 (9th Cir. 1989)); *cf. Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018) ("post-decisional information" also cannot be admitted under one of the "exceptions to the normal rule regarding consideration of extra-record materials") (quoting *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1130 (9th Cir. 2012)).

of these 53 letters. *See* Mot. 10-11. That is wrong. As explained above, *see supra*, p. 3, Plaintiffs, who are the masters of their complaint, chose to divide each of their two causes of action into a challenge to the Final Rule and a challenge to other ATF actions only "alternatively," in the event the Final Rule was vacated, altered, or amended. Am. Compl. ¶¶ 143-144, 150-153. This Court dismissed Plaintiffs' "alternative claim" as unripe, MTD Order at 28-30, leaving only a challenge to the Final Rule.

Even apart from the Court's ripeness ruling, the Amended Complaint simply does not set forth a claim that every classification letter applying the Final Rule is unlawful. The only specific classification letters criticized in the Amended Complaint are certain classification letters issued years before issuance of the Final Rule. *See* Am. Compl. ¶¶ 68-76 (criticizing classification letters issued between 2015 and 2017). The Amended Complaint sets forth no allegations or legal theory that every classification letter ATF has issued applying the Final Rule is unlawful. Moreover, about half of the classification letters applying the Final Rule conclude that the product at issue *is* a firearm regulated by the GCA. Plaintiffs presumably agree with such conclusions. Therefore, the Amended Complaint does not contain "a short and plain statement of the claim showing that" the classification letters applying the Final Rule are unlawful. Fed. R. Civ. P. 8(a)(2).

Plaintiffs cannot shoehorn challenges to each of these classification letters into the case by noting that the Amended Complaint generically asserts that "ATF's determinations that 80 percent receivers are *not* firearms are both contrary to law and arbitrary and capricious." Am. Compl. ¶ 13. The Amended Complaint clarifies that this allegation refers to purported "determin[ations] that only 80 percent receivers and frames *sold with* jig kits, templates, or similar items qualify as firearms under the GCA, while leaving the 80 percent receivers and frames themselves entirely unregulated." *Id.* ¶ 15. None of the classification letters contain a determination that only 80 percent receivers and frames sold with jigs or other supporting materials qualify as firearms. Rather, each letter analyzes the product at issue based on its specific characteristics, and roughly half of the letters conclude that the product is a firearm.

Because this case, as narrowed by this Court's motion to dismiss ruling, does not contain a challenge to classification letters applying the Final Rule, materials considered in issuing those classification letters are not part of the administrative record.

### B. Plaintiffs Are Not Entitled To Discovery Beyond The Administrative Record.

#### 1. Plaintiffs Fail To Demonstrate Applicability Of Any Of The Narrow Exceptions To The General Rule Against Discovery In APA Cases.

When a court reviews agency action, "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *see also Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) ("Judicial review of an agency decision typically focuses on the administrative record in existence at the time of the decision and does not encompass any part of the record that is made initially in the reviewing court."). Therefore, "the Supreme Court has expressed a general rule that courts reviewing an agency decision are limited to the administrative record." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005); *accord San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) ("In general, a court reviewing agency action under the APA must limit its review to the administrative record.").

Although the Ninth Circuit has recognized "narrow exceptions" to this general rule against discovery in APA cases, "[t]he scope of these exceptions permitted by [the Ninth Circuit's] precedent is constrained, so that the exception does not undermine the general rule." *Lands Council*, 395 F.3d at 1030. Narrow construction of these exceptions is necessary because "routinely or liberally . . . admit[ting] new evidence" would undermine "proper deference to agency processes, expertise, and decision-making." *Id.*; *see also San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 992 ("This rule ensures that the reviewing court affords sufficient deference to the agency's action."). "[T]he party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies." *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 993. To meet this burden, a plaintiff must "demonstrat[e] that the administrative record is so inadequate that judicial review would be 'effectively frustrated.'" *Univ. of Washington v. Sebelius*, No. C11-625RSM, 2011 WL 6447806, at *2 (W.D. Wash. Dec. 22, 2011) (quoting *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988)).

Plaintiffs invoke one of the Ninth Circuit's exceptions to the rule against extra-record discovery, that courts may permit extra-record discovery when necessary "to determin[e] whether the agency has considered all relevant factors or has explained its course of conduct or grounds of decision." *Animal*

*Defense Council*, 840 F.2d at 1436; Mot. 12-14.  But "the broad language of the [relevant factors] exception must be applied cautiously to avoid swallowing the rule."  *Grand Canyon Tr. v. Williams*, No. CV13-8045 PCT DGC, 2013 WL 6577376, at *2 (D. Ariz. Dec. 16, 2013).  Therefore, this exception does not allow supplementation to admit documents that "might have supplied a fuller record," but that "do not 'address issues not already there.'"  *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1451 (quoting *Friends of the Earth v. Hintz,* 800 F.2d 822, 829 (9th Cir. 1986)).  "[T]o satisfy the 'relevant factors' exception, . . . the document in question must do more than raise 'nuanced points' about a particular issue; it must point out an 'entirely new' general subject matter that the defendant agency failed to consider." *Pinnacle Armor*, 923 F. Supp. 2d at 1234; *see also In re Delta Smelt Consol. Cases*, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946, at *5 (E.D. Cal. June 21, 2010) ("the 'relevant factors' exception only applies when Federal Defendants fail to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision, not when specific hypotheses and/or conclusions are omitted from consideration").

Plaintiffs fail to demonstrate the applicability of this narrow exception.  Plaintiffs argue that ATF failed to consider the possibility that failing to classify more partially complete frames and receivers as firearms could lead to an increase in ghost gun violence by allowing people to acquire unregulated products that can easily be converted into functional firearms.  Mot. 13-14.  But the Final Rule and administrative record showed that ATF considered these subjects in exhaustive detail.  The Final Rule and administrative record further show that ATF engaged in the difficult line-drawing exercise of determining when a partially complete frame or receiver becomes a firearm consistent with the goals of meaningfully addressing the problems of violence and crime involving privately made firearms, or PMFs (which Plaintiffs call "ghost guns"), while acting within ATF's statutory authority.

The Final Rule shows that ATF considered extensively the problems of violence and crime involving PMFs, particularly the increasing use of PMFs in crime and the difficulty of law enforcement tracing unserialized PMFs that are recovered from crime scenes.[8]  The administrative record likewise

---

[8] *See* 87 Fed. Reg. at 24,652 (discussing difficulty of tracing PMFs); *id.* at 24,654 (explaining that the Final Rule is intended to increase public safety by preventing prohibited persons from acquiring firearms and allowing law enforcement to trace firearms); *id.* at 24,655-24,659 (summarizing problems involving PMFs, including increases in violence involving PMFs and PMFs being recovered from crime scenes, supported by footnotes listing news articles and DOJ press releases); *id.* at 24,659 (discussing low

contains extensive information about the scope of public safety issues involving PMFs.[9]  The Final Rule further shows that ATF considered in great detail where to draw the line of when a partially complete frame or receiver becomes a firearm that is regulated under the GCA.  In particular, ATF considered and responded to arguments on both sides that ATF should craft the Final Rule in ways that would classify more or fewer products as firearms.[10]  ATF even specifically considered and disagreed with a comment submitted by California in which California raised some of the same criticisms of ATF's regulation of frames and receivers that California raises in this case.[11]  Furthermore, the administrative record contains hundreds of pages of previous classifications analyzing when a partially complete frame or receiver is a firearm, showing that ATF drew on its expertise and prior experience and considered many options in determining where to draw the line in the Final Rule.[12]

---

rate of success in law enforcement traces of PMFs); *id.* at 24,660 (discussing how PMFs make it more difficult to prosecute violations of firearms laws); *id.* at 24,669 (explaining that Final Rule would improve public safety, prevent dangerous people from getting PMFs, and improve tracing); *id.* at 24,689 (arguing that the Final Rule is a reasonable response to problems involving PMFs); *id.* at 24,714 (arguing that increasing regulation of PMFs will protect public safety).

[9] *See*, *e.g.*, ATF000825-ATF000827 (statistics and anecdotes about PMFs being used in crimes); ATF000871-ATF000901 (ATF Criminal Intelligence Division reports analyzing public safety issues involving PMFs); ATF071465-071513, ATF071642-071657 (news reports and policy briefs about crimes involving PMFs); ATF071514-ATF071641 (DOJ press releases about prosecutions involving PMFs).

[10] *See* 87 Fed. Reg. at 24,663 (explaining that ATF defined frame or receiver to include partially complete frames and receivers that were designed to or could readily be completed to a functional state to prevent prohibited persons from easily obtaining PMFs); *id.* at 24,668 (instructing that previous classifications regarding partially complete frames and receivers that did not include associated templates, jigs, or other supporting materials were not grandfathered and would need to be re-evaluated); *id.* at 24,670 (considering and rejecting comment suggesting that ATF should define firearms to include computer files that could be used to generate a weapon); *id.* at 24,685-24,686 (considering and rejecting argument that ATF lacks any authority to regulate partially complete frames or receivers); *id.* at 24,697-24,698 (considering and rejecting proposal to define frame or receiver to include only those articles that have reached a stage to "become[] sufficiently complete to function as a frame or receiver"); *id.* at 24,739 (explaining that when issuing a classification, ATF may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials when determining whether a partially complete frame or receiver "may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver").

[11] *See id.* at 24,668.

[12] *See* ATF000001-ATF000645.  Several previous classifications determined, much like the approach taken in a Final Rule, that a partially complete frame or receiver was a firearm because it could be "readily converted" to a functional state.  *See* ATF000010; ATF000017; ATF000020; ATF000023.  Another letter explained that various "alternatives" existed for answering the question of when in the manufacturing process a product becomes a frame or receiver, and analyzed whether various options were

In sum, the Final Rule and administrative record show that in crafting the Rule, ATF considered public safety concerns surrounding PMFs and various proposals that would include more or fewer partially complete frames and receivers within the definition of firearms. In deciding to define firearms to include partially complete frames or receivers that were designed to or could readily be completed to a functional state, ATF sought to make a reasonable judgment that would allow ATF to address the issue of ghost gun violence and be consistent with ATF's statutory authority. ATF additionally sought to address public safety concerns regarding PMFs by obligating federal firearms licensees to mark PMFs with a serial number when they took PMFs into inventory. *See* 87 Fed. Reg. at 24,653.

Ghost gun violence and the question of where to draw the line regarding partially complete frames and receivers are not "an 'entirely new' general subject matter that [ATF] failed to consider." *Pinnacle Armor*, 923 F. Supp. 2d at 1234. Plaintiffs may argue that the extra-record discovery they seek "might . . . suppl[y] a fuller record," but such documents would "not 'address issues not already there.'" *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1451. Extra-record discovery under the relevant factors exception is inappropriate because "the record already contains documents sufficient to determine whether [ATF] considered" ghost gun violence and line-drawing questions regarding partially complete frames and receivers. *Cascadia Wildlands v. Bureau of Land Mgmt.*, No. 6:12-CV-01739-AA, 2013 WL 1900632, at *2 (D. Or. May 4, 2013). Furthermore, although Plaintiffs may disagree with precisely where ATF drew the line, the relevant factors exception "does not permit district courts to use extra-record evidence to judge the wisdom of the agency's action." *San Luis & Delta-Mendota Water Auth.*, 776 F.3d at 993; *see also Grand Canyon*, 2013 WL 6577376, at *2 ("attempt to convince a court that an agency made an unwise choice[]" does not justify invocation of relevant factors exception). Plaintiffs have failed to meet their burden to show that the "relevant factors" exception to the rule against extra-record discovery in APA cases applies here.

---

consistent with ATF's statutory authority and would further the purposes of the Gun Control Act. ATF000543-ATF000544; *see also* ATF000609 (classification letter explaining that "[d]ue in part to the many and varied design differences among firearms," the question of "the point at which an object" becomes a frame or receiver "must be determined on a case-by-case basis").

### 2. No Additional Discovery Related To Standing Is Warranted.

Plaintiffs fail to justify any additional discovery related to Plaintiffs' standing. As a general matter, discovery must be "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts deny motions to compel discovery when "not proportional to the needs of the case, and cumulative to other discovery in light of the prior discovery." *Williamson v. Google LLC*, No. 15-cv-00966-BLF, 2018 WL 11414626, at *1 (N.D. Cal. Apr. 10, 2018). In this case, the voluminous administrative record bears on Plaintiffs' standing, and Defendants have also voluntarily produced significant documents relevant to standing in response to four of Plaintiffs' six document requests.

Plaintiffs nonetheless argue that they need to obtain discovery from unspecified third parties regarding standing.[13] But Plaintiffs' proposed discovery requests to third parties are cumulative in light of the information already produced to Plaintiffs. Plaintiffs suggest that they need discovery regarding how the Final Rule applies, which Plaintiffs call "'the size of the loophole' created by the Final Rule," Mot. 15,[14] but Defendants have produced every classification letter applying the Final Rule to partially complete frames or receivers, thereby providing sufficient information to show how the Final Rule applies. Plaintiffs also argue that they need discovery regarding the scope of the "ghost gun epidemic," *id.*, but Defendants already produced ATF data derived from law enforcement traces of firearms regarding suspected PMFs recovered from crime scenes. Plaintiffs have not shown any need to delay resolution of this case to allow them to pursue documents from third parties.

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Compel Completion of the

---

[13] Plaintiffs' argument regarding discovery for standing refers only to Plaintiffs' requests to "third parties" and does not mention Plaintiffs' requests to Defendants. *See* Mot. 15-16. To the extent Plaintiffs contend they need discovery on standing from Defendants, they waived such an argument by failing to include it in their motion. *See Nathanson v. Polycom, Inc.*, No. 13-3476, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) ("arguments not raised by a party in its opening brief are deemed waived") (quoting *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006)).

[14] Defendants dispute Plaintiffs' characterization that the Final Rule contains a "loophole," a word that carries the pejorative connotation that a rule fails to cover circumstances that should be covered. Defendants understand the references to a "loophole" in the Court's opinion to be descriptions of Plaintiffs' theory of the case, *see, e.g.*, MTD Order 11 ("California's basic contention is that the final rule contains a loophole/exception"), rather than accepting Plaintiffs' argument that the Final Rule contains a loophole.

Administrative Record and for Leave to Conduct Limited Discovery.

DATED: June 22, 2023              Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

*/s/ Jeremy S.B. Newman*
DANIEL RIESS
TAISA M. GOODNATURE
JEREMY S.B. NEWMAN
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW, Room 12504
Washington, DC 20005
Telephone: (202) 532-3114
FAX: (202) 616-8460
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Federal Defendants*