BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

DANIEL RIESS (Texas Bar No. 24037359)
TAISA M. GOODNATURE (New York Bar No. 5859137)
JEREMY S.B. NEWMAN (Massachusetts Bar No. 688968)
Trial Attorneys
United States Department of Justice
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Telephone: (202) 532-3114
FAX: (202) 616-8460
jeremy.s.newman@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al.* | Case No. 3:20-cv-06761-EMC |
| Plaintiffs, | |
| v. | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER** |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS, and EXPLOSIVES ("ATF"), *et al.*, | |
| Defendants. | Noting Date: January 25, 2024<br>Time:  4:30 p.m.<br>Place:  Courtroom 5, 17th Floor |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 25, 2024 at 4:30 p.m. or as soon thereafter as the parties may be heard, in the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Edward M. Chen, Defendants United States Department of Justice, Merrick Garland, United States Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, and Daniel Hoffman (collectively "Defendants") will move this Court for an order granting summary judgment in Defendants' favor on all claims asserted by Plaintiffs State of California, Bryan Muehlberger, Frank Blackwell, and Giffords Law Center to Prevent Gun Violence ("Plaintiffs") pursuant to Federal Rule of Civil Procedure 56.  Defendants' Motion is based on this notice; the following memorandum of points and authorities; and such oral argument as the Court may permit.

DATED:  October 5, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

By:     */s/ Jeremy S.B. Newman*
Jeremy S.B. Newman
Trial Attorney

# TABLE OF CONTENTS

I.       INTRODUCTION ...................................................................................................1

II.      STATUTORY AND REGULATORY BACKGROUND ......................................2

III.     PROCEDURAL BACKGROUND .......................................................................6

IV.      LEGAL STANDARD ...........................................................................................7

V.       ARGUMENT .........................................................................................................7

         A.       Plaintiffs Have Failed to Submit Evidence to Establish Standing...............7

         B.       Defendants Are Entitled to Summary Judgment on Count I Because the Rule
                  and ATF's Other Actions Were Lawful............................................................8

                  1.       ATF Lawfully Defined "Frame" or "Receiver" to Include Partially
                           Complete Frames and Receivers that Are Designed to or May Readily
                           Be Converted to Function as a Frame or Receiver. ...........................9

                  2.       Many of Plaintiffs' Arguments Rest on Misunderstandings of ATF's
                           Actions................................................................................................13

                  3.       ATF Correctly Concluded that AR-15 Variant Partially Complete
                           Receivers Without Critical Interior Areas Having Been Indexed,
                           Machined or Formed Are Not Receivers Absent Supporting
                           Materials. ...........................................................................................17

                  4.       The December 2022 Open Letter Is Lawful. .....................................23

         C.       The Rule and Letters Are Reasonable. ..........................................................25

                  1.       Plaintiffs Err in Contending that the Rule and Letters Only Regulate
                           Partially Complete Frames and Receivers Sold in Kits or Alongside
                           Supplementary Materials...................................................................25

                  2.       The Rule Did Not Fail to Consider Reaching More Conduct Than It
                           Did, But Instead Chose to Draw the Line in a Different Place Than
                           Plaintiffs Would Have Preferred. .....................................................29

         D.       Any Relief Must Be Narrowly Tailored. .......................................................33

CONCLUSION ....................................................................................................................34

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

*Allen Bradley Co. v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers,*
    325 U.S. 797 (1945)............................................................................................................34-35

*Apple Inc. v. Motorola Mobility, Inc.,*
    No. 12CV355 DMS (BLM), 2012 WL 12846983 (S.D. Cal. July 17, 2012)......................... 34

*Black Mountain Equities, Inc. v. Players Network, Inc.,*
    No. 18-CV-1745-BAS-KSC, 2020 WL 804452 (S.D. Cal. Feb. 18, 2020)........................... 34

*California ex rel. Becerra v. Azar,*
    950 F.3d 1067 (9th Cir. 2020) ............................................................................................... 32

*California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
    No. 20-CV-06761-EMC, 2023 WL 1873087 (N.D. Cal. Feb. 9, 2023) ............................. 7, 8

*Davis v. FEC*,
    554 U.S. 724 (2008)................................................................................................................. 8

*ExxonMobil Gas Mktg. Co. v. FERC*,
    297 F.3d 1071 (D.C. Cir. 2002) ........................................................................................ 9, 32

*FCC v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993)............................................................................................................... 32

*FCC v. Fox Television Stations,*
    556 U.S. 502 (2009)............................................................................................................... 32

*FCC v. Prometheus Radio Project,*
    141 S. Ct. 1150 (2021).............................................................................................................. 7

*Fla. Power & Light Co. v. Lorion,*
    470 U.S. 729 (1985)................................................................................................................. 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
    528 U.S. 167 (2000)............................................................................................................... 33

*Gerlinger v. Amazon.com Inc.,*
    526 F.3d 1253 (9th Cir. 2008) ................................................................................................. 8

*Henderson v. Kennedy,*
    253 F.3d 12 (D.C. Cir. 2001)................................................................................................. 33

*Inland Empire Waterkeeper v. Corona Clay Co.,*
    17 F.4th 825 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 1444 (2022)....................................... 8

*J & G Sales Ltd. v. Truscott,*
    473 F.3d 1043 (9th Cir. 2007) ........................................................................ 32

*Jones v. L.A. Cent. Plaza LLC,*
    74 F.4th 1053 (9th Cir. 2023) ........................................................................ 8

*Lewis v. Casey,*
    518 U.S. 343 (1996) ........................................................................................ 8

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ 8

*Managed Pharmacy Care v. Sebelius,*
    716 F.3d 1235 (9th Cir. 2013) ...................................................................... 25

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983) ............................................................................... 7, 29, 32

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife,*
    551 U.S. 644 (2007) ...................................................................................... 33

*Nat'l Rifle Ass'n v. Brady,*
    914 F.2d 475 (4th Cir. 1990) .......................................................................... 9

*New York v. Burger,*
    482 U.S. 691 (1987) ...................................................................................... 11

*New York v. Dep't of Justice,*
    951 F.3d 84 (2d Cir. 2020) ....................................................................... 29-30

*Pers. Watercraft Indus. Ass'n v. Dep't of Com.,*
    48 F.3d 540 (D.C. Cir. 1995) ................................................................... 32, 33

*Phillips v. U.S. Customs & Border Prot.,*
    74 F.4th 986 (9th Cir. 2023) .......................................................................... 8

*Ranchers Cattlemen Action Legal Fund v. USDA,*
    499 F.3d 1108 (9th Cir. 2007) ...................................................................... 25

*RUI One Corp. v. City of Berkeley,*
    371 F.3d 1137 (9th Cir. 2004) ...................................................................... 32

*S.C. Pub. Serv. Auth. v. FERC,*
    762 F.3d 41 (D.C. Cir. 2014) ........................................................................ 32

*San Luis & Delta-Mendota Water Auth. v. Jewell,*
    747 F.3d 581 (9th Cir. 2014) .......................................................................... 7

*Schmidt v. Lessard*,
    414 U.S. 473 (1974) ......................................................................................... 33

*Sierra Club v. EPA*,
    346 F.3d 955 (9th Cir. 2003) ........................................................................... 25

*Sig Sauer, Inc. v. Jones*,
    133 F. Supp. 3d 364 (D.N.H. 2015) ................................................................ 25

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ........................................................................................... 9

*United States v. Edge Broad. Co.*,
    509 U.S. 418 (1993) ......................................................................................... 33

*Williamson v. Lee Optical of Okla., Inc.*,
    348 U.S. 483 (1955) ......................................................................................... 32

**Statutes**

5 U.S.C. § 706 ............................................................................................................ 7

18 U.S.C. §§ 921 *et seq.* ......................................................................................... 2

18 U.S.C. § 921 .................................................................................... 2, 9, 10, 22

18 U.S.C. § 922 ................................................................................................. 2, 31

18 U.S.C. § 923 ........................................................................................................ 2

18 U.S.C. § 926 ................................................................................................... 3, 9

26 U.S.C. § 5845 ................................................................................................... 11

Pub. L. No. 90-351, 82 Stat. 197, 225 (1968) ...................................................... 2

**Rules**

Fed. R. Civ. P. 56 .................................................................................................... 6

Fed. R. Civ. P. 65 ............................................................................................. 33, 34

**Regulations**

27 C.F.R. part 478 .................................................................................................... 3

27 C.F.R. part 479 .................................................................................................... 3

27 C.F.R. § 478.11 ............................................................................................. 3, 13, 14

27 C.F.R. § 478.12 ................................................................................................... *passim*

28 C.F.R. § 0.130 ........................................................................................................... 9

33 Fed. Reg. 18,555 (Dec. 14, 1968) ........................................................................... 3

86 Fed. Reg. 27,720 (May 21, 2021) ........................................................................ 3, 4

87 Fed. Reg. 24,652 (Apr. 26, 2022) ............................................................... *passim*

87 Fed. Reg. 51,249 (Aug. 22, 2022) ........................................................................... 3


**Other Authorities**

ATF, Open Letter to all Vermont Federal Firearms Licensees Regarding Changes to Vermont Law 13
    V.S.A. § 4019 (Mar. 9, 2023),
    https://www.atf.gov/firearms/docs/open-letter/vermont-march-2023-open-letter-changes-vermont-
    law-13-vsa-§-4019/download ........................................................................... 24

ATF, *Public Safety Advisory to All Federal Firearms Licensees, and Firearm Parts, Components, and
    Accessories Manufacturers and Distributors*,
    https://www.atf.gov/firearms/docs/guide/public-safety-advisory-all-federal-firearms-licensees-and-
    firearm-parts/download (March 21, 2023) .......................................................... 30

ATF, Receiver Blanks,
    https://www.atf.gov/qa-category/receiver-blanks ............................................ 5, 21

ATF, *Training Aid for the Identification of Frame or Receiver & Identification of Firearms* (2022),
    https://www.atf.gov/firearms/docs/guide/new-training-aid-overview-final-rule-2021r-05f-definition-
    frame-or-receiver-and/download ....................................................................... 28

ATFHQ, *FINAL RULE 2021R-05F-Definition of "Frame or Receiver" and Identification of Firearms*,
    YouTube (Aug. 26, 2022),
    https://www.youtube.com/watch?v=q7XWhcx_Q3A ............................................ 5, 19, 27

*FINAL RULE 2021R-05F-Definition of "Frame or Receiver" and Identification of Firearms*, ATF,
    https://www.atf.gov/firearms/docs/guide/overview-final-rule-2021r-05f-definition-%E2%80%9C
    frame-or-receiver%E2%80%9D-and-identification/download ....................................... 5, 19

1

MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      When it issued the Rule at issue in this case, the Bureau of Alcohol, Tobacco, Firearms, and

4 Explosives ("ATF") took a major step to address public safety concerns surrounding untraceable privately

5 made firearms, commonly known as "ghost guns."  *See* Final Rule, Definition of "Frame or Receiver" and

6 Identification of Firearms, 87 Fed. Reg. 24,652 (Apr. 26, 2022) ("Rule").  One of the cornerstones of the

7 Rule was its provision defining "frame or receiver" (the core functional component of a weapon that is

8 itself a firearm under the Gun Control Act ("GCA")) to include not only complete and functional frames

9 and receivers, but also "a partially complete, disassembled, or nonfunctional frame or receiver . . . that is

10 designed to or may readily be completed, assembled, restored, or otherwise converted to function as a

11 frame or receiver[.]"  27 C.F.R. § 478.12(c); 87 Fed. Reg. at 24,739.  Under this provision, when selling

12 a partially complete frame or receiver that can readily be converted to a functional state, a seller must

13 comply with all requirements the GCA imposes on firearms sales, including those concerning

14 serialization, recordkeeping, and background checks.

15      The gravamen of the claims of Plaintiffs California and Giffords Law Center is that the Rule, and

16 various actions interpreting or applying the Rule, do not go far enough.  Based on the allegations in their

17 Supplemental First Amended Complaint, they appear to assert that all products that are characterized as

18 "80 percent frames and receivers" can easily be converted to a functional state, and therefore should all

19 be classified as firearms.  Plaintiffs claim that ATF has violated the GCA, and acted arbitrarily and

20 capriciously, by not classifying even more partially complete frames and receivers as firearms.

21      Plaintiffs are incorrect.  As a threshold matter, Plaintiffs have not established standing.  At the

22 pleading stage, the Court found Plaintiffs' allegations sufficient for standing, taking Plaintiffs' allegations

23 as true and drawing inferences in Plaintiffs' favor.  But at the summary judgment stage, Plaintiffs must

24 advance evidence to support standing.  They have failed to show that they were injured by their

25 disagreement with Defendants on the classification of a limited set of products, and the Court should enter

26 summary judgment for Defendants on that basis.

27      Even if the Court reaches the merits of Plaintiffs' claims, it should enter summary judgment for

28 Defendants.  Defendants acted within statutory authority in defining "frame or receiver" to include

1  partially complete frames and receivers that are designed to or may readily be converted to function as a

2  frame or receiver.  This approach is consistent with the GCA's text, which provides that the frame or

3  receiver of a weapon is a firearm, but does not otherwise define "frame" or "receiver."  Not all so-called

4  "80 percent frames and receivers" satisfy that test.  The term "80 percent" frame or receiver is not a legal

5  term or even a concept used by ATF in classifying products; it is a marketing label that manufacturers and

6  other market participants have chosen to apply to a wide variety of products, some of which can readily

7  be completed to a functional state (and therefore are firearms) and others of which cannot (and therefore

8  are not firearms).

9         Nor did Defendants act arbitrarily and capriciously in violation of the Administrative Procedure

10  Act (APA) in promulgating the Rule and subsequent guidance.  Plaintiffs argue that ATF should have

11  drawn the line for when a partially complete frame or receiver becomes a firearm in a different place than

12  ATF did, but an agency's decision is not arbitrary and capricious merely because a plaintiff disagrees with

13  it.  ATF offered reasoned explanations for its decisions, which is all that APA review requires.  Such

14  review is highly deferential, particularly where (as here) an agency makes line-drawing determinations

15  based on its technical expertise.  Plaintiffs' claims fail under this standard.

16  **II.     STATUTORY AND REGULATORY BACKGROUND**

17         Congress enacted the Gun Control Act of 1968, *as amended*, 18 U.S.C. §§ 921 *et seq*. ("GCA"),

18  to strengthen and update federal controls over firearms moving in interstate commerce.  Pub. L. No. 90-

19  351, 82 Stat. 197, 225 (1968).  Accordingly, Congress enacted requirements for persons engaging in the

20  business of importing, manufacturing, or dealing in "firearms."  *See generally* 18 U.S.C. §§ 922-923.

21  Congress defined "firearm" to include "any weapon . . . which will or is designed to or may readily be

22  converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such

23  weapon[.]"  *Id*. § 921(a)(3).  However, Congress did not define the terms "frame" or "receiver."  *See id*.

24  § 921.  Congress requires individuals and entities that import, manufacture, or deal in firearms to obtain a

25  federal firearms license, *id*. § 923(a), to maintain records of firearm acquisition and transfer as prescribed

26  by regulation, *id*. § 923(g)(1)(A), and to conduct background checks before transferring firearms to a non-

27  licensee, *id*. § 922(t).  Congress also requires licensed importers and manufacturers to identify each firearm

28  they import or manufacture by means of a serial number on the weapon's receiver or frame.  *Id*. § 923(i).

1  Congress has vested in ATF the authority to prescribe regulations "necessary to carry out the provisions

2  of" the GCA.  *Id.* § 926(a).

3       ATF has promulgated regulations implementing the GCA.  *See* 27 C.F.R. parts 478-479.  Over

4  fifty years ago, ATF defined the statutory term "frame or receiver" as "[t]hat part of a firearm which

5  provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually

6  threaded at its forward portion."  Final Rule, Commerce in Firearms and Ammunition, 33 Fed. Reg.

7  18,555, 18,558 (Dec. 14, 1968), *codified at* 27 C.F.R. § 478.11.  This definition was meant to provide

8  direction as to which portion of a weapon is the frame or receiver for purposes of licensing, serialization,

9  and recordkeeping.  Final Rule, Definition of "Frame or Receiver" and Identification of Firearms, 87 Fed.

10  Reg. at 24,652.  However, a restrictive application of this definition—as some courts have recently used—

11  would not describe the frame or receiver of most current firearms.  *Id.*  In most modern weapons designs,

12  the relevant fire control components either are housed by more than one part of the weapon or incorporate

13  a striker rather than a hammer to fire the weapon.  *Id*.

14       To update its decades-old definition of "frame or receiver," ATF published a notice of proposed

15  rulemaking.  Proposed Rule, Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed.

16  Reg. 27,720 (May 21, 2021) (Notice).  ATF promulgated the final rule on April 26, 2022.  87 Fed. Reg.

17  24,652.[1]  As relevant here, the Rule provides an updated definition of the term "frame or receiver."  *See*

18  *id.* at 24,652, 24,727.  The Rule further defines "frame" for handguns, and "receiver" for rifles, shotguns,

19  and other weapons that expel a projectile.  *See id.* at 24,727, 24,735.  Unlike the 1968 definition, these

20  updated definitions now describe only a *single* housing or structural component for a *specific* fire control

21  component of a given weapon—including "variants thereof," a term that is also defined.  *Id.*  For

22  handguns, the frame is the housing or structure for the component—*i.e.*, the sear or its equivalent—

23  designed to hold back the hammer, striker, bolt, or similar primary energized component before initiating

24  the firing sequence.  *Id.*  For long guns, the receiver is the housing or structure for the primary component

25  designed to block or seal the breech before initiating the firing sequence.  *Id.*  Plaintiffs do not appear to

26  challenge these aspects of the definition of "frame or receiver."

27  _____

28       [1] ATF made minor technical corrections to the Rule on August 22, 2022.  Definition of "Frame or Receiver" and Identification of Firearms; Corrections, 87 Fed. Reg. 51,249 (Aug. 22, 2022).  Those technical corrections are not at issue in this litigation.

The definition of "frame or receiver" includes a frame or receiver that is partially complete, disassembled, or nonfunctional—including a frame or receiver parts kit—that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver.  *Id*. at 24,739; *see also id*. at 24,663, 24,727-28.   However, the definitions of "frame" and "receiver" specifically exclude forgings, castings, printings, or similar articles that have not yet reached a stage of manufacture where they are clearly identifiable as unfinished component parts of weapons—*e.g.*, unformed blocks of metal, and other raw materials.  *Id*. at 24,663, 24,728, 24,739.  The Rule also defines "[r]eadily" to mean a process, action, or physical state that is fairly or reasonably efficient, quick, and easy, but not necessarily the most efficient, speediest, or easiest process, action, or physical state.  *Id*. at 24,735.  With respect to ATF's classification of firearms, relevant factors to making this determination include: (1) time (2) ease, (3) expertise, (4) equipment (5) parts availability, (6) expense, (7) scope, and (8) feasibility.  *Id*.  This definition and these factors are based on case law interpreting the terms "may readily be converted to expel a projectile" in the GCA and "can be readily restored to shoot" in the National Firearms Act (NFA).  86 Fed. Reg. at 27,730 & n.58.

The Rule included several "nonexclusive examples that illustrate the definitions" of frame and receiver.   Example 1 stated: "A frame or receiver parts kit containing a partially complete or disassembled billet or blank of a frame or receiver that is sold, distributed, or possessed with a compatible jig or template is a frame or receiver, as a person with online instructions and common hand tools may readily complete or assemble the frame or receiver parts to function as a frame or receiver."  87 Fed. Reg. at 24,739.  Example 2 stated: "A partially complete billet or blank of a frame or receiver with one or more template holes drilled or indexed in the correct location is a frame or receiver[.]"  *Id.*  Example 4 stated: "A billet or blank of an AR-15[2] variant receiver without critical interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver."  *Id.*

The Rule's regulatory text does not use the terms "80% frame" or "80% receiver."  Those are marketing terms used by some in the firearms industry to describe a wide variety of partially complete

---

[2] The designation "AR" refers to the company that originally designed the rifle, Armalite Rifle, although the AR-15 is currently manufactured by the Colt Company, and "AR-15-variant" clones of this weapon are made by numerous other manufacturers.

1  frames and receivers, but those terms are not used in the GCA or ATF's regulations, and ATF does not

2  consider the terms useful in determining whether any particular product qualifies as a firearm.  *See id.*

3  at 24,663 n.47.

4  Shortly after promulgating the Rule, ATF published on its website a slide deck explaining the

5  Rule.  *FINAL RULE 2021R-05F-Definition Of "Frame Or Receiver" And Identification Of Firearms*,

6  ATF, https://www.atf.gov/firearms/docs/guide/overview-final-rule-2021r-05f-definition-%E2%80%9C

7  frame-or-receiver%E2%80%9D-and-identification/download, ATF Supp 000102-62 (ATF Slide Deck).

8  ATF also created a YouTube video explaining the Rule.  ATFHQ, *FINAL RULE 2021R-05F-Definition*

9  *of "Frame or Receiver" and Identification of Firearms*, YouTube (Aug. 26, 2022),

10  https://www.youtube.com/watch?v=q7XWhcx_Q3A.

11  ATF also has posted on its website a set of questions and answers (originally posted in 2015)

12  concerning certain partially complete receivers called "receiver blanks."  ATF, Receiver Blanks,

13  https://www.atf.gov/qa-category/receiver-blanks, ATF Supp 000163-72.  The questions and answers

14  state that certain "receiver blanks, . . . in which the fire-control cavity area is completely solid and un-

15  machined have not reached the 'stage of manufacture' which would result in the classification of a

16  firearm according to the GCA," ATF Supp 000164, but that "[i]n some cases, items being marketed as

17  'unfinished' or '80%' receivers do actually meet the definition of a 'firearm' as defined in the [GCA],"

18  ATF Supp 000166.

19  ATF issued two Open Letters, which addressed the application of the Rule to discrete categories

20  of products.  First, in September 2022, ATF issued an Open Letter concluding: "[A] partially complete

21  AR-type receiver with no indexing or machining of any kind performed in the area of the fire control

22  cavity is not classified as a '**receiver**,' or '**firearm**,' provided that it is  not sold, distributed, or marketed

23  with any associated templates, jigs, molds, equipment, tools, instructions, or guides, such as within a

24  receiver parts kit."  Open Letter to All Federal Firearms Licensees (Sept. 27, 2022), Suppl. Am. Compl.

25  Ex. 23, ATF Supp 000199-000205 ("September 2022 Open Letter").  Second, in December 2022, ATF

26  issued an open letter concluding that "partially complete Polymer80, Lone Wolf, and similar striker-

27  fired semiautomatic pistol frames" are classified as "frames" and "firearms" under the GCA "*even*

28  *without* any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing

materials[.]"  Open Letter to All Federal Firearms Licensees (Dec. 27, 2022), Suppl. Am. Compl. Ex. 25, ATF Supp 000206-15.

ATF has further issued dozens of classification letters to manufacturers and sellers, each classifying a specific product as either a firearm or not a firearm under the Rule and the GCA.  About half of these letters have concluded that the product is a firearm, and about half have concluded that the product is not a firearm.  *See* ATF Supp 000216-000506.

### III.   PROCEDURAL BACKGROUND

Plaintiffs initiated this action in 2020 to challenge ATF's approach to regulating privately made firearms.  However, this case was placed on hold during the promulgation of the Rule.  In 2022, Plaintiffs filed an amended complaint challenging the lawfulness of the Rule under the APA, and Defendants moved to dismiss for lack of subject matter jurisdiction.  The Court granted in part and denied in part Defendants' motion to dismiss in a written opinion dated February 9, 2023.  ECF No. 135.  The Court held that because at the motion-to-dismiss stage, all reasonable inferences must be made in the non-movants' favor, Plaintiffs California and Giffords Law Center had sufficiently established standing to proceed with this litigation.  *Id.* at 6-24.  However, the Court dismissed the individual plaintiffs (Bryan Muehlberger and Frank Blackwell) for lack of standing.  *Id.* at 24-28.  The Court also dismissed as unripe Plaintiffs' alternative claim challenging ATF's pre-Rule approach to regulating privately made firearms in the event that the Rule were to be vacated, altered, or amended.  *Id.* at 28-30.

Following the Court's Order, Plaintiffs filed a Supplemental First Amended Complaint challenging the lawfulness of the Rule, and various ATF letters and guidance applying and interpreting the Rule, under the APA.  Suppl. First. Am. Compl., ECF No. 177 ("Suppl. Am. Compl.").  In Count One, Plaintiffs claim that ATF's actions are not in accordance with law to the extent that they do not classify certain "80 percent receivers and frames[]" as firearms.  *Id.* ¶ 168.  In Count Two, Plaintiffs claim that ATF's actions are arbitrary and capricious insofar as they purportedly "deem[] as firearms only those 80 percent receivers and frames sold in kits or alongside jigs, templates, or similar aids, leaving 80 percent receivers and frames sold separately wholly unregulated."  *Id.* ¶ 180.

### IV.   LEGAL STANDARD

Defendants move for summary judgment in this APA action under Fed. R. Civ. P. 56(a).  Judicial

review under the APA is deferential and is limited to a determination of whether the agency acted in a manner that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (citing 5 U.S.C. § 706(2)(A)). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Review is limited to the administrative record before the agency decision-maker. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985). A decision should only be reversed as arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43.

## V.   ARGUMENT

### A.  Plaintiffs Have Failed to Submit Evidence to Establish Standing.

Plaintiffs have not satisfied their burden to establish Article III standing with the quantum of evidence required at the summary judgment stage. In denying in part Defendants' motion to dismiss for lack of subject matter jurisdiction, the Court concluded that "California ha[d] sufficiently established standing to proceed with this litigation as all reasonable inferences [were required to] be made in Plaintiffs' favor at th[at] juncture of the proceedings[.]" *California v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 20-CV-06761-EMC, 2023 WL 1873087, at *6 (N.D. Cal. Feb. 9, 2023); *see also id.* at *6 ("[W]hen all reasonable inferences are made in California's favor – including the predictable effects of government action or inaction on third parties . . . there is a substantial risk that California will be harmed by the final rule . . . ." (internal quotation marks and citation omitted)); *id.* at *7 ("From this, it can reasonably be inferred that the number of ghost guns that will be sold standalone is not insubstantial."); *id.* ("Although not every person who procures an 80 percent receiver/frame standalone does so for purposes of committing a crime, it is a reasonable inference that there will be some who do so."); *id.* at *8

(emphasizing again that "at this juncture all reasonable inferences must be drawn to California's favor" in addressing the implications of ATF's September 2022 and December 2022 Open Letters).

At this stage of the proceedings, however, Plaintiffs can no longer rest on allegations and inferences alone to establish standing.  Rather, because "the elements of Article III standing must be substantiated 'with the manner and degree of evidence required at the successive stages of the litigation,' it follows that, 'at the summary judgment stage, a plaintiff must offer evidence and specific facts demonstrating each element' of Article III standing." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) (citation omitted) (first quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); and then quoting *Gerlinger v. Amazon.com Inc.*, 526 F.3d 1253, 1256 (9th Cir. 2008)).

Plaintiffs have submitted no evidence to establish that their expenditures would decrease if ATF regulated any products that the Rule does not treat as firearms.  Relatedly, Plaintiffs also have failed to submit evidence that their purported injuries are caused by any of the particular products that ATF has classified as not firearms in the Classification Letters and Open Letters that Plaintiffs urge this Court to vacate.  *See* Suppl. Am. Compl., Prayer for Relief, at 77-78; *see also, e.g.*, *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 831 (9th Cir. 2021) ("Standing is not dispensed in gross, so a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." (cleaned up) (first quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); and then quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008))), *cert. denied*, 142 S. Ct. 1444 (2022).  Defendants are entitled to summary judgment on this ground alone.  *See, e.g.*, *Phillips v. U.S. Customs & Border Prot.*, 74 F.4th 986, 988 (9th Cir. 2023) (affirming grant of summary judgment on ground that the plaintiffs had not established Article III standing).

**B.  Defendants Are Entitled to Summary Judgment on Count I Because the Rule and ATF's Other Actions Were Lawful.**

None of ATF's actions challenged by Plaintiffs violated the GCA or exceeded ATF's statutory authority.  Under longstanding Supreme Court precedent, courts give respect to the conclusions of agencies operating within their expertise.  Agency determinations "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.  The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity

of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Respect for ATF's conclusions is particularly warranted here because the determination of whether a particular partially complete frame or receiver has reached a stage of manufacture to be considered a "frame" or "receiver" is essentially an act of line drawing on a topic within ATF's technical expertise. Courts are "generally unwilling to review line-drawing performed by [an agency] unless a [plaintiff] can demonstrate that lines drawn are patently unreasonable, having no relationship to the underlying regulatory problem." *ExxonMobil Gas Mktg. Co. v. FERC*, 297 F.3d 1071, 1085 (D.C. Cir. 2002) (citation omitted). In any event, regardless of the level of deference applied by the Court, ATF's actions withstand review because, as explained below, ATF's actions are consistent with the best reading of the GCA's text.

### 1. ATF Lawfully Defined "Frame" or "Receiver" to Include Partially Complete Frames and Receivers that Are Designed to or May Readily Be Converted to Function as a Frame or Receiver.

ATF acted lawfully, and consistently with the best interpretation of the GCA's text, in defining the GCA's term "frame or receiver" to include partially complete receivers that are designed to or may readily be converted to function as a frame or receiver, but not to include partially complete receivers that do not satisfy that standard. In the GCA, Congress defined "firearm" to include, as relevant here, "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive[,]" and "(B) the frame or receiver of any such weapon[.]" 18 U.S.C. § 921(a)(3). However, Congress did not further define "frame or receiver." Congress therefore delegated authority to define these terms to ATF.[3] Defining "frame or receiver" involves the question of *which* part of a weapon is the frame or receiver[4] and the question of *when* a partially complete frame or receiver is sufficiently close to completion to constitute a frame or receiver. ATF acted lawfully by answering the latter question with a test hinging on whether a product is designed to or may readily be converted to function as a frame or receiver: "The terms 'frame' and 'receiver' shall include a partially

---

[3] *See* 18 U.S.C. § 926(a) (empowering the Attorney General to promulgate regulations "necessary to carry out the provisions of" the GCA); 28 C.F.R. § 0.130(a)(1)-(2) (Attorney General delegating authority to ATF); *Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990) (§ 926 "almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary'").

[4] ATF determined which part of a weapon constitutes the frame or receiver in 27 C.F.R. § 478.12(a). *See* 87 Fed. Reg. at 24,735-24,738. Plaintiffs do not take issue with this part of the Rule.

complete, disassembled, or nonfunctional frame or receiver, including a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver[.]"  27 C.F.R. § 478.12(c); 87 Fed. Reg. at 24,739.

Defining frame or receivers to include partially complete frames or receivers that are designed to function or may readily be converted to function as a frame or receiver, but not partially complete frames or receivers that do not meet these standards, accords with the GCA's text, statutory structure, purposes, and longstanding ATF practice.  As a matter of ordinary language, references to a manufactured object are generally understood to include not just complete and fully functional objects, but also partially complete objects that can readily be converted to a functional state.  A bicycle is still a bicycle even if lacks pedals, a chain, or some other component needed to render it complete or allow it to function.  So too if the bicycle is shipped with plastic guards attached to the gears or brakes that must be removed before operation, or with a seat tube that the user must cut to length before installing.  No one could deny that a company selling and shipping products in any of those conditions was engaged in selling "bicycles."  But in ordinary language, one would not consider a partially complete bicycle that could only be completed with great difficulty (e.g., requiring complex machining operations that would take significant time or require specialized equipment or expertise) to be a "bicycle."  The Rule therefore aligns with ordinary usage.[5]

The structure of the GCA and federal firearms laws likewise supports the Rule's interpretation of "frame or receiver."  The GCA does not expressly answer the question of how far along a partially complete frame or receiver must be to qualify as a frame or receiver, but when Congress answered that question with respect to other items in federal firearms laws, Congress used a "designed or readily converted" test.  For example, a "weapon" is a firearm not only if it can "expel a projectile by the action of an explosive[,]" but also if it "is designed to or may readily be converted to" do so.  18 U.S.C. § 921(a)(3)(A).  And the NFA similarly defines "machinegun" to include a weapon that shoots automatically or "is designed to . . . or can be readily restored" to do so.  26 U.S.C. § 5845(b).  The Rule

---

[5] The Rule's inclusion of products that are "designed to . . . function as a frame or receiver" includes unserviceable frames or receivers that are designed to function but cannot because of damage, poor workmanship, or design flaw.  *See* 87 Fed. Reg. at 24,685-86 & nn. 99-100, 105.  This too accords with ordinary language.  A bicycle that cannot ride because it has been damaged in a collision or because it is poorly made is still a "bicycle."

thus operates consistently with the structure of federal firearms laws by treating partially complete frames or receivers similarly to how the GCA treats partially complete weapons and how the NFA treats partially complete machineguns.  However, it would be in tension with the structure of federal firearms laws to define "frame or receiver" more broadly to include all partially complete frames or receivers regardless of the proximity to completion, or partially complete receivers that do not satisfy either a designed to function or readily converted to function test.  Congress gave no indication that it intended looser standards to apply to partially complete frames or receivers than the standards it explicitly adopted for weapons and for machineguns.

The Rule's test for partially complete frames and receivers is consistent with and advances the GCA's purposes.  If, for example, the GCA were construed to regulate only complete and functional frames and receivers, then people would easily be able to circumvent the requirements of the GCA by producing or purchasing almost-complete frames or receivers that could easily be altered to produce a functional frame or receiver without any of the licensing, background checks, recordkeeping, or tracing requirements that apply to "firearms."  *See New York v. Burger*, 482 U.S. 691, 713 (1987) ("[T]he regulatory goals of the Gun Control Act . . . ensure[] that 'weapons [are] distributed through regular channels and in a traceable manner,'" thus making "possible the prevention of sales to undesirable customers and the detection of the origin of particular firearms.") (citation omitted).  By contrast, to serve the purposes of the GCA, it is not necessary to classify as firearms such partially complete frames or receivers that could only be converted to a functional frame or receiver through great difficulty, because such products do not allow easy circumvention of the GCA's requirements.

Finally, although the Rule updates ATF's policies in certain important respects,[6] it continues ATF's longstanding practice of treating partially complete frames or receivers as firearms only if they can readily be converted to a functional state.  As the Rule explains, "ATF has long held that a piece of metal,

---

[6] "Prior to this rule, ATF did not examine templates, jigs, or other items and materials in determining whether partially complete frames or receivers were 'firearms' under the GCA."  87 Fed. Reg. at 24,668.  Such items are relevant to the "readily" determination because they can make it significantly easier to complete a partially complete frame or receiver.  The Rule accordingly provides that when classifying a partially complete frame or receiver, ATF "may consider any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials that are sold, distributed, or possessed with the item or kit[.]"  27 C.F.R. § 478.12(c); 87 Fed. Reg. at 24,739.

plastic, or other material becomes a frame or receiver when it has reached a 'critical stage of manufacture'" – that is, when a product "is 'brought to a stage of completeness that will allow it to accept the firearm components [for] which it is designed . . . using basic tools in a reasonable amount of time.'" 87 Fed. Reg. at 24,685 (quoting ATF Letter to Private Counsel #303304, at 3-4 (Mar. 20, 2015)).  Indeed, in several classification letters dating back to the 1970s, ATF looked specifically at whether partially complete frames or receivers could be "readily converted to functional condition."[7]

In sum, ATF correctly construed the GCA and acted well within its statutory authority in determining that the test for whether a partially complete frame or receiver qualifies as a frame or receiver is whether the product is designed to function or may readily be converted to function as a frame or receiver.  Indeed, Defendants do not understand Plaintiffs to disagree with this test.  *See*, *e.g.*, Suppl. Am. Compl. ¶ 3 (endorsing "designed to or may readily be converted" test for partially complete frames and receivers); *id.* ¶¶ 8, 14, 64.  Notably, in another lawsuit where firearms manufacturers and other plaintiffs are challenging ATF's authority to regulate partially complete frames and receivers, California and an organization affiliated with Giffords Law Center have submitted *amicus* briefs in support of the federal government, championing the Rule as a lawful and effective regulation of ghost guns.  *See* Brief for D.C. and the States of N.J., Pa., Cal., et al., *Garland v. VanDerStok*, No. 23A82 (U.S. July 29, 2023) ("California *VanDerStok* Br."); Amici Curiae Brief of Gun Owners for Safety et al., *VanDerStok v. Garland*, 4:22-cv-00691-O, ECF No. 58 (N.D. Tex. Sept. 9, 2022).  For example, California (along with D.C. and 19 other states) argued to the Supreme Court that "[t]he Final Rule . . . is consistent with the text, history, and purposes of the GCA" because it correctly "recognizes" that "readily assembled weapon parts kits and partially complete frames or receivers are 'firearms' under the statute's plain text."  California

---

[7] *See*, *e.g.*, ATF 000010 (Classification Letter from Apr. 20, 1978 finding that product "has reached a stage of manufacture such that *it may be readily converted to functional condition*.  Therefore, it is a firearm and is subject to all applicable controls under the provisions of the [GCA].") (emphasis added); ATF 000017 (Letter from Aug. 2, 1978, stating that "[i]t is [ATF's] position that an unfinished firearm receiver *which may be readily converted to functional condition* is a firearm as defined.") (emphasis added); ATF 000020 (Letter from Mar. 22, 1979 stating "[t]he frame or receiver of a firearm is considered to be subject to the provisions of the [GCA] at such time that it has reached a stage in its manufacture where the frame can be readily converted to fire."); ATF 000023 (Classification Letter from Jan. 31, 1980 stating that "[a] 'piece of metal' is considered to be a firearm receiver and subject to the provisions of the [GCA] at such time as it reaches a stage in manufacture *where it can be readily converted to a functional condition*.") (emphasis added).

*VanDerStok* Br. 4.  Defendants agree with California's arguments to the Supreme Court that "[t]he Final Rule addresses the problems that have contributed to this alarming proliferation of untraceable guns in multiple ways," *id.* at 14, that it "stops a growing segment of the modern gun industry from exploiting new technology to widen the very gaps that the GCA sought to close," *id.* at 16, and that "[i]t falls squarely within the GCA's framework and is plainly valid," *id.* at 17.

## 2.   Many of Plaintiffs' Arguments Rest on Misunderstandings of ATF's Actions.

Although Plaintiffs apparently agree with ATF's "designed to or may readily be converted" test for partially complete frames and receivers, Plaintiffs nonetheless attack ATF's actions as unlawful, resting in large part on misconceptions about those actions.

a.   Plaintiffs accuse ATF of repudiating a "designed to or may readily be converted" test in favor of a purportedly distinct "'machining operations' approach," which Plaintiffs argue involves consideration of only the machining operations left to be performed and not how quickly or easily a product can be completed.  Suppl. Am. Compl. ¶¶ 65.  Plaintiffs argue that ATF adopted this approach long before the Rule was issued, *see id.* ¶¶ 65-70, but that ATF has continued to use this approach in applying the Rule, *id.* ¶¶ 103, 107, 171, 182.

Plaintiffs' supposed distinction between a "designed to or may readily be converted" test and consideration of "machining operations" is illusory.  ATF does consider the machining operations that must be performed to complete a partially complete frame or receiver in classifying such a product, but it considers these machining operations in order to *apply* the Rule's "designed to or may readily be completed, assembled, restored, or otherwise converted to function" test, not to *repudiate* it.  The Rule lists eight factors relevant to the determination of whether a process may "readily" be performed: (1) time, (2) ease, (3) expertise, (4) equipment, (5) parts availability, (6) expense, (7) scope, and (8) feasibility.  27 C.F.R. § 478.11; 87 Fed. Reg. at 24,735; *see also* 87 Fed. Reg. at 24,663 (explaining that these factors are derived from case law construing "readily" in other firearms laws).  For any given partially complete frame or receiver, the machining operations necessary for completion are highly relevant to most, if not all, of these factors.  For example, if a product has many complex machining operations left to be performed before it is functional (as opposed to a small number of simple operations), it is more likely to take a longer time to complete (factor 1), be more difficult to complete (factor 2), require more knowledge

and skill to complete (factor 3), require more complex equipment to complete (factor 4), require additional parts to complete (factor 5), be more expensive to complete (factor 6), require greater changes to the product to complete (factor 7), and be more likely to damage the product in the process of completion (factor 8).  Thus, in applying the "readily" test, it is necessary to examine what machining operations must be performed to complete the product.  As ATF explained in the Rule's Preamble, "[r]ather than a new or different test, how quickly and easily an item could be made functional is largely determined by which machining operations still needed to be performed."  87 Fed. Reg. at 24,668.

A recent ATF open letter illustrates the interplay between the machining operations left to be completed and the consideration of whether a partially complete frame or receiver can readily be completed to a functional state.  *See* Suppl. Am. Compl. Ex. 25, ATF, *Open Letter to All Federal Firearms Licensees – Impact of Final Rule 2021-05F on Partially Complete Polymer80, Lone Wolf, and Similar Semiautomatic Pistol Frames* (Dec. 27, 2022) ("December 2022 Open Letter").  The December 2022 Open Letter begins by quoting the Rule's "designed to or may readily be completed, assembled, restored, or otherwise converted" test for partially complete firearms, *id.* at 2 (quoting 27 C.F.R. § 478.12(c)), and the Rule's eight-factor definition of "readily," *id.* at 2-3 (quoting 27 C.F.R. § 478.11).  The Open Letter then analyzes what machining operations must be performed to convert certain partially complete pistol frames manufactured by Polymer80 to a functional state, explaining that the frames are functional "[o]nce" a person "remove[s]" "temporary rails or blocking tabs."  *Id.* at 6.  The Open Letter concludes that these tabs "are easily removable by a person with novice skill, using common tools, such as a Dremel-type rotary tool, within minutes—an amount of time and a set of circumstances that are far less than required to fall within the meaning of the term 'readily' in the Final Rule."  *Id.*  In other words, because completing the product requires only limited and simple machining operations, completion can be performed quickly and easily by a person with novice skills using common tools, which satisfies the regulatory test for "readily."  This letter demonstrates how ATF considers "which machining operations still needed to be performed" in order to determine "how quickly and easily an item could be made functional" and apply the Rule's definition of "readily."  87 Fed. Reg. at 24,668.

Furthermore, the Rule goes beyond machining operations in providing that indexing of locations for drilling holes, or supporting materials such as jigs, are relevant to classifying a partially complete

frame or receiver.  For example, the Rule provides that a partially complete AR-15 variant receiver without critical interior areas having been indexed, machined, or formed is not a receiver without supporting materials such as jigs, but that such a product would be a receiver if it is sold with a compatible jig, template, or instructions, or if it is indexed to indicate the location for drilling holes.  *See* 27 C.F.R. § 478.12(c), Examples 1, 2, 4; 87 Fed. Reg. at 24,739.  A jig does not change the machining operations necessary to complete a product, but it makes those machining operations significantly easier by holding the product in place to guide the drilling operations in the correct size and location.  Indexing serves a similar function by indicating precisely where holes should be drilled.  *See* 87 Fed. Reg. at 24,668.  ATF's consideration of indexing and supporting materials such as jigs, in addition to the machining operations left to be performed, confirms that ATF's classifications hinge on how quickly and easily a product can be completed.

b.      Plaintiffs make two related arguments regarding so-called "80 percent frames and receivers."  First, they argue that ATF has incorrectly endorsed a categorical rule that standalone 80 percent frames and receivers are never firearms, *i.e.*, "that 80 percent receivers and frames are ***not firearms*** under the GCA if they are sold ***without*** a template, jig, or other items and materials," Suppl. Am. Compl. ¶ 91; *see also id.* ¶ 6 ("Defendants have determined that 80 percent receivers and frames are not 'firearms' under the GCA, and that therefore the statutory requirements and prohibitions of the GCA do not apply to these products.").  Second, Plaintiffs have asked this Court to hold that *all* 80 percent frames and receivers are firearms, specifically requesting a declaratory judgment "[d]eclaring that 80 percent receivers and frames are 'firearms' under the GCA."  *Id.*, Prayer for Relief, § a.; *see also id.* ¶ 17 ("This Court should declare that 80 percent receivers and frames are firearms that must be regulated under the GCA[.]").  Plaintiffs are incorrect on both counts.  ATF has not adopted a rule that *no* "80 percent frames or receivers" are firearms, but Plaintiffs' proposed rule that *all* "80 percent frames or receivers" are firearms is inconsistent with the GCA.

To understand why Plaintiffs' arguments regarding "80 percent frames or receivers" are incorrect, it is necessary to understand what the "80 percent" label is and what it is not.  As applied to partially complete frames and receivers, the label "80 percent" is marketing language commonly used in the firearms industry to refer to a wide variety of products.  *See* December 2022 Open Letter at 3 ("80%"

15

labels "are merely terms used by some to market these items[]"); ATF Firearms Technology Branch, Technical Bulletin 14-01 (Nov. 1, 2013), ATF 000652 ("80%" terms are "industry vernacular"). The label has no legal meaning, and it is "neither recognized nor defined in in Federal firearms statutes or regulations." ATF 000652. The Rule's preamble mentions the phrase "80% receiver" only to clarify that "that term is neither found in Federal law nor accepted by ATF." 87 Fed. Reg. at 24,663 n.47. Nor does the label have any quantitative meaning. Although the label evokes a sense of mathematical precision, it does not signify that a product is 80 percent complete in any measurable sense. Simply put, the only defining criterion of an "80 percent" frame or receiver is that the manufacturer or seller has decided to use that label to market the product.

ATF has not, as Plaintiffs incorrectly assert, adopted a rule that "80 percent receivers and frames are not 'firearms,'" Suppl. Am. Compl. ¶ 6, or that "80 percent" products are not firearms if sold on a standalone basis, without jigs or supporting materials, id. ¶ 91. The Rule does not adopt, and indeed affirmatively rejects, the "80 percent" nomenclature. See 87 Fed. Reg. at 24,663 n.47. The Rule applies the same test to all partially complete frames and receivers, regardless of whether the manufacturer or seller uses the "80 percent" marketing label: whether the product "is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver[.]" 27 C.F.R. § 478.12(c); 87 Fed. Reg. at 24,739. Some products marketed as "80 percent frames or receivers" meet this standard, even when sold on a standalone basis. For example, the December 2022 Open Letter concludes that certain so-called "80%" pistol frames manufactured by Polymer80 and Lone Wolf "are '**frames**' and also '**firearms**' as defined in the GCA and its implementing regulations," "*even without* any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials," because they "have reached a stage of manufacture where they *'may readily be completed, assembled, restored, or otherwise converted'* to a functional frame." December 2022 Open Letter at 1. And since adopting the Final Rule, ATF has issued approximately two dozen classification letters concluding that a particular partially complete frame or receiver (most of which are marketed as "80%" products or are similar to products commonly marketed as "80%" products) is, on a standalone basis, a frame or receiver.[8]

---

[8] *See* ATF Supp 000226; ATF Supp 000233; ATF Supp 000248; ATF Supp 000257; ATF Supp 000263; ATF Supp 000268; ATF Supp 000278; ATF Supp 000283; ATF Supp 000288; ATF Supp 000293; ATF Supp 000298; ATF Supp 000303; ATF Supp 000308; ATF Supp 000313; ATF Supp

Yet Plaintiffs are incorrect to argue that ATF acted unlawfully in not adopting a rule that *all* "80 percent frames and receivers" are firearms.  Plaintiffs' proposed declaration "that 80 percent receivers and frames are 'firearms' under the GCA," Suppl. Am. Compl., Prayer For Relief, § a, is neither required by nor consistent with the GCA.  Whether a partially complete frame or receiver is a firearm under the GCA depends on the characteristics of the product, not whether the seller or manufacturer has applied a marketing label that Plaintiffs admit is "arbitrary."  *Id.* ¶ 3.  As an ATF technical bulletin demonstrates, products bearing the "80%" label differ widely, such that some such products qualify as firearms under the GCA and some do not.  *See* ATF 000652-000657.  As described further below, Plaintiffs disagree with ATF's determinations that certain partially complete AR-type receivers that are often marketed as "80 percent" receivers do not qualify as firearms under the GCA because they may not readily be completed to a functional state.  *See infra*, pp. 17-23.  But even if the Court agreed with Plaintiffs on that dispute concerning specific products, it would be improper to declare broadly that all "80 percent frames and receivers" are firearms.  Such a ruling would be legally indeterminate because the label "80 percent" has no legal meaning.  And any manufacturer could easily evade the import of such a ruling by using a different marketing label instead of "80 percent" (given that the label has no quantitative meaning, a manufacturer could just as easily use "78 percent" or "79 percent" as a marketing label).  Rather than make the classification of products under the GCA turn on a legally meaningless marketing label, the better approach is the one adopted by the Rule: that a partially complete frame or receiver is a firearm if it is designed to function, or may readily be converted to function, as a frame or receiver.

### 3. ATF Correctly Concluded that AR-15 Variant Partially Complete Receivers Without Critical Interior Areas Having Been Indexed, Machined or Formed Are Not Receivers Absent Supporting Materials.

Putting aside Plaintiffs' misconceptions about ATF's actions, the heart of Plaintiffs' disagreement with ATF concerns partially complete AR-15 variant receivers.  ATF determined in the Rule, and has reiterated and clarified in guidance and classifications of specific products, that the billet or blank of an AR-15 variant receiver is not a firearm if its fire control cavity is not machined or indexed, and if it is not

---

000338; ATF Supp 000358; ATF Supp 000378; ATF Supp 000398; ATF Supp 000403; ATF Supp 000418; ATF Supp 000423; ATF Supp 000428; ATF Supp 000433; ATF Supp 000458; ATF Supp 000473.

1   sold, distributed or possessed with supporting materials such as jigs, based on ATF's conclusion that such

2   a product cannot readily be completed into a functional receiver.  Plaintiffs disagree and argue that such

3   products are receivers, and therefore firearms, under the GCA.  ATF's application of its technical expertise

4   to this category of products was lawful.  ATF correctly concluded that an AR-15 receiver blank without

5   machining or indexing in the fire control cavity is sufficiently difficult to complete that it does not satisfy

6   the Rule's "readily" test, at least in the absence of supporting materials such as jigs that make it much

7   easier to complete the product to a functional state.

8       ***Example 4 of the Rule.***  In order to "illustrate the definitions" of frame, receiver, and readily, the

9   Rule set forth five "nonexclusive examples" that addressed how particular partially complete frames or

10  receivers would be classified under the Rule.  *See* 27 C.F.R. § 478.12(c); 87 Fed. Reg. at 24,739.  Plaintiffs

11  disagree with Example 4, which states: "A billet or blank of an AR-15 variant receiver without critical

12  interior areas having been indexed, machined, or formed that is not sold, distributed, or possessed with

13  instructions, jigs, templates, equipment, or tools such that it may readily be completed is not a receiver."

14  27 C.F.R. § 478.12(c), Example 4; 87 Fed. Reg. at 24,739.  This example is limited in several respects.  It

15  applies only to "AR-15 variant[9] receivers," not any other type of partially complete frame or receiver.

16  Even among AR-15 variant receivers, it applies only to those products "without critical interior areas

17  having been indexed, machined, or formed" and that are "not sold, distributed, or possessed with

18  instructions, jigs, templates, equipment, or tools such that it may readily be completed." 27 C.F.R.

19  § 478.12.  Other examples clarify that a partially complete frame or receiver blank is a frame or receiver

20  if it "is sold, distributed, or possessed with a compatible jig or template," 27 C.F.R. § 478.12(c), Example

21  1; 87 Fed. Reg. at 24,739, or if it has "one or more template holes drilled or indexed in the correct

22  location," 27 C.F.R. § 478.12(c), Example 2; 87 Fed. Reg. at 24,739, as either of these circumstances

23  would allow the product to "readily" be completed.

24      Yet without supporting materials such as jigs, it is quite difficult to complete an AR-15 receiver

25  blank without any machining or indexing in the fire control cavity.  As the Rule explains, completing such

26  a product requires completing steps such as "milling out the fire control cavity of an AR-15 billet or blank,

27

28      [9] The Rule defines "variant" as "a weapon utilizing a similar frame or receiver design irrespective of new or different model designations or configurations, characteristics, features, components, accessories, or attachments."  27 C.F.R. § 478.12(a)(3); 87 Fed. Reg. at 24,735.

or indexing for that operation." 87 Fed. Reg. at 24,668. These milling and machining steps can each require significant skill, equipment, and time, and these steps can include 1) "milling out of fire-control cavity"; 2) "drilling of selector-lever hole"; 3) "cutting of trigger slot"; 4) "drilling of trigger pin hole; and 5) "drilling of hammer pin hole." Suppl. Am. Compl., Ex. 11. The Rule makes clear that if the partially complete frame or receiver is "indexed" or "dimpled" – indicating the exact locations of holes or cavities that need to be drilled or machined to make the component a complete, functional frame or receiver – then it will be considered a frame or receiver. 87 Fed. Reg. at 24,668. However, conducting these machining steps from scratch, without indexing, or jigs, templates, or other instructions, requires sophisticated equipment, machining skill, and time. *See, e.g.*, 87 Fed. Reg. at 24,688-89 (discussing difficulty of machining, milling, and converting unfinished frame or receiver to a frame or receiver in the absence of indexing or a seller providing jigs, templates, or kits to accompany the unfinished frame or receiver). Therefore, such a partially complete frame or receiver cannot "readily" be converted into a complete, functional frame or receiver.

> ***ATF Slide Deck and YouTube Video.*** ATF's other actions that reiterate, clarify, or apply Example 4 of § 478.12(c) are similarly lawful. Plaintiffs criticize slide 14 of a slide deck explaining the Rule that is posted on ATF's website, *see* Suppl. Am. Compl. ¶ 100; ATF, *FINAL RULE 2021R-05F-Definition of "Frame or Receiver" and Identification of Firearms*, https://www.atf.gov/firearms/docs/guide/overview-final-rule-2021r-05f-definition-%E2%80%9Cframe-or-receiver%E2%80%9D-and-identification/download, ATF Supp 000102-62 (ATF Slide Deck), but that slide does nothing more than quote Example 4 of § 478.12(c) (though labeling it as "Example 2") with a picture. *Compare* § 478.12(c), Example 4, *with* ATF Supp 000115.[10] Similarly, Plaintiffs' disagreement with a YouTube video posted by ATF appears to be limited to a section of the video that displays and quotes from slide 14 of the ATF Slide Deck. *See* Suppl. Am. Compl. ¶ 101; FINAL RULE 2021R-05F-Definition Of "Frame Or Receiver" And Identification Of Firearms, YouTube, at 9:10-9:43 (Aug. 26, 2022), https://www.youtube.com/watch?v=q7XWhcx_Q3A. The ATF Slide Deck and YouTube video are

---

[10] Plaintiffs incorrectly assert that the ATF Slide Deck states that "un-machined 80 percent receivers not sold, distributed, or possessed with instructions, jigs, templates, equipment, or tools are *not* firearm receivers under the GCA." Suppl. Am. Compl. ¶ 100. The relevant slide, like Example 4, clearly refers to "[a] billet or blank of an AR-15 variant receiver," ATF Supp 000115, not all so-called "80 percent receivers."

1    lawful for the same reasons that Example 4 is lawful.

2           ***September 2022 Open Letter.*** The September 2022 Open Letter, which explains and clarifies

3    Example 4, likewise faithfully applies the GCA and the Rule.  The analysis section of the letter begins by

4    noting that federal firearms laws and the Rule do not employ terms such as "80%," but instead, the Rule's

5    use of the term "readily" involves "examin[ing] how efficiently, quickly, and easily a clearly identifiable

6    component part of a weapon can be completed, assembled, restored, or otherwise converted to house or

7    provide a structure for the applicable fire control component."  September 2022 Open Letter at 3.  The

8    letter clarifies that the "critical interior areas" described in Example 4 are the "fire control cavity," which

9    "is the critical area of the receiver because this area 'provides housing for the trigger mechanism and

10   hammer.'"  *Id.* at 3-4 (quoting 27 C.F.R. § 478.12(f)(1)(i)).  As the letter explains, "[t]o be a 'functional'

11   receiver, an AR-type receiver must include a cavity sufficient to house the relevant internal parts,

12   including a hole for a selector and 2 pin holes (trigger pin and hammer pin) in precise locations.  Removing

13   or indexing any material in this critical area, or completing or indexing any of these holes, is therefore a

14   crucial step in producing a functional receiver."  *Id.* at 3. Therefore, "in order not to be considered

15   '**readily**' completed to function, ATF has determined that a partially complete AR-type receiver must

16   have no indexing or machining of any kind performed in the area of the trigger/hammer (fire control)

17   cavity."  *Id.*

18          ATF further explained "the point at which . . . the fire control cavity begins."  *Id.* at 4.  Applying

19   its technical expertise based on decades of classifying partially complete frames and receivers, ATF

20   "determined that drilling or milling a standard 0.800-inch takedown-pin area, measured from immediately

21   forward of the front of the buffer retainer hole next to the fire control cavity, does not impact the ability

22   of the fire control cavity to house the trigger mechanism and hammer."  *Id.*[11]  Therefore, "[p]rovided this

23   length [0.800 inches] is not exceeded, the fire control cavity remains *'without critical interior areas having*

24   *been indexed, machined, or formed'* as stated in 27 CFR 478.12(c), Example 4." September 2022 Open

25   Letter at 4.  The letter clarified that this analysis "only applies" to products "without any associated

26

27          _____
           [11] *See also* ATF 000171-72 (classification letter from March 16, 2011 concluding that for an AR-
28   15 variant receiver, "in order to be considered 'completely solid and un-machined in the fire-control recess
     area,' the takedown-pin lug clearance area must be no longer than .800 inch, measured from immediately
     forward of the front of the buffer retainer hole").

templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials," and that such materials "may change the analysis" because "jigs, templates, or instructions can provide the same indexing as if it were placed directly on the unfinished frame or receiver." *Id.* at 6. The letter illustrated each of these points with labeled photographs. *Id.* at 3-6.

The September 2022 Open Letter reflects a lawful application of ATF's technical expertise to apply faithfully the GCA and the Rule, including its "readily" test for partially complete frames and receivers. ATF accurately concluded that given the difficulty of milling and machining the fire control cavity of an AR-15 receiver blank such that it can provide housing for the trigger mechanism and hammer, an AR-15 receiver blank with no machining or indexing in the fire control cavity may not readily be converted to function as a receiver. But indexing, any machining of the fire control cavity, or the presence of compatible materials such as jigs may change the analysis such that it is sufficiently easy to convert the product to a functional state to meet the "readily" test.

***Website Questions and Answers.*** Plaintiffs challenge a set of questions and answers on ATF's website (which Plaintiffs label the "Ghost Gun Guidance"), which ATF posted on its website in 2015 and which remains on ATF's website. *See* Suppl. Am. Compl. ¶¶ 83-88; ATF, Receiver Blanks, https://www.atf.gov/qa-category/receiver-blanks, ATF Supp 000163-72. Plaintiffs appear to disagree with just one of the pages of this section of the website, which states: "Receiver blanks that do not meet the definition of a 'firearm' are not subject to regulation under the Gun Control Act (GCA). ATF has long held that items such as receiver blanks, 'castings' or 'machined bodies' in which the fire-control cavity area is completely solid and un-machined have not reached the 'stage of manufacture' which would result in the classification of a firearm according to the GCA." ATF, https://www.atf.gov/firearms/qa/are-%E2%80%9C80%E2%80%9D-or-%E2%80%9Cunfinished%E2%80%9D-receivers-illegal, ATF Supp 000164-000165. The page then contains three photographs of partially complete AR-15 variant receivers, two of which are not classified as firearms (because there is no machining or indexing in the fire control cavity) and one of which is classified as a firearm (because the fire control cavity is partly machined). *See id.* This page essentially reaches the same conclusion as the September 2022 Open Letter, using slightly different language. It is lawful for the same reasons as the September 2022 Open Letter. Furthermore, another question and answer page states that "[i]n some cases, items being marketed as 'unfinished' or

'80%' receivers do actually meet the definition of a 'firearm' as defined in the Gun Control Act (GCA)." ATF, https://www.atf.gov/firearms/qa/are-some-items-being-marketed-non-firearm-unfinished-or-80-receivers-actually-considered, ATF Supp 000166.  This statement is consistent with the Rule's "readily" standard, and further belies Plaintiffs' unfounded allegation that ATF has "determined that 80 percent receivers and frames are not 'firearms' under the GCA."  Suppl. Am. Compl. ¶ 7.

*Post-Rule Classification Letters.*  In a series of classification letters addressing partially complete AR-type receivers, ATF faithfully applied the GCA and the Rule (including the "readily" standard and Example 4), as elucidated in the September 2022 Open Letter.  Plaintiffs challenge 23 classification letters in which ATF concluded that a partially complete AR-type receiver was not a receiver or a firearm under the GCA or the Rule.  *E.g.*, ATF Supp 000238-000242.[12]  Each letter begins by quoting the relevant portions of the GCA and the Rule, including the GCA's definition of "firearm," the Rule's general definition of "frame or receiver," the provision of the Rule addressing partially complete frames and receivers, and the Rule's definition of "readily."  *E.g.*, ATF Supp 000239-000240.  Each letter then, using language substantively identical to the September 2022 Open Letter's language, explains that an AR-type receiver without indexing or machining in the fire control cavity is not a firearm in the absence of supporting materials such as jigs.  *E.g.*, ATF Supp 000240.  Each letter then analyzes the product at issue, with photographs, and concludes that the product lacks indexing or machining in the fire control cavity. *E.g.*, ATF Supp 000241.  On that basis, each letter concludes that ATF "has determined, based on the entire record before it, that the submitted sample may not 'readily be completed, assembled, restored or otherwise converted to function as a frame or receiver.'  Therefore, the submitted 'partially complete' AR-type receiver is not a '**firearm**' as defined in the GCA, 18 U.S.C. § 921(a)(3)."  *E.g.*, ATF Supp 000242. The lawfulness of each of these letters follows directly from the lawfulness of the Rule's "readily" test, Example 4, and the September 2022 Open Letter's conclusion that an AR-type receiver blank without indexing or machining in the fire control cavity is not a firearm in the absence of supporting materials

---

[12] The other classification letters challenged by Plaintiffs are produced in the administrative record at ATF Supp 000221; ATF Supp 000243; ATF Supp 000273; ATF Supp 000318; ATF Supp 000323; ATF Supp 000328; ATF Supp 000333; ATF Supp 000348; ATF Supp 000353; ATF Supp 000363; ATF Supp 000368; ATF Supp 000383; ATF Supp 000388; ATF Supp 000393; ATF Supp 000408; ATF Supp 000438; ATF Supp 000443; ATF Supp 000448; ATF Supp 000453; ATF Supp 000468; ATF Supp 000496; ATF Supp 000502.

such as jigs.

Notably, Plaintiffs do not challenge (and apparently agree with) the dozens of classifications ATF has issued concluding that a partially complete frame or receiver is a firearm.  In 23 letters classifying partially complete AR-type or similar receivers, ATF has concluded that the product is a firearm because it included machining in the fire control cavity, which rendered the product sufficiently easy to complete to satisfy the "readily" test.[13]  ATF likewise classified two partially complete Glock-type pistol frames as firearms, based on analysis echoed in the December 2022 Open Letter, because the simple operations needed to complete the product could be performed quickly and easily.  *See* ATF Supp 000248; ATF Supp 000473.  Plaintiffs do not challenge these classifications and apparently agree with them.  The full set of ATF's classifications, both the "firearm" classifications and the "not a firearm" classifications, shows that ATF is correctly analyzing each partially complete frame or receiver to determine whether it may readily be completed to a functional state.

### 4.  The December 2022 Open Letter Is Lawful.

In the December 2022 Open Letter, ATF determined that certain partially complete striker-fired pistol frames manufactured by Polymer80 and Lone Wolf (and similar products manufactured by others) are firearms because they may readily be completed into functional frames.  *See* December 2022 Open Letter at 1.  Plaintiffs apparently agree with this determination that the products covered by the December 2022 Open Letter are firearms.  Yet they nonetheless argue that the letter "conflicts with the GCA to the extent it fails to include or extend to other categories of similar weapons, such as partially complete hammer-fired pistol frames, that are just as readily convertible into fully functional firearms," stating that ATF's purported "exclusion of these materially identical products from the definition of 'firearm' conflicts with the GCA."  Suppl. Am. Compl. ¶ 172.

Plaintiffs misunderstand the December 2022 Open Letter.  The letter addressed a discrete and limited question: "whether a 'partially complete, disassembled, or nonfunctional' frame of a Polymer80, Lone Wolf, or similar semiautomatic, striker-fired pistol . . . is . . . classified as a 'frame' or 'firearm' in

---

[13] *See* ATF Supp 000226; ATF Supp 000233; ATF Supp 000257; ATF Supp 000263; ATF Supp 000268; ATF Supp 000278; ATF Supp 000283; ATF Supp 000288; ATF Supp 000293; ATF Supp 000298; ATF Supp 000303; ATF Supp 000308; ATF Supp 000313; ATF Supp 000338; ATF Supp 000358; ATF Supp 000378; ATF Supp 000398; ATF Supp 000403; ATF Supp 000418; ATF Supp 000423; ATF Supp 000428; ATF Supp 000433; ATF Supp 000458.

accordance with the [Final Rule]."  December 2022 Open Letter at 1.  It did not opine, one way or the other, on whether any other type of product (such as a partially complete hammer-fired pistol frame) is a frame or firearm under the GCA and the Rule.  The letter certainly did not "exclu[de]" any "products from the definition of 'firearm,'" Suppl. Am. Compl. ¶ 172, or state or imply that any product was not a firearm.  Rather, the December 2022 Letter clarifies that other partially complete frames and receivers will be classified based on whether they are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver," and based on the Rule's definition of "readily."  December 2022 Open Letter at 2-3 ("For each and every assessment of whether any partially complete frame (in the case of a handgun) or receiver (in the case of a long gun) – whether assessed individually, or in conjunction with other items – is a 'firearm' under the GCA, parties must consider the above definition, including all factors that are relevant to that assessment.").  The December 2022 Open Letter cannot be unlawful for *misclassifying* products that it *did not classify* at all.

The limited nature of the December 2022 Open Letter is consistent with ATF's general practice regarding Open Letters.  As ATF's website explains, "ATF periodically publishes Open Letters to the industries it regulates in order to remind or assist licensees with understanding their regulatory compliance responsibilities under the laws and regulations administered by ATF."  ATF, https://www.atf.gov/rules-and-regulations/open-letters, ATF Supp 000173.  Each letter tends to be short and focused on a discrete topic, without purporting to opine on any issues beyond the scope of the letter.  *See generally id.* (collecting ATF's open letters).  For example, earlier this year, ATF issued an open letter addressing how federal firearms licensees in Vermont can comply with federal and state obligations concerning background checks in light of a recently enacted Vermont statute.  *See* ATF, Open Letter to all Vermont Federal Firearms Licensees Regarding Changes to Vermont Law 13 V.S.A. § 4019 (Mar. 9, 2023), https://www.atf.gov/firearms/docs/open-letter/vermont-march-2023-open-letter-changes-vermont-law-13-vsa-§-4019/download.  Just as the Vermont open letter is not unlawful for not addressing background check obligations in New Hampshire, the December 2022 Open Letter concerning certain striker-fired pistol frames is not unlawful for not addressing the classification of hammer-fired pistol frames.  Yet if the Court holds that this letter is unlawful because it addresses some topics and not others, such a conclusion would call into question ATF's ability to issue guidance on discrete and limited topics, which

is a useful method for ATF to provide information to the public and regulated parties about ATF's interpretations of federal firearms laws.  The Court should reject Plaintiffs' argument that the December 2022 Open Letter is unlawful because of topics that it does not address.

### C.  The Rule and Letters Are Reasonable.

Plaintiffs' arbitrary-and-capricious claims fare no better.  The APA's "arbitrary [or] capricious . . . standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Ranchers Cattlemen Action Legal Fund v. USDA*, 499 F.3d 1108, 1115 (9th Cir. 2007) (citation omitted).  Plaintiffs bear a "heavy burden" in seeking to rebut the presumption that the agency action is valid.  *Managed Pharmacy Care v. Sebelius*, 716 F.3d 1235, 1244 (9th Cir. 2013).  And where, as here, the agency decision involves "a high level of technical expertise," a court must be particularly deferential.  *Sierra Club v. EPA*, 346 F.3d 955, 961 (9th Cir. 2003); *see Sig Sauer, Inc. v. Jones*, 133 F. Supp. 3d 364, 371 (D.N.H. 2015) (explaining that examination of firearms parts and comparison with other items on the market "require[s] expertise that is well within ATF's grasp . . . [and] entitled to substantial deference").

Plaintiffs make two allegations in support of their arbitrary-and-capricious claim.  First, Plaintiffs allege that the Rule and Letters are arbitrary because (Plaintiffs claim) they consider partially complete frames and receivers to be regulable "frames" and "receivers" only if they are sold in kits or alongside jigs, templates, or similar equipment.  Second, Plaintiffs contend that the Rule and Letters fail to consider whether they could have reached more conduct than they did.  Neither allegation has merit.

### 1.  Plaintiffs Err in Contending that the Rule and Letters Only Regulate Partially Complete Frames and Receivers Sold in Kits or Alongside Supplementary Materials.

Plaintiffs allege in their Complaint that the Rule and Letters are arbitrary and capricious because the Rule "arbitrarily deems as firearms only those 80 percent[14] receivers and frames sold in kits or alongside jigs, templates, or similar aids leaving 80 percent receivers and frames sold separately wholly unregulated."  Suppl. Am. Compl. ¶ 180; *see also id*. ¶¶ 181 (alleging that the Rule "fail[s] to consider that 80 percent receivers and frames may be easily and legally purchased separate from an assembly kit"),

---

[14] As noted above, although Plaintiffs refer to "80 percent" frames and receivers throughout their Complaint, neither the GCA nor the Rule use this term with respect to frames and receivers. 87 Fed. Reg. at 24,663 n.47; ATF Open Letter to All FFLs, September 2022 Open Letter at 3.

25

182 (alleging that the Letters "leave[] major categories of 80 percent frames and receivers unregulated"). But that allegation is simply mistaken.  The Rule's plain text states that "'[t]he terms 'frame' and 'receiver' shall include a partially complete, disassembled, or nonfunctional frame or receiver, *including* a frame or receiver parts kit, that is designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver[.]" 27 C.F.R. § 478.12(c) (emphasis added).  Partially complete frames and receivers are thus regulated as "frames" and "receivers," regardless of whether they are sold as part of an assembly kit, if they are designed to or may readily be completed to function as a frame or receiver.  And although the Rule does state that when issuing classification decisions for partially complete frames and receivers, ATF "*may consider* any associated templates, jigs, molds, equipment, tools, instructions, guides, or marketing materials" sold by the seller to the buyer of the item or kit, *id*. (emphasis added), nowhere does it condition its regulation of partially complete frames and receivers on the inclusion of templates, jigs, or similar materials.

Plaintiffs' contrary contention is based on a misunderstanding of one illustrative example provided in the Rule to help explain the definition of a "partially complete, disassembled, or nonfunctional frame or receiver."  Suppl. Am. Compl. ¶ 106; *see id*. ¶ 91 n.136 (citing 27 C.F.R. § 478.12(c), Example 4).  But Example 4 provides only that a *specific* type of receiver (an AR-15 variant receiver) in a particular *stage* of manufacture ("without critical interior areas having been indexed, machined or formed") that is "not sold . . . with instructions, jigs, templates, or equipment or tools such that it may be readily completed" is not a receiver.  *Id*. ¶ 91 n.136.  More generally, partially complete frames or receivers sold without instructions, jigs, templates, or similar materials may or may not be considered "frames" and "receivers," depending on whether they are "designed to or may readily be completed, assembled, restored, or otherwise converted to function as a frame or receiver[.]" 27 C.F.R. § 478.12(c).  Indeed, as Plaintiffs concede, *see* Suppl. Am. Compl. ¶ 106, the December 2022 Open Letter determined that a particular type of partially complete frame is a "frame" (and thus, a "firearm") even without any associated templates, jigs, molds, or similar equipment.  *See* December 2022 Open Letter.[15]   And ATF has issued letters

---

[15] Although Plaintiffs are correct that the December 2022 Open Letter only addresses certain types of partially complete frames, *see* Suppl. Am. Compl. ¶ 106, that Letter nowhere represents that other types of partially complete frames and receivers are only regulated as "frames" and "receivers" if they are sold in kits or alongside jigs, templates, or similar equipment.  Nor, at the merits briefing stage, can  Plaintiffs prevail based on contrary allegations made "[o]n information and belief," *see id*.

26

1    classifying roughly two dozen partially complete frames and receivers as firearms, even when not sold as

2    part of a kit.  *See supra*, p. 23 & n.13.  On the other hand, depending on the specific features of the product

3    at issue, other partially complete frames or receivers that are sold without instructions, jigs, templates, or

4    similar materials may not be designed to or readily be completed, assembled, restored, or otherwise

5    converted to function as a frame or receiver.

6           Plaintiffs similarly mistake their reliance on ATF guidance issued after the Rule.  *See* Suppl. Am.

7    Compl. ¶¶ 101, 103-05.  For example, Plaintiffs cite a guidance document on ATF's website that deals

8    only with the *particular* partially complete receiver already discussed above—namely, an AR-15 variant

9    receiver without critical interior areas having been indexed, machined or formed—without making a

10   broader statement about all frames or receivers.  *See id.* ¶¶ 100-101; ATF Supp 000115.  The portion of

11   the ATF YouTube video cited by Plaintiffs is also limited to a discussion of this specific partially complete

12   receiver.  *See* Suppl. Am. Compl. ¶ 101; ATF, *Final Rule: 2018-05F-Definition of "Frame or Receiver"*

13   *and Identification of Firearms*, YouTube, at 9:11-9:44 (Aug. 26, 2022),

14   https://www.youtube.com/watch?v=q7XWhcx_Q3A.  And as the title of ATF's September 27, 2022 Open

15   Letter makes clear, the scope of that Open Letter is limited to the Rule's application to this same type of

16   partially complete receiver.  *See* Suppl. Am. Compl. ¶¶ 103-05; September 2022 Open Letter. These post-

17   Rule guidance materials thus do not show that ATF only regulates partially complete frames or receivers

18   that are sold with jigs, templates, or similar materials as "frames" and "receivers."

19          Moreover, although Plaintiffs attempt to identify contrary representations made by ATF in the

20   course of litigation, *see* Suppl. Am. Compl. ¶¶ 94-95, Plaintiffs' assertions do not withstand scrutiny.

21   Plaintiffs quote out of context a statement at oral argument by government counsel, but they do not quote

22   the statement that immediately follows: that under the Rule, a federal firearms license is "necessary" to

23   manufacture and sell items "that are readily completed to be" a firearm receiver (or frame).  *See* Suppl.

24   Am. Compl., Ex. 1, at 16:6-9.  Indeed, as the December 2022 Open Letter confirms, if a particular partially

25   complete frame or receiver can be readily completed to be a functioning frame or receiver when sold by

26   itself—for example, the frame of a partially complete Polymer80, Lone Wolf, and similar striker-fired

27   semiautomatic pistol—then it is regulated as a "frame" or "receiver" under the GCA.  And Plaintiffs fail

28   to identify anything in two government briefs representing that the Rule regulates partially complete

frames and receivers only if they are sold with jigs, templates, instructions, or similar items.  The first brief cited by Plaintiffs makes clear that "[w]ith the *exception* of frames and receivers," and some other parts, "ATF does not generally regulate individual firearm parts," and also that when classifying firearm parts kits, ATF looks to jigs, templates, or instructions sold with those kits "to determine whether the kit as a whole is readily converted to function as a frame or receiver[.]"  Br. in Opp'n to Pls.' Mot. for Prelim. Inj. at 28, ECF No. 43, *Morehouse Enters. v. ATF*, No. 3:22-cv-116 (Aug. 15, 2022).  And although the second brief cited by Plaintiffs states that the Rule considers jigs, templates, and similar equipment sold alongside a partially complete frame or receiver, it does not represent that such partially complete frames and receivers are regulated as "frames" or "receivers" only if they are sold with jigs, templates, or similar equipment.  *See* Br. in Opp'n to Pls.' Mot. for Prelim. Inj. at 26, ECF No. 41, *VanDerStok v. Garland*, No. 4:22-cv-691 (N.D. Tex. Aug. 29, 2022).

Finally, no other agency materials cited by Plaintiffs state that the Rule only considers partially complete frames and receivers to be firearms if they are sold alongside kits or with jigs, templates, or similar equipment.  The portion of an agency guidance document cited by Plaintiffs addresses only the issue of "[w]hich '80% receiver' *kits* are regulated under the final rule," but does not represent that partially complete frames and receivers that are not sold in kits are exempt from regulation.  *See* Suppl. Am. Compl. ¶ 102 (emphasis added) (citing ATF, *Training Aid for the Identification of Frame or Receiver & Identification of Firearms* at 7 (2022)).[16]  The March 2023 public safety advisory cited by Plaintiffs also does not state that the Rule only regulates partially complete frames and receivers sold with jigs, templates, or similar equipment; indeed, that advisory specifically references two ATF Open Letters (issued on Sept. 27 and Dec. 27, 2022) applying the Rule to regulate certain partially complete frames and receivers sold without such equipment.  *See* Suppl. Am. Compl., Ex. 26, at 3-4.  Nor, finally, does an email exchange with Defendants' counsel, cited by Plaintiffs, represent that the Rule regulates partially complete frames and receivers only if they are sold alongside kits or with jigs, templates, or similar equipment.  *See* Suppl. Am. Compl. ¶¶ 133-34 & Ex. 24.  That exchange represented only that frames or receivers in a particular stage of the manufacturing process—namely, unfinished frame or receiver

---

[16]     https://www.atf.gov/firearms/docs/guide/new-training-aid-overview-final-rule-2021r-05f-definition-frame-or-receiver-and/download

"billets" or "blanks"—are not regulated by the Rule as partially complete frames or receivers unless they are sold to the end buyer with jigs, templates, or tools allowing them to be efficiently, quickly, and easily converted into functional frames or receivers. *See id.* at Ex. 24 (citing 87 Fed. Reg. at 24,700). Once again, this email exchange did not represent generally that only partially complete frames and receivers that are sold alongside kits or with jigs, templates, or similar equipment are regulated by the Rule as "frames or receivers," and such a representation would have been incorrect.

In short, Plaintiffs may not premise an arbitrary-and-capricious claim based on their interpretation of the Rule and Letters as regulating only partially complete frames and receivers sold in kits or alongside jigs, templates, instructions, or similar materials, because that interpretation is mistaken.

### 2. The Rule Did Not Fail to Consider Reaching More Conduct Than It Did, But Instead Chose to Draw the Line in a Different Place Than Plaintiffs Would Have Preferred.

As explained above, the Rule—as implemented by the Letters—regulates as "frames" and "receivers" partially complete, disassembled, or nonfunctional frames or receivers that are designed to or may readily be completed, assembled, restored, or otherwise converted to function as frames or receivers. 27 C.F.R. § 478.12(c). The Rule also provides that when ATF makes a classification decision regarding whether a particular partially complete frame or receiver may be readily converted to be a functional frame or receiver, ATF "may consider any associated templates, jigs, molds, equipment" or the like "that are sold, distributed, or possessed with the item or kit, or otherwise made available by the seller or distributor of the item or kit" to the end buyer. *Id.* Plaintiffs allege that the Rule and ATF's letters implementing the Rule are unreasonable because ATF could have expanded the scope of the Rule to reach more conduct: namely, that in such classification decisions, ATF could have considered the existence of templates, jigs, and similar items available at any point in time elsewhere in the marketplace but not sold with the item or kit or otherwise made available by the seller to the buyer. *See* Suppl. Am. Compl. ¶ 46. But ATF did not fail to consider this possibility; instead, it chose to draw the line in a different place than Plaintiffs would have preferred. And if an agency considers an aspect of the problem that the regulation is designed to address and resolves it differently than would a litigant, that difference does not render the agency action arbitrary and capricious. Accordingly, Plaintiffs err in contending that ATF "entirely fail[s] to consider an important aspect of the problem" that the Rule addresses. *State Farm*, 463 U.S. at 43; *see also New*

*York v. Dep't of Justice*, 951 F.3d 84, 122 (2d Cir. 2020) ("While agency action may be overturned if the agency 'entirely failed to consider an important aspect of the problem' at issue . . . a court will not 'lightly' reach that conclusion[.]") (citations omitted).

In promulgating the Rule, ATF did consider that partially complete frames and receivers may be purchased separately from an assembly kit or from templates, jigs, and other similar equipment. The Rule makes clear that sellers or distributors may not undermine the Rule's requirements "by working with others or structuring transactions to avoid the appearance that they are not commercially manufacturing and distributing firearms." 87 Fed. Reg. at 24,713.[17] Sellers thus may not make an end run around the Rule's requirements by structuring sales transactions, for example, by shipping a partially complete receiver to a buyer in one transaction and then shipping the jigs, tools, or written materials allowing the partially complete receiver to be readily converted into a functional receiver in a separate package or at a different time. Nor may sellers conspire with other sellers to evade the Rule's requirements by agreeing that they will separately sell to a buyer a partially complete frame and tools allowing for its ready conversion into a functional frame. *See id*. at 24,713 n.138 (citing Ninth Circuit decision affirming convictions for conspiracy, and aiding and abetting, possession of unregistered machineguns based on such agreement between different sellers). ATF thus did consider that partially complete frames and receivers may be sold separately from kits, jigs, or similar items, but decided to address this problem through well-established criminal law: conspiracy, aiding and abetting, and structuring of transactions. The Rule thus takes account of kits, jigs, and similar items if a seller structures transactions by selling a partially complete frame or receiver separately to the buyer from such items, or if a seller arranges with other sellers to provide both the partially complete frame or receiver and such items to a buyer in separate transactions.

ATF decided to draw this line where it did based on its expertise in enforcing federal firearm laws, including an analysis of factors such as the difficulty of enforcing a broader scope of regulated behavior

---

[17] Although this discussion occurred in response to a comment regarding weapon parts kits rather than partially complete frames or receivers, these same strictures apply equally to the sale of partially complete frames and receivers and associated items such as jigs, tools, and written instructions. *See Public Safety Advisory to All Federal Firearms Licensees, and Firearm Parts, Components, and Accessories Manufacturers and Distributors*, https://www.atf.gov/firearms/docs/guide/public-safety-advisory-all-federal-firearms-licensees-and-firearm-parts/download (March 21, 2023).

and associated manufacturers' costs.  First, had ATF decided to consider the availability of jigs, templates, and similar items in the general marketplace but not sold with a partially complete frame or receiver, the agency would need to expend valuable law enforcement resources monitoring the development and distribution of such tools and equipment throughout the marketplace.  Second, ATF considered objections from firearm manufacturers that could result from considering associated items separately available in the marketplace.  For example, some manufacturers commented that "expansive definitions of 'readily,' when applied to a partially complete frame or receiver, could result in steel or aluminum billets, castings, forgings, or even simple glass reinforced nylon raw materials being considered firearms."  87 Fed. Reg. at 24,699.  They also pointed out that under a more expansive definition, "technological advances, such as CNC machines, that can convert metal ingots into a functional firearm" would "rais[e] the question of whether a CNC machine sold alongside the ingots would be considered a firearm."  *Id*.  Manufacturers also raised concerns that if products they received from non-licensed third-party suppliers were considered partially complete frames or receivers, those suppliers would need to be licensed, mark the products, and maintain records.  *Id*. at 24,697, 24,699.  A trade group representing major manufacturers stated that depending on the scope of when a partially complete frame or receiver could be said to be "readily completed," as many as seven or more stages of a pistol receiver's construction could require serialization and recordkeeping.  *Id*. at 24,699.

ATF was thus concerned that a too expansive definition of when a partially complete frame or receiver may be readily completed that looks to the availability of materials not sold or possessed with the item (or kit) may result in undesirable applications of the Rule, such as requiring all suppliers that produce partially complete frames or receivers for licensed manufacturers to be licensed, purchase marking equipment, and keep records.  Moreover, such an excessively expansive definition could require serialization at early stages of a frame or receiver's manufacture.  However, once serialized, many potential finishing processes may alter or destroy the serial number, which would render the frame or receiver unmarketable, *see* 18 U.S.C. § 922(k) (prohibiting possession of firearms with removed, obliterated, or altered serial numbers), and law enforcement would experience difficulty in attempting to trace firearms with multiple serial numbers.  *See* 87 Fed. Reg. at 24,714 (agreeing with commenters that law enforcement may find it more difficult to trace firearms with more than one serial number).

For all these reasons, ATF decided to draw the line where it did, and look only to jigs, templates, and similar items sold, distributed, possessed, or made available with a partially complete frame or receiver in determining whether it can be readily converted into a functional frame or receiver.   An agency's "line-drawing determination" is "an inherently discretionary task" that should be granted deference unless it "'is so implausible' that a difference with plaintiffs' views 'could not be ascribed to a difference in view or the product of agency expertise.'"   *California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1103-04 (9th Cir. 2020) (quoting *State Farm*, 463 U.S. at 43); *see also J & G Sales Ltd. v. Truscott*, 473 F.3d 1043, 1051-52 (9th Cir. 2007) (ATF demand letter with reliance on absolute number of firearms traces was not arbitrary and capricious because "[t]he agency need not craft the perfect threshold in order to survive review, but merely demonstrate that its threshold stems from reasoned decisionmaking . . . [which] the agency has done").   Courts are "generally unwilling to review line-drawing performed by [an agency] unless a [plaintiff] can demonstrate that lines drawn are patently unreasonable, having no relationship to the underlying regulatory problem."   *ExxonMobil*, 297 F.3d at 1085 (internal punctuation and citation omitted).   Plaintiffs have not alleged such facts here.

Furthermore, Plaintiffs do not establish a valid arbitrary-and-capricious claim merely by alleging that the Rule could have regulated more conduct than it does.   An agency is "'free to undertake reform one step at a time,' and [courts] can overturn its gradualism only if it truly yields unreasonable discrimination or some other kind of arbitrariness.'" *S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41, 88 (D.C. Cir. 2014) (citation omitted); *cf. RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1155 (9th Cir. 2004) (under rational basis review, "[r]eform may take one step at a time" and thus lawmakers "may select one phase of one field and apply a remedy there, neglecting the others") (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 316 (1993)).   "Nothing prohibits federal agencies from moving in an incremental manner," *FCC v. Fox Television Stations*, 556 U.S. 502, 522 (2009), and it is well settled that regulatory agencies need not "regulate everything that could be thought to pose any sort of problem." *Pers. Watercraft Indus. Ass'n v. Dep't of Com.*, 48 F.3d 540, 544 (D.C. Cir. 1995) (citations omitted); *see, e.g.*, *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 488-89 (1955) (upholding regulation that applied to opticians, but not to "sellers of ready-to-wear glasses," on the ground that reform of a problem "may take one step at a time, addressing itself to the phase of the problem which seems most acute" to the

policymakers); *Henderson v. Kennedy*, 253 F.3d 12, 18 (D.C. Cir. 2001) (rejecting contention that Park Service was required to ban t-shirt sales by all possible vendors if it banned sales by some). Because "[a]n agency does not have to 'make progress on every front before it can make progress on any front,'" "[r]egulations . . . are not arbitrary just because they fail to regulate everything that could be thought to pose any sort of problem." *Pers. Watercraft Indus. Ass'n*, 48 F.3d at 544 (quoting *United States v. Edge Broad. Co*., 509 U.S. 418, 434 (1993)).

In short, Plaintiffs fail to show that the Rule is arbitrary and capricious simply by asserting what can only "be ascribed to a difference in view"—in an area of particular expertise for the agency—not a failure "entirely . . . to consider an important aspect of the problem." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). Plaintiffs' claims thus do not succeed under the "highly deferential" arbitrary and capricious standard.

### D. Any Relief Must Be Narrowly Tailored.

It is well established that "federal courts should aim to ensure 'the framing of relief no broader than required by the precise facts.'" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 193 (2000) (citation omitted). Accordingly, any relief that this Court may grant should be no broader than necessary to grant relief as to any products that Plaintiffs establish has caused a cognizable injury to them that may be redressed by this Court.

Moreover, and relatedly, any injunctive relief that this Court may grant should be framed with adequate specificity to give Defendants notice of the precise conduct that the Court has enjoined. *See* Fed. R. Civ. P. 65(d) (requiring that [e]very order granting an injunction . . . must . . . state its terms specifically[] and . . . describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."). "[T]he specificity provisions of Rule 65(d) are no mere technical requirements." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). Rather, "[s]ince an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Id.* Additionally, "[u]nless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing." *Id.* at 477. Similarly, declaratory relief must be sufficiently precise to give the parties and any appellate tribunal fair notice of its scope. *See, e.g., Allen Bradley Co. v. Loc.*

*Union No. 3, Int'l Bhd. of Elec. Workers*, 325 U.S. 797, 811-13 (1945) (remanding for "modification and clarification" of a declaratory judgment that was "indefinitely inconclusive" in scope); *Black Mountain Equities, Inc. v. Players Network, Inc.*, No. 18-CV-1745-BAS-KSC, 2020 WL 804452, at *2 (S.D. Cal. Feb. 18, 2020) (dismissing a counterclaim for declaratory relief on the ground that "it [wa]s unclear exactly what [the] [d]efendant [wa]s seeking"); *Apple Inc. v. Motorola Mobility, Inc.*, No. 12CV355 DMS (BLM), 2012 WL 12846983, at *4 (S.D. Cal. July 17, 2012) (dismissing claims for declaratory relief that were "too vague and broad to be justiciable").

Here, Plaintiffs seek a declaration "that 80 percent receivers and frames are 'firearms' under the GCA, even when sold without a kit, template, or other materials," and an injunction barring "Defendants from implementing and enforcing any agency action, decision, or guidance providing that 80 percent receivers and frames are not 'firearms' under the GCA," among other relief.  Suppl. Am. Compl., Prayer for Relief, §§ a, i.  As Defendants have previously emphasized, the terms "80% frame" and "80% receiver" are marketing terms used by some firms in the firearms industry to describe a wide variety of partially complete frames and receivers—some of which the Rule classifies as firearms and others of which it does not—and which ATF does not consider useful or meaningful for regulatory purposes.  *See* ECF No. 125 at 4; Final Rule, 87 Fed. Reg. at 24,663 n.47.  Accordingly, Plaintiffs' request for injunctive relief does not meet the requirements of Rule 65(d), and their request for a declaratory relief likewise is inadequately defined.  Any relief that this Court may grant must be sufficiently tailored to give Defendants fair notice of any conduct that it proscribes and any legal determinations that it makes with respect to particular products.

## CONCLUSION

The Court should grant Defendants' Motion for Summary Judgment and enter judgment in favor of Defendants on all of Plaintiffs' claims.

DATED: October 5, 2023                    Respectfully submitted,


                                          BRIAN M. BOYNTON
                                          Principal Deputy Assistant Attorney General

                                          LESLEY FARBY
                                          Assistant Branch Director

                                          */s/ Jeremy S.B. Newman*
                                          DANIEL RIESS
                                          TAISA M. GOODNATURE
                                          JEREMY S.B. NEWMAN
                                          Trial Attorneys
                                          United States Department of Justice
                                          Civil Division
                                          Federal Programs Branch
                                          1100 L Street NW
                                          Washington, DC 20005
                                          Telephone: (202) 532-3114
                                          FAX: (202) 616-8460
                                          jeremy.s.newman@usdoj.gov

                                          *Attorneys for Defendants*